1  S. Clinton Woods (SBN 246054)
Michael McShane (SBN 127944)
2  AUDET & PARTNERS, LLP
711 Van Ness Avenue, Suite 500
3  San Francisco, California 94102
Telephone: (415) 568-2555
4  Facsimile: (415) 568-2556
cwoods@audetlaw.com
5  mmcshane@audetlaw.com
6
7  *Attorneys for Plaintiff DOMINIQUE MORRISON,*
*individually and on behalf of all others similarly situated*
8
9  [Additional counsel listed in signature block]

10            UNITED STATES DISTRICT COURT

11        FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                OAKLAND DIVISION

13  DOMINIQUE MORRISON, individually and      Case No.  4:18-cv-02671-YGR
    on behalf of all others similarly situated,
14                                            **FIRST AMENDED CLASS ACTION
                                              COMPLAINT**
15               Plaintiff,

16         v.                                  **JURY TRIAL DEMANDED**

17  ROSS STORES, INC., AQ TEXTILES LLC,
    CREATIVE TEXTILE MILLS PRIVATE
18  LIMITED,

19               Defendants.

20

21

22

23

24

25

26

27

28

Plaintiff Dominique Morrison ("Plaintiff") brings this action on her own behalf and on behalf of a putative class (the "Class") consisting of Plaintiff and all others similarly situated, against Ross Stores, Inc. ("Ross"), AQ Textiles LLC ("AQ Textiles"), and Creative Textile Mills Pvt. Ltd. ("Creative Textiles")( the "Defendants"), and allege the following :

## INTRODUCTION

1.      Plaintiff brings this action on both her own behalf and on behalf of a Class consisting of Plaintiff and all others similarly situated to redress Defendants' deceptive acts and unconscionable business practices designed to deceive and mislead consumers into believing that Defendants' bedding and linen products had higher thread counts than they actually had and as such were of better qualify, softer and more comfortable for sleeping than products with lesser thread counts.    In purchasing bedding and linen products, Plaintiff and the Class received less than what was promised by Defendants due to the improperly inflated thread counts represented on bedding and linen labels sold by Defendants.

2.      Members of the bedding and linen products industry including the Defendants consistently communicate to consumers that higher thread count sheets are of better quality, softer, and more comfortable for sleeping.  As a result, consumers purchasing bedding and linen products use thread count as a primary indicator of the quality of the sheets offered for sale, and pay higher prices for higher thread count bedsheets and linens.

3.      As part of a scheme to make their bedding and linen products more attractive, boost sales, and increase profits, Defendants departed from well-established and long-standing industry standards governing the calculation and advertisement of thread counts and inflated the thread counts on the labels of the products they marketed, distributed and/or sold.

4.      Defendants misrepresented, and continue to misrepresent, the thread count in many of the bedding and linen products they manufacture, advertise, and market throughout the country, resulting in the sale of bedding and linen products represented to have greater than their true thread counts to consumers throughout the United States.   The representation of the false and misleading thread count also deceives and misleads consumers into believing that they are purchasing a product which is of higher quality, softness and better for sleeping than products with a lower thread count.

5.      Defendants knowingly departed from following well accepted and known industry standards for calculating thread counts, and thereby inflated thread counts to market, advertise, package, and sell their bedding and linen products.

6.      Inaccurate thread counts create reasonable but mistaken beliefs by consumers about the quality of bedding and linen products.  For example, reasonable consumers believe that a bedding package label stating that it contains 800 thread-count bedding actually contains bedding with a thread count calculated at 800 according to an honest and consistent industry standard.  Likewise, consumers believe that 800 thread- count bedding is going to be of higher quality, softer and better for sleep than a lower thread-count bedding.  Consumers rely on Defendants' representations and advertising as they compare and assess products and make purchase decisions.

7.      As a direct result of Defendants' improper, deceptive, and unconscionable scheme to misrepresent bedding and linen thread counts, Plaintiff and other Class members suffered damages because the inflated thread counts induced Plaintiff and other members of the Class to purchase their products when Plaintiff and other members of the Class would not have purchased them, or would only have paid a lower price for the products if they had known the actual thread counts at the time of purchase .

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because (1) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because Defendant Ross  is a resident of the state in which this District is located and because  a substantial part of the events or omissions giving rise to the claims occurred in this District.   Defendant Ross' improper conduct set forth herein occurred in this District or was conceived of and executed from this District in whole or in part.  Defendants' decisions to engage in the improper conduct set forth herein were made in this District.  Some of the bedding and linen products at issue were advertised, marketed, sold and/or

distributed by Ross, or its operating entities, in this district.  Ross or its operating entities directly advertised, marketed and sold bedding and linen products to consumers in this district.

10.   The harm alleged herein occurred in this District or emanated from Defendants' improper conduct that occurred in this District, in whole or in part.

## PARTIES

11.   Plaintiff Dominique Morrison is an adult citizen of St. Louis County, Missouri.  Ms. Morrison purchased Grande Estate 800TC Luxurious Sateen Weave sheets during the Class Period from the Ross store located at 3614 S. Lindbergh Blvd. in St. Louis, Missouri.

12.   The sheets were manufactured by Defendant Creative Textiles, labeled by Defendant AQ, and represented to be 800 thread count from Defendant Ross' retail store.  Plaintiff relied on the thread count representations on the packaging when purchasing these sheets and believed that she was purchasing sheets with  800 thread count and that the sheets were of higher quality, more durable, softer and better for sleep than sheets with lower thread counts.

13.   Defendant Ross Stores, Inc. is a Delaware corporation, with its principal place of business at 5130 Hacienda Drive, Dublin, California 94568.

14.   Defendant Creative Textiles is a private limited company organized under the laws of the Republic of India, with its primary place of business at 211 Cama Industrial Estate, Sun Mill Compound Mumbai, Maharashtra 400013 India.

15.   Defendant AQ Textiles is a North Carolina LLC with it principal place of business and registered offices located at 214 Staunton Drive, Greensboro, North Carolina 27410.

16.   Defendant Creative Textiles manufactures and sells textiles, including the relevant sheets and bedding products, throughout the United States, through its association with AQ Textiles.

17.   Defendant AQ Textiles labels, imports, and distributes certain of the relevant sheet and bedding products to Defendant Ross.

## FACTUAL ALLEGATIONS

18.   For consumers purchasing bedding and linens, thread count is used as an indicator of fabric quality, durability and a basis on which they make purchasing decisions.  As the thread count increases, so does the price that consumers are willing to pay for bedding and linens.

19.     The industry, including the Defendants, knows that consumers will pay a higher price for linens and bedding products with a higher thread count and as such increase the price as the thread count on the products increase.

20.     Consumers rely on represented thread count as the gauge for the quality of their bedding and linen products.  *See* ABC News, <u>Are Shoppers Short-Sheeted by Thread Count</u>?, November 14, 2016, available at <u>http://abcnews.go.com/GMA/story?id=125380</u> ("Consumers who enjoy slipping under top-quality bed sheets rely on thread count as a gauge while shopping….").

21.     Consumers pay more for a higher thread count sheets.  *Id.* ("A single-ply 300-count can run about $55 a set, while the 600 thread-count sheets that [tested as] only a 300-count is $180 a set.").

22.     An informal survey of the prices of cotton, king-size bedding sets at online retailers in December 2016 showed that as thread count increased, so did the price for the bedding.



23.     The common or standard practice in the U.S. bedding and linen industry has been to count the number of threads in both the warp (vertical direction) and filling (horizontal direction).

Common or standard practice counts each yarn as one thread, regardless of whether the yarn was a single-ply or multi-ply yarn.

24.     The American Society for Testing and Materials' ("ASTM") Standard Test Method for Warp (End) Count and Filling (Pick) Count of Woven Fabric, Designation: D3775-12, covers the standard test method for measuring warp end count and filling pick count and is applicable to all types of woven fabric.  Section 9.1.1 of D3775-12 instructs on the appropriate method for determining thread count: "Count individual warp ends and filling picks as single units regardless of whether they are comprised of single or plied components."

25.     The terms relevant to ASTM D3775-12, and related to textiles, are defined by ASTM Designation: D123-03.  *See* Section 3, Terminology of ASTM D3775-123.  These terms, among others, include:

   a.     **count,** *n − in woven textiles*, the number of warp yarns (ends) and filling yarns (picks) per unit distance as counted while the fabric is held under zero tension, and is free of folds and wrinkles.

   b.     **end,** *n − in fabric*, an individual warp yarn (single or ply) or cord.

   c.     **filling,** *n −* yarn running from selvage to selvage at right angles to the warp in a woven fabric.

   d.     **pick,** *n −* an individual filling yarn.

   e.     **pick count,** *n − in woven fabrics*, the number of filling yarns per unit fabric length.

*See* ASTM D 123-03, Standard Terminology Relating to Textiles.

26.     The prior versions of ASTM D3775, going back at least to 2003, included the same instructions for proper counting under the standard.  ASTM, Standard Test Method for Warp End Count and Filling Pick Count of Woven Fabric, Designation: D3775-03a, Section 9.1.4 instructs, "Count individual warp yarns (ends) and filling yarns (picks) as single units regardless of whether they are comprised of single or plied components."

27.     Per ASTM D3775-12 § 9.1.4, the standard deviation of the samples tested, should be 5% or less.  In other words, the stated thread count should be within 5% of the actual thread count.

28.     However, some bedding and linen manufacturers and retailers, such as Defendants, are not adhering to the standard-based, traditional, and common industry practice.  These manufacturers

and retailers double or triple the true thread count by counting plied yarns individually.

29.     According to the National Textiles Association ("NTA") and the Federal Trade Commission ("FTC"), this practice of determining thread count by counting plied yarns individually "inflates the thread count numbers to levels which double or triple (or more) the thread count as determined by the long standing, traditional way.  This practice has also created confusion in the marketplace and has caused consumers to compare thread counts that may have been calculated in two dramatically different ways." *See* FTC Letter to National Textile Association, August 2, 2005, Ex. A.

30.     In its Letter to the National Textile Association, the FTC stated that:

> [C]onsumers could be deceived or misled by the practice of stating an inflated thread count, achieved by multiplying the actual count by the number of plies within the yarn.  A possible non-deceptive way to disclose both the thread count and the yarn ply would be to state, for example: '300 thread count, 2 ply yarn.'  A representation of '600 thread count' for this same product would likely mislead consumers about the quality of the product being purchased."

31.     The practice of counting the plies that make up each thread was also condemned by the American Textile Manufacturer's Institute ("ATMI").  In a letter sent to the FTC on January 31, 2002, Ex. B, ATMI addressed marketing of bed sheets and pillowcases to consumers with claims of extremely high yarn or thread count claims, stating that:

> Labeling these products based on a count that includes each ply in plied yarns deceives the customer into believing that bedding products with higher counts are better, when, in fact, they might be inferior because of the method used to determine the count.

> In many cases, these extremely high counts are achieved by counting yarns within a ply as individual yarns, thus dramatically increasing the number of yarns in a square inch of fabric.  A plied yarn is one in which two or more yarns are twisted together to form a single strand.

> ATMI believes this method of labeling products based on counting each individual yarn in plies to be a deceptive practice, which misleads the American public into making purchasing decisions to purchase items, based on false and misleading information.
> ASTM method D 3775-96 (Standard Test Method for Fabric Count of

Woven Fabric) [a prior version of D3775-12] the long-accepted industry standard for determining count. This method has been in use in this country for many years and serves as the industry's standard way to report the count of many woven textile fabrics, including sheeting. It is based on the number of yarns in the warp direction and filling direction, regardless of ply, and has become an important parameter used by consumers to judge the quality of sheeting products, since the higher the count, the more luxurious the product.

ATMI believes that any information provided to the consumer should be true and correct so as not to be deceptive or misleading. We believe that plied yarns are properly counted as only one yarn. For example, a fabric containing 250 individual four ply yarns in a square inch would be described as a "250 thread count fabric, even though each thread or yarn contained four plies twisted together." It would be false and misleading to describe this as a 1000 thread count product.

32.    The FTC's reply letter to ATMI dated March 18, 2002, advised how the Commission's staff would analyze claims that counting yarns within a ply as individual yarns to determine thread count was a deceptive practice. *See* Ex. C. The FTC advised that where ASTM standards existed, the Commission would give great weight to the applicable standards to determine if product claims were reasonable or deceptive:

A thread count claim, like other objective, material claims about a product, must be supported by a "reasonable basis." In determining what constitutes a reasonable basis for claims, we would consider what experts in the field believe is appropriate, including whether there are relevant consensus based test procedures, such as an ASTM test procedure, or other widely accepted industry practices that apply to the matter. If so, we would give such procedure or practices great weight in determining whether the advertiser has met its substantiation burden. In other related context, the Commission has encouraged the use of ASTM tests. *See* Press Release, FTC Announces Actions on Wool Labeling Rules, dated March 8, 1994 (copy attached) ("In its clarification of the procedure used for testing the fiber content of wool products, the FTC said the industry members should, where possible, use procedures established by the American Society for Testing and Materials (ASTM).").

33.    Despite these long-standing industry standards for calculating thread counts, and the likelihood that deviating from the standards would mislead and deceive consumers, Defendants

manufactured, marketed, advertised, sold and/or distributed bedding and linen products with inflated thread counts.

34.     Defendant Ross represented that numerous bedding and linen products were of a certain thread count, but when measured in accordance with industry standards, these thread counts were far less than claimed because Defendant improperly counted the plies making up the threads in their linens rather than the threads themselves.

35.     The bedding and linen products at issue are therefore inherently defective and not fit for their intended use due to the lower thread count, making the sheets less soft, comfortable, and durable than they otherwise would be if they were the represented thread count on the label.

36.     Plaintiff purchased Grande Estate 800TC Luxurious Sateen Weave sheets, imported and labeled by Defendant AQ Textiles and manufactured and packaged by Defendant Creative Textiles, which was represented to be 800 Thread Count, from Defendant Ross' retail store.

37.     Plaintiff Morrison reasonably believed and relied on the representations on the label that the sheets she purchased were in fact of 800 thread count.

38.     Plaintiff was deceived by the false label, however, because the Grande Estate 800 TC sheets have misrepresented thread counts and that the thread counts are far less than the represented 800.

39.     Had Plaintiff Morrison known that the sheets were not in fact 800 thread count sheets, she would not have purchased them.

40.     Other sheets and bedding products, besides those purchased by Plaintiff, are advertised and packaged with false thread counts.

41.     For example, the Ultra Lux 800 sheets sold by TJ Maxx, and manufactured and imported, respectively, by Defendants Creative Textiles and AQ Textiles, were represented to be 800 Thread Count.  However, when measured in accordance with industry standards, these sheets actually had a 230 Thread Count.

42.     Similarly, the Sterling Manor 700 sheets sold by TJ Maxx, and manufactured and imported, respectively, by Defendants Creative Textiles and AQ Textiles, were represented to be 700

Thread Count.  However, when measured in accordance with industry standards, these sheets actually had a 245 Thread Count.

43.     On information and belief, numerous other brands and marks sold by Defendants at Ross stores and other retailers are marketed with false thread counts.

44.     For example, Defendant AQ Textiles, on behalf of Creative Textiles, imports and distributes bedding and linen products to Ross stores, who in turn sell them to consumers like Plaintiff under at least the following corresponding brand names:  Hampton House 1200 TC and Grande Estate Fine Linens 800 TC Luxurious Sateen Weave.





45.     These sheet sets share the same common misrepresentation – a misrepresented thread count.

46.     Defendants made false representations as to the thread count of their sheets and bedding products in all the retail Ross stores stocked with the relevant goods.

47.     Defendants' representations regarding the thread counts of their bedding and linen products were deceptive and misleading according to both the industry standard and the FTC's guidelines for accurately describing thread counts. The products at issue in this case are Grande Estate Fine Linens 800 TC Luxurious Sateen Weave sheet sets, Hampton House 1200 TC, and all other cotton/polyester blend sheet sets with inflated thread counts that were manufactured or supplied by Defendant AQ Textiles and/or Defendant Creative Textiles and was packaged or advertised and sold at one of Defendant Ross' stores ("the Products").

48.     The Products are cotton/polyester blend sheet sets and are packaged and advertised with a representation regarding thread count.

49.     The Products share the same common misrepresentation – that the thread count is higher than it actually is.

50.     The misrepresentation is substantially similar as to all Products.  The labels prominently display the inflated thread count on the front of the packaging of the Products.  The thread count number on the Products' labels is printed in large font and listed directly below the brand name of the Products.

51.     By improperly inflating thread counts contrary to industry standards, Defendants have engaged in, and continue to engage in, practices which are unconscionable, deceptive, and fraudulent, and which are based on false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material facts with the intent that others rely on such concealment, suppression, or omission in their manufacturing, advertising, marketing, selling, and distribution of bedding and linen products.

52.     As a direct and proximate result of Defendants' improper conduct, Plaintiff and Class Members paid more for the Products which Defendants represented had inflated thread counts.

53.     By representing that the Products had higher thread counts than they actually had, Defendants unjustly profited from the sale of such bedding and linen products to consumers.

54.     The inflated thread counts put forth by Defendants in the Products  induced Plaintiff and other members of the Class to purchase the Products when Plaintiff and other members of the Class

would not have purchased them, or would only have paid a lower price for the Products if they had known the actual thread counts at the time of purchase.

### CLASS ACTION ALLEGATIONS

55.     Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and seeks to represent a Class comprised of:

> **Missouri Class:**
> All persons in Missouri that purchased any of the Products
> during the Class Period.

56.     The Class Period commences on the first date that Defendants manufactured, marketed, advertised, sold and/or distributed the Products and ending on the date that the Court certifies this suit as a class action ("Class Period").

57.     Excluded from the Class (and in the alternative, the Subclasses defined below) are Defendants, any parent, subsidiary, affiliate, or controlled person of Defendants, as well as the officers, directors, agents, servants, or employees of Defendants.

58.     The Class is so numerous that joinder of all members is impracticable.  The disposition of these claims in a class action will provide benefits to the parties, Class members, and the Court.

59.     Although the Class members' identities and numbers are presently unknown, Defendants' records can readily determine this information using objective criteria.  The Class likely consists of thousands of purchasers throughout the United States.

60.     Additionally, or in the alternative to the Missouri State Class, and pursuant to Federal Rules of Civil Procedure Rule 23(c)(5), Plaintiff seeks to represent a Nationwide Class consisting of members from the 50 States and the District of Columbia, as well as any subclasses or issue classes that Plaintiff may propose and/or the Court may designate at the time of class certification. The alternative Nationwide Class could be defined as follows:

> **Nationwide Class:**
> All persons in the United States that purchased any of the Products
> during the Class Period.

61.   Defendants' policy and practice of inflating thread counts and misrepresenting thread counts to consumers has subjected and affected all members of the Class.  As such, there are many common questions of law and fact among Plaintiff and the members of the Class, which predominate over questions affecting individual Class members.  Common questions include, but are not limited to, the following:

a.   Whether ASTM D3775 Standard Test Method for Warp (End) and Filling (Pick) Count of Woven Fabrics was the generally accepted method in the textile industry for calculating thread count during the relevant time period.

b.   Whether Defendants knew or should have known that ASTM D3775 was the generally accepted method in the textile industry for calculating thread count during the relevant time period.

c.   Whether Defendants misrepresented thread counts on the Products contrary to industry standards, by counting plies instead of actual threads in contravention of ASTM D3775;

d.   Whether Defendants manufactured, advertised, sold, or delivered for sale bedding and linen products that were advertised or represented to be of a certain thread count, but were, in fact, of a lesser thread count;

e.   Whether Defendants knew or should have known persons would rely on the inflated thread counts in making their purchase decision;

f.   Whether Defendants' inflated thread counts violated the laws of the State of California and/or other States;

g.   Whether the Products are inherently defective and not fit for their intended use due to the lower thread count;

h.   Whether Defendants are liable for violation of the laws of the State of California and/or other States;

i.   Whether Defendants' misrepresentations caused damages to members of the Class and the extent of those damages;

j.   Whether Defendants were unjustly enriched, and, if so, the extent to which they

1    were unjustly enriched; and

2        k.    Whether Defendants should be enjoined from future conduct of the type

3              complained of herein.

4        62.    Plaintiff's claims are representative of the putative Class because her claims are typical

5    of the claims of the Class members, and rely on Defendants' misrepresentations and application of an

6    industry standard.  If brought and prosecuted individually, the claims of each putative Class member

7    would require proof of the same materials and substantive facts, rely on the same remedial theories,

8    and seek the same relief.

9        63.    Plaintiff will fairly and adequately protect the interests of the Class, and has retained

10   attorneys experienced in class and complex litigation as counsel.

11       64.    As to the Products which Plaintiff did not purchase, they are substantially similar

12   products to the set she purchased and they are substantially similar in their misrepresentations regarding

13   their thread count as well as to the inherent defect which renders them not fit for their intended use.

14       65.    Because the products themselves and misrepresentations are substantially similar,

15   Plaintiff has standing to bring claims on behalf of the class as to both purchased and unpurchased

16   products.

17       66.    A class action is superior to other available methods for the fair and efficient

18   adjudication of this controversy.  A class action will permit an orderly and expeditious administration

19   of the claims of the Class, will foster economies of time, effort, and expense, and will insure uniformity

20   of decisions.  The prosecution of individual actions by Class members would create the risk of (a)

21   inconsistent or varying adjudications with respect to individual Class members; and (b) be grossly

22   impracticable because the cost of vindicating an individual Class member's claim would likely exceed

23   the value of the claim.

24       67.    Defendants have acted or refused to act on grounds generally applicable to the Class,

25   thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to

26   the Class as a whole.

27

28

68.     Due to the relatively small amounts of damage to each member of the Class, a class action is superior to other available methods for the fair and efficient adjudication of the controversy which is subject of this action.

69.     The interests of judicial economy will be served by concentrating litigation concerning these claims in this Court, and there is no known difficulty that would be encountered in the management of this Class.

<div align="center">

**EQUITABLE TOLLING**

</div>

70.     Despite knowing that the Products were defective because they did not contain the qualities Defendants advertised, Defendants concealed their defective nature from Plaintiff and the Class by affirmatively marketing and advertising their products as having certain qualities that they did not have.

71.     Plaintiff and Class members did not and could not have known that their bedding and linen did not have the qualities that it was advertised to have, as this fact was not disclosed to them and was not apparent from a superficial inspection of the products.

72.     Plaintiff and Class members could not have discovered the defective nature of Defendants' products through the exercise of due diligence.

73.     Due to Defendants' fraudulent concealment of the defects associated with their products, Defendants are estopped from asserting statute of limitations defenses to any of the claims alleged herein.

<div align="center">

**COUNT ONE**

**Magnusson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.***

</div>

74.     Plaintiff incorporates by reference all allegations in this Amended Complaint as though fully set forth herein.

75.     Plaintiff brings this Count on behalf of herself and the Class.

76.     This Court has jurisdiction to decide claims brought under the Magnuson-Moss Warranty Act (for the purpose of this Count, the "Act") by virtue of 28 U.S.C. § 1332(a)-(d).

77.     Defendants are "supplier" and "warrantors" within the meaning of 15 U.S.C. § 2301(4) and (5) and/or (7) because they regularly sell sheets and bedding products with a written and/or implied

warranty guaranteeing that their products have a certain thread count and a certain corresponding quality.

78.     Plaintiff and other Class Members are "consumers" who purchased "consumer products" for purposes of 15 U.S.C. § 2301(1) and (3) because they purchased the Products (sheets and bedding products) for personal, family, or household purposes.

79.     The Products are "consumer products" within the meaning of the Act. 15 U.S.C. § 2301(1).

80.     The Act provides a cause of action for any consumer who suffers damages because of the failure of a warrantor to comply with a written or implied warranty. 15 U.S.C. § 2310(d)(1).

81.     The amount in controversy of the Plaintiff's individual claims meets or exceeds $25.00 in value. In addition, the amount in controversy meets or exceeds $50,000 in value (exclusive of interest and costs) on the basis of all claims to be determined in this suit.

82.     Under the Act, damaged "consumers" have a private cause of action against any warrantor that fails to comply with a written or implied warranty.

83.     Under the Act, damaged consumers have a private cause of action against any warrantor that fails to comply with a written or implied warranty.

84.     Defendants provided Plaintiff and the Class with the following express warranty: that the Products had a certain true and accurate thread count, which was communicated expressly through packaging and other marketing representations.

85.     Further, Defendants made the previously described express affirmations, statements, assertions, and representations concerning the qualities and durability of the Products, in order to induce consumers, including Plaintiff and members of the Class, to purchase their Products. Such affirmations constitute express warranties.

86.     Plaintiff and Class members relied on Defendants' representations regarding the thread count, quality and durability of the Products.

87.     Defendants' affirmations became the basis of the bargain for Plaintiff and Class members purchasing the Products.

88. These express warranties constitute written warranties within the meaning of 15 U.S.C. § 2301(6).

89. The Products' implied warranties are covered by 15 U.S.C. § 2301(7).

90. The terms of written warranties and implied warranties became part of the basis of the bargain among Plaintiff (and all other Class Members) and Defendants when Plaintiff (and all other Class Members) were deciding to purchase the Products.

91. Defendants' Products failed to comport with the affirmations, statements, assertions, and representations made by Defendants.

92. Defendants provided a defective product and failed to properly inspect, test, and identify defects in its bedding and linen products.

93. Defendants were aware of the defective nature of the Products at the time that they were sold to Plaintiff and the Class.

94. Defendants breached these written and implied warranties as described in detail above.

95. Without limitation, the Products had actual thread counts lower than the ones warranted and advertised.

96. Plaintiff and each of the other Class members have had sufficient direct dealings with Ross to establish privity of contract.  Nonetheless, privity is not required here because Plaintiff and each of the other Class members are intended third-party beneficiaries of contracts between Creative Textiles, AQ Textiles, and Ross, and specifically, of Creative Textiles and AQ Textiles' warranties. Ross was not intended to be the ultimate consumer of the Products and has no rights under the warranty agreements attaching to the products, which were for benefit of the consumers only.

97. Defendants were put on notice of the breach of warranty in several ways including but not necessarily limited to prior customer complaints, and a letter sent by counsel for Plaintiff to Defendants on or around May 4, 2018, which apprised them generally of acts and omissions pled herein. As of the filing of the Amended Complaint, Defendants have failed to cure their breach.

98. Affording Defendants a reasonable opportunity to cure their breaches of warranty would be unnecessary and futile here. At the time of sale of the Products, Defendants knew, should have known, or were reckless in not knowing of the misrepresentations concerning the products' thread

1    count, but nonetheless failed to rectify the situation. Under the circumstances, the remedies available

2    under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort

3    to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure

4    their breach of warranties is excused and thereby deemed satisfied.

5         99.    As a direct and proximate result of Defendants' breach of the written warranties and the

6    implied warranty of merchantability, Plaintiff and Class Members have suffered damages in an amount

7    to be determined at trial.

8         100.    Plaintiff, individually and on behalf of the Class, seeks all damages permitted by law,

9    including full refund of the purchase price her purchase , compensation for the monetary difference

10   between the Products as warranted and as sold, incidental and consequential damages, statutory

11   attorney fees, and all other relief allowed by law.

12   <center>**COUNT TWO**</center>

13   <center>**Fraud**</center>

14        101.    Plaintiff incorporates by reference all allegations in this Amended Complaint as

15   though fully set forth herein.

16        102.    Plaintiff brings this Count on behalf of herself and the Class.

17        103.    Defendants designed, manufactured, marketed, and/or sold sheets and bedding

18   products with falsely inflated thread counts to Plaintiff and the Class. Defendants represented to

19   Plaintiff and the Class in advertising, packaging, product descriptions, and other forms of

20   communication, including standard and uniform material, that the Products had higher thread counts

21   than their true thread counts.  Defendants were aware of or should have been aware of the falsity of

22   these representations.

23        104.    Plaintiff and the Class reasonably relied upon Defendants' deception. They had no

24   way of knowing that Defendants' representations were false and/or misleading. As consumers,

25   Plaintiff and the Class did not and could not unravel Defendants' deception on their own. Rather,

26   Defendants intended to deceive Plaintiff and the Class by concealing the true facts about the

27   products' thread counts.

28

105.     Defendants' representations were material to consumers because the representations were directly relevant to the value and quality of the products.

106.     Plaintiff, individually and on behalf of the Class, seeks all damages permitted by law, including full refund of her purchase price, compensation for the monetary difference between the Products as warranted and as sold, incidental and consequential damages, statutory attorney fees, and all other relief allowed by law.

<div align="center">

**COUNT THREE**

**Consumer Legal Remedies Act**

**California Civil Code, § 1750, *et seq.***

**(As against Defendant Ross Only)**

</div>

107.     Plaintiff repeats and re-alleges all preceding paragraphs as if fully set forth herein.

108.     Plaintiff brings this Count on behalf of herself and the Class.

109.     Plaintiff brings this count pursuant to the Consumer Legal Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA"), for omissions by Defendants, made actionable by affirmative misrepresentations and/or exclusive knowledge of material facts, and Defendants' active concealment of the truth.

110.     The Products are "goods" pursuant to the CLRA at California Civil Code § 1761(a).

111.     Defendants are "persons" pursuant to the CLRA at California Civil Code § 1761(c).

112.     Plaintiff and the Class Members are "consumers" pursuant to the CLRA at California Civil Code § 1761(d).

113.     Purchases of the Products by Plaintiff and the Class Members are "transactions" pursuant to the CLRA at California Civil Code § 1761(e).

<div align="center">

***Affirmative Misrepresentations***

</div>

114.     Thread count is a specific, quantifiable attribute of bedding and linen products.

115.     There is no requirement to communicate the thread count of bedding and linen products when advertising or selling them to consumers.  However, thread count is a significant driver of consumers' perceptions of the value of the products, as alleged throughout this Amended Complaint.

1    116.    Defendant sold to Plaintiff bedding and linen products that were advertised with

2  inflated thread counts.

3    117.    Defendant knew or should have known that the thread counts listed by themselves

4  and/or their manufacturers or wholesalers were false or misleading.

5    118.    Defendant, as detailed in this Amended Complaint, repeated these false or misleading

6  statements of thread count in various product listings and descriptions, either in the store, or

7  advertisements, or the website, which were seen and relied upon by Plaintiff and Class Members.

8    119.    These misstatements of the thread count of the bedding and linen products are

9  prohibited by the CLRA, because they are "undertaken by [Defendants] in a transaction intended to

10  result or which results in the sale or lease of [the bedding and linen products] to any consumer."

11    120.    Defendant violated the CLRA by knowingly advertising that their Products had a

12  higher thread count than they actually had.

13    121.    Defendant violated the CLRA's proscription against misrepresentation of the

14  "approval, characteristics, ingredients, uses, benefits, or quantities" of the Products by advertising a

15  falsely inflated thread count.  These misrepresentations violated California Civil Code § 1770(a)(5)'s

16  proscription against representing that goods have characteristics that they do not have; Civil Code §

17  1770(a)(7)'s proscription against representing that goods are of a particular standard, quality or grade

18  when they are of another; and Civil Code § 1770(a)(9)'s proscription against advertising goods with

19  the intent not to sell the goods as advertised.

20                    ***Exclusive Knowledge of Material Facts and Omissions of Material Facts***

21    122.    Upon information and belief, through examination of their own products and

22  interactions with manufacturers or wholesalers, and as otherwise detailed in this Amended Complaint,

23  Defendant have exclusive knowledge concerning the actual thread count of the bedding and linen

24  products that they import and sell to consumers.

25    123.    Defendant owe consumers a duty to disclose that the thread count information listed by

26  Defendant, and/or the manufacturers or wholesalers of the bedding and linen products and advertised

27  by Defendant is misleading and/or false.

28    124.    Consumers, including Plaintiff, have no realistic means of determining the actual thread

count of the bedding and linen products.  A textile expert with magnifying equipment is needed to make such a determination.  Further, the process of testing the thread count damages the sheets.  Consumers therefore cannot be expected to discover the true thread count before making a purchase.  This is true under any circumstances, but especially when ordering products over the internet or by catalog.

125.    Retailers of bedding and linen products frequently fail to identify the manufacturer, importer, or seller of textiles at the point of sale or on product packaging. Import records similarly do not reveal the names of the original manufacturers of the materials used to construct the imported products.  These omissions from packaging and import records make it difficult to trace products back to manufacturers.

126.    Defendant concealed from Plaintiff and Class Members that the thread counts advertised for the Products are inflated to more than the actual thread count as a result of counting plies rather than threads, and that these thread counts are not calculated according to the method used by other bedding and linen providers and prescribed by ASTM D3775.

127.    Plaintiff and Class Members, as reasonable consumers, attached importance to representations by Defendant concerning the thread counts of the bedding and linen products in deciding whether to purchase the products, and in deciding whether the price was reasonable.  Thread counts are a material factor in consumers' determinations of the value and quality of bedding and linen products.

128.    Without disclosure of the above information, reasonable consumers such as Plaintiff were and continue to be deceived by Defendant's false thread counts.

129.    Defendant violated the CLRA by failing to disclose material facts and continuing to advertise thread counts Defendants knew to be inflated in, without limitation, product labels, advertisements, product descriptions, and website text.

130.    Defendant knew or should have known that their misrepresentations would cause Plaintiff and Class Members to pay higher prices for the Products than they would have paid, had a misleading thread count not been advertised.

131.    In failing to disclose material facts contrary to their affirmative representations, Defendants violated California Civil Code § 1770(a)(5)'s proscription against representing that goods

1   have characteristics that they do not have; Civil Code § 1770(a)(7)'s proscription against representing

2   that goods are of a particular standard, quality, or grade when they are of another; and Civil Code

3   § 1770(a)(9)'s proscription against advertising goods with the intent not to sell the goods as advertised.

4        132.   Pursuant to California Civil Code § 1782(d), Plaintiff seeks the following relief for

5   Defendant's violations of CLRA §§ 1770(a)(5), (7), and (9) with regard to the bedding products

6   identified herein:

7        a.     Actual damages under Civil Code § 1780(a)(1);

8        b.     Restitution under Civil Code § 1780(a)(3);

9        c.     Punitive damages under Civil Code § 1780(a)(4);

10        d.     Attorneys' fees and costs under Civil Code § 1780(d); and

11        e.     Any other relief the Court deems just and proper under the CLRA.

12        133.   Defendant was put on notice of the violations of law pled above in several ways

13   including but not necessarily limited to prior customer complaints, and a letter pursuant to Cal. Civ.

14   Code § 1782(a) & (d) sent by counsel for Plaintiff to Defendants on or around May 4, 2018, which

15   apprised them generally of acts and omissions pled herein. As of the filing of the Amended Complaint,

16   Defendants have failed to cure their breach.

17   <div align="center">**COUNT FOUR**</div>

18   <div align="center">**Unfair Competition Law – Unlawful Prong**</div>

19   <div align="center">**California Business and Professions Code, § 17200, *et seq.***</div>

20   <div align="center">**(As against Defendant Ross Only)**</div>

21        134.   Plaintiff repeats and re-alleges all preceding paragraphs as if fully set forth herein.

22        135.   Plaintiff brings this Count on behalf of herself and the Class.

23        136.   The acts of Defendant described herein constitute unlawful business practices and

24   violations of California's Unfair Competition Law, Business and Professions Code § 17200, *et seq.*

25   (UCL).  Section 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

26        137.   Defendant's business practices as alleged are unlawful under Federal Trade

27   Commission Act (FTCA) § 5(a), 15 U.S.C. § 45(a), which outlaws "unfair or deceptive acts or practices

28   in or affecting commerce."

138.    Defendant's business practices are unfair under FTCA § 5(a) because they are "likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition."  15 U.S.C. § 45(n).

139.    Defendant's business practices are deceptive under FTCA § 5(a) because they include affirmative representations and omissions and are likely to mislead reasonable consumers under the circumstances.

140.    Defendant's business practices are further unlawful under the CLRA and under UCL § 17000, *et seq.*, as alleged herein.

141.    Defendant's business practices are also unlawful pursuant to the FTCA by way of the Textile Fiber Products Identification Act, 15 U.S.C. §§ 70a(a), 70a(b), and/or § 70a(c).  These sections make it unlawful, under 15 U.S.C. §§ 41 *et seq.*, to sell, transport, deliver, or advertise "any textile fiber product . . . which is misbranded or deceptively advertised."

142.    As a result of Defendant's unlawful business practices, Plaintiff and Class Members have been harmed and are entitled, pursuant to UCL § 17203, to injunctive relief against the continuation of Defendants' practices, as well as the restitution of payments made for Defendants' Products, including other equitable relief, costs, and attorneys' fees as recoverable by law.

### COUNT FIVE

**Unfair Competition Law – Unfair Prong**

**California Business and Professions Code, § 17200, *et seq.***

**(As against Defendant Ross Only)**

143.    Plaintiff repeats and re-alleges all preceding paragraphs as if fully set forth herein.

144.    Plaintiff brings this Count on behalf of herself and the Class.

145.    Defendant's acts constitute unfair competition under § 17200.  They are contrary to public policy, violative of at least the FTCA, CLRA, and California False Advertising Law, and injurious to the public and to competitors who advertise accurate thread counts.

146.    Purchasers of Defendant's misleadingly advertised and labeled Products, including Plaintiff and Class Members, were injured because they paid an excessive price for a product other than what they thought they were buying.

147.     Falsely advertising thread counts has no conceivable benefit to consumers or to competition.   This behavior leads consumers to purchase products they do not want, and it forces competitors to either follow suit in the deceptive conduct or suffer lost sales.

148.     Consumers could not have reasonably avoided the injuries they suffered because they lack the skill, knowledge, resources, equipment, and opportunity necessary to discern the true nature of the Products Defendant sold.

149.     As a result of Defendant's unfair business practices, Plaintiff and Class Members have been harmed and are entitled, pursuant to UCL § 17203, to injunctive relief against the continuation of Defendant's practices, as well as the restitution of payments made for Defendant's bedding and linen products including other equitable relief, costs, and attorneys' fees as recoverable by law.

**COUNT SIX**

**Unfair Competition Law – Fraudulent Prong**

**California Business and Professions Code, § 17200, *et seq.***

**(As against Defendant Ross Only)**

150.     Plaintiff repeats and re-alleges all preceding paragraphs as if fully set forth herein.

151.     Plaintiff brings this Count on behalf of herself and the Class.

152.     Defendant's acts constitute fraudulent business practices under UCL § 17200.  They are contrary to public policy, violative of at least the FTCA, CLRA, and California False Advertising Law (UCL § 17500), and injurious to the public and to competitors who advertise accurate thread counts or no thread counts.

153.     Defendant represented the Products as having a specified thread count with the intention that customers would rely on those representations in their purchases.

154.     Defendant knew or should have known that the threat counts they represented were false.

155.     Defendant's thread count representations were material factors in the purchases of the Products by Plaintiff and the Class.

156.     Defendant's thread count representations were and continue to be relied upon by reasonable consumers, such as Plaintiff and the Class.

1    157.   Due to Defendant's fraudulent and deceptive representations concerning thread count,

2 Plaintiff and the Class paid too much for the Products.

3    158.   As a result of Defendant's fraudulent business practices, Plaintiff and Class Members

4 have been harmed and are entitled, pursuant to UCL § 17203, to injunctive relief against the

5 continuation of Defendant's practices, as well as the restitution of payments made for Defendant's

6 Products, including other equitable relief, costs, and attorneys' fees as recoverable by law.

### COUNT SEVEN

**Misleading and Deceptive Advertising**

**California Business and Professions Code, § 17500, *et seq.***

**(As against Defendant Ross Only)**

11    159.   Plaintiff repeats and re-alleges all preceding paragraphs as if fully set forth herein.

12    160.   Plaintiff brings this Count on behalf of herself and the Class.

13    161.   Plaintiff asserts this cause of action against Defendants for misleading advertising in

14 violation of California Business and Professions Code Section 17500.

15    162.   Defendant, at relevant times, has offered for sale bedding and linen products with

16 deceptive advertisements and product specifications, as described herein.   These deceptive

17 advertisements and product specifications were made in the State of California and include product

18 descriptions, advertisements, price listings, or other inducements in retail stores, or on the internet or

19 in catalogs and other media.

20    163.   Defendant's representations fall within the ambit of § 17500 because the representations

21 were intended to induce the public to purchase the bedding and linen products referenced in the

22 representations, and Defendant knew or should have known that the representations were misleading.

23    164.   By disseminating representations that falsely represented the nature of the bedding and

24 linen products to the general public, Defendant are likely to deceive the public of the State of California

25 and other States.

26    165.   As a result of Defendant's misleading and deceptive advertising, Plaintiff and Class

27 Members have been harmed and are entitled, pursuant to § 17535, to injunctive relief against the

28 continuation of Defendant' practices, as well as the restitution of payments made for Defendant's

Products, or the replacement of the products with goods of the type and quality described in the misleading advertisements, including other equitable relief, costs, and attorneys' fees as recoverable by law.

## **COUNT EIGHT**

### **(Breach of Express Warranty)**

166. Plaintiff repeats and re-alleges all preceding paragraphs as if fully set forth herein.

167. Plaintiff brings this Count on behalf of herself and the Class.

168. Defendants designed, developed, tested, manufactured, distributed, marketed, and sold bedding and linen products for purposes of its eventual sale to end users.

169. Defendants provided Plaintiff and the Class with the following warranty: that the Products had a certain true and accurate thread count, which was communicated expressly through packaging and other marketing representations

170. Further, Defendants made the previously described express affirmations, statements, assertions, and representations concerning the qualities and durability of the Products, in order to induce consumers, including Plaintiff and members of the Class, to purchase their Products. Such affirmations constitute express warranties.

171. Plaintiff and Class members relied on Defendants' representations regarding the thread count, quality and durability of the Products.

172. Defendants' affirmations became the basis of the bargain for Plaintiff and Class members purchasing the Products.

173. Defendants' Products failed to comport with the affirmations, statements, assertions, and representations made by Defendants.

174. Defendants provided a defective product and failed to properly inspect, test, and identify defects in its bedding and linen products.

175. Defendants were aware of the defective nature of the Products at the time that they were sold to Plaintiff and the Class.

176. Defendants were put on notice of the breach of warranty in several ways including but not necessarily limited to prior customer complaints, and a letter sent by counsel for Plaintiff to

1   Defendants on or around May 4, 2018, which apprised them generally of acts and omissions pled herein.

2   As of the filing of the Amended Complaint, Defendants have failed to cure their breach.

3       177.   But for Defendants' conduct alleged herein and its breach of express warranty, Plaintiff

4   and the Class would not have suffered the damages and losses alleged herein.

5       178.   As a direct and proximate result of Defendants' breach of express warranty, Plaintiff

6   and the Class have sustained, are sustaining, and will sustain damages and losses as alleged herein.

7       179.   Plaintiff and Class members have been damaged by Defendants' breach of their express

8   warranty, having unknowingly purchased a product that does not have the qualities advertised by

9   Defendant. Plaintiff and Class members are or will be forced to incur unanticipated expenses associated

10  with replacing Defendants' Products.

11                                    **COUNT NINE**

12                         **Breach of Warranty of Merchantability**

13      180.   Plaintiff repeats and re-alleges all preceding paragraphs as if fully set forth herein.

14      181.   Plaintiff brings this Count on behalf of herself and the Class.

15      182.   Defendants designed, developed, tested, manufactured, distributed, marketed, and sold

16  bedding and linen products for purposes of its eventual sale to end users.

17      183.   Defendants are merchants of bedding and linen products.

18      184.   Defendants impliedly warranted that Defendants' Products passed without objection in

19  the trade, and was fit for the ordinary purposes for which it is used.

20      185.   Defendants knew and/or should have known that the Products were defective and not of

21  acceptable quality and durability.

22      186.   Defendants knew and/or should have known that the Products were not generally fit for

23  the ordinary purposes for which they were intended to be used and did not pass without objection in

24  the trade.

25      187.   Defendants' Products were not merchantable at the time of sale, given that they did not

26  have the qualities, durabilities and characteristics that they were represented to have, which prevented

27  them from being able to serve its ordinary purpose and from passing without objection in the trade.

28

188.     Defendants knew and/or should have known that their Products would reach the end user without substantial change and in the condition in which they were sold.

189.     Defendants' Products have failed to pass without objection in the trade and are not of comparable quality and durability to other bedding and linen products in its line of trade.

190.     The Products at issue are therefore inherently defective and not fit for their intended use due to the lower thread count, making the sheets less soft, comfortable, and durable than they otherwise would be if they were the represented thread count on the label.

191.     But for the Defendants' conduct alleged herein and their breach of the warranty of merchantability accompanying their Products, the Plaintiff and the Class would not have suffered the damages Plaintiff and the Class members have sustained, as alleged herein.

192.     Defendants were put on notice of the breach of warranty in several ways including but not necessarily limited to prior customer complaints, and a letter sent by counsel for Plaintiff to Defendants on or around May 4, 2018, which apprised them generally of acts and omissions pled herein. As of the filing of the Amended Complaint, Defendants have failed to cure their breach.

193.     As a direct and proximate result of Defendants' breach of warranty of merchantability, the Plaintiff and the Class have sustained, are sustaining, and will sustain damages, as well as related damages as alleged herein.

## COUNT TEN

### Negligent Misrepresentation

194.     Plaintiff repeats and re-alleges all preceding paragraphs as if fully set forth herein.

195.     Plaintiff brings this Count on behalf of herself and the Class.

196.     Defendants owed the Plaintiff and the Class a duty of care to design, develop, test, manufacture, distribute, market, and sell a non-defective bedding and linen products.

197.     Defendants also owed Plaintiff and Class members a duty of care to warn them of the defects associated with their Products.

198.     Defendants breached their duty of care by negligently selecting materials for designing, developing, testing, distributing, marketing, and selling the defective Products.

199.    Defendants also breached their duty of care by negligently failing to warn consumers, contractors, and retailers that the Products were defective.

200.    Defendants were aware, or reasonably should have been aware, that their Products were defective.

201.    When they purchased Defendants' Products, Plaintiff and the Class members were unaware of those products' defective nature.

202.    The defective Products resulted in damage to the Plaintiff in that the Plaintiff would not have purchased those Products if they had known they were defective.

203.    As a direct and proximate result of Defendants' negligence, the Plaintiff and the Class have sustained, are sustaining, and will sustain damages and losses as alleged herein.

## COUNT ELEVEN

### Violation of the Missouri Merchandising Practices Act

204.    Plaintiff repeats and re-alleges all preceding paragraphs as if fully set forth herein.

205.    Missouri's Merchandising Practices Act (the "MMPA") prohibits the act, use, or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce. Mo. Rev. Stat. § 407.020.

206.    Defendants' conduct constitutes the act, use or employment of deception, fraud, false pretenses, false promises, misrepresentation, unfair practices and/or the concealment, suppression, or omission of any material facts in connection with the sale or advertisement of any merchandise in trade or commerce because Defendants misrepresent the thread counts of Defendants' Products.

207.    The mispresented thread count also creates the false impression and has the tendency and capacity to mislead consumers (*see* Mo. Code Regs. Ann. tit. 15, § 60-9.020) into believing that Defendants' Products are of a higher quality and luxury than they in fact are. Moreover, the overall format and appearance of Defendants' Products have the tendency and capacity to mislead consumers (15 Mo. Code Regs. Ann. tit. 15, § 60-9.030) because they create the false impression that Defendants' Products have a higher thread count than they actually do.

208.    Further, Defendants made the previously described express affirmations, statements, assertions, and representations concerning the qualities and durability of the Products, in order to induce consumers, including Plaintiff and members of the Class, to purchase their Products. Such affirmations constitute express warranties.

209.    Plaintiff and Class members relied on Defendants' representations regarding the thread count, quality and durability of the Products.

210.    Defendants' Products failed to comport with the affirmations, statements, assertions, and representations made by Defendants.

211.    Defendants' Products were therefore worth less than Defendants' bedding and linen products as represented, and Plaintiff and Class Members paid extra or a premium for them.

212.    Defendants were aware of the defective nature of the Products at the time that they were sold to Plaintiff and the Class.

213.    Plaintiff and Class Members purchased Defendants' Products for personal, family, or household purposes and thereby suffered an ascertainable loss as a result of Defendants' unlawful conduct as alleged herein, including the difference between the actual value of the Defendants' Products and the value of Defendants' bedding and linen products if they had been as represented.

214.    Defendants were put on notice of the breach of warranty in several ways including but not necessarily limited to prior customer complaints, and a letter sent by counsel for Plaintiff to Defendants on or around May 4, 2018, which apprised them generally of acts and omissions pled herein. As of the filing of the Amended Complaint, Defendants have failed to cure their breach.

## **DEMAND FOR JURY TRIAL**

Plaintiff demand a trial by jury on all claims so triable as a matter of right pursuant to Federal Rule of Civil Procedure 38(b).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the putative Class Members pray that the Court enter judgment for them and against Defendants as follows:

a.      Certifying the Class pursuant to Rule 23 of the Federal Rules of Civil

        Procedure, certifying Plaintiff as the representatives of the Class, and

1    designating Plaintiff's counsel as counsel for the Class;

2    b.    Declaring that Defendants' acts and practices, as described herein, constitute

3          deceptive acts and unconscionable business practices that are unlawful under

4          the CLRA, UCL, FAL, FTCA, and common law, such that they may apply to

5          each Defendant.

6    c.    Awarding Plaintiff and the Class permanent injunctive relief prohibiting,

7          restraining, and enjoining defendants from engaging in the conduct complained

8          of herein, including, but not limited to, manufacturing, marketing, advertising,

9          selling, and distributing bedding and linen products that have inflated thread

10         counts;

11   d.    Directing Defendants to disgorge profits from its misleading and deceptive

12         practices and to pay restitution to the Class;

13   e.    Awarding Plaintiff and the Class actual, compensatory damages in an amount

14         to be proven;

15   f.    Awarding Plaintiff and the Class restitution of all monies paid to Defendants as

16         a result of unlawful, deceptive, and unfair business practices;

17   g.    Awarding Plaintiff and the Class exemplary damages in an amount to be

18         proven;

19   h.    Ordering Defendants to issue corrective advertising;

20   i.    Awarding Plaintiff and the Class reasonable attorneys' fees, experts witness

21         fees, pre- and post-judgment interest, and other costs in amounts to be

22         determined by the Court; and

23   j.    Granting any other further legal or equitable relief as this Court deems

24         appropriate.

25   Dated July 20, 2018                              Respectfully submitted,

26                                                      s/ S. Clinton Woods
                                                      _____

27                                                    S. Clinton Woods (CA State Bar #246054)

28                                                    cwoods@audetlaw.com

Michael McShane (CA State Bar #127944)
mmcshane@audetlaw.com
AUDET & PARTNERS, LLP

Jack Landskroner, Esq. (*Subject to Pro Hac Vice Admission*)
LANDSKRONER GRIECO MERRIMAN, LLC
1360 W 9th St #200
Cleveland, OH 44113
Phone: 888-570-3609
Jack@lgmlegal.com

Erica Mirabella (*Subject to Pro Hac Vice Admission*)
MIRABELLA LAW LLC
132 Boylston St. 5th Floor
Boston, MA 02116
Telephone: (855) 505-5342
erica@mirabellallc.com

Bruce W. Steckler (*Subject to Pro Hac Vice Admission*)
Stuart L. Cochran
L. Kirstine Rogers (*Subject to Pro Hac Vice Admission*)
STECKLER GRESHAM COCHRAN PLLC
12720 Hillcrest Road
Suite 1045
Dallas, TX 75230
Phone: 972-387-4040
bruce@stecklerlaw.com
stuart@stecklerlaw.com
krogers@stecklerlaw.com

Charles LaDuca (*Subject to Pro Hac Vice Admission*)
Brendan S. Thompson (*Subject to Pro Hac Vice Admission*)
Jennifer E. Kelly (*Subject to Pro Hac Vice Admission*)
CUNEO GILBERT & LADUCA LLP
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Telephone: (202)789-3960
Facsimile: (202) 789-1813
charles@cuneolaw.com
jkelly@cuneolaw.com
brendant@cuneolaw.com

Charles Schaffer
LEVIN SEDRAN & BERMAN
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Telephone: (877) 882-1011
Facsimile: (215) 592-4663
cschaffer@lfsblaw.com

*Attorneys for Plaintiff DOMINIQUE MORRISON, individually and on behalf of all others similarly situated*