1   JEFFREY B. MARGULIES (BAR NO. 126002)
    LAUREN A. SHOOR (BAR NO. 280788)
2   ANDY GUO (BAR NO. 307824)
    **NORTON ROSE FULBRIGHT US LLP**
3   555 South Flower Street
    Forty-First Floor
4   Los Angeles, California  90071
    Telephone:    (213) 892-9200
5   Facsimile:    (213) 892-9494
    jeff.margulies@nortonrosefulbright.com
6   lauren.shoor@nortonrosefulbright.com
    andy.guo@nortonrosefulbright.com
7
    Attorneys for Defendant
8   ROSS STORES, INC.

9   *Additional Counsel listed on Next Page*

10

                IN THE UNITED STATES DISTRICT COURT
11
             FOR THE NORTHERN DISTRICT OF CALIFORNIA
12

13  DOMINIQUE MORRISON, individually and        Civil Action No.  4:18-cv-02671-YGR
    on behalf of all others similarly situated,
14                                               **DEFENDANT ROSS STORES, INC.'S**
                    Plaintiff,                   **NOTICE AND MOTION TO DISMISS**
15                                               **PLAINTIFF'S SECOND AMENDED**
                                                 **COMPLAINT PURSUANT TO FED. R.**
         v.                                      **CIV. P. 12(b)(6) AND 12(b)(1)**
16
    ROSS STORES, INC., AQ TEXTILES LLC,
17  CREATIVE TEXTILE MILLS PRIVATE               Date:   February 19, 2019
    LIMITED,                                     Time:  2:00 p.m.
18                                               Courtroom:    Oakland Courthouse,
                    Defendants.                  Courtroom 1, Fourth Floor
19

20

21

22

23

24

25

26

27

28

1

*Additional Counsel*

2

Reid L. Phillips *(pro hac vice application forthcoming)*
Jennifer K. Van Zant *(admitted pro hac vice)*

3

Andrew L. Rodenbough *(admitted pro hac vice)*
Ryan C. Fairchild *(admitted pro hac vice)*

4

**BROOKS, PIERCE, MCLENDON, HUMPHREY &
   LEONARD, LLP**

5

230 North Elm Street
2000 Renaissance Plaza

6

Greensboro, NC 27401
Telephone:      (336) 373-8850

7

Facsimile:      (336) 378-1001
rphillips@brookspierce.com

8

jvanzant@brookspierce.com
arodenbough@brookspierce.com

9

rfairchild@brookspierce.com

10

Attorneys for Defendant
ROSS STORES, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT - 4:18-CV-02671-YGR

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on February 19, 2019 at 2:00 p.m., or as soon thereafter as the matter may be heard, before the Honorable Yvonne Gonzalez Rogers, at defendant Ross Stores, Inc. ("Ross"), pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1), will, and hereby does, move this Court to dismiss the Plaintiff's claims of her Second Amended Complaint against Ross in their entirety. In support of its Motion, Ross respectfully shows the Court the following:

1. Plaintiff's Second Amended Complaint asserts twelve separate claims for relief against Defendant Ross Stores, Inc.

2. Plaintiff's claims must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

3. Additionally, Plaintiff's claims must be dismissed for lack of standing to the extent she purports to bring claims for products she did not purchase.

4. Pursuant to Local Rule 7.4, Ross contemporaneously files herewith a Memorandum of Points and Authorities in support of the Motion to Dismiss describing the reasons that this Motion should be granted and the authorities which support Ross's Motion.

For the reasons stated above and in the accompanying memorandum, Ross respectfully requests that the Court dismiss Plaintiff's claims, in their entirety, with prejudice.

Dated: January 4, 2019

JEFFREY B. MARGULIES
LAUREN A. SHOOR
ANDY GUO
**NORTON ROSE FULBRIGHT US LLP**

By＿＿＿＿＿＿/s/ Andy Guo＿＿＿＿＿＿＿
ANDY GUO
Attorneys for Defendant
ROSS STORES, INC.

1
2

**TABLE OF CONTENTS**

3

INTRODUCTION ............................................................................................................ 1

4

STATEMENT OF ISSUES TO BE DECIDED ........................................................... 2

5

STATEMENT OF RELEVANT ALLEGATIONS .......................................................... 2

6

ARGUMENT .................................................................................................................... 3

7

I.     MOTION TO DISMISS STANDARD ..................................................................... 3

8

II.    PLAINTIFF'S CLAIMS MUST BE DISMISSED FOR FAILURE TO STATE A
       CLAIM PURSUANT TO RULE 12(b)(6). ............................................................. 4

9
10

       A.    Plaintiff's California statutory claims must be dismissed because her
             consumer-protection claims are governed by Missouri law........................ 4

11

       B.    Plaintiff's fraud-based claims must be dismissed. ...................................... 5

12

             1.    The majority of Plaintiff's claims sound in fraud. ........................... 6

13

             2.    Plaintiff's fraud allegations against lack the requisite particularity. 7

14

       C.    Plaintiff did not comply with the CLRA's statutory notice provisions........ 9

15

       D.    Plaintiff's breach of warranty claims must be dismissed for multiple
             reasons. ......................................................................................................... 10

16
17

             1.    Plaintiff failed to provide notice of the alleged breach within a
                   reasonable time of discovery of the breach. ................................... 10

18

             2.    Plaintiff has failed to adequately plead the elements of breach of
                   warranty. ............................................................................................. 11

19
20

       E.    Plaintiff's Magnuson-Moss Warranty Act claims are defective and must be
             dismissed for multiple reasons. ................................................................... 12

21

             1.    Plaintiff has not alleged the existence of a written warranty as
                   defined by the MMWA. ...................................................................... 13

22
23

             2.    Plaintiff failed to provide Ross with notice and opportunity to cure.
                   ............................................................................................................. 14

24

       F.    Plaintiff's claims for breach of the implied warranty of merchantability
             must be dismissed for multiple reasons....................................................... 15

25

             1.    Plaintiff does not allege a fundamental defect. .............................. 15

26

             2.    Plaintiff's implied warranty claims were asserted outside of the
                   warranty period.................................................................................. 16

27
28

# TABLE OF CONTENTS
(continued)

3.      Plaintiff has failed to plead reasonable notice of a breach. ............ 17

G.     Plaintiff has failed to plead negligent misrepresentation. .......................... 17

H.     Plaintiff's claim for unjust enrichment should be dismissed. ................... 18

III.    PLAINTIFF'S CLASS-ACTION CLAIMS MUST BE DISMISSED FOR LACK OF STANDING TO THE EXTENT THEY ARISE FROM THE SALE OF PRODUCTS THAT THE NAMED PLAINTIFF DID NOT BUY. ...................... 19

CONCLUSION ............................................................................................................ 22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*American Suzuki Motor Corp. v. Superior Court*,
   37 Cal. App. 4th 1291 (1995) .................................................................15

*Ang v. Bimbo Bakeries USA, Inc.*,
   No. 13-CV-01196-WHO, 2014 WL 1024182 (N.D. Cal. Mar. 13, 2014) ...................21

*In re Apple & AT & T iPad Unlimited Data Plan Litig.*,
   802 F. Supp. 2d 1070 (N.D. Cal. 2011) ........................................................18

*Ashcroft v. Iqbal*,
   556 U.S.662 (2009) ...............................................................................3

*Astiana v. Hain Celestial Group, Inc.*,
   783 F.3d 753 (9th Cir. 2015) ...................................................................18

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ..........................................................................3, 17

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 ......................................................................................15

*Bowling v. Johnson & Johnson*,
   65 F. Supp. 3d 371 (S.D.N.Y. 2014) ..........................................................13

*Budach v. NIBCO, Inc.*,
   No. 2:14-cv-04324-NKL, 2015 U.S. Dist. LEXIS 150714 (W.D. Mo.
   Nov. 6, 2015) .....................................................................................10

*Bush v. Rewald*,
   619 F. Supp. 585 (D. Haw. 1985) ..............................................................6

*In re Century Aluminum Co. Sec. Litig.*,
   729 F.3d 1104 (9th Cir. 2013) ...................................................................3

*In re ConAgra Foods Inc.*,
   908 F. Supp. 2d 1090 (C.D. Cal. 2012) .......................................................18

*County of Santa Clara v. Astra U.S., Inc.*,
   428 F. Supp. 2d 1029 (N.D. Cal. 2006) .....................................................5, 6

*Davidson v. Herring-Hall-Marvin Safe Co.*,
   131 Cal. App. Supp. 2d 874, 876–77 (1954) ................................................11

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ...................................................................10

- iii -

## **TABLE OF AUTHORITIES**
(continued)

*Frenzel v. AliphCom,*
  76 F. Supp. 3d 999 (N.D. Cal. 2014).................................................................11

*Frezza v. Google Inc.,*
  No. 5:12-CV-00237-RMW, 2013 WL 1736788 (N.D. Cal. Apr. 22,
  2013)......................................................................................................................5

*Gil v. Bank of Am., Nat'l Ass'n,*
  138 Cal. App. 4th 1371 (2006)...............................................................................6

*Glenn K. Jackson Inc. v. Roe,*
  273 F.3d 1192 (9th Cir. 2001).............................................................................17

*Granfield v. NVIDIA Corp.,*
  No. C 11-05403 JW, 2012 WL 2847575 (N.D. Cal. July 11, 2012).............5, 12, 14, 20

*Hope v. Nissan N. Am., Inc.,*
  353 S.W.3d 68 (Mo. Ct. App. 2011) ..............................................................11, 15

*Horvath v. LG Elecs. Mobilecomm U.S.A., Inc.,*
  No. 3:11-CV-01576-H-RBB, 2012 WL 2861160 (S.D. Cal. Feb. 13,
  2012)......................................................................................................................5

*In re Hydroxycut Mktg. & Sales Practices Litig.,*
  No. 09MD2087 BTM AJB, 2011 WL 1002190 (S.D. Cal. Mar. 21,
  2011)......................................................................................................................8

*Ice Bowl v. Spalding Sales Corp.,*
  56 Cal. App. 2d 918 (1943)..................................................................................11

*Jackson v. Fischer,*
  931 F. Supp. 2d 1049 (N.D. Cal. 2013).................................................................7

*Johnsen v. Honeywell Int'l Inc.,*
  No. 4:14CV594 RLW, 2016 WL 1242545 (E.D. Mo. Mar. 29, 2016) ..........................7

*Kearns v. Ford Motor Co.,*
  567 F.3d 1120 (9th Cir. 2009)................................................................................7

*Kuns v. Ford Motor Co.,*
  543 F. App'x 572 (6th Cir. 2013)..........................................................................14

*Ladore v. Sony Comput. Entm't Am., LLC,*
  75 F. Supp. 3d 1065 (N.D. Cal. 2014)..................................................................17

*Lanovaz v. Twinings N. Am., Inc.,*
  726 F. App'x 590..................................................................................................10

## TABLE OF AUTHORITIES
(continued)

*Larsen v. Trader Joe's Co.*,
  No. C 11-05188 SI, 2012 WL 5458396 (N.D. Cal. June 14, 2012) ............................ 19

*Lazar v. Superior Court*,
  12 Cal. 4th 631 (1996) ................................................................................................. 6

*Levitt v. Yelp! Inc.*,
  765 F.3d 1123 (9th Cir. 2014) ..................................................................................... 3

*Malifrando v. Real Time Resolutions, Inc.*,
  No. 2:16-cv-0223-TLN-GGH-PS, 2016 WL 6955050 (E.D. Cal. Nov.
  26, 2016) ...................................................................................................................... 6

*Mathison v. Bumbo*,
  No. SA CV08-0369 DOC, 2008 WL 8797937 (C.D. Cal. Aug. 18,
  2008) ............................................................................................................... 15, 16, 17

*Mazza v. American Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) .................................................................................. 4, 5

*Miller v. Ghiradelli Chocolate Co.*,
  912 F. Supp. 2d 861 (N.D. Cal. 2012) ...................................................................... 20

*Minkler v. Apple, Inc.*,
  65 F. Supp. 3d 810 (N.D. Cal. 2014), The UCC ....................................................... 10

*Murray v. Sears, Roebuck & Co.*,
  No. C 09-5744 CW, 2014 WL 563264 (N.D. Cal. Feb. 12, 2014) ............................ 20

*In re MyFord Touch Consumer Litig.*,
  46 F. Supp. 3d 936 (N.D. Cal. 2014) ........................................................................ 15

*Outboard Marine Corp. v. Superior Court*,
  52 Cal. App. 3d 30 (1975) ........................................................................................... 9

*Pearson v. Target Corp.*,
  No. 11 CV 7972, 2012 WL 7761986 (N.D. Ill. Nov. 9, 2012) .................................. 20

*Renaissance Leasing, L.L.C. v. Vermeer Mfg. Co.*,
  322 S.W.3d 112 (Mo. 2010) (en banc) ................................................................ 10, 11

*Rosal v. First Fed. Bank of Cal.*,
  671 F. Supp. 2d 1111 (N.D. Cal. 2009) ...................................................................... 6

*Rushing v. Williams-Sonoma, Inc.*,
  No. 16-CV-01421-WHO, 2016 WL 4269787 (N.D. Cal. Aug. 15, 2016) ............. 21, 22

*S & J, Inc. v. McLoud & Co.*,
  108 S.W.3d 765 (Mo. Ct. App. 2003) ................................................................. 18, 19

**TABLE OF AUTHORITIES**
(continued)

*Saitsky v. DirecTV, Inc.*,
    No. CV 08-7918 AHM, 2009 WL 10670629 (C.D. Cal. Sep. 22, 2009)......................9

*In re Saturn L-Series Timing Chain Prod. Liab. Litig.*,
    No. 8:07CV298, 2008 WL 4866604 (D. Neb. Nov. 7, 2008) ......................................19

*Schechner v. Whirlpool Corp.*,
    237 F. Supp. 3d 601 (E.D. Mich. 2017) ......................................................................13

*Silvera v. Broadway Dep't Store*,
    35 F. Supp. 625 (S.D. Cal. 1940) ...............................................................................11

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013)........................................................................................3

*Tasion Commc'ns., Inc. v. Ubiquiti Networks, Inc.*,
    No. C-13-1803 EMC, 2014 WL 2916472 (N.D. Cal. June 26, 2014)....................15, 17

*Tietsworth v. Sears, Roebuck & Co.*,
    720 F. Supp. 2d 1123 (N.D. Cal. 2010)................................................................11, 15

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices,*
   *& Prods. Liab. Litig.*,
    754 F. Supp. 2d 1145 (C.D. Cal. 2010).............................................................5, 6, 11

*In re Trader Joe's Tuna Litig.*,
    289 F. Supp. 3d 1074 (C.D. Cal. 2017)......................................................................11

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ......................................................................................6

*Von Grabe v. Sprint PCS*,
    312 F. Supp. 2d 1285 (S.D. Cal 2003) .........................................................................9

*Waller v. Hewlett-Packard Co.*,
    No. 11CV0454-LAB RBB, 2012 WL 1987397 (S.D. Cal. June 4, 2012) .....................5

*Wine Bottle Recycling, LLC v. Niagara Sys. LLC*,
    No. 12-1924 SC, 2013 WL 1120962 (N.D. Cal. Mar. 18, 2013) .................................17

*Wright v. Bath & Body Works Direct, Inc.*,
    No. 12-00099-CV-W-DW, 2012 WL 12951921 (W.D. Mo. July 10,
    2012)...........................................................................................................................19

*Young v. Cree, Inc.*,
    No. 17-cv-06252-YGR, 2018 WL 1710181 (N.D. Cal. Apr. 9, 2018) ..................20, 22

1

2

## **TABLE OF AUTHORITIES**
(continued)

3

**Rules and Statutes**

4

15 U.S.C. § 2301(6)...........................................................................................12, 13

5

15 U.S.C. § 2310(d)..................................................................................................13

6

15 U.S.C. § 2310(e)..................................................................................................13

7

Cal. Bus. & Prof. Code §§ 17500 *et seq.*...................................................................4

8

Cal. Bus. & Prof. Code §§ 17200 *et seq.*...................................................................4

9

Cal. Civ. Code § 1782(a)...........................................................................................9

10

Cal. Civ. Code § 1791.1 ..........................................................................................16

11

Cal. Civ. Code §§ 1750 *et seq.*.................................................................................4

12

Cal. Commercial Code § 2607(3)(A) ......................................................................10

13

Magnuson-Moss Warranty Act ........................................................................ *passim*

14

Missouri Merchandising Practices Act............................................................5, 6, 7

15

Mo. Rev. Stat. § 400.2-607(3)(a) ...........................................................................10

16

Rule 9(b) ........................................................................................................... *passim*

17

Rule 11 .....................................................................................................................22

18

Rule 12(b)(1) ............................................................................................................19

19

Rule 12(b)(6) ...............................................................................................1, 3, 4, 12

20

21

22

23

24

25

26

27

28

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    Defendant Ross Stores, Inc. ("Ross") submits this Memorandum of Points and Authorities

3    in support of its Motion to Dismiss all claims asserted by Plaintiff Dominique Morrison ("Plaintiff")

4    in her Second Amended Complaint ("SAC") [DE # 54].

5    **INTRODUCTION**

6    Plaintiff filed her initial Complaint [DE # 1] on May 7, 2018.  In that Complaint, Plaintiff

7    asserted claims against Ross and previous defendants AQ Textiles, LLC ("AQ") and Creative

8    Textile Mills Pvt. Ltd. ("Creative") arising out of Plaintiff's purported purchase of sheets allegedly

9    manufactured by Creative, imported and labeled by AQ, and sold by Ross.  After Ross and AQ

10   filed motions to dismiss the initial Complaint, Plaintiff filed an Amended Complaint [DE # 34] on

11   July 20, 2018.  AQ and Ross then renewed their motions to dismiss.  On November 14, 2018, the

12   Court entered an order dismissing Plaintiff's claims against AQ with prejudice, and dismissing

13   Plaintiff's claims against Ross without prejudice to again amend her complaint.  On December 4,

14   2018, Plaintiff filed the SAC naming only Ross as a defendant.

15   In the SAC, Plaintiff alleges that she bought a set of Grande Estate sheets from a Ross store

16   in St. Louis, Missouri that were labeled as 800 thread count but, through testing by some

17   unidentified entity, were revealed to have a much lower thread count.  SAC ¶¶ 33, 38-39.  She

18   alleges that the purportedly misleading label was placed on the sheet set not by Ross, but by AQ.

19   *Id.*  She does not remember when she bought the sheets or exactly how much she paid for them.

20   *Id.* ¶¶ 33-34.  Nor does she claim that she ever used the sheets or found their quality, comfort, or

21   durability lacking in any way.  Nevertheless, she asserts twelve separate claims for relief against

22   Ross all premised on the proposition that the sheets she received (but, apparently, never used) failed

23   to live up to her expectations.  She purports to represent Missouri and nationwide classes comprised

24   of not only those consumers who bought the same 800-thread-count, Grande Estate sheet set, but

25   also those who purchased any "bedding or linen products" sold by Ross that were imported by AQ

26   and advertised with a representation regarding thread count.

27   Plaintiff's claims are defective in several respects.  First, each of Plaintiff's claims must be

28   dismissed for failure to state a claim pursuant to Rule 12(b)(6). Additionally, Plaintiff's purported

class-action claims must dismissed for lack of standing to the extent they arise from the sale of products that she herself did not buy.  As a result, the SAC should be dismissed.

### STATEMENT OF ISSUES TO BE DECIDED

1.   May Plaintiff, a Missouri resident who purchased sheets in Missouri, assert claims under California law?

2.   Has Plaintiff sufficiently pleaded her fraud-based claims under Rule 9(b)?

3.   Must Plaintiff's breach of warranty claims be dismissed due to her failure to provide timely notice and failure to plead an express warranty?

4.   Does Plaintiff plead a breach of the Magnuson-Moss Warranty Act?

5.   Has Plaintiff adequately pleaded claims for negligent misrepresentation and unjust enrichment?

6.   Should the Plaintiff's class-action claims with respect to products she did not purchase and does not specifically identify be dismissed for lack of standing?

### STATEMENT OF RELEVANT ALLEGATIONS

Plaintiff alleges that she is an adult citizen of St. Louis County, Missouri. SAC ¶ 11. She claims that she purchased a set of "Grande Estate 800TC Luxurious Sateen Weave" sheets, with an advertised thread count of 800, from a Ross store located at 3614 Lindbergh Blvd. in St. Louis, Missouri. *Id.* ¶¶ 11-12.  Beyond those details, her recollection of the purchase is hazy.  She does not remember when she bought the sheets, but believes it was "sometime in the fall of 2016 [or] early winter of 2017, prior to February 2017."  *Id.* ¶ 33.  She does not remember how much she paid for the sheets, but believes it was "around $40.00" and that the price tag referenced a "higher amount" (one that she also cannot remember) as a "comparable value."[1]  *Id.* ¶ 34.  Plaintiff evidently does not have any proof of her purchase—such as a receipt, a credit card statement, or the original packaging—that would allow her to supply those details.

Plaintiff claims that Ross made misrepresentations about the purchased sheets—in the form of the label representing that the sheets had a thread count of 800 and the price tag that supposedly

---

[1] Plaintiff does allege that *other* "Grande Estate 800TC Luxurious Sateen Weave" sheet sets—not necessarily the ones she purchased—were sold for $39.99 and shown as having a "comparable value" of $100.00.  *Id.* ¶ 47.

1    stated that the sheets were "worth" a "higher amount." *Id.* ¶¶ 34, 36-38.  She vaguely alleges that

2    Ross made misrepresentations in "product descriptions, advertisements, price listings, or other

3    inducements in retail stores, or on the internet or in catalogs and other media" (*id.* ¶ 170), but does

4    not claim that she saw any representations other than those on the product label and price tag.

5         The key allegation on which all of Plaintiff's claims rest is that test results from an

6    unidentified source supposedly revealed the thread count of one of the sheets she purchased to be

7    only 224, and not 800 as the label represented.  *Id.* ¶ 39.  Plaintiff does not allege that Ross itself

8    made the thread count representations on the sheet labels; in fact, she alleges that it was AQ, not

9    Ross, who labeled the sheets.  *Id.* ¶ 35.  Plaintiff repeatedly claims that Ross is nevertheless

10   responsible for the representations because it "knew or should have known" that the thread count

11   on the label was inaccurate.  *See, e.g.*, *id.* ¶ 48.  She does not, however, explain how Ross could or

12   should have known the "true" thread count of the sheets.

13        Plaintiff does not allege the sheets were ever actually used, by her or anyone else.  As a

14   result, despite alleging that she believed the sheets to be "of higher quality, more durable, [longer

15   lasting], softer and better for sleep than sheets with lower thread counts" (*id.* ¶ 37), she does not

16   appear to have tested those expectations at all, much less found them lacking.  Nor does she allege

17   that the sheets suffer from any actual defect.

18                              **ARGUMENT**

19   **I.    MOTION TO DISMISS STANDARD**

20        To survive a motion to dismiss under Rule 12(b)(6), a claim must have "at least a plausible

21   chance of success." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1134-35 (9th Cir. 2014) (citing *In re Century*

22   *Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013)). "Plausibility requires pleading

23   facts, as opposed to conclusory allegations or the formulaic recitation of the elements of a cause of

24   action, and must rise above the mere conceivability or possibility of unlawful conduct that entitles

25   the pleader to relief." *Somers v. Apple, Inc.*, 729 F.3d 953, 959-60 (9th Cir. 2013) (internal quotation

26   marks and citations omitted) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007);

27   *Ashcroft v. Iqbal*, 556 U.S.662, 678-79 (2009)).  That is, the complaint must allege factual content

28   raising a reasonable inference of the defendant's liability for the alleged misconduct. *Levitt*, 765

1    F.3d at 1134-35. A complaint that does not meet these standards cannot survive a motion to dismiss.

2    **II.    PLAINTIFF'S CLAIMS MUST BE DISMISSED FOR FAILURE TO STATE A**
3    **CLAIM PURSUANT TO RULE 12(B)(6).**

4        **A.    Plaintiff's California statutory claims must be dismissed because her consumer-**
5    **protection claims are governed by Missouri law.[2]**

6          Among the twelve claims for relief asserted by Plaintiff are five claims premised on

7    violations of California consumer-protection statutes:  Counts Three (California Consumer Legal

8    Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*); Four through Six (California Unfair

9    Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*); and Seven (California False

10   Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*). These claims must be

11   dismissed because the disputed consumer transaction occurred outside of California and is therefore

12   outside the scope of those statutes.

13         In *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), the Ninth Circuit

14   considered the appeal of a district court's decision to certify a nationwide class of "all consumers

15   who purchased or leased Acura RLs equipped with a Collision Mitigation Braking System." *Id.* at

16   585.  The proposed class, through the named Plaintiffs, brought claims arising under the CLRA,

17   UCL, and FAL.  *Id.* at 586. On appeal the defendant argued, among other things, that the class

18   should not have been certified because California's statutory consumer-protection laws could not

19   be applied to out-of-state consumers whose purchases occurred in states other than California.  The

20   Ninth Circuit agreed, holding that "each state has a strong interest in applying its own consumer

21   protection laws," *id.* at 592*,* and that as a result, "each class member's consumer protection claim

22   should be governed by the consumer protection laws of the jurisdiction in which the transaction

23   took place." *Id.* at 594. Accordingly, the Ninth Circuit overturned class certification and remanded

24   the case to the district court.

25         Multiple federal courts have also applied *Mazza* to dismiss California statutory claims

26

27   [2] Plaintiff does not specify whether her state common-law claims—for fraud, negligent
28   misrepresentation, breach of warranty, breach of implied warranty of merchantability, and unjust
     enrichment—are asserted under California or Missouri law.  As discussed below, those common-
     law claims are subject to dismissal regardless of which state's law applies.

1    brought by out-of-state consumers who purchased products in other states, holding that the

2    applicable consumer-protection laws are those of the states where the transactions occurred. *See,*

3    *e.g.*, *Frezza v. Google Inc.*, No. 5:12-CV-00237-RMW, 2013 WL 1736788, at *5-7 (N.D. Cal. Apr.

4    22, 2013) (applying *Mazza* to dismiss class-action UCL claims where named plaintiffs were North

5    Carolina residents and transactions occurred in North Carolina); *Granfield v. NVIDIA Corp.*, No.

6    C 11-05403 JW, 2012 WL 2847575, at *3 (N.D. Cal. July 11, 2012) (dismissing class-action CLRA

7    and UCL claims where named Plaintiff was Massachusetts resident who purchased computer in

8    Massachusetts); *Horvath v. LG Elecs. Mobilecomm U.S.A., Inc.*, No. 3:11-CV-01576-H-RBB, 2012

9    WL 2861160, at *3 (S.D. Cal. Feb. 13, 2012) (concluding that "the consumer protection law of the

10    jurisdiction in which the transactions took place should govern each Plaintiffs' cause of action" and

11    dismissing UCL and CLRA claims of out-of-state Plaintiffs); *see also Waller v. Hewlett-Packard*

12    *Co.*, No. 11CV0454-LAB RBB, 2012 WL 1987397, at *1 (S.D. Cal. June 4, 2012) ("[U]nder *Mazza*

13    *v. American Honda Motor Co.*, non-California residents can't avail themselves of California's

14    consumer protection laws.").

15         Plaintiff alleges that she is a citizen of Missouri and bought her sheets from a Ross store in

16    Missouri.  Under the precedent established in *Mazza* and subsequent cases, Plaintiff's consumer-

17    protection remedy, if any, is under Missouri law, not California law.[3]  Accordingly, her California

18    statutory claims under the CLRA, UCL, and FAL must be dismissed.

19    **B.    Plaintiff's fraud-based claims must be dismissed.**

20         Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or

21    mistake, a party must state with particularity the circumstances constituting fraud or mistake."

22    Claims that do not meet the particularity requirements of Rule 9(b) must be dismissed. *See In re*

23    *Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F.

24    Supp. 2d 1145, 1170 (C.D. Cal. 2010).  Furthermore, "[a]llegations of fraud based on information

25    and belief do not satisfy FRCP 9(b) requirements." *County of Santa Clara v. Astra U.S., Inc.*, 428

26

27

28

---

[3] Plaintiff also asserts a claim under a Missouri consumer protection statute, the MMPA (Count
Eleven).  As described in Section II.E *infra*, that claim is also subject to dismissal.

1    F. Supp. 2d 1029, 1036 (N.D. Cal. 2006).[4] The same applies to mere conclusory allegations. *Id.*

2    These requirements are intended to protect defendants from a "fishing expedition" whereby a

3    plaintiff shoots first and interposes burdensome discovery later hoping for the defendants to supply

4    her with a case. *See Bush v. Rewald*, 619 F. Supp. 585, 601 (D. Haw. 1985).

5          Plaintiff alleges claims for fraud, negligent misrepresentation, and violations of the CLRA,

6    UCL, FAL, and MMPA (the "Fraud-Based Claims") in the SAC.[5]   In its previous dismissal Order,

7    the Court noted that these claims all sound in fraud, and are therefore subject to the heightened

8    pleading requirements of Rule 9(b), which the previous complaint failed to satisfy.  *See* DE # 53 at

9    4-5, 7 ("[P]laintiff has not alleged the 'who, what, when where, and how of the misconduct'

10   sufficient to state her fraud-based claims (fraud, misrepresentation, CLRA, FAL, UCL, MMPA).").

11   Despite Plaintiff's amendments, those claims still fail.

12         1.      The majority of Plaintiff's claims sound in fraud.

13         "Under   California   law,   the elements of   common-law fraud are   'misrepresentation,

14   knowledge of its falsity, intent to defraud, justifiable reliance, and resulting damages.'" *Rosal v.*

15   *First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1131 (N.D. Cal. 2009) (quoting *Gil v. Bank of Am.,*

16   *Nat'l Ass'n*, 138 Cal. App. 4th 1371, 1381 (2006)). When the defendant is a corporation, "the

17   plaintiff's burden . . . is even greater . . . . The plaintiff must allege the names of the persons who

18   made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what

19   they said or wrote, and when it was said or written." *Malifrando v. Real Time Resolutions, Inc.*, No.

20   2:16-cv-0223-TLN-GGH-PS, 2016 WL 6955050, at *8 (E.D. Cal. Nov. 26, 2016) (quoting *Lazar*

21   *v. Superior Court*, 12 Cal. 4th 631, 645 (1996)) (internal quotation marks omitted). Generally,

22   "[t]he circumstances of the alleged fraud must be specific enough 'to give defendants notice of the

23   particular misconduct . . . so that they can defend against the charge and not just deny that they

24   have done anything wrong.'" *Toyota Motor*, 754 F. Supp. 2d at 1170 (quoting *Vess v. Ciba-Geigy*

25   *Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

26   _____

27   [4] Ross notes Plaintiff has removed her allegation that "*upon information and belief*, the true thread
     count of those sheets was far less," Original Compl. ¶ 35 (emphasis added), without providing new

28   factual allegations indicating why her allegations are no longer made on information and belief.
     [5] These are Claims Two through Seven, Ten, and Eleven of the Amended Complaint.

- 6 -

The Ninth Circuit Court of Appeals has held that the requirements of Rule 9(b) apply not just to common-law fraud claims, but also to claims under the CLRA, UCL, and FAL  *See id.*; *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (noting the same as to the CLRA and UCL). Furthermore, "the majority view among district courts in California" is that Rule 9(b)'s heightened pleading standard applies to a claim for negligent misrepresentation. *See Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1068 (N.D. Cal. 2013). Finally, Missouri courts have held that the Rule 9(b) particularity standard applies to claims brought under the Missouri Merchandising Practices Act ("MMPA") (Count Eleven). *Johnsen v. Honeywell Int'l Inc.*, No. 4:14CV594 RLW, 2016 WL 1242545, at *6 (E.D. Mo. Mar. 29, 2016). "[I]n an MMPA claim, Plaintiff must identify the 'who, what, where, when, and how' of the alleged fraud 'to allow Defendant to prepare a defense to the MMPA charges.'" *Id.* at *7-8.

2.      Plaintiff's fraud allegations against lack the requisite particularity.

The Court dismissed Plaintiff's First Amended Complaint as to Ross in large part because Plaintiff's fraud-based claims were not pleaded with particularity.  Specifically, the First Amended Complaint repeatedly referred to "Defendants" generally, and did not allege specific misrepresentation made by <u>any</u> individual defendant, including Ross.  In the SAC, while Plaintiff seeks to solve that problem by alleging claims against only Ross, the removal of the other defendants, and revision of the allegations material to the Fraud-Based Claims, only serve to highlight the lack of specificity with respect to the allegations of Ross's role in the supposed fraud.

The Fraud-Based Claims, like all of the claims in the SAC, are premised on the supposed misrepresentation of the thread count on the label of the sheets purchased by Plaintiff.[6]  Plaintiff does <u>not</u> allege, however, that Ross labeled the sheets she purchased; in fact she admits that <u>AQ</u> was responsible for labeling the sheets.  *See* SAC ¶ 35 ("The Grande Estate 800TC Luxurious

---

[6] Plaintiff has also added, in the SAC, allegations regarding Ross's listing of a "comparable value" on the price tags of the sheets it sells.  *See, e.g.*, SAC ¶ 31.  Plaintiff alleges that she "believes" there was such a "comparable value" on the price tag of the sheets she purchased, but does not remember what that value is. *Id.* ¶ 34.  The absence of that information renders those allegations insufficiently specific for purposes of Rule 9(b).  Even if Plaintiff were to allege a specific "comparable value," it is unclear how the Court would be able to evaluate the accuracy of that representation without explanation of how and why it was inaccurate.

Sateen Weave Sheets were imported and labeled by AQ Textiles . . . .")  In other words, Plaintiff asserts the Fraud-Based Claims against Ross despite relying entirely on alleged misrepresentations that were not made by Ross, making it difficult to see how Plaintiff can successfully prove those claims, particularly the requirement of Ross's scienter (intent to defraud).

Plaintiff tries to avoid this potentially fatal defect through conclusory allegations that Ross "knew or should have known that the advertised thread counts on the labels of The Grande Estate 800TC Luxurious Sateen Weave sheets were inaccurate or overstated."  *See, e.g.*, SAC ¶¶ 41, 48. Those allegations fail to satisfy the requirements of Rule 9(b) because the SAC lacks any accompanying factual allegations that explain the "who, what, when, where, and how" of Ross's supposed discovery—or opportunity to discover—that the thread count on the label of the sheets Plaintiff purchased was inaccurate.[7]  *Accord In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09MD2087 BTM AJB, 2011 WL 1002190, at *5 (S.D. Cal. Mar. 21, 2011) (dismissing fraud-based claims under Rule 9(b) where "Plaintiff has not alleged facts tending to show that [defendant] should have known" about alleged misrepresentations).  Indeed, it is difficult to understand how Plaintiff contends that Ross could have discovered the "true" thread count of the sheets she purchased, given her allegation that testing the thread count requires "[a] textile expert with magnifying equipment" and "damages the sheets."  SAC ¶ 132.

To the extent Plaintiff tries to extend the alleged fraud beyond the thread-count representations made on sheet labels, those allegations are even less specific.  *See, e.g.*, *id.* ¶ 111 ("Defendant represented to Plaintiff and the Class in advertising, packaging, product descriptions, 'comparable value' pricing on the price tag, and other forms of communication, including standard and uniform material, that the Products had higher thread counts than their true thread counts."); *id.* ¶ 126 ("Defendant . . . repeated these false or misleading statements of thread count in various

---

[7] Plaintiff does vaguely allege, upon information and belief, that "through examination of its own Products and interactions with manufacturers, distributors, or wholesalers . . . Defendant had exclusive knowledge concerning the actual thread count of the bedding and linen Products that it markets, prices, and sells to consumers."  SAC ¶ 130.  This allegation is insufficient to satisfy the requirements of Rule 9(b) both because it is made on "information and belief" and because it is not specific to the sheets purchased by Plaintiff.

1    product listings and descriptions, either in the store, or advertisements, or the website, which were

2    seen and relied upon by Plaintiff and Class Members.")  Plaintiff does not specifically identify <u>any</u>

3    alleged representations made anywhere but the label of the sheets she purchased—much less claim

4    that she viewed any such representations before purchasing the sheets—and any attempt to extend

5    the scope of her purported class claims beyond thread-count representations on sheet labels should

6    therefore be rejected.

7         In sum, the Fraud-Based Claims fail to meet the particularity requirements of Rule 9(b) and

8    must be dismissed.

9    **C.**      **Plaintiff did not comply with the CLRA's statutory notice provisions.**

10        Under Section 1782(a) of the California Civil Code, part of the CLRA, a prospective

11   plaintiff wishing to bring claims under the CLRA must provide notice to the party allegedly

12   violating the Act "[t]hirty days or more prior to the commencement of an action for damages

13   pursuant to [the CLRA]." The notice must be sent by "certified or registered mail, return receipt

14   requested, to the place where the transaction occurred or to the person's principal place of business

15   within California." *Id.* State and federal courts in California have strictly construed the notice

16   requirement, dismissing suits where notice was sent one day before filing the complaint or

17   otherwise failed to meet the requirements of Section 1782. *See, e.g.*, *Saitsky v. DirecTV, Inc.*, No.

18   CV 08-7918 AHM (CWx), 2009 WL 10670629, at *7 (C.D. Cal. Sep. 22, 2009) (discussing *Utility*

19   *Consumers' Action Network v. Sprint Solutions, Inc.*, No. C07-CV-2231-W (RJB), 2008 WL

20   1946859 (S.D. Cal. Apr. 25, 2008), where notice was sent only one day before filing suit)); *Von*

21   *Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1303-04 (S.D. Cal 2003) (dismissing for failure to

22   comply with notice requirements of Section 1872 where, among other things, the purported notice

23   "was not delivered in the proper fashion"); *Outboard Marine Corp. v. Superior Court*, 52 Cal. App.

24   3d 30, 40–41 (1975) (rejecting argument that "substantial compliance" with notice requirements of

25   section 1782 is sufficient, and holding that CLRA's purpose "may only be accomplished by a literal

26   application of the notice provisions").

27        Here, Plaintiff does not allege that she sent the required notice at least thirty days before

28   filing suit. Instead, Plaintiff admits that she sent notice only three days before filing suit.  *See* SAC

1    ¶ 141.   Moreover, she does not allege that the notice was sent via certified mail, return receipt

2    requested, or that it was sent to either the store where she purchased the sheets or Ross's

3    headquarters in California.   Plaintiff therefore cannot establish that she complied with the

4    requirements of the CLRA before filing suit, and her CLRA claims must therefore be dismissed.[8]

5         **D.**    **Plaintiff's breach of warranty claims must be dismissed for multiple reasons.**

6         1.    Plaintiff failed to provide notice of the alleged breach within a reasonable time of

7         discovery of the breach.

8    California Commercial Code § 2607(3)(A) requires that a buyer, "within a reasonable time

9    after he or she discovers or should have discovered any breach, notify the seller of breach or be

10   barred from any remedy." Where a plaintiff "fails to plead that she provided this notice within a

11   reasonable time of discovering the breach, as is required by § 2607," her breach of express

12   "warranty claims must be dismissed." *See Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 817-18 (N.D.

13   Cal. 2014).[9]

14   Here, taking her allegations as true, Plaintiff failed to give notice within a reasonable time.

15   She alleges that she purchased the sheets in question "sometime in the fall of 2016 [or] early winter

16   of 2017, prior to February 2017." SAC ¶ 33. Plaintiff did not give notice of any breach until May

17   4, 2018, at the earliest.  *Id.* ¶ 102.   Therefore, at least fifteen months—and as many as twenty

18   months—elapsed between Plaintiff purchasing the sheets and notifying Ross of a purported breach.

19   California courts have repeatedly held, <u>as a matter of law</u>, that delays of between four months and

---

20   [8] Plaintiff's Prayer for Relief includes a request for injunctive relief, but is not clear whether
21   Plaintiff seeks that relief with respect to her CLRA claims.  To the extent Plaintiff and the unnamed
     class members seek injunctive relief, they have no standing to do so, because Plaintiff has not
22   alleged that "that she faces an imminent or actual threat of future harm caused by [the defendant's]
     allegedly false advertising." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018).
23   Plaintiff's SAC does not allege any intention to purchase the sheets in the future; even a statement
24   that Plaintiff "would 'consider buying'" the sheets in the future would not be sufficient to support
     a claim for injunctive relief. *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, (Mem)–591 (9th
25   Cir. 2018).
26   [9] The UCC in Missouri contains the same requirement. *See* Mo. Rev. Stat. § 400.2-607(3)(a); *see*
     *also Budach v. NIBCO, Inc.,* No. 2:14-cv-04324-NKL, 2015 U.S. Dist. LEXIS 150714 (W.D. Mo.
27   Nov. 6, 2015) (dismissing breach of warranty claims due to failure to provide sufficient pre-suit
     notice); *see also Renaissance Leasing, L.L.C. v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 122 (Mo.
28   2010) (en banc) (stating that one element of breach of warranty claim under Missouri law is that
     "the buyer notified the seller of the nonconformity in a timely fashion").

1  one year are "unreasonable." *See, e.g.*, *In re Trader Joe's Tuna Litig.*, 289 F. Supp. 3d 1074, 1092–

2  93 (C.D. Cal. 2017) (citing *Ice Bowl v. Spalding Sales Corp.*, 56 Cal. App. 2d 918, 921–22 (1943))

3  (delay of more than a year before providing notice of breach); *Davidson v. Herring-Hall-Marvin*

4  *Safe Co.*, 131 Cal. App. Supp. 2d 874, 876–77 (1954) (collecting cases where "delays of from four

5  to six months were held to be unreasonable as a matter of law" and further holding that, in the case

6  before the court, a delay of fifteen months was unreasonable "as a matter of law"); *Ice Bowl*, 56

7  Cal. App. 2d at 921–22 (holding breach notice untimely as a matter of law where four months had

8  passed from purchase of the product); *Silvera v. Broadway Dep't Store*, 35 F. Supp. 625, 625–27

9  (S.D. Cal. 1940) (collecting cases where delays of eight months or less between breach and notice

10  were held untimely). Plaintiff's delay of between fifteen months and twenty months easily exceeds

11  the periods previously found to be unreasonable as a matter of law.  As a result, Plaintiff's claim

12  for breach of warranty should be dismissed.

13      2.    Plaintiff has failed to adequately plead the elements of breach of warranty.

14      Under California law, to state a claim for breach of express warranty, a plaintiff must allege

15  (1) the exact terms of the warranty, (2) reasonable reliance on the warranty, and (3) a breach of that

16  warranty that proximately caused plaintiff injury. *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp.

17  2d 1123, 1140 (N.D. Cal. 2010). "To create a warranty, representations regarding a product must

18  be specified and unequivocal." *Toyota Motor*, 754 F. Supp. 2d at 1182; *Frenzel v. AliphCom*, 76 F.

19  Supp. 3d 999, 1018 (N.D. Cal. 2014) (explaining express warranties must be "specific and

20  unequivocal" and may not be vague statements).  Under Missouri law, a plaintiff must plead the

21  following elements:

22          (1) the defendant sold goods to the plaintiff; (2) the seller made a
statement of fact about the kind or quality of those goods; (3) the
23          statement of fact was a material factor inducing the buyer to purchase
the goods; (4) the goods did not conform to that statement of fact; (5)
24          the nonconformity injured the buyer; and (6) the buyer notified the
seller of the nonconformity in a timely fashion.
25

26  *Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 85 (Mo. Ct. App. 2011) (quoting *Renaissance Leasing,*

27  *L.L.C. v. Vermeer Mfg. Co.,* 322 S.W.3d 112, 122 (Mo. 2010) (en banc)).

28      Plaintiff's allegations fall short under either state's law.  Plaintiff alleges that Ross expressly

- 11 -

warranted that "the Products had a certain true and accurate thread count, and corresponding level of quality, durability, longevity, softness and comfort" and that such warranty was "communicated expressly through packaging and other marketing representations." *See* SAC ¶ 177.  Plaintiff has not alleged <u>any</u> specific representations made by Ross regarding the "quality, durability, longevity, softness and comfort" of the sheets she purchased; nor has she alleged the specific benchmarks the sheets were warranted to meet with respect to any of those characteristics.  Indeed, the photographs of sheet packaging included in the SAC do not reveal <u>any</u> written representations regarding those traits. Accordingly, she has failed to plead both "the exact terms of the warranty" under California law and the existence of "a statement of fact about the kind or quality of those goods" under Missouri law. Accordingly, Plaintiff's claim for breach of express warranty should be dismissed.

**E.**    <u>**Plaintiff's Magnuson-Moss Warranty Act claims are defective and must be dismissed for multiple reasons.**</u>

Plaintiff's Magnuson-Moss Warranty Act ("MMWA") claims must be dismissed pursuant to Rule 12(b)(6). The MMWA provides a federal cause of action for breach of a "written warranty" or an implied warranty with respect to consumer goods. The MMWA defines "written warranty" as:

> (A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or
>
> (B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,
>
> which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

15 U.S.C. § 2301(6). The MMWA does not define "implied warranty," instead providing that the scope of an implied warranty is defined by the state law creating the implied warranty. *Id.* § 2301(7); *accord Granfield*, 2012 WL 2847575, at *6 n. 13 ("[T]he Magnuson–Moss Act does not

1   create substantive rights but merely provides a federal cause of action to enforce warranty rights

2   created by state law.").

3       The portion of the MMWA that creates a civil remedy is 15 U.S.C. § 2310(d). It provides

4   that a consumer who is damaged by a seller's failure to comply with a written or implied warranty

5   may file a civil suit for damages in state or federal court.  However, 15 U.S.C. § 2310(e) provides

6   that neither a class action nor an individual claim brought under subsection 2310(d) for a failure to

7   comply with a warranty may proceed on the merits "unless the person obligated under the warranty

8   or service contract is afforded a reasonable opportunity to cure such failure to comply." In the case

9   of a class action suit, the same subsection provides that "such reasonable opportunity will be

10  afforded by the named plaintiffs and they shall at that time notify the defendant that they are acting

11  on behalf of the class."

12      Plaintiff's MMWA claims fail to meet these requirements for multiple reasons.

13      1.      Plaintiff has not alleged the existence of a written warranty as defined by the

14              MMWA.

15      First, to the extent Plaintiff's MMWA claims rely on a written warranty, those claims fail

16  because Plaintiff has not alleged the existence of a "written warranty" as defined by the MMWA.

17  The only written warranty that Plaintiff claims existed was Defendant's alleged warranty that "the

18  Products had a certain true and accurate thread count, and corresponding level of quality, durability,

19  longevity, softness and comfort." *See* SAC ¶ 89. This does not constitute a warranty that "affirms

20  or promises that such material or workmanship is defect free or will meet <u>a specified level of

21  performance over a specified period of time</u>" or that includes a promise "to refund, repair, replace,

22  or take other remedial action with respect to such product in the event that such product fails to

23  meet the specifications set forth in the undertaking." 15 U.S.C. § 2301(6) (emphasis added); *accord*

24  *Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 615-16 (E.D. Mich. 2017) ("[A] mere 'product

25  description' may implicitly promise a product will meet expectations or not fall short, but it does

26  not affirmatively promise defect-free performance and it therefore falls outside MMWA's

27  definition." (citing *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 378 (S.D.N.Y. 2014))).

28      Even if, *arguendo*, the Court accepts Plaintiff's dubious premise that a thread-count

- 13 -

1    representation conveys corresponding representations regarding "quality, durability, longevity,

2    softness and comfort," the SAC contains no allegations whatsoever regarding the benchmarks that

3    the sheets were warranted to meet, or failed to meet, with respect to each of those qualities. Instead,

4    the SAC states only that Plaintiff had a subjective belief that the sheets "were of higher quality,

5    more durable, last longer, softer and better for sleep than sheets with lower thread counts." SAC ¶

6    37.  Plaintiff's allegations about what she <u>believed</u> about the sheets, however, do not constitute

7    representations <u>made by Ross</u> regarding a specified level of performance over a specified period of

8    time, as required by the MMWA.[10] Plaintiff's MMWA claims must be dismissed to the extent they

9    rely on an alleged "written warranty."[11]

10          2.      Plaintiff failed to provide Ross with notice and opportunity to cure.

11          Second, Plaintiff's MMWA claims against Ross fail in their entirety because Plaintiff did

12   not provide Ross with notice and an opportunity to cure before filing her MMWA claims, as

13   required by subsection 2310(e). Plaintiff alleges that she provided Ross with notice of her purported

14   claims via a letter dated May 4, 2018—just three days before she filed this lawsuit. *See* SAC ¶ 102.

15   Plainly that notice was insufficient to provide Ross with an opportunity to cure any supposed

16   defects before Plaintiff filed suit.

17          Plaintiff acknowledges this failure, but attempts to excuse it by arguing that providing an

18   opportunity to cure in this case would have been "unnecessary and futile." *See* SAC ¶ 106.

19   However, the MMWA contains no "futility" exception to the notice requirement, and federal courts

20   have refused to create one. *See Kuns v. Ford Motor Co.*, 543 F. App'x 572, 576 (6th Cir. 2013)

21   (holding that notice requirement cannot be waived just because "a plaintiff subjectively determines

22   that demand would be futile and does not so much as request the seller to cover the necessary

23

24   [10] Furthermore, at no point does Plaintiff allege that she used the sheets or that they failed to meet
     her expectations in any way.

25   [11] In addition, because an "implied warranty" claim under the MMWA relies on an underlying
     violation of state implied warranty law, any claim under the MMWA arising from an "implied"

26   warranty must fail if Plaintiff's separate implied warranty claim fails.  *Granfield*, 2012 WL
     2847575, at *6 ("[B]ecause Plaintiff's [Magnuson–Moss Act claim] is derivative of her implied

27   warranty claims, the Court finds that this claim must also fail in light of the dismissal of her state
     law claim.").  Plaintiff's implied warranty claim fails as described in section 2.f *infra*; thus, there

28   is no basis for her MMWA claim arising from an implied warranty.

1  repair"); *see also In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 970-71 (N.D. Cal.

2  2014) (noting that a futility argument was only "theoretically possible"); *Tietsworth v. Sears,*

3  *Roebuck & Co.*, 720 F. Supp. 2d 1123, 1144 (N.D. Cal. 2010) (holding that "notice that a defect

4  has manifested and an opportunity to cure are required to state a claim under the MMWA").

5  Plaintiff has failed to comply with the statutory requirement of notice and opportunity to cure, and

6  Plaintiff's MMWA claims must be dismissed in their entirety for that additional reason.

7  **F.**   **Plaintiff's claims for breach of the implied warranty of merchantability must be**

8   **dismissed for multiple reasons.**

9   The fundamental inquiry for a claim of breach of implied warranty of merchantability is

10  whether "the product lacks even the most basic degree of fitness for ordinary use." *Birdsong v.*

11  *Apple, Inc.*, 590 F.3d 955. 958 (9th Cir. 2009).[12]  Therefore, to state a claim for breach of the

12  implied warranty of merchantability, a plaintiff must allege that a product suffers from some

13  "fundamental defect that renders the product <u>unfit for its ordinary purpose</u>." *Tasion Commc'ns.,*

14  *Inc. v. Ubiquiti Networks, Inc.*, No. C-13-1803 EMC, 2014 WL 2916472, at *11 (N.D. Cal. June

15  26, 2014) (emphasis added). The "mere manifestation of 'some' defect is insufficient," *id.*, because

16  "the implied warranty merely provides a 'minimum level of quality,'" *Mathison v. Bumbo¸* No. SA

17  CV08-0369 DOC (ANx), 2008 WL 8797937, at *9 (C.D. Cal. Aug. 18, 2008) (quoting *American*

18  *Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296 (1995)). California district

19  courts have accordingly dismissed claims for breach of the warranty of merchantability "where the

20  good serves its purpose without issue throughout its useful life" even where some alleged defect

21  causes a loss in resale value or has some latent defect but can still be used for its purpose. *See id.*

22  Plaintiff's breach of warranty of merchantability claims against Ross fail.

23   1.   Plaintiff does not allege a fundamental defect.

24   First, Plaintiff's claims for breach of the implied warranty fail because she does not allege

25

26  [12] The inquiry is virtually the same under Missouri law.  *See Hope v. Nissan N. Am., Inc.*, 353

27  S.W.3d 68, 90 (Mo. Ct. App. 2011) ("The implied warranty of merchantability does not mean a
promise by the merchant that the goods are exactly as the buyer expected, but rather that the

28  goods *satisfy a minimum level of quality.*").

1  a "fundamental defect" with the allegedly mislabeled sheets.  The only defect Plaintiff alleges is

2  that the stated thread count is different from the actual thread count.  Even if that allegation were

3  true, there is no allegation that the sheets at issue cannot still be successfully used for their intended

4  purpose as bedsheets. Regardless of whether the represented thread count was accurate, there is

5  nothing in the SAC that indicates that the sheets do not meet some "minimum level of quality."

6       Plaintiff attempts to address this obvious defect in her implied warranty claims by alleging

7  that the sheets she purchased were intended to be used not just as sheets, but "high quality luxury

8  sheets." *See, e.g.*, SAC ¶ 32.  This cannot save her claims.  Plaintiff does not explain how one

9  would distinguish the performance of ordinary sheets from that of "luxury" sheets, but even if she

10  could, there are no allegations in the SAC regarding the manner in which the sheets she purchased

11  fell short of that vague threshold.[13]  In other words, her claim that the sheets at issue do not satisfy

12  the minimum quality required of "luxury" sheets fails for the same reason the same claim fails with

13  respect to the standard of "ordinary" sheets—because Plaintiff does not identify any performance

14  or durability benchmarks the sheets failed to meet.  Accordingly, her claim for breach of the implied

15  warranty of merchantability fails.

16       2.      Plaintiff's implied warranty claims were asserted outside of the warranty period.

17       Second, Plaintiff's implied warranty claims fail because she failed to file suit within the

18  applicable warranty period.  Under California law, and pursuant to Section 1791.1 of the California

19  Civil Code, "the Implied Warranty of Merchantability has a duration coextensive with any express

20  warranty provided, but 'not more than one year following the sale of new consumer goods to a

21  retail buyer.'" *Mathison*, 2008 WL 8797937, at *8  Plaintiff admits that she did not file suit until,

22  at minimum, approximately fifteen months after the sheets were purchased.[14]   Any implied

23

_____

[13] Plaintiff's allegations that the sheets would have superior "quality, softness, comfort, durability,
and longevity" if they satisfied their "true" thread count (SAC ¶ 32) are also unavailing.  Leaving
aside the fact that Plaintiff has provided no specific thresholds the sheets "should" have met—or
failed to meet—in any of these categories, it is immaterial for purposes of Plaintiff's warranty
claims whether the sheets could or should have been <u>better</u> in some respect.  The only requirement
is that the sheets meet a <u>minimum</u> standard of performance, and Plaintiff alleges nothing that shows
they did not meet a minimum standard of performance.
[14] Plaintiff's allegations regarding equitable tolling are virtually nonexistent. Plaintiff's
allegations are at best summary conclusions with no facts being pleaded in support.

1    warranty expired prior to her filing suit, and her claim for breach of the implied warranty of

2    merchantability should be dismissed for that additional reason.  *Accord Mathison*, 2008 WL

3    8797937, at *8 (dismissing claim for breach of implied warranty of merchantability where Plaintiff

4    did not plead that purchase occurred within one year of filing suit).

5            3.      Plaintiff has failed to plead reasonable notice of a breach.

6            Third, Plaintiff's implied warranty claim fails because she failed to provide "reasonable

7    notice" of the breach.  "[A] plaintiff seeking to assert a claim for breach of the implied warranty of

8    merchantability must provide reasonable notice of the alleged breach." *Tasion*, 2014 WL 2916472,

9    at *11. Between 15 and 20 months elapsed between Plaintiff's purchase of the sheets and the time

10   at which she notified Ross of alleged defects, a delay far in excess of what has been found

11   "reasonable" by California courts.  Her claims for breach of the implied warranty of merchantability

12   also fail for that reason.  Plaintiff's claim for breach of the implied warranty of merchantability

13   fails as a matter of law for multiple reasons and should be dismissed.

14       **G.    Plaintiff has failed to plead negligent misrepresentation.**

15           In order to state a claim for negligent misrepresentation, a plaintiff must plead

16   (1) misrepresentation of a past or existing material fact, (2) without reasonable grounds for

17   believing it to be true, (3) with intent to induce another's reliance on the misrepresentation,

18   (4) ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it

19   was directed, and (5) resulting damage. *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1200 n. 2

20   (9th Cir. 2001). Beyond failing to satisfy Rule 9(b), Plaintiff pleads merely summary allegations of

21   the elements of negligent misrepresentation with no factual support for her claim. *See, e.g.*, *Wine*

22   *Bottle Recycling, LLC v. Niagara Sys. LLC*, No. 12-1924 SC, 2013 WL 1120962, at *11 (N.D. Cal.

23   Mar. 18, 2013) ("Plaintiff's pleadings, without more, are formulaic recitations of a negligent

24   misrepresentation claim's elements." (citing *Twombly*, 550 U.S. at 554-55)). Plaintiff's claim for

25   negligent misrepresentation should be dismissed for failure to state a claim.[15]

26

27   _____

28   [15] Plaintiff's claim for negligent misrepresentation is also barred by the economic loss rule. *Ladore v. Sony Comput. Entm't Am., LLC*, 75 F. Supp. 3d 1065, 1074–76 (N.D. Cal. 2014) (barring claim for negligent misrepresentation based on sale of goods).

1

**H.     Plaintiff's claim for unjust enrichment should be dismissed.**

2

In the SAC, Plaintiff asserts for the first time a claim against Ross for unjust enrichment.

3

"Under California law, the elements of unjust enrichment are: (1) receipt of a benefit; and

4

(2) unjust retention of the benefit at the expense of another." *In re ConAgra Foods Inc.*, 908 F.

5

Supp. 2d 1090, 1113 (C.D. Cal. 2012). However, "federal courts have consistently . . . held that

6

California law does not recognize a cause of action for unjust enrichment, so long as another cause

7

of action is available that permits restitutionary damages." *In re ConAgra Foods Inc.*, 908 F. Supp.

8

2d 1090, 1114 (C.D. Cal. 2012); *see also In re Apple & AT & T iPad Unlimited Data Plan Litig.*,

9

802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) ("[P]laintiffs cannot assert unjust enrichment claims

10

that are merely duplicative of statutory or tort claims."). Because Plaintiff alleges other claims for

11

which she seeks restitutionary damages (*see* SAC ¶¶ 140, 150, 157, 166, 173), her proposed claim

12

for unjust enrichment is not viable under California law.[16]

13

Under Missouri law, a claim for unjust enrichment has three elements: "(1) that the

14

defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the expense of

15

the plaintiff; (3) that it would be unjust to allow the defendant to retain the benefit." *S & J, Inc. v.*

16

*McLoud & Co.*, 108 S.W.3d 765, 768 (Mo. Ct. App. 2003) (internal quotation marks and citations

17

omitted). Notably, "[t]he most significant of the elements for a claim of unjust enrichment is the

18

last element," and courts, in determining whether it would be unjust for a defendant to retain the

19

benefit, "consider whether any wrongful conduct by the defendant contributed to the plaintiff's

20

disadvantage." *Id.* Where the defendant's actions amount to "passive acquiescence," a claim for

21

unjust enrichment will not lie. *See id.* at 768-69 ("More than such passive acquiescence is required

22

for us to find that it would be unjust for Defendant to retain the [benefit]. When the record shows

23

the defendant was a passive beneficiary, unjust enrichment has not occurred.").

24

Ross's alleged conduct amounts—at most—to passive acquiescence. Plaintiff admits that

25

AQ, not Ross, labeled the sheets at issue. *See* SAC ¶ 35. To assert claims against Ross, Plaintiff

26

---

27

[16] *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) supports this dismissal. The Ninth Circuit in *Astiana* recognized that unjust enrichment is not a standalone cause of action under California law but that a plaintiff may plead a claim for quasi-contract with restitution as a remedy. Plaintiff has pled no such claim here.

28

1    generally relies on conclusory allegations that Ross "knew or should have known" about the

2    supposedly misrepresented thread counts. *See, e.g.*, *id.* ¶¶ 41, 48.  As discussed above, however,

3    Plaintiff does not allege any facts that would demonstrate that Ross knew or had the opportunity to

4    discover the "true" thread count of the sheets purchased by Plaintiff. Because Ross's active

5    participation is insufficiently alleged, its role is merely passive, and Plaintiff's claim for unjust

6    enrichment cannot succeed.[17]  *Accord S & J, Inc.*, 108 S.W.3d at 768-69 (dismissing unjust

7    enrichment claim where the plaintiff claimed the defendant had "adopted through acquiescence"

8    the wrongful conduct of others that contributed to the plaintiff's disadvantage and holding that

9    "[m]ore than such passive acquiescence is required for us to find that it would be unjust for

10   Defendant to retain the [benefit]").

11   **III.    PLAINTIFF'S CLASS-ACTION CLAIMS MUST BE DISMISSED FOR LACK OF**

12   **STANDING TO THE EXTENT THEY ARISE FROM THE SALE OF PRODUCTS**

13   **THAT THE NAMED PLAINTIFF DID NOT BUY.**

14       The Court lacks subject matter jurisdiction for claims brought by parties without standing,

15   and those claims must be dismissed under Rule 12(b)(1).  *Larsen v. Trader Joe's Co.*, No. C 11-

16   05188 SI, 2012 WL 5458396, at *4-5 (N.D. Cal. June 14, 2012).  Plaintiff's claims that are based

17   on products that she did not purchase should be dismissed.

18       Plaintiff alleges that she purchased only one set of sheets from Ross—a set of "Grande

19   Estate 800 TC Luxurious Sateen Weave" sheets purchased from a Ross store in St. Louis. SAC

20

21   ───────────────
     [17] This conclusion is particularly compelling in this context—a simple dispute arising from ordinary
22   consumer transactions in which the purchasers claim to be unsatisfied with what they purchased.
     Federal courts interpreting Missouri law have been hesitant to allow unjust enrichment claims to
23   proceed in similar circumstances.  *See In re Saturn L-Series Timing Chain Prod. Liab. Litig.*, No.
     8:07CV298, 2008 WL 4866604, at *16 (D. Neb. Nov. 7, 2008) (stating that allowing unjust
24   enrichment claim arising from consumer automobile purchase "would be interpreting Missouri's
     equitable remedy of quasi-contract to operate in protection of a consumer any time a purchased
25   product breaks following a typical business transaction"); *Wright v. Bath & Body Works Direct,
     Inc.*, No. 12-00099-CV-W-DW, 2012 WL 12951921, at *5 (W.D. Mo. July 10, 2012) ("Although
26   Plaintiff alleges he paid Defendant for [products] that ceased to operate as marketed, and Defendant
     had knowledge of the alleged defects in the products, these allegations do not amount to more than
27   passive acquiescence on the part of Defendant. In making this determination, the Court is also
     mindful of the policy considerations described in *In re Saturn*.").
28

¶ 33.   Despite only making that single purchase, Plaintiff says the products at issue in this case are "Grande Estate Fine Linens 800 TC Luxurious Sateen Weave sheet sets, Hampton House 1200 TC, and all other cotton/polyester blend sheet sets with over inflated thread counts that were manufactured or supplied by AQ Textiles and/or Creative Textiles and sold at one of Defendant Ross' stores." *Id.*  ¶ 52.   She seeks to assert class claims on behalf of all persons in Missouri, or alternatively nationwide, "who purchased bedding or linen products from Defendant Ross that was [sic] manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count."

Several federal courts have found that, where a named plaintiff in a class-action lawsuit attempts to assert class-action claims with respect to products she did not actually buy, those claims must be dismissed for lack of standing.  *See, e.g.*, *Murray v. Sears, Roebuck & Co.*, No. C 09-5744 CW, 2014 WL 563264, at \*9 (N.D. Cal. Feb. 12, 2014) ("A plaintiff therefore may not represent a class in bringing CLRA claims based on products that he or she never purchased."); *Pearson v. Target Corp.*, No. 11 CV 7972, 2012 WL 7761986, at \*3-4 (N.D. Ill. Nov. 9, 2012) ("[H]ow could [plaintiff] possibly have been injured by representations made on a product he did not buy?"); *Granfield*, 2012 WL 2847575, at \*6 ("[W]hen a plaintiff asserts claims based both on products that she purchased and products that she did not purchase, claims relating to products not purchased must be dismissed for lack of standing.").  Even those courts that have allowed a plaintiff to assert class claims in such circumstances have only allowed such claims where the products and alleged misrepresentations are substantially similar. *See, e.g.*, *Miller v. Ghiradelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012) (discussing and comparing cases); *see also Young v. Cree, Inc.*, No. 17-cv-06252-YGR, 2018 WL 1710181 (N.D. Cal. Apr. 9, 2018).

Two decisions of this Court are instructive here.  In *Young*, the complaint (hereafter the "Young Complaint") specifically identified each product manufactured by Cree, an LED light manufacturer, that the plaintiff alleged were falsely represented. *See* Young Compl. ¶¶ 17-18, 22 (using language such as "Cree manufactures three categories of LED bulbs," "Defendant manufactures six types of . . . bulbs," and "[t]he Cree Reflector (Flood/Spot) products come in eight variations") (attached as Exhibit A to the Declaration of Andy Guo). The Young Complaint further

1   described why each of the relevant Cree products, including those not purchased by the plaintiff,

2   provided a basis for the Young Complaint's claims. *See id.* ¶¶ 18-25 (stating, after describing all of

3   the Cree products, that "each Cree product makes a claim about an 'estimated' cost savings for the

4   purchaser buying the product"). Moreover, the Young Complaint gave examples of actionable

5   misrepresentations for several of the unpurchased Cree products identified. *See id.* ¶ 25.  Only

6   because of those detailed allegations was the Plaintiff able to maintain claims with respect to

7   unpurchased products.

8        Next, in *Rushing v. Williams-Sonoma, Inc.*, No. 16-CV-01421-WHO, 2016 WL 4269787

9   (N.D. Cal. Aug. 15, 2016), the plaintiff accused Williams-Sonoma and other retailers of selling

10  sheets with inflated thread counts.  The plaintiff attempted to bring class-action claims not only

11  with respect to the sheets he purchased—which he claimed had an inflated thread count due to

12  counting two-ply yarn as two threads rather than one—but for "31 additional products with

13  misleading thread counts at or above 350," which he claimed could be reasonably presumed to have

14  exaggerated thread counts. *Id.* at *2.  The defendants sought to dismiss all of the plaintiff's claims

15  with respect to sheets he did not actually purchase.

16       This Court first described the situations in which it would allow a plaintiff to proceed with

17  class claims with respect to products he did not purchase, saying that the inquiry "necessarily

18  focuses on whether the resolution of the asserted claims will be identical between the purchased

19  and unpurchased products." *Id.* at *3 (quoting *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196-

20  WHO, 2014 WL 1024182, at *8 (N.D. Cal. Mar. 13, 2014)).  The Court went on to say that "a

21  claim that a reasonable consumer would be misled by a representation on a label may well require

22  a context-specific analysis of the appearance of the label, the misrepresentation's placement on the

23  label, and other information contained on the label," and that "where the actual composition or

24  appearance of the product is legally significant to the claim at issue, the consumer may only be

25  allowed to pursue claims for products with identical product composition and/or appearance." *Id.*

26  (quoting *Ang*, 2014 WL 1024182, at *8).

27       Applying those standards, the Court in *Rushing* found that the plaintiff could only proceed

28  with claims for sheets that suffered from the exact same alleged misrepresentation—counting two-

1  ply yarn as two threads, holding that "[t]he legal theory and defenses applicable to his claim are

2  legally significant and raise different questions not applicable" to any other alleged thread-count

3  defects. *Id.* at *4. And even then, the Court would only allow the plaintiff to proceed with other

4  claims "only to the extent that he can plausibly allege, consistent with Rule 11, that the unpurchased

5  products are two-ply products that suffer from the same deception of which he complains." *Id.*

6       The decisions in *Young* and *Rushing* demonstrate that the SAC falls short of establishing

7  standing for unpurchased products. The SAC identifies the product purchased by Plaintiff,

8  specifies one other brand by name ("Hampton House 1200 TC"), and then alleges, on information

9  and belief, that "other sheets and bedding products" sold by Ross have "false and over inflated

10 thread counts." SAC ¶ 42. As to those unnamed and unidentified sheets, Plaintiff makes only vague

11 allegations, on information and belief, regarding Ross's supposed knowledge regarding their "true"

12 thread counts. *See, e.g.*, *id.* ¶ 130 ("Upon information and belief, through examination of its own

13 Products and interactions with manufacturers, distributors, or wholesalers . . . Defendant had

14 exclusive knowledge concerning the actual thread count of the bedding and linen Products that it

15 markets, prices, and sells to consumers.") Finally, Plaintiff does not make any allegations regarding

16 how, why, or in what proportion the thread counts of the other sheets are incorrect, except to say

17 that they are "over inflated." *See, e.g.*, *id.* ¶ 55.

18       Plaintiff purchased a unique sheet set for which she claims the thread count was inflated.

19 That does not, however, give her standing to assert claims with respect to a number of distinct

20 products which she did <u>not</u> purchase, particularly given that she has failed to specifically identify

21 any sheets other than the ones she purchased and one other set. Her claims for any product except

22 the one she actually purchased should be dismissed for lack of standing.

23                                       **<u>CONCLUSION</u>**

24       Ross respectfully requests that the Court dismiss Plaintiff's Second Amended Complaint

25 and her claims against Ross, in their entirety, with prejudice.

26  Dated: January 4, 2019                    **NORTON ROSE FULBRIGHT US LLP**
                                              By_____/s/ Andy Guo_____
27                                            ANDY GUO
                                              Attorneys for Defendant
28                                            ROSS STORES, INC.