JEFFREY B. MARGULIES (BAR NO. 126002)
LAUREN A. SHOOR (BAR NO. 280788)
ANDY GUO (BAR NO. 307824)
**NORTON ROSE FULBRIGHT US LLP**
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
jeff.margulies@nortonrosefulbright.com
lauren.shoor@nortonrosefulbright.com
andy.guo@nortonrosefulbright.com

Attorneys for Defendants
ROSS STORES, INC.

*Additional Counsel listed on Next Page*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINIQUE MORRISON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ROSS STORES, INC., AQ TEXTILES LLC, CREATIVE TEXTILE MILLS PRIVATE LIMITED,<br><br>Defendants. | Case No. 4:18-cv-02671-YGR<br><br>**DEFENDANT ROSS STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND 12(B)(2)**<br><br>Date: March 5, 2019<br>Time: 2:00 p.m.<br>Place: Oakland Courthouse<br>Courtroom: 1, 4th Floor |

DOCUMENT PREPARED
ON RECYCLED PAPER

DEFENDANT ROSS STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT - 4:18-CV-02671-YGR

*Additional Counsel*

Reid L. Phillips *(admitted pro hac vice application forthcoming)*
Jennifer K. Van Zant *(admitted pro hac vice)*
Andrew L. Rodenbough *(pro hac vice application forthcoming)*
Ryan C. Fairchild *(admitted pro hac vice)*
**BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, LLP**
230 North Elm Street
2000 Renaissance Plaza
Greensboro, NC 27401
Telephone:   (336) 373-8850
Facsimile:    (336) 378-1001
rphillips@brookspierce.com
jvanzant@brookspierce.com
arodenbough@brookspierce.com
rfairchild@brookspierce.com

Attorneys for Defendants
ROSS STORES, INC.

DOCUMENT PREPARED ON RECYCLED PAPER

DEFENDANT ROSS STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT - 4:18-CV-02671-YGR

# TABLE OF CONTENTS

Page

I. FAILURE TO STATE A CLAIM ................................................................................... 1

    A. Plaintiff's fraud-based claims are not pleaded with particularity ........................... 1

    B. Plaintiff's California statutory claims are subject to dismissal under *Mazza* ......... 2

        1. Choice-of-law analysis indicates that Plaintiff's claims should be dismissed ................................................................................................. 3

        2. Plaintiff's claims do not arise from conduct occurring in California .......... 5

    C. Plaintiff has not satisfied the CLRA's notice requirements ................................... 6

    D. Plaintiff's defense of her breach of warranty claim is unconvincing ...................... 7

    E. Plaintiff fails to state an MMWA claim ................................................................. 8

    F. Plaintiff's reliance on *Mexia* to save her implied warranty claims is misplaced .............................................................................................................. 9

    G. Plaintiff's negligent misrepresentation claim is subject to dismissal regardless of whether it sounds in negligence or fraud ...................................... 11

II. STANDING FOR UNPURCHASED PRODUCTS ...................................................... 12

III. CONCLUSION ............................................................................................................. 14

- i -

DEFENDANT ROSS STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT - 4:18-CV-02671-YGR

DOCUMENT PREPARED ON RECYCLED PAPER

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Jamba Juice Co.*,
  888 F. Supp. 2d 1000 (N.D. Cal. 2012) ................................................................................ 13, 14

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
  No. C-11-2910 EMC, 2012 WL 2990766 (N.D. Cal. July 20, 2012) ......................................... 13

*Bret Harte Union High Sch. Dist. v. FieldTurf, USA, Inc.*,
  No. 116CV00371DADSMS, 2016 WL 3519294 (E.D. Cal. June 27, 2016) .............................. 11

*Brown v. Hain Celestial Grp., Inc.*,
  913 F. Supp. 2d 881 (N.D. Cal. 2012) ........................................................................................ 13

*Hawes v. Macy's Inc.*,
  No. 1:17-cv-754, 2018 WL 4698867 (S.D. Ohio Sept. 9, 2018) ............................................... 1, 2

*Hendricks v. StarKist Co.*,
  30 F. Supp. 3d 917 (N.D. Cal. 2014) ..................................................................................... 13, 14

*In re Hydroxycut*,
  299 F.R.D. ...................................................................................................................................... 2

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
  299 F.R.D. 648 (S.D. Cal. 2014) ................................................................................................... 1

*Ladore v. Sony Comput. Entm't Am., LLC*,
  75 F. Supp. 3d 1065 (N.D. Cal. 204) .......................................................................................... 11

*Mazza v. American Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ................................................................................................ passim

*McCann v. Foster Wheeler LLC*,
  48 Cal. 4th 68, 105 Cal. Rptr. 3d 378, 225 P.3d 516 (Cal.2010) .................................................. 3

*Mexia v. Rinker Boat Co.*,
  174 Cal. App. 4th 1297, 95 Cal. Rptr. 3d 285 (Cal. Ct. App. 2009) ....................................... 9, 10

*Peterson v. Mazda Motor of Am., Inc.*,
  44 F. Supp. 3d 965 (C.D. Cal. 2014) ........................................................................................... 10

*Rushing v. Williams-Sonoma, Inc.*,
  No. 16-CV-01421-WHO, 2016 WL 4269787 (N.D. Cal. Aug. 15, 2016) .................................. 13

*Young v. Cree, Inc.*,
  No. 17-CV-06252-YGR, 2018 WL 1710181 (N.D. Cal. Apr. 9, 2018) ................................ 12, 13

*Young v. Cree, Inc.*,
  No. 17-CV-06252-YGR, 2018 WL 3659305 (N.D. Cal. Aug. 2, 2018) ............................... 7, 8, 9

- ii -

DEFENDANT ROSS STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT - 4:18-CV-02671-YGR

DOCUMENT PREPARED ON RECYCLED PAPER

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Rules and Statutes**

| | |
|---|---|
| 15 U.S.C. § 2301(6) | 9 |
| Cal. Bus. & Prof. Code §§ 17203, 17535 | 4 |
| Cal. Civ. Code § 1780(a), (e) | 4 |
| Cal. Civ. Code § 1782(a) | 6, 7 |
| Mo. Rev. Stat. § 407.020 | 4 |
| Mo. Rev. Stat. § 407.025(1) | 4 |
| Rule 9(b) | 1, 2, 11 |
| Rule 11 | 13 |
| Rule 12(b)(6) | 1 |

74069160.1

- iii -

DOCUMENT PREPARED ON RECYCLED PAPER

DEFENDANT ROSS STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT - 4:18-CV-02671-YGR

Defendant Ross Stores, Inc. ("Ross") submits this Reply in support of its Motion to Dismiss all claims asserted by Plaintiff Dominique Morrison ("Plaintiff") in her Second Amended Complaint ("SAC") [DE # 54].

## I. FAILURE TO STATE A CLAIM

Ross has moved to dismiss Plaintiff's claims under Rule 12(b)(6) for failure to state a claim. The arguments raised by Plaintiff in her Response are unavailing. Not all of those arguments merit any further reply, but Ross writes now to rebut several of them.

### A. Plaintiff's fraud-based claims are not pleaded with particularity.

In its initial Memorandum, Ross explained that many of Plaintiff's claims sound in fraud and must be dismissed because they are not pleaded with sufficient particularity to satisfy the requirements of Rule 9(b). In particular, Ross argued that Plaintiff failed to sufficiently allege the "who, what, when, where and how" of the fraud because, among other things, she did not establish what fraudulent representations Ross was alleged to have made—and in fact, that Plaintiff pleaded that it was former Plaintiff AQ Textiles, LLC, and not Ross, who was responsible for the label containing an allegedly inflated thread count.

In her Response, Plaintiff admits that many of her claims sound in fraud, and acknowledges that she is required to satisfy Rule 9(b). Resp. at 3. She argues, however, that she satisfied Rule 9(b) by alleging that Ross "participated in the promotion of the fraudulent representations." *Id.* That argument is incorrect. In fact, as another California district court has recognized, a retailer does not adopt statements made on product packaging, and such statements therefore cannot provide the basis for fraud claims against the retailer. *See In re Hydroxycut Mktg. & Sales Practices Litig.*, 299 F.R.D. 648, 657 (S.D. Cal. 2014) ("[T[he Court is unaware of any authority for the proposition that under state consumer protection laws, a retailer adopts statements made on product packaging. Holding retailers liable for all statements made on products that they sell would impose the type of secondary liability that has been rejected by courts.").

Plaintiffs also seek to rely on a decision from a federal district court in Ohio in a similar case brought by many of the same attorneys representing Plaintiff in this action. *See Hawes v. Macy's Inc.*, No. 1:17-cv-754, 2018 WL 4698867 (S.D. Ohio Sept. 9, 2018). That case is of no

- 1 -

DEFENDANT ROSS STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT - 4:18-CV-02671-YGR

DOCUMENT PREPARED
ON RECYCLED PAPER

precedential value and is not binding on this Court. Moreover, it is distinguishable from the present case in multiple respects. *First*, the plaintiff in *Hawes* actually alleged the amount she paid for her sheets and more specifically alleged when she bought them. *See* Declaration of Andy Guo, Ex. A (Hawes Complaint) ¶ 12. Here, in contrast, Plaintiff specifies neither when she purchased the sheets nor how much she paid for them. *See* SAC ¶¶ 33, 34. *Second*, the Ohio district court found that the plaintiff in *Hawes* had actually alleged that the defendant retailer itself made misrepresentations regarding thread count. *See Hawes*, 2018 WL 4698867, at *5-6. As discussed in Ross's initial Memorandum, Plaintiff here in fact alleges that it was AQ—not Ross—that labeled the sheets (*see* SAC ¶ 35) and instead seeks to rely on conclusory allegations that Ross "knew or should have known" that the thread counts were incorrect.[1] That is insufficient to state Plaintiff's fraud-based claims. *Accord In re Hydroxycut*, 299 F.R.D. at 659–60 ("The allegations that the Retailer Defendants 'knew or should have known' are conclusory. Therefore, Plaintiff's consumer protection claims fail to state a claim on the additional ground that Plaintiffs have not alleged sufficient facts supporting an inference of knowledge.")

For the reasons stated above and in Ross's initial Memorandum, Plaintiff's fraud-based claims should be dismissed for failure to plead those claims with particularity under Rule 9(b).

### B. Plaintiff's California statutory claims are subject to dismissal under *Mazza*.

In its initial Memorandum, Ross demonstrated that the claims brought by Plaintiff under California's consumer-protection statutes are subject to dismissal under the precedent established by *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012). The court in *Mazza* held, with respect to statutory consumer-protection claims, that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which

---

[1] Indeed, the only misrepresentations Ross itself is alleged to have made are the representations of a "comparable value" made on price tags. *See* SAC ¶ 47. As explained in Ross's initial Memorandum, Plaintiff's vague allegation that she "believes" there was such a "comparable value" on the price tag of the sheets she purchased (plainly, the price tag pictured in Paragraph 47 of the SAC is not from the sheets purchased by Plaintiff) renders those allegations insufficiently specific for purposes of Rule 9(b). Furthermore, even if Plaintiff were to have alleged a specific "comparable value" representation on the sheets she purchased, she has not explained how those representations were inaccurate or how the Court would be able to evaluate the accuracy of such representations.

- 2 -

DEFENDANT ROSS STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT - 4:18-CV-02671-YGR

Document Prepared on Recycled Paper

the transaction took place." *Id.* at 594. Ross also cited several cases applying *Mazza* to dismiss California statutory claims, like the ones here, arising out of consumer transactions in other states and brought by out-of-state plaintiffs.

Plaintiff seeks to avoid dismissal under *Mazza* in two ways. First, Plaintiff says that dismissal is inappropriate because Ross "fails to engage in a constitutional choice-of-law analysis" as set forth in *Mazza*. Second, Plaintiff argues that courts in other cases have held that California statutory claims brought by out-of-state plaintiffs should not be dismissed where those plaintiffs sufficiently allege that their claims arise from conduct occurring in California. Both arguments are unavailing.

### 1. Choice-of-law analysis indicates that Plaintiff's claims should be dismissed.

It is true that Ross did not undertake a detailed choice-of-law analysis in its initial Memorandum, because *Mazza* and its progeny so directly addressed conflicts between the exact consumer-protection statutes at issue here and foreign consumer-protection statutes that engaging in the analysis again would seem redundant. Because Plaintiff raised the issue, Ross will set forth the analysis here. To determine whether application of California law is appropriate to class-actions claims, a court applies the following three-step test:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.
>
> Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.
>
> Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*Id.* at 590 (quoting *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 81–82, 105 Cal. Rptr. 3d 378, 225 P.3d 516 (Cal.2010).

Plaintiff alleges that she is a citizen of Missouri and purchased her sheets from a Ross store

- 3 -

DOCUMENT PREPARED ON RECYCLED PAPER

in St. Louis, Missouri. SAC ¶¶ 11, 33. The Court therefore must first determine whether there is a conflict between California law and Missouri law[2]—specifically, whether there is a conflict between the California consumer-protection statutes at issue and the MMPA, the Missouri consumer-protection statute under which she also asserts a claim. Examination of those statutes reveals several material differences, particularly with respect to the available consumer remedies. The MMPA allows a suit by a consumer to recover "actual damages," and provides that a court "may, in its discretion, award punitive damages and may award to the prevailing party attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper." Mo. Rev. Stat. § 407.025(1). By contrast, the CLRA allows for the recovery of restitution in addition to actual damages (and provides for a minimum award of actual damages in a class-action case) and provides that Courts <u>shall</u> award attorney's fees to a prevailing plaintiff (and <u>may</u> award attorney's fees to a prevailing defendant).[3] Cal. Civ. Code § 1780(a), (e). The UCL and FAL also provide for materially different remedies, as they only allow a civil plaintiff to recover restitution or obtain an injunction. Cal. Bus. & Prof. Code §§ 17203, 17535; *see also Mazza*, 666 F.3d at 591. These sorts of differences in remedies were found to be material in *Mazza*. *See Mazza*, 666 F.3d at 591. Because the laws of Missouri and California conflict, the analysis proceeds to the second step.

After determining that a conflict exists, the Court must next consider the interests of each state in applying its own laws. The court in *Mazza* found that "each state has a strong interest in applying its own consumer protection laws" to transactions occurring within its own borders. *Id.*

---

[2] Plaintiff seeks to assert claims on behalf of a nationwide class—in other words, she seeks to assert California statutory claims on behalf of persons who live and presumably purchased products from Ross in a wide variety of states. It is therefore worth noting that the Ninth Circuit in *Mazza* has already determined that the consumer-protection laws of a number of states conflict with those of California. *See Mazza*, 666 F.3d at 591.

[3] The conduct proscribed by the CLRA is also described much more specifically than the conduct addressed by the MMPA. *Compare* Cal. Civ. Code. § 1770 *with* Mo. Rev. Stat. § 407.020. As the court in *Mazza* recognized, "Consumer protection laws are a creature of the state in which they are fashioned. They may impose or not impose liability depending on policy choices made by state legislatures or, if legislators left a gap or ambiguity, by state supreme courts." *Mazza*, 666 F.3d at 591.

- 4 -

DEFENDANT ROSS STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT - 4:18-CV-02671-YGR

Document Prepared on Recycled Paper

at 592. That is because, among other things, "[e]ach of our states has an interest in balancing the range of products and prices offered to consumers with the legal protections afforded to them." *Id.* Missouri, like the other states whose laws were considered in *Mazza*, plainly has an interest in regulating consumer transactions with its citizens occurring within its borders. Because that interest is implicated here, the analysis must proceed to the third step.

In the third step of the choice-of-law analysis, the court must determine whether California or Missouri has a greater interest in applying its laws to the claims at issue. *Mazza* is again instructive. In *Mazza*, the Ninth Circuit determined that "if California law were applied to the entire class, foreign states would be impaired in their ability to calibrate liability to foster commerce." *Id.* at 593. The court also found that California's interest in applying its consumer-protection laws to transactions involving consumers in far-flung states was "attenuated," even though the Defendant was a California corporation. *Id.* at 594. Given those findings, the Ninth Circuit determined that the interests of the states where consumer transactions occurred had a greater interest than California in having their laws applied to the plaintiffs' claims. *Id.*

The same conclusion should follow here. Plaintiff is a Missouri resident who purchased sheets from a Ross store in Missouri. To the extent she asserts class claims, those claims are on behalf of consumers who presumably purchased sheets in their home states all across the country. In these circumstances, there is no basis for applying California's consumer-protection laws to transactions that occurred in different states all across the country, rather than the consumer-protection laws of the states where the transactions occurred.[4] Therefore, and in accordance with *Mazza* and the cases cited in Ross's initial Memorandum, Plaintiff's California statutory consumer-law claims should be dismissed.

### 2. Plaintiff's claims do not arise from conduct occurring in California.

Plaintiff also argues that application of California's consumer-protection law is appropriate because she alleged that "the conduct complained of arose from Defendant's actions in California."

---

[4] The court in *Mazza* also noted that the argument that California's consumer-protection laws should be applied across a nationwide class was based on the "false premise" that "one state's law must be chosen" to apply to the claims of class members all across the country. *Id.*

- 5 -

DOCUMENT PREPARED ON RECYCLED PAPER

DEFENDANT ROSS STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT - 4:18-CV-02671-YGR

Resp. at 6. That argument is unavailing because Plaintiff has alleged no such thing. Indeed, the word "California" appears only once in the "Factual Allegations" section of the Complaint—when Plaintiff alleges that Ross has its principal place of business in California. SAC ¶ 12. Beyond that, Plaintiff makes only vague and conclusory allegations tying any of Ross's alleged conduct to the state. *See, e.g.*, SAC ¶¶ 9 ("Defendant Ross's improper conduct set forth herein occurred in this district or was conceived of and executed from this District in whole or in part."), 10 ("The harm alleged herein occurred in this District or emanated from Defendant's improper conduct that occurred in this District, in whole or in part."), and 170 ("These deceptive advertisements and product specifications were made in the State of California and include product descriptions, advertisements, price listings, or other inducements in retail stores, or on the internet or in catalogs and other media."). In addition to being vague and conclusory, those statements are contradicted by the more specific allegations of the Complaint, which show that Plaintiff lives in Missouri, purchased products from a Ross store in Missouri, and does not claim to have seen any "advertisement" beyond the label on the sheets.

Notably absent are any allegations that the sheets at issue were manufactured in California, packaged or labeled in California, or ever transported to or through California. Nor is there any allegation that Plaintiff ever viewed any representations regarding the sheets in California (or anywhere other than Missouri). It is therefore clear that Plaintiff's claims, if any, do not arise from conduct occurring in California. Even if they did, Plaintiff's argument boils down to the assertion that application of California's consumer-protection laws on a nationwide basis is appropriate where the defendant is a company based in California. *Mazza* rejected that argument, and this Court should do so as well.

### C. Plaintiff has not satisfied the CLRA's notice requirements.

Ross demonstrated in its initial Memorandum that Plaintiff failed to comply with the notice provisions of the CLRA. Plaintiff claims that this court should excuse its failure to comply with those provisions, located in Cal. Civ. Code § 1782(a), because she "has the protection of Section 1782(d)." Resp. at 6. This argument, however, misconstrues the statute and the nature of the notice provided by Plaintiff.

- 6 -

DEFENDANT ROSS STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT - 4:18-CV-02671-YGR

Section 1782(d) provides that an action for injunctive relief—and not money damages—under the CLRA may be commenced without sending the notice required by Section 1782(a). It also provides, however, that before asserting a claim for money damages under the CLRA, a plaintiff must <u>fully comply</u> with the notice provisions of Section 1782(a). That means that, regardless of whether a claim for money damages is asserted originally or added later, the plaintiff is responsible for sending a notice that complies with all of the statutory formalities.

As detailed in Ross's initial Memorandum, regardless of whether Plaintiff's notice was timely under Section 1781(a), Plaintiff has not sufficiently pleaded that she sent a notice that complies with the remaining requirements of the statute—namely, that the notice was sent via certified mail, return receipt requested, to either Ross's headquarters in California or the store where she purchased her sheets. Moreover, it should be noted that, despite Plaintiff's claim that she did not initially seek money damages for Ross's alleged violation of the CLRA, she explicitly sought actual damages, restitution, and punitive damages under that claim in her initial Complaint. *See* DE # 1, ¶ 113. Because her alleged CLRA notice was sent only three days before filing suit, that notice fails to comply with Section 1781 for that additional reason.

### D. **Plaintiff's defense of her breach of warranty claim is unconvincing.**

As Ross has already explained, Plaintiff's claim for breach of warranty fails for multiple reasons: specifically, because she did not provide reasonable notice of the breach and because she failed to sufficiently allege the elements of a breach of warranty under either California or Missouri law.

Plaintiff's Response failed to raise any valid argument in response to those points.[5] Instead, Plaintiff seeks to rely on this Court's decision in *Young v. Cree, Inc.*, No. 17-CV-06252-YGR, 2018 WL 3659305, at *1 (N.D. Cal. Aug. 2, 2018), in arguing that she has sufficiently pleaded her breach of warranty claims. In so doing, however, Plaintiff ignores the stark differences in the allegations of the Amended Complaint in *Young* (No. 17-CV-06252, DE # 48; hereinafter "Young Compl.") and the SAC. In the Young Complaint, the plaintiff alleged that Cree had made specific

---

[5] In particular, Plaintiff did not respond to or attempt to distinguish the several cases cited by Ross that establish that she failed to provide notice of any defect within a reasonable time.

- 7 -

DOCUMENT PREPARED ON RECYCLED PAPER

representations in packaging and marketing that (1) its lightbulbs would last up to 35,000 hours (Young Compl. ¶ 1); (2) the lightbulbs had an estimated lifetime of 15-32 years (*id.* ¶ 4); (3) the lightbulbs would generate yearly energy cost savings of $0.60 to $2 per bulb per year (*id.*); (4) the lightbulbs had a "10 Year Warranty" (*id.*); and (5) the lightbulbs had a "10 year 100% satisfaction guarantee" (*id.* ¶ 5). The plaintiff further listed a number of specific Cree products and recited the longevity representations made by Cree with respect to each of them, also attaching images of packaging reflecting the many representations made by Cree regarding each lightbulb. (*Id.* ¶¶ 18-28.) Finally, and most importantly, the plaintiff specifically alleged that he had <u>actually used</u> the Cree lightbulbs and that they had burned out within three months, failing to meet the promises regarding longevity and performance made by Cree. (*Id.* ¶ 37.)

Here, by contrast, Plaintiff bases her entire breach of warranty claim on the single alleged representation that the sheets she purchased were 800 thread count. While Plaintiff alleges generally that thread count is meant to be an indicator of quality, durability, and softness, as discussed in Ross's initial Memorandum she has not alleged any actual representation made by Ross regarding <u>any</u> of those additional characteristics, much less a representation sufficient to support the existence of a warranty. Indeed, when compared to the Amended Complaint in *Young*, Plaintiff's SAC falls far short of identifying any discernible promise regarding the quality, durability, or performance of the sheets at issue that was breached (or even could have been breached). As a result, and for the reasons stated in Ross's initial Memorandum Plaintiff's claim for breach of express warranty should be denied.

### E. Plaintiff fails to state an MMWA claim.

Ross has already explained why, to the extent Plaintiff's MMWA claim is premised on a breach of express warranty,[6] her claim must fail: because Plaintiff has entirely failed to allege the existence of a "written warranty" as defined by the MMWA. Simply put, at no point does Plaintiff allege anything resembling representations by Ross that the sheets were "defect free" or that they

---

[6] As discussed in Ross's initial Memorandum, and further discussed below, Plaintiff's claim for breach of implied warranty also fails, which is fatal to any MMWA claim to the extent it is premised on such implied warranty.

- 8 -

DOCUMENT PREPARED ON RECYCLED PAPER

DEFENDANT ROSS STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT - 4:18-CV-02671-YGR

would meet a "specified level of performance over a specified period of time," as required by the MMWA.[7] *See* 15 U.S.C. § 2301(6).

Plaintiff tries to avoid this straightforward result by stretching her allegations—and the alleged thread-count misrepresentation—well beyond their actual substance. Plaintiff argues that a representation regarding thread count "logically signaled to customers a guarantee that sheets would be extra long-lasting and able to meet a high level of performance." Resp. at 11. Even if it were possible to create a written warranty under the MMWA through a representation that "logically signaled" a promise regarding level of performance, rather than outright stating it—a proposition with which Ross disagrees—the representations here would still fall well short because Plaintiff cannot say <u>what level of performance the sheets were supposed to meet</u> (and how and why they fell short).[8] Nor does she identify the period of time over which the sheets would supposedly meet this unidentified level of performance.

The simple truth is that Plaintiff has not alleged any specified level of performance that the sheets were supposed to meet because neither Ross nor any other person ever made any such representation. Plaintiff is instead left asking the Court to make two significant logical leaps: (1) to assume that a representation regarding thread count is also somehow a representation regarding durability, softness, and longevity; and (2) to assume that simply identifying the thread count also indicates a "specified level of performance" as to those attributes over a "specified period of time." Those assumptions are unfounded in either Plaintiff's allegations or the law. The Court should therefore reject them and dismiss Plaintiff's MMWA claim.

F. **Plaintiff's reliance on *Mexia* to save her implied warranty claims is misplaced.**

Ross argued in its initial Memorandum that Plaintiff's implied warranty claim—and her MMWA claim, to the extent it relies on a breach of implied warranty—is subject to dismissal under

---

[7] For a helpful contrast, the Court can compare the allegations of the SAC with the allegations in *Young*, where (among other things) the plaintiff alleged that the light bulb manufacturer warranted that the light bulbs would provide a specific amount of energy savings over a specific period of time,. *See* Young Compl. ¶¶ 1, 4.

[8] It is worth noting, again, that Plaintiff does not ever allege that she used the sheets, which would make it impossible for her to know whether they live up to whatever level of performance was supposedly promised by Ross.

- 9 -

DEFENDANT ROSS STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT - 4:18-CV-02671-YGR

DOCUMENT PREPARED ON RECYCLED PAPER

both Missouri and California law for several reasons. In response, Plaintiff relied principally on a the decision of the California Court of Appeal in *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 95 Cal. Rptr. 3d 285 (Cal. Ct. App. 2009). That reliance is misplaced.

In *Mexia*, the court considered the application of Cal. Civ. Code. § 1791.1(c), which provides that no implied warranty may have an existence of more than one year. The court rejected an argument by defendants that this meant an implied warranty claim must be discovered and reported within one year, holding instead that in the case of "latent" defects that existed at the time of sale, the claim only needed to be asserted within four years of purchase to be within the relevant statute of limitations. *Mexia*, 174 Cal. App. 4th at 1310–11, 95 Cal. Rptr. 3d at 295–97.

While *Mexia* has been cited and applied favorably in some decisions—including in the *Daniel* decision cited by Plaintiff—other courts have criticized the decision, and warned that it would render the one-year duration of an implied warranty largely meaningless. *See, e.g.*, *Peterson v. Mazda Motor of Am., Inc.*, 44 F. Supp. 3d 965, 971–72 (C.D. Cal. 2014) (collecting cases). Those courts have limited *Mexia*'s applicability to situations "where the product is unmerchantable at purchase." *Id.* at 971. For example, in *Peterson*, the court dismissed an implied warranty claim without prejudice, noting that if the claim was to survive, "there should at least be allegations that symptoms of the defect manifested during the warranty period." *Id.* at 972.

There are no such allegations here; indeed, Plaintiff does not say when she discovered the alleged "defect" with the sheets (that their thread count was lower than represented). Based on the reading of *Mexia* embraced by the court in *Peterson* and other decisions, her claims are subject to dismissal through application of the statutory warranty period. But just as importantly, regardless of how *Mexia* is read, it also highlights the other major flaw of Plaintiff's implied warranty claim: the failure to identify a fundamental defect with the sheets. As the court in *Mexia* noted, "the core test of merchantability is fitness for the ordinary purpose for which such goods are used," and "[s]uch fitness is shown if the product is in safe condition and substantially free of defects." *Mexia*, 174 Cal. App. 4th at 1303, 95 Cal. Rptr. 3d at 289 (citations and internal quotation marks omitted). The fact that sheets may have a different thread count than represented simply does not, as Plaintiff vainly suggests, rise to the level of a failing that renders those sheets "defective" or unfit for use as

bedsheets. Instead, as Plaintiff herself recognizes, she cannot "overcome" the "hurdle" of demonstrating their unfitness as bedsheets. Resp. at 13. Her implied warranty claim must be dismissed.

### G. Plaintiff's negligent misrepresentation claim is subject to dismissal regardless of whether it sounds in negligence or fraud.

Ross argued that Plaintiff's claim for negligent misrepresentation is subject to dismissal pursuant to the economic loss rule, which bars the recovery of economic damages through negligence claims. *See Ladore v. Sony Comput. Entm't Am., LLC*, 75 F. Supp. 3d 1065, 1074-76 (N.D. Cal. 204). In her Response, Plaintiff called that argument "frivolous." Resp. at 16. Even the unpublished case cited by Plaintiff, however, acknowledges the potential for the economic loss rule to bar claims for negligent misrepresentation. *See Bret Harte Union High Sch. Dist. v. FieldTurf, USA, Inc.*, No. 116CV00371DADSMS, 2016 WL 3519294, at *5 (E.D. Cal. June 27, 2016) ("[T]he court is mindful the economic loss rule may bar negligent misrepresentation claims where the allegation runs 'closely parallel' to a concurrent breach of contract claim . . . .").

Plaintiff argues that her claim for negligent misrepresentation is not subject to the economic loss rule because it is "fraud-based." *Id.* Plaintiff's actual allegations call that assertion into question. *See, e.g.*, SAC ¶¶ 203 ("Defendant owed the Plaintiff and the Class a <u>duty of care</u> to distribute, market and sell a non-defective bedding and linen products . . . ."), 204 ("Defendant also owed . . . a <u>duty of care</u> to warn . . . ."), 205 ("Defendant breached its duty of care by <u>negligently selecting materials for the defective Products and/or failing to test the materials</u> for the defective products to ensure that thread counts . . . were in fact accurate and not overstated."), and 206 ("Defendant also breached its duty of care by <u>negligently failing to warn consumers</u> that the Products were defective.") (all emphasis added). But, if as Plaintiff says, her negligent misrepresentation claim sounds in fraud, that means it is subject to the particularity requirements of Rule 9(b) and must be dismissed along with Plaintiff's other fraud-based claims.

Either Plaintiff's negligent misrepresentation claim sounds in negligence and is barred by the economic loss rule, or it sounds in fraud and fails because it is not pleaded with particularity. This claim must be dismissed.

- 11 -

DOCUMENT PREPARED ON RECYCLED PAPER

DEFENDANT ROSS STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT - 4:18-CV-02671-YGR

## II. STANDING FOR UNPURCHASED PRODUCTS

Ross argued in its initial Memorandum that Plaintiff's purported class-action claims must be dismissed for lack of standing to the extent they relate to products not purchased by Plaintiff. Ross principally argued that Plaintiff does not have such standing because Plaintiff has not pleaded facts that show that the unpurchased products and their corresponding thread-count representations are substantially similar to the product Plaintiff purchased and Ross's alleged misrepresentations about it. In response, Plaintiff acknowledges that she must show that the unidentified products and misrepresentations are "substantially similar." She then cites several cases in which courts allowed plaintiffs to proceed with claims based on unpurchased products. Her argument, however, misconstrues her own allegations and ignores key distinctions between this case and the ones she cites.

Plaintiff first argues that the SAC "clearly defines" the products at issue to include not only the sheets she bought, but also "Hampton House 1200 TC sheet sets, and all other cotton/polyester blend sheet sets with over-inflated thread counts that were manufactured or supplied by AQ Textiles and/or Creative Textiles and sold at one of Defendant Ross's stores." Resp. at 16. The supposed clarity of this definition is called into question just one page later in the Response, where Plaintiff adds the additional limitation (not stated in the Complaint) that the products at issue are all also "multi-ply" sheet sets.[9] *Id.* at 17. Plaintiff then makes the even more questionable assertion that the SAC "contains very detailed allegations . . . regarding other sheet sets sold at Ross." *Id.* at 18. That assertion is belied by the text of the SAC itself; indeed, Plaintiff <u>does not even name</u> any other products at issue other than the Hampton House 1200 TC, and does not explain how she could possibly know any details regarding the advertised (or actual) thread count of sheets that she cannot even name.

It is that critical lack of detail that distinguishes Plaintiff's allegations from those in the cases she cites. In *Young v. Cree, Inc.*, No. 17-CV-06252-YGR, 2018 WL 1710181 (N.D. Cal.

---

[9] The product "definition" is also called into question by other allegations of the SAC, which refer not just to sheet sets, but more broadly to "bedding and linen products." *See, e.g.*, SAC ¶¶ 43, 49, 51, & 56.

- 12 -

DEFENDANT ROSS STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT - 4:18-CV-02671-YGR

1  Apr. 9, 2018), the Court allowed claims to go forward for unpurchased products, but only where
2  the plaintiff had specifically identified the products by name and specifically identified the
3  misrepresentations made about them. *Id.* at *9. In *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp.
4  2d 881 (N.D. Cal. 2012), the plaintiff similarly identified unpurchased products by name and
5  specifically identified the misrepresentations made about them. *Id.* at 886 (listing unpurchased
6  products including "Baby Avalon Organics Silky Cornstarch Baby Powder, Jason Aloe Vera
7  Soothing Body Scrub, Jason Thin to Thick Extra Volume Conditioner, Jason PowerSmile All–
8  Natural Whitening Toothpaste, Jason Curl Defining Cream, and Avalon Organics Grapefruit &
9  Geranium Refreshing Shampoo"). Similarly, in *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-
10 11-2910 EMC, 2012 WL 2990766 (N.D. Cal. July 20, 2012), the plaintiff made detailed allegations
11 about the 59 different varieties of ice cream at issue, most of which she did not purchase. *Id.* at
12 *13 (referencing allegations that "21 out of 59 ice creams contain propylene glycol monostearate;
13 43 out of 59 contain potassium carbonate; and all 59 appear to contain glycerin, mono and
14 diglycerides, tetrasodium pyrophosphate, and xanthan gum"). Other cases cited by Plaintiff
15 reference similar allegations. *See Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 935 (N.D. Cal.
16 2014) (unpurchased products included three specific varieties of canned tuna); *Anderson v. Jamba
17 Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012) (unpurchased products at issue were
18 specifically identified smoothie kits).

19 Plaintiff also fails to distinguish the decision that is most directly on point—this Court's
20 decision in *Rushing v. Williams-Sonoma, Inc.*, No. 16-CV-01421-WHO, 2016 WL 4269787 (N.D.
21 Cal. Aug. 15, 2016). In *Rushing*, the plaintiff's Third Amended Complaint was at issue. *See* 16-
22 CV-01421, DE # 22 (hereinafter "Rushing Compl."). In that complaint, the plaintiff specifically
23 identified each of 31 unpurchased products that were at issue by brand name, product name, and
24 thread count. *See* Rushing Compl. ¶ 76(a)-(ee). Even then, this Court dismissed his claims as to
25 unpurchased products, giving him leave to re-file "only to the extent that he can plausibly allege,
26 consistent with Rule 11, that the unpurchased products are two-ply products that suffer from the
27 same deception of which he complains (*e.g.*, defendants illegally or deceptively counted both plys
28 in a two-ply yarn in order to state a higher thread count)." *Rushing*, 2016 WL 4269787, at *4.

- 13 -

DOCUMENT PREPARED ON RECYCLED PAPER

Contrary to Plaintiff's arguments, the decision in *Rushing* demonstrates exactly why her allegations are insufficient to show that the unnamed, unidentified products at issue are "substantially similar" to the one sheet set she did purchase. Rather than specifically identifying the products she says are at issue, she instead reveals her claims with respect to those products as nothing more than a fishing expedition—an attempt to expand the scope of discovery so that she can seek to find evidence of alleged violations that she does not already have and cannot even plead in broad terms. The Court should recognize Plaintiff's vague and overbroad claims for what they are and refuse to allow her to proceed with claims for unidentified products that she did not purchase herself.

Finally, Plaintiff also suggests that the Court should not consider the issue of standing for unpurchased products at this stage, but should instead defer that determination until class certification. That is consistent with the conclusion that these claims are intended to open discovery in hopes that Plaintiff will later find a basis for her claims. Plaintiff ignores the decisions—ones that she herself cites—in which this Court has held that the question of standing should <u>only</u> be deferred to class certification where the plaintiff's allegations are sufficient to demonstrate that the purchased and unpurchased products are similar. *See, e.g., Hendricks*, 30 F. Supp. 3d at 934–35; *Anderson*, 888 F. Supp. 2d at 1005–06. Plaintiff has not made that showing. The Court should not defer the question of standing with respect to unpurchased products until class certification and should instead dismiss Plaintiff's claims with respect to unpurchased, unidentified products.

### III. CONCLUSION

For the reasons stated herein and in its initial Memorandum, Ross respectfully requests that the Court dismiss Plaintiff's Second Amended Complaint and her claims against Ross, in their entirety, with prejudice.

Respectfully submitted, this the 14th day of February, 2019.

- 14 -

DEFENDANT ROSS STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT - 4:18-CV-02671-YGR

| | |
|---|---|
| Dated: February 14, 2019 | JEFFREY B. MARGULIES<br>LAUREN A. SHOOR<br>ANDY GUO<br>**NORTON ROSE FULBRIGHT US LLP**<br><br>JENNIFER K. VAN ZANT<br>RYAN C. FAIRCHILD<br>**BROOKS, PIERCE, MCLENDON,**<br>**HUMPHREY & LEONARD, LLP**<br><br>By_____/s/ Andy Guo_____<br>    ANDY GUO<br>    Attorneys for Defendants<br>    ROSS STORES, INC. |

- 15 -

DEFENDANT ROSS STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT - 4:18-CV-02671-YGR