1   Michael A. McShane (CA #127944)
    mmcshane@audetlaw.com
2   Ling Y. Kuang (CA #296873)
    lkuang@audetlaw.com
3   Kurt D. Kessler (CA #327334)
    kkessler@audetlaw.com
4   **AUDET & PARTNERS, LLP**
    711 Van Ness Avenue, Suite 500
5   San Francisco, CA 94102-3275
    Telephone:    (415) 568-2555
6   Facsimile:    (415) 568-2556

7   Counsel for Plaintiff Dominique Morrison on
    behalf of herself and all others similarly situated

8   [*Additional Counsel on Signature Block*]

9

10              **UNITED STATES DISTRICT COURT**

11            **NORTHERN DISTRICT OF CALIFORNIA**

12                   **OAKLAND DIVISION**

13   DOMINIQUE MORRISON, on behalf of       Case No.: 4:18-cv-02671-YGR
     herself and all others similarly situated,
14                                           **NOTICE OF MOTION AND MOTION FOR**
                    Plaintiff,               **PRELIMINARY APPROVAL OF CLASS**
15                                           **ACTION SETTLEMENT; MEMORANDUM**
                                             **OF POINTS AND AUTHORITIES IN**
16          v.                               **SUPPORT THEREOF**

17   ROSS STORES, INC.,                      Date:        **TBD**
18                   Defendant.              Time:        **TBD**
                                             Place:       Courtroom 1, 4th Floor
19                                           Judge:       Hon. Yvonne Gonzalez Rogers

20                                           Complaint Filed:    May 7, 2018
21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that that on such date and time as the Court may set that is convenient to its schedule, in Courtroom 1 of the United States District Court for the Northern District of California, Ronald V. Dellums Federal Building, 1301 Clay Street, Oakland, CA 94612, the Honorable Yvonne Gonzalez Rogers, presiding, Plaintiff Dominique Morrison will and hereby do move for an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule") to preliminarily approve the proposed Settlement; (ii) certifying a class for settlement purposes ("Settlement Class"); (iii) approving the form and manner of notice to the Settlement Class; (iv) approving the selection of the Settlement Administrator; and (iv) scheduling a Final Hearing before the Court. The proposed Settlement is within the range of what is fair, reasonable, and adequate such that notice of its terms may be disseminated to Settlement Class Members and a Final Hearing to finally approve the proposed Settlement scheduled. This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the accompanying Declaration of Michael A. McShane in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement, and the exhibits attached thereto, including the Settlement Agreement ("SA" or "Settlement"), the Declarations of Julie N. Greene and Jeffrey Margulies, and the exhibits attached thereto, the pleadings and records on file in this Action, and other such matters and argument as the Court may consider at the hearing of this motion.

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND ..................................................................................2

    A.  Plaintiff's claims.............................................................................................2

    B.  The Court denies the majority of Ross's motion to dismiss............................2

    C.  The Parties engaged in extensive discovery. ..................................................3

    D.  Plaintiff prepares for class certification.........................................................4

    E.  The parties' settlement negotiations. ..............................................................4

        1.    *The Proposed Settlement Class.* ..........................................................4

        2.    *The Settlement Terms.* .........................................................................4

        3.    *The Proposed Release.* .........................................................................5

        4.    *CAFA Notice.* ......................................................................................7

III.    CLAIMS ADMINISTRATION AND NOTICE ......................................................7

IV.   EXCLUSION AND OBJECTION RIGHTS...........................................................7

V.     ATTORNEY'S FEES, EXPENSES, AND INCENTIVE AWARDS.......................8

VI.   ARGUMENT .......................................................................................................8

    A.  The Settlement Class should be preliminarily certified...................................8

    B.  The Settlement Class satisfies the requirements of rule 23(a). ........................9

    C.  The Settlement Class satisfies the requirements of Rule 23(b)(2). .................11

    D.  The Settlement Class satisfies the requirements of Rule 23(b)(3). .................11

    E.  The Settlement meets the Northern District of California's Procedural Guidelines. ........14

    F.  The Settlement is fair, reasonable, and adequate. ...........................................15

    G.  The Settlement Agreement was the product of serious, informed, non-collusive, arms-length negotiation. ..............................................................................16

    H.  The Settlement Agreement does not provide preferential treatment.................17

    I.  The Settlement falls within the range of possible approval. ............................18

    J.  The Settlement Agreement has no deficiencies................................................18

    K.  The risk, expense, complexity, and duration of further litigation. ...................19

i

L.  Counsel's experienced judgment and views........................................................20

VII.   CONCLUSION ...............................................................................................................20

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**          **CASE NO. 4:18-CV-02671-YGR**

## **TABLE OF AUTHORITIES**

Cases

*Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997) ............................................................. 9

*Ang v. Bimbo Bakeries USA, Inc.*, 2014 WL 1024182 (N.D. Cal. Mar. 13, 2014) ................................. 11

*Campbell v. Facebook, Inc.*, 2017 U.S. Dist. LEXIS 132624 (N.D. Cal. Aug. 18, 2017) ..................... 13

*Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544 (N.D. Cal. 2007) ............................................... 7

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ................................................. 8

*Fontes v. Heritage Operating, L.P.*, 2016 U.S. Dist. LEXIS 50502 (S.D. Cal. Apr. 14, 2016) .............. 7

*Fowler v. Wells Fargo Bank, N.A.*, No. 17-cv-02092-HSG, 2018 WL 4003286 (N.D. Cal. Aug. 22, 2018) ....................................................................................................... 9

*Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989) ....................................................... 7

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) ........................................... 9, 10

*Harris v. Vector Mktg. Corp.*, 2011 U.S. Dist. LEXIS 48878 (N.D. Cal. Apr. 29, 2011) ................... 13

*Hart v. Colvin*, 2016 U.S. Dist. LEXIS 155799 (N.D. Cal. Nov. 9, 2016) ................................. 13

*Hazlin v. Botanical Labs., Inc.*, No. 13cv0618-KSC, 2015 U.S. Dist. LEXIS 189687 (S.D. Cal. May 20, 2015) ................................................................................................. 14

*Hickox-Huffman v. US Airways, Inc.*, No. 10-cv05193-VKD, 2018 WL 5291990 (N.D. Cal. Oct. 22, 2018) ....................................................................................................... 9

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, (N.D. Cal. Aug. 15, 2018) ..................... 10

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 536661, at *7 (N.D. Cal., Feb. 11, 2019) ...................................................................... 10

*In re Heritage Bond Litig.*, 546 F.3d 667 (9th Cir. 2008) ....................................................... 7

*In re High-Tech Employee Antitrust Litig.*, 2013 U.S. Dist. LEXIS 180530 (N.D. Cal. Oct. 30, 2013) ....................................................................................................... 12

*In re Hyundai & Kia Fuel Econ. Litig.*, 2019 WL 2376831 (9th Cir. June 6, 2019) ..................... 9

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ................................. 13

*In re Synoc ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) ....................................................... 7

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................... 12, 14

*In re Wireless Facilities, Inc. Secs. Litig. II*, 253 F.R.D. 607 (S.D. Cal. 2008) ................................. 7, 12

*Johnson v. Metro-Goldwyn-Mayer Studios Inc.*, No. C17-541 RSM, 2018 WL 5013764 (W.D. Wash. Oct. 16, 2018) ............................................................................................................................. 10

*Kline v. Dymatize Enters., LLC*, 2016 U.S. Dist. LEXIS 142774 .............................................. 12, 15

*Knight v. Red Door Salons, Inc.*, 2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009) ................ 16

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) .............................................................. 12

*Lilly v. Jamba Juice Co.*, 2015 U.S. Dist. LEXIS 34498 (N.D. Cal. Mar. 18, 2015) ........................... 12

*McDonald v. CP OpCo, LLC*, 2019 U.S. Dist. LEXIS 13376 (N.D. Cal. Jan. 28, 2019) ..................... 12

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th. Cir. 2010) ................................................................ 11

*Smith v. Keurig Green Mt., Inc.*, No. 18-cv-06690-HSG, 2020 U.S. Dist. LEXIS 172826 (N.D. Cal. Sep. 21, 2020) .............................................................................................................. 8

*Stanton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ............................................................... 13

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 301, 303-04 (3d Cir. 2011) ........................................ 9

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ........................................................ 8

*Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437 (9th Cir. 1989) ............................. 6

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996) .................................... 11

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010) ...................................... 15

*Villegas v. J.P. Morgan Chase & Co.*, 2012 U.S. Dist. LEXIS 166704 .............................................. 14

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .......................................................... 8, 11

*Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998) ................................................................ 11

*White v. Experian Info. Sols., Inc.*, 2009 WL 10670553 (C.D. Cal. May 7, 2009) ........................... 12

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) ............................... 8, 10, 11

**Statutes**

15 U.S.C. § 2301 ........................................................................................................... 2

28 U.S.C. § 1715(b) ...................................................................................................... 5

Bus. & Prof. Code § 17200 ............................................................................................. 2

Bus. & Prof. Code § 17500 ............................................................................................. 2

Civ. Code § 1750 ........................................................................................................... 2

Class Action Fairness Act of 2005 ................................................................................. 5

Missouri Rev. Stat. § 407.020 ........................................................................................ 2

**Rules**

Fed. R. Civ. P. 23(a)(3) ................................................................................................. 8

Fed. R. Civ. P. 23(a)(4) ................................................................................................. 8

Fed. R. Civ. P. 23(b)(2) ....................................................................................... 7, 8, 9, 13

Fed. R. Civ. P. 23(e) ..................................................................................................... 7

**Treatises**

*Newberg on Class Actions* § 13:15 (5th ed. 2014) ..................................................... 12

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**          **CASE NO. 4:18-cv-02671-YGR**

## I.  INTRODUCTION

Plaintiff Dominique Morrison moves for preliminary approval of a proposed nationwide class settlement with Defendant Ross Stores, Inc. ("Ross" or "Defendant"). After three years of hard-fought litigation, Ross has committed to implementing corporate-wide practices and policies concerning their bed sheet/linen products, specifically polyester/cotton sheets ("Products") that it first purchases from AQ Textiles, LLC ("AQ") and then offers for retail sale to the class. The modifications to Ross's practices and policies, which the Settlement Agreement ("SA") requires enforcement for up to twelve years, goes to the core of the claims in this litigation -- e.g., the inaccurate representation of the thread count on the labels of Products sold by Ross which were purchased from AQ. This settlement will fully resolve the claims against Ross by a proposed Settlement Class of all individuals in the United States and its territories who purchased the Products for personal use from a Ross store on or after May 7, 2014 and through to the Objection Deadline.[1] However, the settlement also specifically excludes AQ Textiles and Creative Textile Mills Private Limited ("Creative") so that class members may still pursue claims against these entities, including for monetary damages.

The settlement merits preliminary approval.  It was negotiated at arm's-length with the assistance of an experienced mediator, Judge Elizabeth Laporte (ret.), after the parties completed substantial discovery and the Court denied nearly all of Ross's motion to dismiss. This resolution also eliminates the substantial risk of continued litigation. And notably, specifically excluded from the settlement and release are AQ Textiles, LLC and Creative Textile Mills Private Limited, the distributor and manufacturer of the subject Products respectively. After almost three-years of litigation, the Plaintiffs recognized that the primary actor in manufacturing and mislabeling these sheets was not Ross, but AQ and Creative, and Ross, with its limited role in bringing the Products to market, possesses a viable innocent retailer defense. Accordingly, the SA achieves the purpose of ensuring that AQ/Creative bed sheets sold at Ross are accurately marketed, while still allowing the purchaser plaintiffs to pursue monetary claims against the primary alleged bad actors.

The proposed settlement is fair, reasonable, and adequate, particularly in light of the risks and

---

[1] The terms of the settlement are memorialized in the parties' Settlement Agreement ("SA" or "Settlement"), attached as Exhibit 1 to the Declaration of Michael McShane ("McShane Decl.").

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**          **CASE NO. 4:18-cv-02671-YGR**

costs of continued litigation. Plaintiff requests that the Court grant this motion for preliminary approval, preliminarily certify the proposed national Settlement Class, and approve the proposed Notice Plan, Long-Form and Summary Notices concurrently filed as exhibits to the Declaration of Julie N. Greene.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's claims.

Plaintiff Morrison filed this class action lawsuit on May 7, 2018 against Ross, AQ, and Creative. Plaintiff alleged that the bed sheets that she purchased from Ross, which were imported through AQ and manufactured by Creative, were falsely represented to have a higher thread counts than they actually had. Plaintiff asserted claims on behalf of herself and a proposed California class of all purchasers that purchased bedding products from defendants that were inaccurately represented as having higher thread counts and for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* ("MMWA"), fraud, violation of the Consumer Legal Remedies Act, Civ. Code § 1750, *et seq.* ("CRLA"), violation of California's Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.* ("UCL") under the unlawful, unfair, and fraudulent prong, violation of False Advertising Law, Bus. & Prof. Code § 17500, *et seq.* ("FAL"), breach of express warranty, breach of warranty of merchantability, and negligent misrepresentation.  Plaintiff sought on behalf of herself and the Class a permanent injunction prohibiting, restraining, and enjoining defendants from engaging in the conduct outlined in the Complaint, including, but not limited to, manufacturing, marketing, advertising, selling, and distributing bedding and linen products that have inflated thread counts as well as modifying and/or changing Ross' practices and policies regarding ensuring the accuracy of the representations of the thread count on the products' packaging. *See*, Compl. ¶¶ 72, 150, 157, 166, 173.

### B.    The Court denies the majority of Ross's motion to dismiss.

On June 29, 2018, AQ and Ross each separately filed motions to dismiss the Complaint.  On July 20, 2018, prior to the motion to dismiss hearings, Plaintiff filed an amended complaint ("FAC"). Plaintiff's FAC alleged the same claims, but added a claim for violation of the Missouri Merchandising Practices Act ("MMPA"), Missouri Rev. Stat. § 407.020. Rather than a California class, the FAC sought to certify a proposed Missouri and nationwide class. The claims alleged under the CLRA, UCL, and FAL are alleged against Ross only, the others are alleged against all defendants.

2

On August 3, 2018, AQ and Ross again moved to dismiss the FAC. On November 14, 2018, the Court granted both motions but allowed Plaintiff leave to amend with respect to the claims against Ross only. The Court granted AQ's motion to dismiss on personal jurisdiction grounds and from that point forward AQ was no longer part of this litigation.[2]

On December 4, 2018, Plaintiff filed a Second Amended Complaint ("SAC") alleging the same claims in the FAC, and adding a claim for unjust enrichment. Plaintiff asserted these claims on behalf of herself and a proposed Missouri and nationwide class who purchased bedding or linen products from Ross that were manufactured or supplied by AQ and/or Creative and that were packaged or advertised with representations regarding thread count. On January 4, 2019, Ross filed a motion to dismiss the SAC.

On May 30, 2019, the Court granted Ross's motion to dismiss as to Plaintiff's claims for violation of MMWA and unjust enrichment and denied Ross motion as to Plaintiff's claims for: (1) fraud; (2) violation of the CLRA; (3) violation of UCL under its unlawful prong, unfair prong, and fraudulent prong; (4) violation of the FAL; (5) breach of express warranty; (6) breach of warranty of merchantability; (7) negligent misrepresentation; and (8) violation of the MMPA.

On June 20, 2019, Ross answered Plaintiff's SAC, denying Plaintiff's allegations and asserting several affirmative defenses.

### C.    The Parties engaged in extensive discovery.

The parties engaged in extensive discovery during the almost three-year course of this litigation. Plaintiff served interrogatories, requests for production, and request for admission on Ross and received thousands of pages of documents in response. McShane Decl. ¶ 6.  The parties conducted depositions of Ross's corporate representative, and employees, officers and designees and also served several subpoenas on AQ and other third parties involved in the bed sheet and linen product testing businesses. Likewise, the Plaintiff responded to Ross' written discovery requests, produced documents and was deposed. *Id.*

---

[2] Subsequent to the dismissal of AQ in this matter, Plaintiff Morrison, along with several other Plaintiffs, filed a putative class action against AQ in North Carolina. *See Hill et al. v. AQ Textiles LLC et al*, Middle District of North Carolina, 1:19-cv-00983-LCB-JLW. The Court *sua sponte* dismissed the complaint upon the grounds that Plaintiffs needed to plead the requisite allegations to establish that they have standing to bring the claims. The Plaintiffs have sought leave to amend their complaint to add allegations to establish Plaintiffs' standing to bring the claims. That motion is pending.

Plaintiff also worked extensively with liability and damage experts who were prepared to submit reports and testify for purposes of both class certification and trial.

### D. Plaintiff prepares for class certification.

Up until the time of the settlement, Plaintiff remained focused on filing its motion for class certification. Plaintiff compiled evidence, arranged expert materials, and began developing a trial plan. The most recent scheduling Order had a deadline of April 15, 2021 for the Plaintiff to file their motion for class certification. *See* Dkt. No. 90.

### E. The parties' settlement negotiations.

The parties participated in three mediation sessions. They took place on November 13, 2020 with the Honorable Jay C. Gandhi (ret.) and again on February 18 and March 3, 2021 with the Honorable Hon. Elizabeth D. Laporte (ret.). McShane Decl. ¶ 9; *see also*, Declaration of Jeffrey Margulies ("Margulies Decl.") at ¶¶ 11-14. Although a final settlement was not achieved during the last mediation before Judge Laporte, the vast majority of the terms were agreed to at that time. Subsequently, the parties were able to resolve their remaining issues, resulting in the Settlement Agreement now being presented to this Court.

#### 1. The Proposed Settlement Class.

The Settlement Class is defined as: all persons in the United States who purchased the Products for personal use from a Ross store on or after May 7, 2014 to the Objection Deadline. Excluded from the Settlement Class are: (a) Ross's employees, officers, directors and attorneys; (b) persons who timely and properly exclude themselves from the Settlement Class as provided herein, and (c) the Court, the Court's immediate family, and Court staff.

#### 2. The Settlement Terms.

For a period of up to twelve years, Ross is required to ensure that the thread count of the AQ Products it receives and intends to sell conform to industry standards for the testing and verification of thread count, so that the actual thread count for Products are consistent with the representations regarding thread count listed on the labeling. Accordingly, Ross agrees to do the following:

a. Ross will require AQ to certify in writing on an annual basis beginning on January 1st after the Effective Date that the description of the thread count on its packaging for

Products accurately reflects the actual thread count as determined by ASTM 3775, as officially interpreted and amended from time to time, or any successor industry standard for textile thread count for Products sold to Ross. Ross shall not be required to obtain a certification from AQ if it has not purchased any Products within the previous year and has not issued any purchase orders for future purchases of Products; provided, however, that Ross shall require AQ to provide a certification before issuing any subsequent purchase orders for Products to AQ.

b.      Require AQ to report in writing on an annual basis, beginning on January 1st after the Effective Date, as to whether there are any known investigations by any outside entity or pending claims or lawsuits regarding AQ's representations concerning thread count on the Products, any remedial actions taken regarding these claims or investigations, and if no remedial actions were taken, the reasons for which remedial actions were not taken.

c.      Commencing no later than the Effective Date, Ross will require AQ to supply a passing test report for each new style of Products showing compliance with ASTM 3775, as officially interpreted and amended from time to time, or any successor industry standard for textile thread count, before taking possession of such style. Only one test report is required if the Product differs only by size or color.

The aforementioned injunctive relief will remain in effect for twelve years following Final Approval of this Settlement, with such terms automatically terminating after twelve years. Ross may seek Early Termination of the injunctive relief terms no earlier than seven years, provided that there have been no violations of the required injunctive relief terms within the preceding three years.

3.      *The Proposed Release.*

Upon Final Approval, the parties shall be barred from instituting, maintaining, or prosecuting (1) any and all claims, liens, demands, actions, causes of action, rights, duties, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, that actually were, or could have been, asserted in the Litigation as to each Party, whether based upon any violation of any state or federal statute or common law or regulation or otherwise, or arise directly or indirectly out of, or in any way relate to, the allegations, claims, or contentions that Plaintiff, on the one hand, and Ross, on the other hand, have had in the past, or now have, related in any manner to Ross's

products and services or business affairs; and (2) any and all other claims, liens, demands, actions, causes of action, rights, duties, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, that Plaintiff, on the one hand, and Ross, on the other hand, have had in the past or now have, related in any manner to any and all Released Parties' products, services or business affairs, or otherwise.

Upon Final Approval, Settlement Class Members shall have unconditionally, completely, and irrevocably released and discharged the Released Parties from any and all claims, liens, demands, actions, causes of action, rights, duties, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, whether arising under any international, federal, state or local statute, ordinance, common law, regulation, principle of equity or otherwise, that that were, or could have been, asserted in the Litigation and that arise out of or relate to the allegations thereof, or to any similar allegations or claims regarding the Products (the "Released Claims"). Upon Final Approval, Settlement Class Members shall be forever barred from initiating, maintaining, or prosecuting any Released Claims against Released Parties.

All Parties to this Settlement Agreement, including the Settlement Class, specifically acknowledge that they have been informed by their legal counsel, via the Notice, of Section 1542 of the California Civil Code (and any similar State laws) and they expressly waive and relinquish any rights or benefits available to them under this statute (and any similar State laws). Notwithstanding Section 1542 of the California Civil Code, or any other federal or state statute or rule of law of similar effect, this Settlement shall be given full force and effect according to each and all of its expressed terms and provisions, including those related to any unknown or unsuspected claims, liabilities, demands, or causes of action which are based on, arise from or are in any way connected with the Litigation.

Notably, specifically excluded from the release are AQ Textiles, LLC and Creative Textile Mills Private Limited, the distributor and manufacturer of the subject Products. As noted above, Ross had a strong innocent retailer defense given its limited role in bringing the Products to market. Accordingly, this settlement achieves the purpose of ensuring that AQ/Creative Products sold at Ross are accurately marketed, while still allowing purchasers to pursue monetary claims against the primary bad actors.

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**          **CASE NO. 4:18-cv-02671-YGR**

1

        **4.**    *CAFA Notice.*

2      This settlement is subject to the requirements of the Class Action Fairness Act of 2005, which

3 requires that notice containing certain required information be served upon the appropriate State and

4 Federal officials within ten days of the filing of a proposed settlement. 28 U.S.C. § 1715(b). The

5 Settlement Administrator will prepare and mail the CAFA notice.

6    **III.**     **CLAIMS ADMINISTRATION AND NOTICE**

7      Ross will retain CPT Group as Settlement Administrator to assist with the administration and

8 notice of the Settlement and will pay for all of the costs of notice and the claims administration (*see* SA

9 ¶¶ 5.2, 5.7) and the Parties will supervise the Settlement Administrator in the performance of the notice

10 function. SA ¶ 5.5. The Settlement Administrator will help implement the terms of this Settlement

11 including distribution of Class Notice[3] in accordance with the Notice Plan[4] to the Settlement Class,

12 subject to the Court's approval, as follows:

13          (a)    A robust notice campaign using various media tactics efforts, including digital

14 display advertisement, social media advertisement, OLV, print publication, paid search, and press

15 release;

16          (b)    A case dedicated website (that will store relevant information, among other things,

17 relevant dates, case and notice materials, and other materials as the Parties may mutually agree); and

18          (c)    A toll-free number through which Class Members can get basic information.

19      Subject to Court approval, the Notice Plan seeks to reach approximately 80% or more of the

20 estimated 800,000 Class Members. *See* Greene Decl. ¶¶ 28-29. Notice will begin on a rolling basis

21 approximately 30 days after the Court provides preliminary approval of the proposed Settlement, and

22 will be completed within 60 days from commencement or 90 days of the entry of the preliminary

23 approval order.

24    **IV.**     **EXCLUSION AND OBJECTION RIGHTS**

25      The Settlement also accounts for any Class Member who wishes to object or exclude themselves

26 from the settlement. Any objections must be submitted or postmarked no later than the Objections

27

28

---

[3] *See* Exhibits B1 and B2, attached as exhibits to the Declaration of Julie N. Greene.
[4] *See* Exhibit B attached as exhibit to the Declaration of Julie N. Greene.

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**       **CASE NO. 4:18-cv-02671-YGR**

1  Deadline, and any opt-outs must be submitted online or received by the Settlement Administrator by the

2  Exclusion Deadline. The Settlement requires that any objection or opt-out request contain sufficient

3  information to reasonably demonstrate that the submission is made by a person who actually has standing

4  as a Class Member.

5  ## V.  ATTORNEY'S FEES, EXPENSES, AND INCENTIVE AWARDS

6  Class Counsel intends to make an application to the Court for an Attorneys' Fee and Expense

7  Award in an amount not to exceed $750,000, plus reimbursement of Class Counsel's costs and expenses.

8  Class Counsel together, has spent approximately 2,121.25 total hours litigating this case which amounts

9  to a lodestar of approximately $1,487,093.75 and has spent $33,949.78 in costs towards the prosecution

10 of this action. Any motion for attorneys' fees and costs and expenses must be filed at least thirty-five

11 days before the Objection Deadline.

12 Plaintiff intends to apply to Court for an Incentive Award for Ms. Morrison as compensation for

13 the time and effort undertaken in and risks of pursuing this Litigation. The Incentive Award shall not

14 exceed $5,000.

15 ## VI.  ARGUMENT

16 As a matter of public policy, settlement is a strongly favored method for resolving disputes.

17 *See Utility Reform Project v. Bonneville Power Admin*., 869 F.2d 437, 443 (9th Cir. 1989). This is

18 particularly true with class actions, where, as here, "substantial resources can be conserved by

19 avoiding the time, cost, and rigors of formal litigation." *Fontes v. Heritage Operating, L.P*., 2016 U.S.

20 Dist. LEXIS 50502, *7 (S.D. Cal. Apr. 14, 2016) (citation omitted); *see also In re Synoc ERISA Litig*.,

21 516 F.3d 1095, 1101 (9th Cir. 2008) (Public policy "strong[ly] … favors settlements, particularly

22 where complex class action litigation is concerned."); *Franklin v. Kaypro Corp*., 884 F.2d 1222, 1229

23 (9th Cir. 1989) ("[O]verriding public interest in settling and quieting litigation" is "particularly true in

24 class action suits." (internal quotations omitted)).

25 ### A.  The Settlement Class should be preliminarily certified.

26 The Settlement Class satisfies the requirements of Rule 23(a) and (b)(2) and (b)(3). The Rule

27 23(a) requirements are numerosity, commonality, typicality and adequacy. Rule 23(b)(2) requires a

28 plaintiff to establish that "the party opposing the class [must have] acted or refused to act on grounds

8

that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) requires plaintiffs to establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3)

Rule 23(e) requires Court approval before the claims, issues, or defenses of a class proposed to be certified can be settled, voluntarily dismissed, or compromised. Fed. R. Civ. P. 23(e). The purpose of this rule "is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Synoc.*, 516 F.3d at 1100. Accordingly, if a settlement is "fundamentally fair, adequate, and reasonable," it must be approved. *In re Heritage Bond Litig.*, 546 F.3d 667, 674-675 (9th Cir. 2008); *see also In re Wireless Facilities, Inc. Secs. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.").

### B.  The Settlement Class satisfies the requirements of rule 23(a).

The proposed Settlement Class satisfies the numerosity requirement.  The Settlement Class consists of "all persons in the United States who purchased the Products for personal use from a Ross store on or after May 7, 2014 to the Objection Deadline" a class of, at a minimum, thousands of consumers. See *Celano v. Marriott Int'l Inc*., 242 F.R.D. 544, 548-49 (N.D. Cal. 2007) (numerosity is generally satisfied when a class has at least 40 members). *See also*, McShane Decl. ¶ 7.

The Settlement Class also satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention," of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Common questions include:

1. Does the ASTM standard counting method apply to CVC sheets? If so, how would one count the multiple polyester filaments per yarn using that method?

2. How does AQ's alternative counting method differ from the ASTM standard counting method? Does the alternative method result in higher thread counts than the standard method?

9

3.   When did Ross know (or, when should it have known) that the thread counts on its AQ-
supplied sheets were inflated beyond the ASTM standard?

Here, the determination of the above common questions "will resolve an issue that is central to the validity of each [claim] in one stroke" as to the claims of all Settlement Class members. *Id.* In 23(b)(2) injunctive relief certification, commonality is found when polices and practices apply to the class as a whole – as they do here. *See Gray v. Golden Gate Nat'l Rec. Area,* 279 F.R.D. 501, 520 (N.D. Cal. 2011); P*arsons v. Ryan*, 754 F.3d 657, 683 (9th Cir. 2014) (same). Additional common questions are discussed more fully below in the predominance section.

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of Settlement Class members because they stem from the same alleged conduct i.e. thread count inflation and misrepresentation on the Products' packaging and seek relief under the same legal theories. *Smith v. Keurig Green Mt., Inc.*, No. 18-cv-06690-HSG, 2020 U.S. Dist. LEXIS 172826, at *9 (N.D. Cal. Sep. 21, 2020) (class relying on the same alleged misrepresentations satisfied typicality); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (typicality was satisfied where the tires on all class members' vehicles suffered from the same alleged defect and regardless of manifestation of the defect); *In re Static Random Access Memory Antitrust Litig.*, 264 F.R.D. 603, 609 (N.D. Cal. 2009) (typicality in 23(b)(2) certification found "even though they may have used different purchasing procedures, purchased different quantities or a different mix of products, or received different prices than other class members."); *I.B. v. Facebook, Inc.*, 82 F. Supp. 3d 1115, 1129 (N.D. Cal. 2015) (typicality found in 23(b)(2) injunctive relief).

Finally, the adequacy requirement is satisfied when the class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To make this determination, "courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (citation omitted). Plaintiff and her counsel have continued to vigorously represent the class and have no conflicts of interest with any Settlement Class Members. Moreover, Class Counsel is

10

1  eminently qualified and has a long history and experience with prosecuting class actions of this kind.

2  *See* McShane Decl. ¶¶ 10-13 (CV and Firm Resumes of Class Counsel).

3  **C.  The Settlement Class satisfies the requirements of Rule 23(b)(2).**

4  This Settlement Class seeks to be certified under Rule 23(b)(2). To certify a Rule 23(b)(2)

5  class, "the party opposing the class [must have] acted or refused to act on grounds that apply generally

6  to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting

7  the class as a whole." Fed. R. Civ. P. 23(b)(2).

8  Unlike Rule 23(b)(3), Plaintiff does not need to show predominance of common issues or

9  superiority of class adjudication, but only that there is a cohesiveness of class claims. *Walters v. Reno*,

10  145 F.3d 1032, 1047 (9th Cir. 1998). To certify a class under Rule 23(b)(2), it is generally sufficient

11  "that class members complain of a pattern or practice that is generally applicable to the class as a

12  whole." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th. Cir. 2010). "The key to [a Rule 23(b)(2)] class

13  is ... the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the

14  class members or as to none of them." *Dukes*, 131 S. Ct. at 2557 (internal quotation marks omitted).

15  Here, Plaintiff alleges that Ross is "act[ing] or refus[ing] to act on grounds that apply generally

16  to the class." Fed. R. Civ. P. 23(b)(2). The claims of each member of each proposed class all relate to

17  one specific practice of providing inaccurate and overstated thread count representations on the

18  packaging of the Products. If one misrepresentation on a product purchased by one class member is

19  illegal, then the misrepresentations on all products purchased by all class members are illegal. See *Ang*

20  *v. Bimbo Bakeries USA, Inc.*, 2014 WL 1024182, at *8-9 (N.D. Cal. Mar. 13, 2014). The same issues

21  of law pertain to each class member and the same declaratory and injunctive relief is appropriate with

22  respect to all class members. Accordingly, this Settlement Class should be certified under Rule

23  23(b)(2).

24  **D.  The Settlement Class satisfies the requirements of Rule 23(b)(3).**

25  Class certification is appropriate under Rule 23(b)(3) when "questions of law or fact common

26  to the members of the class predominate over any question affecting only individual members, and . . .

27  a class action is superior to other available methods for the fair and efficient adjudication of the

28  controversy." Both requirements are met by the settlement class here.

11

1. <u>Common questions predominate over questions affecting individual class members.</u>

"When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)[.]'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted); *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) ("When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."). In cases involving consumer fraud, predominance is "'readily met'" because "a company's mass marketing efforts, common to all consumers, misrepresented the company's product[.]" *In re Hyundai & Kia Fuel Econ. Litig.*, 2019 WL 2376831, at *7 (9th Cir. June 6, 2019) (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997)).

Moreover, "whether a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or for settlement." *In re Hyundai*, 2019 WL 2376831, at *7. As the Supreme Court has explained, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods.*, 521 U.S. at 620. "Courts . . . regularly certify settlement classes that might not have been certifiable for trial purposes because of manageability concerns." *In re Hyundai*, 2019 WL 2376831, at *7 (quoting 2 William B. Rubenstein, Newberg on Class Actions § 4:63 (5th ed. 2018)).

The Ninth Circuit has held that "differences between state consumer protection laws" do not preclude certification of a Rule 23(b)(3) settlement class where there is a "common nucleus of facts and potential legal remedies." *Hanlon*, 150 F.3d at 1022-23; see *In re Hyundai*., 2019 WL 2376831, at *8; *see also Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 301, 303-04 (3d Cir. 2011) (stating that "variations in the rights and remedies available to injured class members under the various laws of the fifty states [do] not defeat commonality and predominance" for certifying a settlement class because settlement "obviates the difficulties inherent in proving the elements of varied claims at trial[.]").

12

Recent cases have approved nationwide settlement classes based on state law claims: *See*, e.g., *In re Hyundai*., 2019 WL 2376831, at *13, *18 (certifying nationwide settlement class applying California consumer protection law); *Fowler v. Wells Fargo Bank, N.A.*, No. 17-cv-02092-HSG, 2018 WL 4003286, at *4 (N.D. Cal. Aug. 22, 2018) (state law breach of contract claims); see also *Hickox-Huffman v. US Airways, Inc*., No. 10-cv05193-VKD, 2018 WL 5291990, at *1-2 (N.D. Cal. Oct. 22, 2018) (breach of contract claim); *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig*., 2019 WL 536661, at *7 (N.D. Cal., Feb. 11, 2019) ("there are common patterns on the certain key elements among the various state laws" of misrepresentation, fraudulent concealment, consumer protection, and implied and express warranty); *Johnson v. Metro-Goldwyn-Mayer Studios Inc*., No. C17-541 RSM, 2018 WL 5013764, at *1, 5 (W.D. Wash. Oct. 16, 2018) (certifying for settlement purposes consumer protection and warranty claims asserted by a nationwide class); *In re Anthem, Inc. Data Breach Litig*., 327 F.R.D. 299, (N.D. Cal. Aug. 15, 2018) (certifying claims for breach of contract and negligence for settlement purposes).

Common questions predominate over any questions affecting only individual members. Common questions include *inter alia* whether Ross sold sheets with misrepresented and overstated thread counts of the Products supplied by AQ, whether the stated thread count on the Products packaging was false and or misleading to consumers, and the proper test method to determine the thread count of a textile product including sheets. Other common questions include harm suffered by Settlement Class Members and determination of class wide damages, and the relief Settlement Class Members are entitled to. These common questions are all based on a common set of facts and can be resolved using the same evidence for all class members making class certification appropriate. As in *Hanlon*, here, the common questions present "a significant aspect of the case" such that "they can be resolved for all members of the class in a single adjudication." *Hanlon.*, 150 F.3d at 1022.

2.   A class action is superior to other available methods of adjudication.

Class certification is "superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The purpose of the superiority requirement is to ensure judicial economy and that a class action is the "most efficient and effective means of resolving the

13

controversy." *Wolin*, 617 F.3d at 1175 (citation omitted). Courts consider four factors in evaluating the superiority requirement under Fed. R. Civ. P. 23(b)(3):

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> (D) the likely difficulties in managing a class action.

Classwide resolution is the only practical method of addressing the allegedly wrongful conduct at issue in this case by ensuring that Ross will change its practices and procedures to ensure that the Products it sells which are supplied by AQ will have thread counts as represented on the packaging. Pursuing individual claims against a well-defended company like Ross would be prohibitively expensive. *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996) ("A class action is the superior method for managing litigation if no realistic alternative exists."). It is also "far more efficient" to litigate Plaintiffs' claims "on a classwide basis rather than in thousands of individual and overlapping suits." *Wolin*, 617 F.3d at 1176. Plaintiff is not aware of any pending litigation involving the same claims against Ross, and this Court is well-positioned to oversee the resolution of these claims on a classwide basis given its familiarity with the issues.

### E.  The Settlement meets the Northern District of California's Procedural Guidelines.

This District's Procedural Guidance for Class Action Settlements[5] identifies eight topics about the settlement itself that should be addressed in this Motion. Regarding the first topic, differences in class definition and explanation thereof, the operative complaint defines the class as "All persons in the United States who purchased bedding or linen products from Defendant Ross that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count." Exh. 2 to McShane Decl., SAC at ¶ 65. This is nearly identical

---

[5] *See* Procedural Guidance for Class Action Settlements, available at:
https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**          **CASE NO. 4:18-cv-02671-YGR**

to the Settlement class definition (*see* SA ¶ 1.30), with the major differences being a defined term for the exact Products at issue (noting the products had to be "for personal use," purchased from a Ross store, and clarifying the products were those imported and supplied by AQ) and the insertion of the time frame of May 7, 2014 until the objection deadline. These changes are appropriate in the present matter, as the "personal use" change is specifically to ensure that the class is solely made up of those who bought the sheets for themselves, not to resell, and other language to clarify the scope of the products at issue. The timeliness change is also appropriate to ensure that only that purchased in the time period covered by this lawsuit are contained within the settlement.

The second topic is irrelevant (no litigation class certified) and the third topic focuses on the differences in the release. While the release is slightly broader than the claims asserted in the SAC, it is appropriate in this matter as the release does not prevent any class members from seeking any additional relief from the importer and manufacturer of the products, AQ Textiles, individually or in the North Carolina action. No claims against AQ Textiles and/or Creative are subject to the release described herein.

The fourth topic is again irrelevant as no litigation class has been certified, and the fifth topic examines the differences in class recovery under the settlement and the potential class recovery if Plaintiff had fully prevailed on each of her claims. Here, the Settlement provides only injunctive relief and while Plaintiff did originally bring claims for damages, in light of the fact that no Rule 23(b)(3) class has yet been certified and Ross already indicated its plan to file a summary judgment motion (Dkt. No 91) as to all the claims asserted in the SAC on the merits relying on the innocent retailer defense, the differences here are justified. The injunctive relief brings great value to the settlement class and class members are still able to pursue their claims against the real bad actors.

Finally, as this is an as yet uncertified injunctive relief settlement class, the remainder of the topics or factors (sixth, seventh, and eighth) are not applicable.[6]

### F.  The Settlement is fair, reasonable, and adequate.

---

[6] Information required about the proposed Settlement Administration/Administrator is also provided. *See* Margulies Decl. at ¶ 23.

As indicated above, Rule 23(e) requires judicial approval of a proposed class action settlement based on a finding that the agreement is "fair, reasonable, and adequate." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012). The proposed settlement "need not be ideal, but it must be fair and free of collusion, consistent with a plaintiff's fiduciary obligations to the class." *Lilly v. Jamba Juice Co.*, 2015 U.S. Dist. LEXIS 34498, *18-19 (N.D. Cal. Mar. 18, 2015). Courts within this District have granted preliminary approval where the proposed settlement: "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies." *McDonald v. CP OpCo, LLC*, 2019 U.S. Dist. LEXIS 13376, *16 (N.D. Cal. Jan. 28, 2019) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). In this case, the injunctive relief addresses the core of Plaintiff's claims that the thread count was not accurately represented to purchasers. All future purchasers, including class members, will benefit from this relief, by ensuring that they receive the benefit of the bargain by requiring the thread count identified on the outside of the package to reflect the thread count of the product on the inside.

## G. The Settlement Agreement was the product of serious, informed, non-collusive, arms-length negotiation.

When settlements are reached after hard-fought litigation and arms-length negotiations among experienced counsel they are "entitled to an initial presumption of fairness." *In re High-Tech Employee Antitrust Litig.*, 2013 U.S. Dist. LEXIS 180530, *6-7 (N.D. Cal. Oct. 30, 2013) (internal quotations and citations omitted). As previously discussed, this lawsuit involved a lengthy litigation period involving many depositions, including of Plaintiff Morrison, production and review of thousands of documents, deposing Ross's Rule 30(b)(6) designee, and extensive briefing on motions seeking dismissal including a preview of the Ross Summary Judgement Motion based on the innocent retailer defense . The parties have therefore had a genuine opportunity to consider various rulings of the Court, take meaningful discovery and gauge the feasibility and benefits and risks associated with settlement versus continued litigation. *See In re Wireless Facilities*, 253 F.R.D. at 610 (settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair); *see also*, *White v. Experian Info. Sols., Inc*., 2009 WL 10670553, *13 (C.D. Cal.

16

May 7, 2009) (same); *see also*, Margulies Decl. ¶¶ 21-22. Furthermore, the Settlement was reached only after several sessions of hard-fought mediation before the Honorable Jay C. Gandhi and the Honorable Hon. Elizabeth D. Laporte. *Kline v. Dymatize Enters., LLC*, 2016 U.S. Dist. LEXIS 142774, *5 ("That the settlement was reached with the assistance of an experienced mediator further suggest that the settlement is fair and reasonable") (citation omitted).

     As a result of the parties' efforts and the Court's rulings, the claims have been substantially investigated and/or are substantially understood so that the parties and their counsel had a reasonable opportunity to candidly assess the merits and weaknesses of the claims and the defenses thereto. In addition, the three mediation sessions conducted by the Honorable Jay C. Gandhi and the Honorable Hon. Elizabeth D. Laporte (twice), demonstrates that the Settlement reached by the parties was a result of serious, informed, non-collusive, and arms-length negotiation, and thus requires granting preliminary approval.

### H. The Settlement Agreement does not provide preferential treatment.

     As the Settlement Agreement does not provide for monetary distribution, barring a potential Incentive Award, there is no preferential treatment given to any Class Member. Instead, all Class Members benefit from the changes in Ross's policy provided for by the Settlement. *See Hart v. Colvin*, 2016 U.S. Dist. LEXIS 155799, *27 (N.D. Cal. Nov. 9, 2016) ("When … the settlement provides for only injunctive relief … there is no potential for the named plaintiffs to benefit at the expense of the rest of the class") (quotation and citation omitted).

     While this motion does seek to authorize a $5,000 incentive award to Plaintiff Morrison for her role as Class Representatives in the Action, as discussed above, the "Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." *Harris v. Vector Mktg. Corp.*, 2011 U.S. Dist. LEXIS 48878, *28 (N.D. Cal. Apr. 29, 2011) (citing *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)). While a monetary incentive award for the Plaintiff may be "more valuable than the … injunctive relief received by the unnamed class members," "[i]ncentive payments to class representatives do not, by themselves, create an impermissible conflict between class members and their representatives." *Campbell v. Facebook, Inc.*, 2017 U.S. Dist. LEXIS 132624, *12 (N.D. Cal. Aug. 18, 2017) (quoting *In re Online DVD-*

1    *Rental Antitrust Litig*., 779 F.3d 934, 943 (9th Cir. 2015)). As discussed above, Plaintiff Morrison sat

2    for deposition, provided evidence pursuant to discovery requests, was in constant contact with Class

3    Counsel, and secured injunctive relief for the Class. Thus, her incentive award, if approved, would be

4    indicative of the efforts she undertook to achieve relief for the Class. The absence of any preferential

5    treatment supports granting preliminary approval of the Settlement Agreement.

6                    **I.   The Settlement falls within the range of possible approval.**

7            "To determine whether a settlement 'falls within the range of possible approval,' a court must

8    focus on 'substantive fairness and adequacy,' and 'consider plaintiffs' expected recovery balanced

9    against the value of the settlement offer.'" *Villegas v. J.P. Morgan Chase & Co.,* 2012 U.S. Dist.

10   LEXIS 166704, *20 (citing *In re Tableware*, 484 F. Supp. 2d at 1080). Here, Ross has made agreed to

11   practice and policy changes to substantiate the thread counts of the products provided by AQ, to

12   ensure that customers receive what they paid for. In similar circumstances, courts have found such

13   settlements worthy of approval. *Hazlin v. Botanical Labs., Inc.*, No. 13cv0618-KSC, 2015 U.S. Dist.

14   LEXIS 189687, at *3-4 (S.D. Cal. May 20, 2015)(granting final approval of settlement that required

15   defendant to have proper substantiation before making representations on the labels of the products it

16   sold).

17           The agreed-upon relief was the product of arms-length negotiations, conducted after

18   considerable litigation and discovery, resulting in significant injunctive relief that reflects tangible

19   value to the Class Members. When comparing this relief to Plaintiff's expected recovery—taking

20   into account that no Rule 23(b)(3) class has been certified and that Ross intended to bring a motion

21   for summary judgment on the merits of the Plaintiff's claims—the Settlement clearly provides

22   substantial value to the Class. As discussed above, Ross possessed a very strong innocent retailer

23   defense given that it was not involve in the manufacturing of the product whatsoever. Although the

24   settlement releases all claims against Ross, it does allow class members to pursue monetary claims

25   against the parties most likely to be held responsible for monetary damages; AQ and Creative.  The

26   above showing is enough to determine that the Settlement falls within the range of possible

27   approval.

28                   **J.   The Settlement Agreement has no deficiencies.**

18

1    A court will likely find a settlement agreement free from obvious deficiencies when it

2    provides immediate injunctive relief while at the same time mitigates the potential uncertainties in

3    continuing litigation. Here, the injunctive relief provided for in the Settlement is significant. Under

4    the terms of the Settlement, the products alleged in the SAC to be mislabeled have either been

5    reformulated or their labels will have been changed, providing an immediate benefit to the entire

6    Class. The Settlement Agreement also provides for mechanisms and procedures to address any future

7    label changes, including providing notice to Class Counsel and an objection process. Moreover, the

8    Settlement has no "obvious substantive defects such as … overly broad releases of liability."

9    *Newberg on Class Actions* § 13:15 (5th ed. 2014). Consequently, the absence of any deficiencies

10   supports approving the Settlement.

11       **K.  The risk, expense, complexity, and duration of further litigation.**

12   The parties agree that the likely expense, complexity, duration, and risk involved in further

13   litigation strongly favor resolution through the Settlement, resulting in prompt injunctive relief and

14   an all-inclusive payment. *See Kline*, 2016 U.S. Dist. LEXIS 142774, *13-14 ("[W]hile confident in

15   the merits of their case, Plaintiffs are cognizant of the inherent risks of lengthy litigation … The

16   proposed settlement adequately accounts for these risks"); *Vasquez v. Coast Valley Roofing, Inc.*,

17   266 F.R.D. 482, 489 (E.D. Cal. 2010) (in weighing the risk of future litigation, "a court may

18   consider the vagaries of litigation and compare the significance of immediate recovery by way of the

19   compromise to the mere possibility of relief in the future, after protracted and expensive litigation")

20   (internal quotation marks omitted).

21       As discussed above, Plaintiff alleged in the SAC that Ross violated California's Unfair

22   Competition Law as well as the Missouri Merchandise Merchandising Practices Act, in addition to

23   breaching warranties as to the products and thus the accompanying Magnusson Moss Warranty Act

24   and the California Consumer Legal Remedies Act by intentionally labeling certain of its products

25   with misrepresentations to increase sales by representing the products' thread counts as higher than

26   they actually were. Ross has denied these allegations, arguing that Plaintiff cannot show the product

27   representations in question were incorrect or violated any laws or regulations. The parties had

28   prepared to retain experts to prepare reports on the purchasing decisions of consumers and what

19

1  effect—if any—these representations would have, and plan to offer similar testimony should the

2  litigation continue.

3         The attendant costs associated with paying dueling experts, continuing motion practice and

4  discovery, and proceeding through litigation and a possible trial are not preferable to the prompt

5  injunctive relief and all-inclusive payment the Settlement provides. The failure to reach settlement—

6  in addition to the cost associated with further litigation—would raise considerable risks associated

7  with the parties' positions, including the risk that the Rule 23(b)(2) class would not be certified, that a

8  motion for summary judgment on the merits would be granted, that the Court or a jury would

9  disagree on materiality or that, after resolution, the Action would be appealed. Because of these

10  factors and the parties' joint desire to resolve this matter by the terms outlined in the Settlement, the

11  Court should preliminarily approve the Settlement.

12                   **L.  Counsel's experienced judgment and views.**

13         "The recommendations of plaintiff['s] counsel should be given a presumption of

14  reasonableness" when contemplating the preliminary approval of a proposed settlement. *Knight v.*

15  *Red Door Salons, Inc*., 2009 U.S. Dist. LEXIS 11149, *11 (N.D. Cal. Feb. 2, 2009) (citation

16  omitted). Here, Class Counsel has substantial experience in class action litigation and, in particular,

17  with class action litigation specific to California's consumer protection statutes and false labeling

18  laws. *See* McShane Decl. ¶¶ 10-13 (CV and Firm Resumes of Class Counsel).

19         The opinion of experienced counsel supporting the settlement is entitled to considerable

20  weight. With regard to the terms and conditions of the Agreement, Class Counsel's experienced

21  judgment and views, which guided their decision in drafting and negotiating the relief contained

22  within, and which were informed by the guidance and perspective of mediators the Honorable Jay C.

23  Gandhi and the Honorable Hon. Elizabeth D. Laporte, should be taken into account in the Court's

24  consideration of this motion.

25  **VII.   CONCLUSION**

26         The parties agree that the Settlement Agreement is in their mutual best interests and will

27  conserve resources and promote judicial efficiency and economy, while at the same time providing

28  meaningful benefits to the Class. Furthermore, each party has taken into account the investigation of

20

1    the claims, the orders of the Court and the uncertainties, delays, expenses, and exigencies of the

2    litigation process in reaching this conclusion. For the reasons set forth in this motion, the parties

3    respectfully request the Court: (1) grant preliminary approval of the Settlement; (2) schedule the final

4    approval hearing; and (3) grant such other relief as the Court deems just and proper.

5

6    Dated: May 7, 2021                              **AUDET & PARTNERS, LLP**

7                                              By:  *s/Michael A. McShane*

8                                                    Michael A. McShane (CA #127944)
9                                                    mmcshane@audetlaw.com
                                                     Ling Y. Kuang (CA #296873)
10                                                   lkuang@audetlaw.com
                                                     Kurt D. Kessler (CA #327334)
11                                                   kkessler@audetlaw.com
                                                     **AUDET & PARTNERS, LLP**
12                                                   711 Van Ness Avenue, Suite 500
                                                     San Francisco, CA 94102-3275
13                                                   Telephone: (415) 568-2555
                                                     Facsimile:  (415) 568-2556
14
                                                     Charles E. Schaffer
15                                                   cschaffer@lfsblaw.com
                                                     **LEVIN SEDRAN & BERMAN**
16                                                   510 Walnut Street, Suite 500
                                                     Philadelphia, PA 19106
17                                                   Telephone: (215) 592-1500
                                                     Facsimile:  (215) 592-4663
18
                                                     Charles LaDuca
19                                                   charles@cuneolaw.com
                                                     Brendan Thompson
20                                                   brendant@cuneolaw.com
                                                     **CUNEO GILBERT & LADUCA, LLP**
21                                                   4725 Wisconsin Avenue, NW, Suite 200
                                                     Washington, DC 20016
22                                                   Telephone:  (202) 789-3060
23
                                                     Stuart L. Cochran
24                                                   stuart@swclaw.com
                                                     **STECKLER WAYNE COCHRAN CHERRY**
25                                                   12720 Hillcrest Road, Suite 1045
                                                     Dallas, Texas 75230
26                                                   Telephone: (972) 387-4040
                                                     Facsimile:  (972) 387-4041
27
                                                     *Counsel for Plaintiff Dominique Morrison on*
28                                                   *behalf of herself and all others similarly situated*

21