# EXHIBIT 1

1   JEFFREY B. MARGULIES (BAR NO. 126002)
2   EVA YANG (BAR NO. 306215)
    **NORTON ROSE FULBRIGHT US LLP**
3   555 South Flower Street
    Forty-First Floor
4   Los Angeles, California  90071
    Telephone:    (213) 892-9200
5   Facsimile:    (213) 892-9494
6   jeff.margulies@nortonrosefulbright.com
    eva.yang@nortonrosefulbright.com
7
    ATTORNEYS FOR DEFENDANT
8   ROSS STORES, INC.

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                        OAKLAND DIVISION

12

13   DOMINIQUE MORRISON, on behalf of        Case No. 4:18-cv-02671-YGR
     herself and all others similarly situated,
14                                            Assigned for All Purposes to the Hon. Yvonne
15                        Plaintiff,          Gonzalez Rogers

     vs.                                      **STIPULATION OF SETTLEMENT**
16
     ROSS STORES, INC.,
17
                          Defendants.
18

19

20

21

22

23

24

25

26

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER

1       This Stipulation of Settlement is made by and among Dominque Morrison ("Plaintiff"), on

2  behalf of herself and the Settlement Class (defined below), on the one hand, and Ross Stores, Inc.,

3  on the other.

4  **RECITALS**

5      A.    On May 7, 2018, Plaintiff commenced a proposed class action against Ross Stores,

6  Inc. ("Ross"), AQ Textiles, LLC ("AQ"), and Creative Textile Mills Private Limited ("Creative")

7  in the United States District Court, Northern District of California, Case No. 4:18-cv-02671-

8  YGR.  Plaintiff alleged that the bed sheets that she purchased from Ross that were imported by

9  AQ and manufactured by Creative were represented to have a higher thread count than they

10  actually had. Plaintiff asserted claims on behalf of herself and a proposed California class of all

11  purchasers that purchased bedding linen or bedding products from defendants that were

12  represented as having higher thread counts for violation of the Magnuson-Moss Warranty Act, 15

13  U.S.C. § 2301, *et seq*. ("MMWA"), fraud, violation of the Consumer Legal Remedies Act, Civ.

14  Code § 1750, *et seq*. ("CRLA"), violation of California's Unfair Competition Law, Bus. & Prof.

15  Code § 17200, *et seq*. ("UCL") under the unlawful, unfair, and fraudulent prong, violation of

16  False Advertising Law, Bus. & Prof. Code § 17500, *et seq*. ("FAL"), breach of express warranty,

17  breach of warranty of merchantability, and negligent misrepresentation.

18      B.    On June 29, 2018, AQ and Ross each filed a motion to dismiss the Complaint.  On

19  July 20, 2018, prior to the motion to dismiss hearings, Plaintiff filed an amended complaint

20  ("FAC"). The Court vacated the motion to dismiss hearing as moot.

21      C.    Plaintiff's FAC alleged the same claims, but added a claim for violation of the

22  Missouri Merchandising Practices Act ("MMPA"), Missouri Rev. Stat. § 407.020. Rather than a

23  California class, the FAC sought to certify a proposed Missouri and nationwide class. The claims

24  alleged under the CLRA, UCL, and FAL are alleged against Ross only, the others are alleged

25  against all defendants.

26      D.    On August 3, 2018, AQ and Ross again moved to dismiss the FAC.  On November

27  14, 2018, the Court granted both motions but allowed Plaintiff leave to amend with respect to the

28

DOCUMENT PREPARED
ON RECYCLED PAPER

1   claims against Ross. The Court found that Plaintiff failed to establish personal jurisdiction as to

2   AQ, and therefore granted AQ's motion without allowing Plaintiff leave to amend her claims

3   against AQ.

4       E.      On December 4, 2018, Plaintiff filed a Second Amended Complaint ("SAC")

5   alleging the same claims in the FAC, and adding a claim for unjust enrichment. Plaintiff asserted

6   these claims on behalf of herself and a proposed Missouri and nationwide class who purchased

7   bedding or linen products from Ross that were manufactured or supplied by AQ and/or Creative

8   and that were packaged or advertised with a representation regarding thread count. On January 4,

9   2019, Ross filed a motion to dismiss the SAC.

10      F.      On May 30, 2019, the Court granted Ross's motion to dismiss as to Plaintiff's

11  claims for violation of MMWA and unjust enrichment without leave to amend.  As such, the

12  operative claims that currently remain are: (1) fraud; (2) violation of the CLRA; (3) violation of

13  UCL under its unlawful prong, unfair prong, and fraudulent prong; (4) violation of the FAL; (5)

14  breach of express warranty; (6) breach of warranty of merchantability; (7) negligent

15  misrepresentation; and (8) violation of the MMPA.

16      G.      On June 20, 2019, Ross answered Plaintiff's SAC, denying Plaintiff's allegations

17  and asserting several affirmative defenses.

18      H.      On July 8, 2019, the parties attended an initial case management conference where

19  the Court set various scheduling deadlines and referred the case to mediation.

20      I.      On November 13, 2020, the parties attended a full day mediation before the Hon.

21  Jay C. Gandhi. The parties exchanged detailed settlement proposals and continued to engage in

22  settlement discussions following the mediation.

23      J.      On March 23, 2020, due to the worsening situation with COVID-19 and

24  government mandated closures, the parties stipulated to vacate all existing deadlines. The parties

25  thereafter submitted two stipulations further extending their time to submit a proposed briefing

26  schedule due to the continued state closures and circumstances surrounding COVID-19.

27      K.      On July 20, 2020, the Court ordered the parties to jointly submit a proposed

28

DOCUMENT PREPARED
ON RECYCLED PAPER

1    scheduling order, which was submitted to the Court on November 23, 2020.

2        L.     On January 7, 2021, in accordance with the Court's Standing Order, Ross

3    requested a pre-filing conference in connection with its anticipated motion for summary

4    judgment. On January 14, 2021, the Court found that the pre-filing conference was premature,

5    although noting that it cannot prohibit a party from filing a motion for summary judgment. As

6    such, Ross was prepared to file a motion for summary judgment as to all of Plaintiff's claims on

7    the basis that, among others, Ross, as a retailer, did not make or participate in any representations

8    regarding the thread count of the sheets that Plaintiff purchased.

9        M.     On February 18, 2021, the parties attended a second mediation session before the

10    Hon. Elizabeth D. Laporte (ret.) and continued to discuss possible settlement of the matters.

11        N.     On March 3, 2021, the parties attended a third mediation session before the Hon.

12    Elizabeth D. Laporte (ret.) and reached a settlement in principle of this matter.

13        O.     Ross denies all of Plaintiff's allegations and charges of wrongdoing or liability

14    arising out of any of the conduct, statements, acts or omissions alleged, or that could have been

15    alleged in the Litigation. Ross also denies that Plaintiff, the Settlement Class, or any member of

16    the Settlement Class have suffered damage or harm by reason of any alleged conduct, statement,

17    act or omission of Ross. Ross further denies that the litigation meets the requisites for

18    certification as a class action under Rule 23 of the Federal Rules of Civil Procedure, except for

19    purposes of settlement, or that the evidence is sufficient to find liability as to Ross for any of

20    Plaintiff's claims that are alleged.

21        P.     Plaintiff's counsel has analyzed and evaluated the merits of all the Parties'

22    contentions and this Settlement as it impacts all the Parties and the Settlement Class Members,

23    including, but not limited to, engaging in discovery and reviewing voluminous documents

24    produced, taking the depositions of relevant witnesses, consulting with experts and evaluating the

25    facts and evidence to date. Among the risks of continued litigation for Plaintiff are the risks of

26    failing to prove liability and damages on a class-wide or individual basis. In particular, there may

27    be difficulties establishing that Ross made a representation or had any input, comment, or control

28

DOCUMENT PREPARED
ON RECYCLED PAPER

1  over the thread count language on sheets that were supplied and labeled by AQ, that Plaintiff's

2  claims are typical, or that common questions of fact or law predominate. Plaintiff and Plaintiff's

3  counsel, after taking into account the foregoing along with other risks and the costs of further

4  litigation, are satisfied that the terms and conditions of this Agreement are fair, reasonable,

5  adequate and equitable, and that a settlement of the Litigation and the prompt provision of

6  effective relief to the Settlement Class are in the best interest of the Settlement Class Members.

7       Q.     Ross agrees that the settlement is fair and reasonable in light of the merits and

8  risks of the case. While continuing to deny all allegations of wrongdoing and disclaiming any

9  liability with respect to any and all claims, Ross considers it desirable to resolve the Litigation on

10  the terms stated herein, in order to avoid further burden, expense, inconvenience, and interference

11  with its ongoing business operations.

12       In consideration of the covenants and agreements set forth herein, and of the releases and

13  dismissals of claims as described below, and other good and valuable consideration, the receipt

14  and sufficiency of which hereby is acknowledged by each of the Parties, Plaintiff on behalf of

15  herself and the Settlement Class and Ross agree to the Settlement described herein, subject to

16  Court approval, under the following terms and conditions:

17  I.   **DEFINITIONS**

18       1.1    "Agreement" or "Settlement" means this Stipulation of Settlement.

19       1.2    "AQ" means AQ Textiles, LLC. as presently organized and includes any subsequent

20  or additional  business  or other entities created to continue the  present business operations of AQ

21  in whole or part.

22       1.3    "Class Counsel" means Audet & Partners, LLP; Cuneo, Gilbert & LaDuca; Levin,

23  Sedran & Berman; and Steckler Wayne Cochran Cherry PLLC.

24       1.4    "Class Representative" means Plaintiff Dominique Morrison.

25       1.5    "Complaint" means the operative complaint filed in the Litigation by Plaintiff.

26       1.6    "Defendant" or "Ross" means Ross Stores, Inc.

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER

1        1.7   "Defendant's Counsel" or "Ross's Counsel" of "Defense Counsel" means

2   Defendant's counsel of record in the Litigation, Norton Rose Fulbright US LLP.

3        1.8   "Effective Date" means the later of: (i) the expiration date of the time for filing a

4   notice of appeal from the Final Approval or (ii) if a notice of appeal is filed, but the Final Approval

5   is affirmed or the appeal is dismissed, the date upon which the mandate of the Court of Appeals is

6   issued.

7        1.9   "Early Termination" means the early termination of the injunctive relief terms that

8   is prior to twelve (12) years after Final Approval.

9        1.10   "Exclusion Deadline" means the deadline for which the Settlement Class Member

10   must request to be excluded from the Settlement Class as to the Released Claims, 90 days after the

11   Court preliminarily approves this Settlement.

12        1.11   "Fee and Expense Award" means the amount awarded to Class Counsel by the Court

13   for attorneys' fees, costs, and expenses.

14        1.12   "Final Approval" means an order by the Court for, among other things, final

15   approval of the Settlement.

16        1.13   "Final Approval Hearing" means the hearing for which the Court considers whether

17   to grant or deny the final approval of the Settlement.

18        1.14   "Incentive Award" means any award sought by application to and approval by the

19   Court that is payable to Plaintiff to compensate her for efforts in bringing this Litigation and/or

20   achieving the benefits of this settlement on behalf of the Settlement Class, as further discussed in

21   section 6.2.

22        1.15   "Judgment" means the judgment to be entered by the Court pursuant to the

23   Settlement.

24        1.16   "Litigation" means *Dominque Morrison v. Ross Stores, Inc., et al.*, United States

25   District Court for the Northern District of California, Case No. 4:18-cv-02671-YGR.

26        1.17   "Notice" means a document, which includes both the Long Form Notice and

27   Summary Notice, to be disseminated in accordance with the Preliminary Approval Order,

28

informing Persons who fall within the Settlement Class definition of, among other things, the pendency of the Litigation, the material terms of the proposed Settlement and their options with respect thereto. Proposed Long Form Notice and Summary Notice has been concurrently filed.

1.18   "Notice Plan" means the method of providing the Class with notice of the Settlement. A proposed Notice Plan has been concurrently filed.

1.19   "Notice of Early Termination" means a written document prepared by Ross or Ross's counsel notifying Plaintiff's Counsel of Early Termination.

1.20   "Objection Deadline" means the date by which Settlement Class Members must file objections, if any, to the Settlement, 90 days after the Court preliminarily approves this Settlement.

1.21   "Parties" means Plaintiff and Defendant, collectively.

1.22   "Party" means either Plaintiff or Defendant.

1.23   "Plaintiff" or "Class Representative" means Dominque Morrison.

1.24   "Plaintiff's Counsel" means Plaintiff's counsel of record in the Litigation, Audet & Partners, LLP; Cuneo Gilbert & Laduca; Levin Sedran & Berman; and Steckler Wayne Cochran Cherry PLLC.

1.25   "Preliminary Approval Order" means an order providing for, among other things, preliminary approval of the Settlement and dissemination of the Notice to the Settlement Class according to the Notice Plan.

1.26   "Products" means polyester/cotton sheets imported and supplied to Ross by AQ Textiles, LLC that are packaged or advertised with a representation regarding thread count as identified on **Exhibit A**.

1.27   "Released Claims" means the release and discharge of the Released Parties by the Settlement Class from any and all claims, liens, demands, actions, causes of action, rights, duties, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, whether arising under any international, federal, state or local statute, ordinance, common law, regulation, principle of equity or otherwise, that that were, or could

1   have been, asserted in the Litigation and that arise out of or relate to the allegations thereof, or to

2   any similar allegations or claims regarding the thread count of the Products.

3       1.28    "Released Parties" means Defendant and its present and former subsidiaries,

4   parents, affiliates, divisions, officers, directors, members, managers, shareholders, insurers, re-

5   sellers, distributors, brokers, service providers, employees, agents, legal representatives, heirs,

6   predecessors, successors, or assigns. Released Parties does not include AQ or Creative Textiles

7   LLC.

8       1.29    "Settlement Administrator" means CPT Group.

9       1.30    "Settlement Class" or "Settlement Class Members" means all persons in the United

10  States who purchased the Products for personal use from a Ross store on or after May 7, 2014, to

11  the Objection/Exclusion Deadlines. Excluded from the Settlement Class are: (a) Ross's employees,

12  officers, directors and attorneys; (b) persons who timely and properly exclude themselves from the

13  Settlement Class as provided herein, and (c) the Court, the Court's immediate family, and Court

14  staff.

15      1.31    "Settlement Website" means an internet website created and maintained by the

16  Settlement Administrator. The URL of the Settlement Website shall be provided in the Notice Plan.

17  II.    **CERTIFICATION OF THE SETTLEMENT CLASS**

18      2.1    The Parties agree, for settlement purposes only, that the Settlement Class shall be

19  certified and proceed as a class action under Federal Rule of Civil Procedure 23(b)(3) or 23(b)(2),

20  or both, with a class consisting of all Settlement Class Members, and with Plaintiff as the Class

21  Representative and with Class Counsel as counsel for the Settlement Class Members.

22      2.2    In the event that the Court declines to enter the Preliminary Approval Order or to

23  grant Final Approval (or enters any order that increases the cost or burden of the settlement to

24  Defendant beyond what is set forth in this Agreement), the Parties may, but are not required to,

25  modify this Agreement. Such a modification shall be binding only if it is in writing and executed

26  by Plaintiff's Counsel and Defendant's Counsel.

27

28

2.3     In the event the Settlement is terminated or for any reason the Settlement is not effectuated, the certification of the Settlement Class shall be vacated and the Litigation shall proceed as if the Class had not been certified. Any certification of a conditional, preliminary or final Settlement Class, pursuant to the terms of this Agreement, shall not be construed as an admission on the part of Ross that the Settlement Class is appropriate for certification as a litigation class under the Federal Rules of Civil Procedure or any similar state or federal class action statute or rule.

III.    **SETTLEMENT CONSIDERATION**

3.1     <u>Injunctive Relief</u>. Ross will provide the Class with injunctive relief by way of the following:

a)      Ross will require AQ to certify in writing on an annual basis beginning on January 1st after the Effective Date that the description of the thread count on its packaging for Products accurately reflects the actual thread count as determined by ASTM 3775, as officially interpreted and amended from time to time, or any successor industry standard for textile thread count for Products sold to Ross. Ross shall not be required to obtain a certification from AQ if it has not purchased any Products within the previous year and has not issued any purchase orders for future purchases of Products; provided, however, that Ross shall require AQ to provide a certification before issuing any subsequent purchase orders for Products to AQ.

b)      Ross will require AQ to report in writing on an annual basis beginning on January 1st after the Effective Date as to whether there are any known investigations by any outside entity or pending claims or lawsuits regarding AQ's representations concerning thread count on the Products, any remedial actions taken regarding these claims or investigations, and if no remedial actions were taken, the reasons for which remedial actions were not taken.

c)      Commencing no later than the Effective Date, Ross will require AQ to supply a passing test report for each new style of Products showing compliance with ASTM 3775, as officially interpreted and amended from time to time, or any successor industry standard for

DOCUMENT PREPARED
ON RECYCLED PAPER

1   textile thread count,  before taking possession of such style. Only one test report is required if the

2   Product differs only by size or color.

3                 d)      <u>Termination</u>. The injunctive relief terms set forth in Section 3.1 will remain

4   in effect for 12 years following Final Approval of this Settlement, with such terms automatically

5   terminating after 12 years. Ross may seek Early Termination of the injunctive relief terms in

6   Section 3.1 no earlier than seven years, provided that there have been no violations of such

7   injunctive relief terms within the preceding three years.

8          The aforementioned injunctive relief will be implemented and commence within 30 days

9   of the Effective Date of this agreement.

10  IV.    **FEE AND EXPENSE AND INCENTIVE AWARDS**

11         4.1    Class Counsel will make an application to the Court for an Attorneys' Fee and

12  Expense Award in an amount not to exceed $750,000, plus reimbursement of Class Counsel's costs

13  and expenses in the amount of up to $40,000. Any motion for attorneys' fees and costs and expenses

14  must be filed at least 35 days before the Objection Deadline.

15         4.2    The Fee and Expense Award shall be the total obligation of Ross to pay for

16  attorneys' fees, costs, and/or expenses of any kind (including, but not limited to, travel, filing fees,

17  court reporter, and videographer expenses, expert fees, and costs, and document review and

18  production costs) related to this Litigation.

19         4.3    Class Counsel shall have the sole and absolute discretion to allocate the Fee and

20  Expense Award amongst Plaintiff's Counsel and any other attorneys for Plaintiff. Ross shall have

21  no liability or other responsibility for allocation of any such attorney's fees and expenses awarded,

22  and, in the event that any dispute arises relating to allocation of fees, Class Counsel agree to hold

23  Ross harmless from, and indemnify Ross with respect to, any and all such liabilities, costs, and

24  expenses, including attorneys' fees and costs of such dispute. Except as set forth in this Agreement,

25  each Party shall bear his, her or its own fees, costs and expenses.

26         4.4    Plaintiff may additionally apply to the Court for an Incentive Award as

27  compensation for the time and effort undertaken in and risks of pursuing this Litigation, including

28

DOCUMENT PREPARED
ON RECYCLED PAPER

the risk of liability for the Parties' costs of suit, and for agreeing to the general release set forth in Section 6.1.  The Incentive Award shall not exceed $5,000.

4.5     Ross agrees not to oppose or to submit any evidence or argument challenging or undermining the applications for Fee and Expense Award or Incentive Award, provided such applications are consistent with Sections 4.1 and 4.4. Plaintiffs' Counsel and Plaintiff agree that the denial of, reduction or downward modification of, or failure to grant any application for attorneys' fees, costs, and expenses or Incentive Awards shall not constitute grounds for modification or termination of this Agreement, including the settlement and releases provided for herein.

4.6     Ross shall pay any Fee and Expense Award or Incentive Award within 30 days of the Effective Date.

V.     **NOTICE TO THE CLASS AND ADMINISTRATION OF SETTLEMENT**

5.1     The Class Notice shall conform to all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clauses), the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and any other applicable law, and shall otherwise be in the manner and form approved by the Court.

5.2     Ross shall retain the Settlement Administrator to facilitate the notice process by assisting the Parties in the implementation of the Notice Plan. The Settlement Administrator will help implement the terms of this Settlement. The Settlement Administrator shall be responsible for administrative tasks, including, without limitation, (a) notifying the appropriate state officials about the Settlement, (b) arranging, as set forth in this Section and in the Preliminary Approval Order, for distribution of Class Notice in accordance with the Notice Plan to Settlement Class Members, (c) answering inquiries from Settlement Class Members and/or forwarding such written inquiries to Class Counsel or their designee, (d) receiving and maintaining on behalf of the Court and the Parties any Settlement Class Member correspondence regarding exclusions from the Settlement, (e) posting notices on the Settlement Website, and other related documents, and (f) otherwise assisting with implementation and administration of the Settlement terms.

DOCUMENT PREPARED
ON RECYCLED PAPER

1         5.3     The Settlement Administrator will create and maintain a Settlement Website, which

2   will contain relevant Settlement information and case-related documents such as this Agreement,

3   the Notice, Preliminary Approval Order, applicable deadlines, all papers filed in support of the

4   proposed Agreement (including Plaintiff's anticipated motion for a Fee and Expense Award),

5   orders of the Court pertaining to this Agreement, opt-out process, and contact information for the

6   Settlement Administrator for a toll-free telephone number, e-mail, and U.S. mail. The Parties shall

7   use reasonable efforts to agree on all information and documents to be posted on the Settlement

8   Website and no information shall be posted or provided without the Parties' express approval.

9         5.4     Notice shall be provided as provided in the Notice Plan as approved by the Court.

10        5.5     The Parties shall supervise the Settlement Administrator in the performance of the

11  notice functions set forth herein.

12        5.6     At least 14 days prior to the Final Approval Hearing, the Settlement Administrator

13  shall certify to the Court that it has complied with the notice requirements set forth herein.

14        5.7     Ross will bear the cost of the Notice and Settlement Administrator.

15  VI.    **RELEASES**

16        6.1     <u>Releases Regarding Named Plaintiff (Class Representative) and Released Parties.</u>

17  Upon Final Approval, Plaintiff on the one hand, and Ross on the other hand, shall have

18  unconditionally, completely, and irrevocably released and forever discharged each other from and

19  shall be forever barred from instituting, maintaining, or prosecuting (1) any and all claims, liens,

20  demands, actions, causes of action, rights, duties, obligations, damages or liabilities of any nature

21  whatsoever, whether legal or equitable or otherwise, known or unknown, that actually were, or

22  could have been, asserted in the Litigation as to each Party, whether based upon any violation of

23  any state or federal statute or common law or regulation or otherwise, or arise directly or indirectly

24  out of, or in any way relate to, the allegations, claims, or contentions that Plaintiff, on the one hand,

25  and Ross, on the other hand, have had in the past, or now have, related in any manner to Ross's

26  products and services or business affairs; and (2) any and all other claims, liens, demands, actions,

27  causes of action, rights, duties, obligations, damages or liabilities of any nature whatsoever, whether

28

DOCUMENT PREPARED
ON RECYCLED PAPER

legal or equitable or otherwise, known or unknown, that Plaintiff, on the one hand, and Ross, on

the other hand, have had in the past or now have, related in any manner to any and all Released

Parties' products, services or business affairs, or otherwise.

6.2     <u>Releases Regarding Settlement Class Members and released Parties.</u> Upon Final

Approval, Settlement Class Members shall have unconditionally, completely, and irrevocably

released and discharged the Released Parties from any and all claims, liens, demands, actions,

causes of action, rights, duties, obligations, damages or liabilities of any nature whatsoever, whether

legal or equitable or otherwise, known or unknown, whether arising under any international,

federal, state or local statute, ordinance, common law, regulation, principle of equity or otherwise,

that that were, or could have been, asserted in the Litigation and that arise out of or relate to the

allegations thereof, or to any similar allegations or claims regarding the Products (the Released

Claims"). Upon Final Approval, Settlement Class Members shall be forever barred from initiating,

maintaining, or prosecuting any Released Claims against Released Parties.

6.3     All Parties to this Settlement Agreement, including the Settlement Class,

specifically acknowledge that they have been informed by their legal counsel, via the Notice, of

Section 1542 of the California Civil Code (and any similar State laws) and they expressly waive

and relinquish any rights or benefits available to them under this statute (and any similar State

laws). California Civil Code § 1542 provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> THAT THE CREDITOR OR RELEASING PARTY DOES NOT
> KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT
> THE TIME OF EXECUTING THE RELEASE AND THAT, IF
> KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY
> AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR
> OR RELEASED PARTY.

6.4     Notwithstanding Section 1542 of the California Civil Code, or any other federal or

state statute or rule of law of similar effect, this Agreement shall be given full force and effect

according to each and all of its expressed terms and provisions, including those related to any

unknown or unsuspected claims, liabilities, demands, or causes of action which are based on, arise

from or are in any way connected with the Litigation.

DOCUMENT PREPARED
ON RECYCLED PAPER

1       6.5    <u>Effectuation of Settlement.</u> None of the above releases include releases of claims or

2   otherwise affects the rights of Settlement Members to pursue any other party not expressly released,

3   including AQ and Creative, regarding the allegations in the Litigation regarding Products sold by

4   Ross.

5       6.6    <u>No Admission of Liability.</u> This Agreement set forth herein reflects, among other

6   things, the compromise and settlement of disputed claims among the Parties, and neither this

7   Agreement nor the releases given herein, nor any consideration therefor, nor any actions taken to

8   carry out the terms of this Agreement, are intended to be, nor may they be deemed or construed to

9   be, an admission or concession of liability, or the validity of any claim, defense, or of any point of

10  fact or law on the part of any Party. Ross denies the material allegations of the Complaint and

11  denies any wrongdoing or liability as to the Litigation. Neither this Agreement, nor the fact of the

12  Agreement set forth herein, nor the settlement proceedings, nor the settlement negotiations, nor any

13  related document, shall be used as an admission of any fault or omission by any or all of the

14  Released Parties, or be offered or received in evidence as an admission, concession, presumption,

15  or inference of any wrongdoing or liability by any or all of the Released Parties in any proceeding,

16  other than such proceedings as may be necessary to consummate, interpret or enforce this

17  Agreement.

18  VII.    **CLASS SETTLEMENT PROCEDURES**

19      7.1    <u>Preliminary Approval Order.</u> As soon as practicable following the signing of this

20  Agreement, Class Counsel shall apply to the Court for entry of the Preliminary Approval Order,

21  certifying the Settlement Class; preliminarily approving this Agreement as fair, just, reasonable and

22  adequate; approving Notice to the Settlement Class Members as described in Section V above; and

23  setting the Final Approval Hearing of the Agreement and any objections thereto.

24      7.2    <u>Final Approval Order and Judgment.</u> At or before the Final Approval Hearing,

25  Plaintiff, with the support of Ross, shall move for entry of an order of Final Approval, granting

26  final approval of this Agreement and adjudging this Agreement to be final, fair, reasonable,

27  adequate, and binding on all Settlement Class Members who have not excluded themselves from

28

1  the Settlement Class as provided below; ordering that the settlement relief be provided as set forth

2  in this Agreement and giving effect to the releases as set forth herein; and entering Judgment in the

3  Litigation.

4         7.3    <u>Exclusions and Objections.</u> The Notice and Settlement Website shall advise

5  prospective Settlement Class Members of their rights to forego the benefits of this Agreement with

6  respect to the Released Claims and pursue an individual claim; to object to this settlement

7  individually or through counsel; and to appear at the Final Approval Hearing. The proposed

8  Preliminary Approval Order, Notice, and Settlement Website will also provide that any Settlement

9  Class Members wishing to object or exclude themselves who fail to properly or timely file or serve

10  any of the requested information and/or documents will be precluded from doing so.

11         7.4    <u>Objections to the Settlement.</u> Settlement Class Members shall have the right to

12  appear and show cause, if they have any reason why the terms of this Agreement should not be

13  given Final Approval. Any objection to this Agreement, including any of its terms or provisions,

14  must be in writing, in the manner set forth in the Notice, and postmarked by the Objections

15  Deadline. Class Members may object either on their own or through an attorney hired at their own

16  expense. Any objection regarding or related to the Agreement shall contain a caption or title that

17  identifies it as "Objection to Class Settlement in *Dominque v. Ross Stores, Inc. et al.*, Case No.

18  4:18-CV-02671-YGR" and also shall contain information sufficient to identify and contact the

19  objecting party (or his or her attorney, if any), as well as a clear and concise statement of the

20  objection, documents sufficient to establish the basis for their standing as a Settlement Class

21  Member, i.e., verification under oath as to the approximate date(s) and location(s) of their

22  purchase(s) of the Products, the facts supporting the objection, and the legal grounds on which the

23  objection is based. Any objections not submitted to the Court by the Objection Deadline are deemed

24  waived. If an objecting party chooses to appear at the Final Approval Hearing, that party must file

25  with the Court, at least 30 days before the Final Approval Hearing, a notice of intent to appear and

26  that notice must list the name, address and telephone number of the attorney, if any, who will appear

27  on behalf of that party.

28

1    7.5    Right to Respond to Objections. Class Counsel and Defendant shall have the right,

2    but not the obligation, to respond to any objection, by filing opposition papers no later than seven

3    calendar days prior to the Final Approval Hearing, or on such other date as set forth in the

4    Preliminary Approval Order, or any subsequent Court order(s) modifying the briefing schedule for

5    the Final Approval Hearing. The Party responding shall file a copy of the response with the Court,

6    and shall serve a copy, by regular mail, hand or overnight delivery, in the Party's discretion, to the

7    objector (or counsel for the objector), Class Counsel and Defense Counsel, to the extent the objector

8    or their counsel do not receive notice of electronic filing via the Court's ECF filing system.

9    7.6    Ability to Opt Out. If any Settlement Class Member wishes to be excluded from this

10   Agreement and the Settlement Class, the Settlement Class Member may do so by completing and

11   submitting the online form at the Settlement Website or by mailing a valid request to opt out, as

12   described in the Notice, to the Settlement Administrator, provided however, that a Settlement Class

13   Member's ability to opt out is solely as to the Released Claims and no Settlement Class Member

14   may opt out with regard to the benefit of the injunctive relief terms as set forth in Section 3.1.

15   Requests to exclude must be submitted online by the Exclusion Deadline, or if mailed must be

16   *received by* the Settlement Administrator (not just postmarked) by the Exclusion Deadline, or they

17   shall not be valid. For exclusion requests that are submitted online, the Class Member shall have

18   the opportunity to print a page immediately after submission showing the information entered and

19   the date and time the request for exclusion was received. A Settlement Class Member who elects

20   to opt out of this Settlement and the Settlement Class shall not be permitted to object to this

21   Settlement. Settlement Class Members shall be encouraged, but not required, to provide their email

22   addresses in their requests for exclusion. Each request for exclusion must be submitted individually

23   and may not be submitted on behalf of more than one individual. So-called "mass" or "class"

24   requests for exclusion shall not be allowed.

25   7.7    Effect of Opt Out or Objection. Any Settlement Class Member who does not request

26   exclusion from the Settlement has the right to object to the Settlement. Any Class Member who

27   wishes to object must timely submit an objection. If a Class Member submits an objection and a

28

written request for exclusion, he or she shall be deemed to have complied with the terms of the opt out procedure and shall not be bound by the Agreement if approved by the Court. However, any objector who has not timely requested exclusion from the Settlement will be bound by the terms of the Agreement upon Final Approval.

7.8   Effect if Settlement Is Not Approved.  This Agreement was entered into only for purposes of settlement, subject to and without waiver of the Parties' respective rights. If the Court does not enter the Preliminary Approval Order or does not grant Final Approval, or if the Final Approval and Judgment is vacated, overturned, reversed, or rendered void as a result of appeal, the Parties shall be restored to their respective positions immediately preceding execution of this Agreement.

VIII.   **MISCELLANEOUS PROVISIONS**

8.1   The Parties agree that the recitals are contractual in nature and form a material part of this Agreement.

8.2   The Parties' counsel shall use their best efforts to cause the Court to enter the Preliminary Approval Order of this Agreement and Agreement as promptly as practicable, to take all steps contemplated by this Agreement to effectuate the settlement on the stated terms and conditions, and to obtain Final Approval of this Agreement.

8.3   This Agreement is intended to and shall be governed by the laws of the State of California, without regard to conflicts of law principles.

8.4   This Agreement and its accompanying exhibits set forth the entire understanding of the Parties. No change or termination of this Agreement shall be effective unless in writing and signed by Plaintiff's Counsel and Ross's Counsel. No extrinsic evidence or parol evidence shall be used to interpret this Agreement.

8.5   All of the Parties warrant and represent that they are agreeing to the terms of this Agreement based upon the legal advice of their respective attorneys, that they have been afforded the opportunity to discuss the contents of this Agreement with their attorneys and that the terms and conditions of this document are fully understood and voluntarily accepted.

DOCUMENT PREPARED
ON RECYCLED PAPER

8.6     The waiver by any party of a breach of any term of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party. The failure of a party to insist upon strict adherence to any provision of the Agreement shall not constitute a waiver or thereafter deprive such party of the right to insist upon strict adherence.

8.7     The headings in this Agreement are inserted merely for the purpose of convenience and shall not affect the meaning or interpretation of this document.

8.8     This Agreement may be executed by facsimile signature and in counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same instrument. The date of execution shall be the latest date on which any party signs the Agreement. This Agreement has been negotiated among and drafted by Class Counsel and Defense Counsel. Plaintiff, Plaintiff's Counsel, Settlement Class Members, and Defendant shall not be deemed to be the drafter of this Agreement or of any particular provision, nor shall they argue that any particular provision should be construed against its drafter or otherwise resort to the contra proferentem canon of construction. Accordingly, this Agreement should not be construed in favor of or against one Party as to the drafter, and the Parties agree that the provisions of California Civil Code § 1654 and common law principles of construing ambiguities against the drafter shall have no application. All Parties agree that counsel for the Parties drafted this Agreement during extensive arm's-length negotiations.

8.9     Any disagreement and/or action to enforce this Agreement shall be commenced and maintained only in the Court in which this Litigation is pending.

8.10    The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

8.11    In the event any one of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect other provisions if Defense Counsel and Class Counsel, on behalf

DOCUMENT PREPARED
ON RECYCLED PAPER

DocuSign Envelope ID: C6A4429B-6685-4C53-B45A-971843234C28

1  of the Parties, mutually elect to proceed as if such invalid, illegal, or unenforceable provision had

2  never been included in this Agreement.

3      8.12    This Agreement shall be binding upon and inure to the benefit of the respective

4  heirs, successors and assigns of the Parties.

5      8.13    The Parties intend for this Agreement to be a complete and final resolution of all

6  disputes between them with respect to the Litigation.

7      IN WITNESS HEREOF the undersigned, being duly authorized, have caused this

8  Agreement to be executed on the dates shown below and agree that it shall take effect on the first

9  date it has been executed by all of the undersigned.

Dated:  5/6/2021

By: _____
DocuSigned by:
Dominique Morrison
A622C43DC692475...
DOMINIQUE MORRISON

Dated: _____

By: _____
ROSS STORES, INC.

Printed Name: _____

Title: _____

Dated: _____

**NORTON ROSE FULBRIGHT US LLP**

By _____
Jeffrey Margulies
Attorneys for Defendant
ROSS STORES, INC.

DOCUMENT PREPARED
ON RECYCLED PAPER

1   of the Parties, mutually elect to proceed as if such invalid, illegal, or unenforceable provision had

2   never been included in this Agreement.

3       8.12    This Agreement shall be binding upon and inure to the benefit of the respective

4   heirs, successors and assigns of the Parties.

5       8.13    The Parties intend for this Agreement to be a complete and final resolution of all

6   disputes between them with respect to the Litigation.

7       IN WITNESS HEREOF the undersigned, being duly authorized, have caused this

8   Agreement to be executed on the dates shown below and agree that it shall take effect on the first

9   date it has been executed by all of the undersigned.

10

11

12

13

14   Dated: _____        By: _____
                                          DOMINIQUE MORRISON

15

16

17   Dated: May 6, 2021                   By: _____
                                          ROSS STORES, INC.

18

19                                        Printed Name: Ken. Kew

20                                        Title: Group Senior Vice President and Corporate

21                                        General Counsel and Secretary

22   Dated: May 6, 2021                   **NORTON ROSE FULBRIGHT US LLP**

23

24                                        Jeffrey B. Margulies    Digitally signed by Jeffrey B. Margulies
                                                                  DN: cn=Jeffrey B. Margulies, o=Norton
                                                                  Rose Fulbright US LLP, ou,
                                                                  email=jeff.margulies@nortonrosefulbrig
                                                                  ht.com, c=US
                                          By _____       Date: 2021.05.06 13:34:59 -07'00'

25                                        Jeffrey Margulies
                                          Attorneys for Defendant
26                                        ROSS STORES, INC.

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  May 6, 2021

**AUDET & PARTNERS, LLP**

By_____
      Michael McShane
      Attorneys for Plaintiff
      DOMINIQUE MORRISON

Dated:

**STECKLER WAYNE COCHRAN CHERRY PLLC**

By_____
      Stuart Cochran
      Attorneys for Plaintiff
      DOMINIQUE MORRISON

Dated:  May 6, 2021

**CUNEO, GILBERT & LADUCA**

By *Charles LaDuca (with consent)*
      Charles LaDuca
      Attorneys for Plaintiff
      DOMINIQUE MORRISON

Dated:  May 6, 2021

**LEVIN, SEDRAN & BERMAN**

By *Charles Schaffer (with consent)*
      Charles Schaffer
      Attorneys for Plaintiff
      DOMINIQUE MORRISON

1
2
3

Dated:

**AUDET & PARTNERS, LLP**

4

By_____
    Michael McShane

5
    Attorneys for Plaintiff
    DOMINIQUE MORRISON

6
7

Dated:

**STECKLER WAYNE COCHRAN CHERRY PLLC**

8
9

5/6/21

10

By_____
    Stuart Cochran

11
    Attorneys for Plaintiff
    DOMINIQUE MORRISON

12
13

Dated:

**CUNEO, GILBERT & LADUCA**

14
15
16

By_____
    Charles LaDuca

17
    Attorneys for Plaintiff
    DOMINIQUE MORRISON

18

Dated:

**LEVIN, SEDRAN & BERMAN**

19
20
21

By_____
    Charles Schaffer

22
    Attorneys for Plaintiff
    DOMINIQUE MORRISON

23
24
25
26
27
28

102312476.1

- 20 -

Case No.: 3:18-cv-02671-YGR

STIPULATION OF SETTLEMENT

DOCUMENT PREPARED
ON RECYCLED PAPER

# EXHIBIT A

## AQ SHEET BRAND NAMES

Amante Home

Bentley Home

Brookstone

Casa Fiori

Castlewood Manor

Chateau Dormir

Cool Comfort

Grand Manor

Grande Estate

Hampton House

Heatherwood Hill

Home Essential

Irving Park

Kensington Home

Kensington Manor

Kingston Manor

Luxura

Luxura Home

Main Street Linens

Medallion Home

Nu Percale

Organically Finished

Park Manor

Pima Supreme

Ron Chereskin

DOCUMENT PREPARED
ON RECYCLED PAPER

1   Sharper Image

2   Silvadur

3   Sterling Manor

4   Tencel

5   Ultra Lux

6   Villa Lux

7   Weave

8   Windsor Home

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER