Michael A. McShane (CA #127944)
mmcshane@audetlaw.com
Ling Y. Kuang (CA #296873)
lkuang@audetlaw.com
Kurt D. Kessler (CA #327334)
kkessler@audetlaw.com
**AUDET & PARTNERS, LLP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102-3275
Telephone:     (415) 568-2555
Facsimile:     (415) 568-2556

Counsel for Plaintiff Dominique Morrison on
behalf of herself and all others similarly situated

[*Additional Counsel on Signature Block*]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| DOMINIQUE MORRISON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ROSS STORES, INC.,<br><br>Defendant. | Case No.: 4:18-cv-02671-YGR<br><br>**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES**<br><br>Date:     **January 25, 2022**<br>Time:     **2:00 PM**<br>Place:     Courtroom 1, 4th Floor<br>Judge:     Hon. Yvonne Gonzalez Rogers<br><br>Complaint Filed:     May 7, 2018 |

1      **<u>NOTICE OF MOTION AND MOTION</u>**

2          PLEASE TAKE NOTICE THAT on January 25, 2022 at 02:00 PM in Courtroom 1

3   located on the 4th floor of the United States District Court for the Northern District of

4   California, located at 1301 Clay Street, Oakland, CA 94612, before the Honorable Yvonne

5   Gonzalez Rogers, Plaintiff Dominique Morrison ("Plaintiff"), on behalf of herself and the

6   settlement Class, will and does respectfully move this Court for an award of attorneys' fees,

7   expenses, and a class representative service award. Plaintiff's motion is brought in conjunction

8   with the class action settlement which has been preliminarily approved by this Court as fair,

9   adequate and reasonable.  In particular, Plaintiff will move this Court for an order:

10          1)      granting Class Counsel's request for an award of attorneys' fees in the

11          amount of $750,000 to be paid from the Class Settlement Amount established

12          by the Parties' Settlement and on the terms set forth in the Settlement

13          Agreement, pursuant to Fed. R. Civ. P. 23(h) and the legal standards set forth in

14          the memorandum supporting this motion;

15          2)      granting Class Counsel's request for an award of costs reimbursement of

16          $37,017.91, to be paid from the Settlement and on the terms set forth in the

17          Settlement, pursuant to Fed. R. Civ. P. 23(h) and the legal standards set forth in

18          the memorandum supporting this motion;

19          3)      awarding $5,000 as a service award to Plaintiff who served as the Class

20          Representative; and

21          4)      finding the facts and stating the legal conclusions that are necessary to

22          support the Court's order.

23          This motion is based upon this Notice of Motion and Motion, the Memorandum of

24   Points and Authorities filed concurrently herewith, the declarations of counsel filed

25   concurrently herewith, all other pleadings, papers, records and documentary materials on file in

26   this action, those matters of which the court may take judicial notice, and any oral argument of

27   counsel made at the hearing on this motion.

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................ 1

II.   STANDARD OF REVIEW ......................................................................... 2

III. ARGUMENT .............................................................................................. 2

  A.   Under the applicable lodestar method, Class Counsel's fee is reasonable. ............... 2

    1.   Under California law, the lodestar method generally applies to fee-shifting cases, including those at issue here. ............................................................... 3

    2.   As the prevailing party, the Plaintiff Class is entitled to an award of attorneys' fees under Cal. Civil Code section 1780. ......................................................... 3

    3.   The Private Attorney General Statute Separately Entitles a "Successful Party" to Fees in Public Interest Cases ........................................................................ 5

    4.   Plaintiff is "Prevailing" and "Successful" Under the CLRA and Private Attorney General Statute ........................................................................................... 6

    5.   Where a settlement provides relief that is not easily monetized, the lodestar method is appropriate under both California and Ninth Circuit law. ................................... 7

    6.   Under both California and Ninth Circuit law, the lodestar method provides a presumptively reasonable fee. ........................................................................ 8

    7.   Class Counsel's lodestar is reasonable. ........................................................ 14

    8.   Class Counsel's rates are reasonable. ........................................................... 15

  B.   The Settlement Agreement Provides for Attorney's Fees, Costs, and an Incentive Award ........................................................................................................... 16

  C.   The requested expenses and costs are fully documented, necessarily incurred and reasonable. .................................................................................................... 18

  D.   The Class Representative service awards are reasonable and appropriate. ............ 18

IV. CONCLUSION. ........................................................................................ 19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## TABLE OF AUTHORITIES

**Cases**

*Blum v. Stenson*, 465 U.S. 886 (1984)...................................................................... 11, 20

*Brazil v. Dell Inc.*, 2012 U.S. Dist. LEXIS 47986 (N.D. Cal. Apr. 4, 2012) ........................ 8, 22

*Burke v. Ipsen*, 189 Cal. App. 4th 801 (2010) ............................................................. 6

*Camancho v. Bridgeport Fin., Inc.*, 523 F.3d 973 (9th Cir. 2008)................................... 19

*Chambers v. Whirlpool Corp.,* 214 F. Supp. 3d 877 (C.D. Cal. 2016) ............................. 12

*Close v. Sotheby's, Inc.*, 909 F.3d 1204 (9th Cir. 2018) .............................................. 3

*Covillo v. Specialtys Café*, No. C-11-00594 DMR, 2014 U.S. Dist. LEXIS 29837, 2014 WL
    954516 (N.D. Cal. Mar. 6, 2014) ........................................................................ 18

*Cunningham v. Cnty. of L.A.*, 879 F.2d 481 (9th Cir. 1988) ........................................ 11

*Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794 (1996)............................................. 10

*Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997 (9th Cir. 2002) .................... 11

*Fitzgerald v. City of Los Angeles*, 2009 U.S. Dist. LEXIS 34803 (C.D. Cal. Apr. 7, 2009) ....... 7

*G. F. v. Contra Costa Cty.*, No. 13-cv-03667-MEJ, 2015 U.S. Dist. LEXIS 159597 (N.D. Cal.
    Nov. 25, 2015)................................................................................................ 19

*Garner v. State Farm Mut. Auto. Ins. Co., No.* CV 08 1365, 2010 WL 1687832 (N.D. Cal. Apr.
    22, 2010)....................................................................................................... 24

*Gonzales v. City of Maywood*, 729 F.3d 1196 (9th Cir. 2013).................................... 11

*Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140 (2006) ........................ 9

*Greene v. Dillingham Constr. NA., Inc.*, 101 Cal. App. 4th 418 (2002) ...................... 16

*Grodensky v. Artichoke Joe's Casino*, 171 Cal. App. 4th 1399 (2009) ...................... 9

*Grove v. Wells Fargo Fin., Inc.*, 606 F.3d 577 (9th Cir. 2010)................................. 23

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)............................... 10, 11, 12

*Hayward v. Ventura Volvo,* 108 Cal. App. 4th 509 (2003) ...................................... 5

*Hensley v. Eckerhart,* 461 U.S. 424 (1983)......................................................... 11, 21

*Heston v. Taser Int'l., Inc.*, 431 Fed. Appx. 586 (9th Cir. 2011) ............................... 8

*In re Apple Computer, Inc. Derivative Litig.*, 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) ............................................................................................................................ 22, 23

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ...................... 2, 9, 10

*In re Yahoo Mail Litig.*, No. 13-CV-4980, 2016 WL 4474612 (N.D. Cal. Aug. 25, 2016) ....... 24

*Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001) ............................................ 22

*Jefferson v. Chase Home Fin.*, C 06-6510 TEH, 2009 U.S. Dist. LEXIS 64607, 2009 WL 2051424 (N.D. Cal. July 10, 2009) ............................................................................ 4

*Johnson v. Triple Leaf Tea Inc.*, 2015 U.S. Dist. LEXIS 170800 (N.D. Cal. Nov. 16, 2015) ... 18

*Kanter v. Warner-Lambert Co.*, 265 F.3d 853 (9th Cir. 2001) ................................................... 9

*Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) ............................................................ 11, 12, 16, 20

*Kim v. Euromotors West/The Auto Gallery,* 149 Cal. App. 4th 170 (2007) ............................... 5

*Lindelli v. Town of San Anselmo*, 139 Cal. App. 4th 1499 (2006) ............................................ 7

*Littlejohn v. Ferrara Candy Co.*, No. 3:18-cv-00658-AJB-WVG, 2019 U.S. Dist. LEXIS 101959 (S.D. Cal. June 17, 2019) ...................................................................... 19

*Lyons v. Chinese Hosp. Ass'n*, 136 Cal. App. 4th 1331 (2006) ................................................. 8

*Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995) ........................... 3

*McCown v. City of Fontana*, 565 F.3d 1097 (9th Cir. 2009) ................................................... 12

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) ............................................. 7, 9

*Neary v. Regents of Univ. of Cal.*, 3 Cal. 4th 273 (1992) ....................................................... 21

*Nicholson v. Barab*, 233 Cal. App. 3d 1671 (1991) ............................................................... 21

*Noll v. eBay*, 309 F.R.D. 593 (N.D. Cal. 2015) ..................................................................... 12

*Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160 (C.D. Cal. 2010) .......................... 4, 6

*Perdue v. Kenny A.*, 130 S. Ct. 1662 (2010) .......................................................................... 11

*Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157 (9th Cir. 2013) ..................................... 24

*Rader* v. *Thrasher*, 57 Cal. 2d 244 (1962) ........................................................................... 16

*Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975 (N.D. Cal. 2017) ............................... 4

*Riker v. Gibbons*, No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012 (D. Nev. Oct. 27, 2010) 14

iv

*Roberts v. Electrolux Home Prods.*, 2014 U.S. Dist. LEXIS 130163 (C.D. Cal. 2014) ........ 4, 10

*Salton Bay Marina Inc. v. Imperial Irrigation Dist.*, 172 Cal. App. 3d 914 (1985) ................. 20

*Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673 (N.D. Cal. 2016) ........................ 18

*Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895 (9th Cir. 1995) .............................. 19

*Serrano v. Priest*, 20 Cal. 3d 25 (1977).................................................................................. 7, 20

*Serrano v. Stefan Merli Plastering Co.*, 52 Cal. 4th 1018 (2011)............................................ 7, 8

*Serrano v. Unruh*, 32 Cal. 3d 621 (1982)................................................................................... 21

*Sundance v. Mun. Ct.*, 192 Cal. App. 3d 268 (1987).................................................................. 21

*Thalheimer v. City of San Diego*, 2012 U.S. Dist. LEXIS 59315 (S.D. Cal. 2012).................. 23

*Trs. of Const. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253

    (9th Cir. 2006) ........................................................................................................................ 20

*Victoria v. Super. Ct.*, 40 Cal. 3d 734 (1985)............................................................................ 21

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ............................................... 12, 13

*Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224 (2001) .............................................. 14

*Woodland Hills Residents Assn., Inc. v. City Council*, 23 Cal. 3d 917 (1979)............................ 8

*Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536 (9th Cir. 2016) ..................................... 10

**Statutes**

Cal. Civ. Code § 1021.5 ......................................................................................................... 7, 8, 9

Cal. Civ. Code § 1760 ............................................................................................................... 5, 6

Cal. Civ. Code § 1780 ................................................................................................................... 4

Cal. Civ. Code § 1780(e) .............................................................................................................. 4

Cal. Code Civ. Proc. § 1021.5 ...................................................................................................... 8

Fed. R. Civ. P. 23(e)(1)(C) ........................................................................................................... 3

Fed. R. Civ. P. 23(h).................................................................................................................... 2

Fed. R. Civ. P. 52(a) .................................................................................................................... 2

Fed. R. Civ. P. 54(d)(1) ............................................................................................................... 3

Fed. R. Civ. P. 54(d)(2)(C).......................................................................................................... 2

v

Fed. R. Civ. P. 58(a)(3) .......................................................................................... 2

**Treatises**

*Economic Analysis of Law* (4th ed. 1992) ............................................................. 16

*Manual For Complex Litig*ation, *Fourth* § 14.121 (2004). ...................................... 2

*Manual For Complex Litigation, Fourth* § 14.122 .................................................. 19

1   **I.   INTRODUCTION**

2      This Motion comes before the Court pursuant to Federal Rule of Civil Procedure 23(h)

3   and the Order Preliminary Approving Class Action Settlement entered on August 27, 2021.

4   Dkt. 113 ("PA Order"). The Court should, respectfully, award attorneys' fees to Class Counsel

5   in the amount of $750,000, plus costs in the amount of $37,017.91, and an incentive award to

6   Class Representative Dominque Morrison in the amount of $5,000, for her time and effort in

7   representing the Settlement Class.

8      Since 2018, Class Counsel have handled this litigation in the face of a stout defense and

9   significant risk. Class Counsel have handled this litigation on a purely contingent basis and

10  have advanced all costs to prosecute these claims. In doing so, Class Counsel invested over a

11  million dollars in time and expenses to secure the benefits provided in the Settlement before the

12  Court.  Class Counsel's fee request is reasonable and supported by the billing records for time

13  spent investigating, prosecuting, and negotiating the settlement of this matter. Class Counsel's

14  lodestar to date already exceeds the fees being requested. Class Counsel have presented their

15  hours spent by timekeeper, to assist the Court and the Class in evaluating the reasonableness of

16  the fee request. *See* Declaration of Michael McShane in Support of Plaintiff's Motion for

17  Attorneys' Fees, Costs and Incentive Award filed concurrently herewith ("McShane Decl."), ¶¶

18  8-11. Class Counsel's cost reimbursement request of $37,017.91 is supported by statute and

19  includes costs reasonably necessary to successfully prosecute this action. McShane Decl. ¶ 10.

20     Because this is a diversity case, the Court should apply California law to determine

21  attorneys' fees.  And because fees are provided for by fee-shifting provisions of California's

22  and other states' consumer protection statutes, the lodestar method governs.  Under the

23  circumstances of this case, because the settlement is difficult to value, the most appropriate

24  method is the lodestar approach.  The lodestar method takes into account all of the work that

25  Class Counsel have done, avoids the intractable difficulties in quantifying the in-kind relief,

26  and should be applied here.

27     The Court should award Class Counsel their fee of $750,000, which is less than Class

1   Counsel's lodestar.  Class Counsel achieved a remarkable, valuable settlement for a large class

2   of consumers, ensuring that the Class (and any future consumer of these products) will be able

3   to make fully informed purchasing decisions at Ross going forward in regards to the products

4   which is the subject of this litigation. Defendants do not oppose this application. The fact that

5   the requested fees were negotiated between the parties under the oversight of mediator Judge

6   Elizabeth D. LaPorte (ret.) also supports approval of Plaintiff's request.

7   **II.      STANDARD OF REVIEW**

8           "In a certified class action, the court may award reasonable attorney's fees and

9   nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

10  The fee awarded must be "reasonable." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d

11  935, 941 (9th Cir. 2011) ["*In re Bluetooth*"]. The decision to award attorneys' fees "is

12  committed to the sound discretion" of the court, and should be based on "the unique contours

13  of the case." *Manual For Complex Litigation, Fourth* § 14.121 (2004).

14          In a class action, the court follows Rule 23(h), and the "fundamental focus is the result

15  actually achieved for class members." *Id.* at § 21.71 (citing Fed. R. Civ. P. 23(h) committee

16  note). The judgment on attorney's fees and costs must describe the basis for the Court's order,

17  including findings of fact and conclusions of law. *See id.* § 14.232; Fed. R. Civ. P. 52(a), Fed.

18  R. Civ. P. 54(d)(2)(C), Fed. R. Civ. P. 58(a)(3) (a separate judgment for fees is not required).

19          Notice to the class of an attorney's fee motion is required, which is ordinarily

20  accomplished in a settlement class by including information about the hearing and motion

21  within the class notice itself. *See* Fed. R. Civ. P. 23(e)(1)(C). Counsel for the class may also

22  move for costs, if they are a prevailing party. *See* Fed. R. Civ. P. 54(d)(1).

23  **III.     ARGUMENT**

24          **A.      Under the applicable lodestar method, Class Counsel's fee is reasonable.**

25          In diversity cases, federal courts apply state law to determine both the right to attorney's

26  fees and the appropriate method to calculate the amount.  *Close v. Sotheby's, Inc.*, 909 F.3d

27  1204, 1208 (9th Cir. 2018) (applying state law to determine fee award in diversity jurisdiction

1    action); *see also Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir.

2    1995) (emphasis added) ("Ninth Circuit precedent has applied state law in determining not only

3    the right to fees, *but also in the method of calculating the fees*.") (emphasis added).

4         Because this is a diversity action the Court applies California state law in determining

5    the appropriate measure of fees.  And because the fee award is based on fee shifting statutes,

6    and the settlement is difficult to value, the lodestar method is most appropriate.  The lodestar

7    method provides a presumptively reasonable fee.

8             **1.**      **Under California law, the lodestar method generally applies to fee-**

9                    **shifting cases, including those at issue here.**

10        "Under a fee-shifting statute, [California] courts typically use the 'lodestar method,'

11    which 'calculates the fee by multiplying the number of hours reasonably expended by counsel

12    by a reasonable hourly rate.'" *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 984

13    (N.D. Cal. 2017) (applying California law and lodestar method in a diversity action with fee

14    shifting statute); *see also Roberts v. Electrolux Home Prods.*, 2014 U.S. Dist. LEXIS 130163,

15    at *8 (C.D. Cal. 2014) (applying lodestar method as appropriate in fee-shifting case under

16    CLRA and similar consumer protection statutes of other states); *Jefferson v. Chase Home Fin.*,

17    C 06-6510 TEH, 2009 U.S. Dist. LEXIS 64607, 2009 WL 2051424, at *3 (N.D. Cal. July 10,

18    2009) (applying lodestar method to determine "reasonable fees" under CLRA).

19         In this case, the payment of attorney's fees is based on fee-shifting statutes, specifically,

20    California Civil Code section 1780 of the California Consumers Legal Remedies Act

21    ("CLRA") and similar provisions in other state consumer protections statutes.  Since California

22    law applies, the calculation of attorney's fees should be performed using the lodestar method.

23             **2.**      **As the prevailing party, the Plaintiff Class is entitled to an award of**

24                    **attorneys' fees under Cal. Civil Code section 1780.**

25        "Under [Civil Code section] 1780(e), the Court shall award costs and attorneys' fees to

26    a prevailing plaintiff in an action under the CLRA. A plaintiff is the prevailing party if he or

27    she obtained a 'net monetary recovery' or 'realized its litigation objectives,' including pursuant

1    to a settlement agreement." *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1169

2    (C.D. Cal. 2010) (citing *Kim v. Euromotors West/The Auto Gallery,* 149 Cal. App. 4th 170,

3    178–79 (2007)).  Section 1760 of the Consumers Legal Remedies Act requires that the CLRA

4    "be liberally construed and applied to promote its underlying purposes, which are to protect

5    consumers against unfair and deceptive business practices and to provide efficient and

6    economical procedures to secure such protection."  Cal. Civ. Code § 1760.  Accordingly,

7    "courts must construe the statute as allowing prevailing consumers reasonable attorney's fees."

8    *Hayward v. Ventura Volvo,* 108 Cal. App. 4th 509, 513 (2003).

9        Plaintiff is the prevailing party here and is entitled to an award of attorney's fees under

10   section 1780.  Plaintiff sought to right a wrong committed by Ross when it sold sheets sourced

11   from AQ Textiles that it represented to have thread counts that it did not possess.  Class

12   Members purchased sheets that did not have the represented thread counts on the labels of the

13   products and corresponding quality of the sheets. The Plaintiff 'realized [her] litigation

14   objectives,' pursuant to a settlement agreement."  because the settlement provides an assurance

15   that Class Members will not purchase mislabeled sheets again with inflated thread counts and

16   will get the benefit of their bargain.  This result also serves the public interest by preventing

17   Class Members and the general public from being harmed in the future, and provides an up to

18   12-year period where Ross is obligated to monitor any products provided by AQ Industries.

19       The Class is also still able to pursue monetary claims against the manufacturer, AQ

20   Textiles. As previously noted in Plaintiff's preliminary approval papers, discovery in this

21   litigation revealed that Ross' unique business model ultimately provided it with a strong

22   "innocent retailer" defense. Class Counsel was faced with the choice of pursuing a risky course

23   of action which may have left the Class without any relief, or instead obtaining a result which

24   directly addresses and corrects the alleged misconduct; but still allows the Class to pursue

25   monetary damages against the manufacturer which, suffice it say, cannot assert such a defense.

26       Here, the Class consists of approximately 800,000 members, meaning the settlement

27   provides a benefit to a large class of people. Dkt. 113 at 4. Uncounted of course are the

1   hundreds of thousands more consumers, who are not class members, that will benefit from the

2   protections afford by this settlement once the settlement is finalized. *See Parkinson v. Hyundai*

3   *Motor America*, 796 F. Supp. 2d 1160, 1170-71 (2010) (finding that "Although . . . even a final

4   total of 2,900 claimants, do[es] not amount to a "large" class of persons by today's standards in

5   class action cases, the number is not without significance" and was sufficient to qualify as a

6   "significant benefit conferred on a large class of persons"); *see, e.g., Burke v. Ipsen*, 189 Cal.

7   App. 4th 801, 823 (2010) (finding substantial benefit under section 1021.5 met where "relief

8   granted by the trial court will directly affect almost 1,000 actual or potential members of the

9   ADDA); *Estrada v. FedEx Ground Package System, Inc.*, 154 Cal. App. 4th 1, 16–17 (2007)

10   (holding that plaintiff's success in obtaining relief for 209 employees satisfied "large class of

11   persons" factor).

12   Plaintiff obtained relief in the form of injunctive relief designed to give benefit to Ross

13   customers – the Class Members.  The Class Members will be able to buy sheets at Ross

14   knowing that what is advertised on the labels is exactly what they will be purchasing.  In

15   accordance with the purpose of "protect[ing] consumers against unfair and deceptive business

16   practices and provid[ing] efficient and economical procedures to secure such protection," an

17   award of attorneys' fees here is appropriate.  Cal. Civ. Code § 1760.  Plaintiff's Counsel have

18   spent more than three years litigating this action in the face of vigorous opposition by

19   Defendant, invested thousands of hours of attorney time, incurred expenses and obtained a

20   good result to enforce specific consumer protections.  Class Counsel has not received any

21   reimbursement to date for their efforts. Thus, an award of fees and costs is appropriate.

### 3.   The Private Attorney General statute separately entitles a "Successful Party" to fees in public interest cases

24   California Code of Civil Procedure "section 1021.5 authorizes an award of attorney fees

25   to a 'private attorney general,' that is, a party who secures a significant benefit for many people

26   by enforcing an important right affecting the public interest." *Serrano v. Stefan Merli*

27   *Plastering Co.*, 52 Cal. 4th 1018, 1020 (2011) ["*Stefan*"]. Consistent with the policies

underlying the statute, the entitlement belongs to both the litigant and her counsel. *Lindelli v. Town of San Anselmo*, 139 Cal. App. 4th 1499, 1509 (2006); *see also Serrano v. Priest*, 20 Cal. 3d 25, 44 (1977) ["*Priest*"] (purpose of fee-shifting statutes is to "award . . . substantial attorney fees to those public-interest litigants and their attorneys . . . who are successful in such cases" and thereby incentivize "representation of interests of similar character in future litigation"); *accord Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).

"Although the section 'is phrased in permissive terms . . . the discretion to deny fees to a party that meets its terms is quite limited,' and generally requires a full fee award unless special circumstances would render such an award unjust." *Fitzgerald v. City of Los Angeles*, 2009 U.S. Dist. LEXIS 34803, at *9-10 (C.D. Cal. Apr. 7, 2009) (quoting *Lyons v. Chinese Hosp. Ass'n*, 136 Cal. App. 4th 1331, 1344 (2006)). Fees are awarded when: (1) the action "has resulted in the enforcement of an important right affecting the public interest," (2) "a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons . . .", and (3) "the necessity and financial burden of private enforcement . . . are such as to make the award appropriate . . . ." *Stefan*, 52 Cal. 4th at 1026 (quoting Cal. Code Civ. Proc. § 1021.5 and citing *Woodland Hills Residents Assn., Inc. v. City Council*, 23 Cal. 3d 917, 935 (1979)). "The key question is 'whether the financial burden placed on the party [claiming fees] is out of proportion to its personal stake in the lawsuit.'" *Heston v. Taser Int'l., Inc.*, 431 Fed. Appx. 586, 589 (9th Cir. 2011) (quoting *Lyons v. Chinese Hosp. Ass'n*, 136 Cal. App. 4th 1331, 1352 (2006)). Here, the Products typically retail for under $100, so buyers could not possibly have a stake adequate to litigate. Further, the "elimination of allegedly false representations . . . confer[] a benefit on both the class members and the public at large." *See Brazil v. Dell Inc.*, 2012 U.S. Dist. LEXIS 47986, at *4 (N.D. Cal. Apr. 4, 2012). Thus, Plaintiff has acted as a true attorney general and is a successful party.

**4.    Plaintiff is "Prevailing" and "Successful" under the CLRA and Private Attorney General statute**

Courts treat the terms "prevailing plaintiff" in the CLRA, and "successful party" in section 1021.5, synonymously, because "[t]he language in the two provisions is not materially different." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 858 (9th Cir. 2001). "In order to effectuate" the policy underlying section 1021.5, and consistent with the construction of comparable statutes, the California Supreme Court has "taken a broad, pragmatic view of what constitutes a 'successful party.'" *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 565 (2004). "[A] party need not prevail on every claim to be considered a successful party within the meaning of the statute." *Grodensky v. Artichoke Joe's Casino*, 171 Cal. App. 4th 1399, 1437 (2009) (citation omitted). *See also Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 153 (2006) (As with section 1021.5, "[i]t is settled that plaintiffs may be considered 'prevailing parties' for attorney's fees purposes [under the CLRA] if they succeed on *any significant issue* in litigation which achieves *some of the benefit* the parties sought in bringing the suit." (quotation omitted)).

Plaintiff is a prevailing and successful party because the lawsuit "achieved its main litigation objective": (1) removing false or deceptive advertising from the Ross sheet packaging by requiring the thread counts to be certified; (2) identifying the true and correct thread count on the Ross Sheet Product packaging and promotional materials; and (3) implementing the injunctive relief on the Ross Sheet product packaging and promotional materials. *See* Dkt 113 at 12 ("Settlement Agreement") §§ 4.1-4.2. Injunctive relief, such as this, that is "'socially beneficial' . . . justif[ies] a fee award under" the CLRA. *In re Bluetooth*, 654 F.3d at 944.

> **5.    Where a settlement provides relief that is not easily monetized, the lodestar method is appropriate under both California and Ninth Circuit law.**

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 942 (9th Cir. 2011) (citation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (same).

1     However, where the value of the entire settlement is difficult to ascertain, and fees are justified

2 under a fee-shifting statute, courts applying California law opt to use the lodestar method to

3 determine attorneys' fees. *See, e.g.*, *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546-

4 47 (9th Cir. 2016) (applying California law and lodestar method in unfair business practices

5 diversity action where total settlement was difficult to value); *Hanlon v. Chrysler Corp.*, 150

6 F.3d 1011, 1029 (9th Cir. 1998) (attorney's fees approved using lodestar method where no

7 class member was entitled to cash recovery, making valuation of the settlement agreement

8 more difficult); *Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1809 (1996) (remanding to

9 trial court to calculate fees using lodestar and stating "[Percentage of the fund] method . . .

10 should only be used where the amount was a 'certain or easily calculable sum of money.'");

11 *Roberts v. Electrolux Home Prods.*, 2014 U.S. Dist. LEXIS 130163, at *8 (C.D. Cal. 2014)

12 (applying lodestar method as appropriate in fee-shifting case under section 1780 and other

13 states similar consumer protection statutes where relief was difficult to accurately ascertain).

14 Here, as a fee-shifting case without a common fund and providing only injunctive relief, this

15 case presents the prime example of the appropriate use of the lodestar method. The injunctive

16 relief provided is facially difficult to provide a specific dollar value for, another factor that

17 weighs on the use of the lodestar method.

18     Under California law, "a court assessing attorney fees begins with a touchstone or

19 lodestar figure, based on the careful compilation of the time spent and reasonable hourly

20 compensation of each attorney . . . involved in the presentation of the case." *Ketchum v. Moses*,

21 24 Cal. 4th 1122, 1131-32 (2001); *see also Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)

22 ("The most useful starting point for determining the amount of a reasonable fee is the number

23 of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.");

24 *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1673 (2010) (lodestar method is usually preferable).

25          **6.**     **Under both California and Ninth Circuit law, the lodestar method**

26             **provides a presumptively reasonable fee.**

27     The lodestar method provides a presumptively reasonable fee. *See Fischel v. Equitable*

8

1   *Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002) ("There is a strong presumption

2   that the lodestar figure represents a reasonable fee."); *Cunningham v. Cnty. of L.A.*, 879 F.2d

3   481, 484 (9th Cir. 1988) (lodestar method produces a "presumptively reasonable lodestar fee").

4       "The lodestar calculation begins with the multiplication of the number of hours

5   reasonably expended by a reasonable hourly rate." *Hanlon*, 150 F.3d at 1029 (citing *Blum v.*

6   *Stenson*, 465 U.S. 886 (1984)). The reasonable hourly rate is the prevailing market rate in the

7   geographic community, taking into consideration "the experience, skill, and reputation of the

8   attorney" in question. *Gonzales v. City of Maywood*, 729 F.3d 1196, 1205 - 06 (9th Cir. 2013).

9       "The resulting figure may be adjusted upward or downward to account for several

10  factors including the quality of the representation, the benefit obtained for the class, the

11  complexity and novelty of the issues presented, and the risk of nonpayment." *Hanlon*, 150 F.3d

12  at 1029; *see also Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) (lodestar figure may be

13  increased or decreased depending on a variety of factors, including the contingent nature of the

14  fee award). "The reasonableness of the fee is determined primarily by reference to the level of

15  success achieved by the plaintiff[s]." *McCown v. City of Fontana*, 565 F.3d 1097, 1101-02 (9th

16  Cir. 2009). Multipliers ranging from one to three are frequently awarded in cases when the

17  lodestar method is applied. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051, n.6

18  (9th Cir. 2002) (in a majority of collected cases the lodestar multiplier fell between 1.0 and

19  3.0); *Chambers v. Whirlpool Corp.,* 214 F. Supp. 3d 877, 901-02 (C.D. Cal. 2016) (approving a

20  1.68 multiplier based solely on the lodestar method); *Noll v. eBay*, 309 F.R.D. 593, 610 (N.D.

21  Cal. 2015) (confirming 1.6 multiplier as reasonable in cross-check).

22       The California Supreme Court has explained:
23       "A contingent fee must be higher than a fee for the same legal services paid as
         they are performed. . . .  A lawyer who both bears the risk of not being paid and
24       provides legal services is not receiving the fair market value of his work if he is
         paid only for the second of these functions. If he is paid no more, competent
25       counsel will be reluctant to accept fee award cases."

26  *Ketchum*, 24 Cal. 4th at 1132 – 33 (internal quotations and citations omitted).

27       The attorneys' fee award in this case stands up when evaluated using the factors set

1   forth in *Vizcaino*, 290 F.3d at 1048-50:

2       (a)    Class Counsel's procurement of relief is a good result for a nationwide class;

3       (b)    Class Counsel took on considerable risk to litigate against a well-financed

4               Defendant with facially valid defenses; and

5       (c)    Class Counsel devoted considerable time to the litigation and settlement over

6               many years and were prepared to try the case.

7   ### a.  The results achieved for the Class

8   Here, Class Counsel procured relief in the form an injunction protecting Class Members

9   from being damaged in the future.  This benefit also applies to any future customer of Ross

10   who may have purchased the subject AQ Textiles sheets. While this benefit may not result in a

11   monetary award to the Class Members, it does speak to the intent, content and spirit of the

12   consumer protections laws and claims which are a part of this litigation.

13   The relief to the Class Members is also good result for the nationwide class because

14   Class Members, primarily repeat Ross customers, would have continued to be exposed to the

15   same allegedly inflated representations related to thread count and therefore be unable to make

16   an educated purchasing decision on sheets. Ross data indicates that its customers regularly

17   come back to Ross to search for good deals on products, and thus this injunctive relief is

18   extremely valuable for Ross customers.  Dkt. 113 at 6.

19   Class Members are receiving a substantial direct benefit from the injunctive relief

20   ensuring that the product in the packages conform to what is presented on the labels There is

21   also a direct monetary savings from providing consumers with truthful information that will

22   guide future purchases, and ensuring that they are not being overcharged for the sheets based

23   on an inflated thread count. The Settlement removes the allegedly false advertising from the

24   marketplace, which is an overwhelmingly positive result for the Class.

25   The type of injunctive relief Ross has agreed to is sufficient consideration for Class

26   Members to not pursue their claim for monetary relief. The Settlement imposes injunctive relief

27   in the form of ensuring the accuracy of the product labels on the products at issue. This relief

1    goes to the very heart of the Plaintiff's claims. As a result, the value of this substantive and

2    widespread change to Defendant's practices cannot be overstated. These changes achieve the

3    goals of this lawsuit. *See Riker v. Gibbons*, No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012,

4    at *4 (D. Nev. Oct. 27, 2010) (approving a settlement for injunctive and declaratory relief,

5    finding that it "achieve[d] the goals of the lawsuit"); *see also Wershba v. Apple Computer, Inc.*,

6    91 Cal. App. 4th 224, 250 (2001) ("Compromise is inherent and necessary in the settlement

7    process . . . even if the relief afforded by the proposed settlement is substantially narrower than

8    it would be if the suits were to be successfully litigated, this is no bar to a class settlement

9    because the public interest may indeed be served by a voluntary settlement in which each side

10   gives ground in the interest of avoiding litigation."). These changes will address the harm

11   allegedly caused to the Class and provides Plaintiff and the Class with invaluable relief going

12   forward – a change in the labeling of the sheets and a disclosure of the correct thread count.

13   This is invaluable to a Class that will continue shopping at Ross and thus is primed to reap the

14   benefits of knowing that they will be able to take home sheets with accurate thread counts.

15        Furthermore, and importantly, Class Members do not relinquish the right to receive

16   damages for their purchase. While they are releasing their claims against Ross, they will

17   continue to seek their damages from the manufacturer and importer of the sheets at issue, AQ

18   Textiles.

19              **b.  Risk of non-payment, preclusion of other employment,**

20                   **and ongoing work**

21        Class Counsel took on considerable risk in prosecuting this case, against a defendant

22   willing to vigorously litigate and with facially valid defenses.  At the time of settlement, Class

23   Counsel faced the prospect of having to not only certify the class in the face of opposition from

24   Defendant, but additionally to prevail at trial and also retain any favorable judgment through

25   the appellate process. Litigating this case through trial and any appeals would be expensive and

26   time-consuming and would present risk to both parties.

27        This case posed significant risk for failure to prevail on any of the claims at trial. Here,

1    the settlement negotiations were hard-fought, requiring a multiple full-day mediation sessions,

2    including the two final mediation sessions with Judge LaPorte(ret.), with both Parties and their

3    counsel thoroughly familiar with the applicable facts, legal theories, and defenses on both sides.

4    *See* McShane Decl. ¶¶ 16-17. Plaintiff's counsel was aware of the attendant strengths, risks,

5    and uncertainties of Plaintiff's claims, the difficulty of certifying a class, and Ross's defenses,

6    during the course of negotiations. *Id*. Plaintiff's counsel agreed to settle the action pursuant to

7    the provisions of the Settlement, after considering, among other things: (i) the substantial

8    benefits to Plaintiff and the Class under the terms of the Settlement; (ii) the uncertainty of being

9    able to prevail at trial; (iii) the uncertainty relating to Defendant's defenses and the expense of

10   additional motion practice in connection therewith; (iv) the attendant risks, difficulties and

11   delays inherent in litigation, especially in complex actions such as this; and (v) the desirability

12   of consummating this Settlement promptly in order to provide substantive relief to Plaintiff and

13   the Class without unnecessary delay and expense. *See* McShane Decl. ¶ 17.

14        Devoting 2992.75 attorney and staff hours and costs to this action necessarily precluded

15   Class Counsel taking on other employment. *See* McShane Decl. ¶ 11. And, there was

16   significant risk that Class Counsel, despite committing these resources, would not have

17   received any compensation for its services. *See* McShane Decl. ¶ 19. Class Counsel's ability to

18   collect compensation was entirely contingent upon it prevailing. The substantial risk of non-

19   recovery inherent in class action litigation is well-documented.

20        When attorneys undertake litigation on a contingent basis, a fee that is limited to the

21   hourly fee that would have been paid by a fee-paying client, win or lose, is not a reasonable fee

22   by market standards. *Greene v. Dillingham Constr. NA., Inc.*, 101 Cal. App. 4th 418, 428-29

23   (2002). "A contingent fee must be higher than a fee for the same legal services paid as they are

24   performed. The contingent fee compensates the lawyer not only for the legal services he

25   renders but for the loan of those services. The implicit interest rate on such a loan is higher

26   because the risk of default (the loss of the case, which cancels the debt of the client to the

27   lawyer) is much higher than that of conventional loans." *Ketchum*, 24 Cal. 4th at 1132-1133

1    (quoting the Hon. Richard Posner's *Economic Analysis of Law* (4th ed. 1992)); s*ee also Rader*

2    v. *Thrasher*, 57 Cal. 2d 244, 253 (1962). From the outset of litigation to the present, Class

3    Counsel litigated this matter on a contingent basis and placed their own resources at risk to do

4    so. *See* McShane Decl. ¶ 19. The contingent nature of this case supports the lodestar requested.

5                     **c.   The effort, skill, and experience of Class Counsel.**

6           Class Counsel filed this action in May 2018 and have been prosecuting this case

7    vigorously from the onset for approximately three years in the face of Ross' vigorous defense.

8    The parties shared thousands of pages of discovery, including 3,753 pages from Ross and

9    roughly 6,000 from third-parties Plaintiff reviewed. They engaged in deposition practice,

10   including of a 30(b)(6) deponent. Class Counsel devoted 2992.75 attorney and staff hours, plus

11   costs, to litigating this class action as of September 30, 2021. Class Counsel also remains

12   committed to overseeing the Settlement and this litigation through to the end, which will also

13   require the expenditure of additional attorney time Class Counsel undertook significant legal

14   research on the claims they prepared to prosecute. Plaintiff fought off multiple motions to

15   dismiss their pleadings. They filed two amended complaints to properly frame this action. They

16   embarked on factual research to determine the market and standards for the selling of sheets in

17   the USA. Class Counsel engaged in discovery negotiations with Defendants. These

18   negotiations involved corresponding on issues with the production and how to resolve them.

19   Class Counsel responded to the threat of summary judgment Ross filed with the court. The

20   parties underwent multiple mediation sessions before Judge Gandhi and Judge LaPorte (ret.).

21   The parties negotiated outside the mediation sessions and eventually settled this matter. Class

22   Counsel then briefed preliminary approval for the Court. Then, they defended the merits of the

23   settlement and had preliminary approval granted. *See* McShane Decl. ¶¶ 11-18.

24          Based on their experience, Class Counsel concluded that the Settlement provides

25   exceptional results for the class while sparing the class from the uncertainties of continued and

26   protracted litigation. *See* McShane Decl. ¶ 18.

27          As all of the factors in *Vizcaino* are satisfied, the Court should award reasonable

attorney's fees.

### 7. Class Counsel's lodestar is reasonable.

This motion seeks compensation for Class Counsel who worked diligently against strenuous opposition to secure an excellent settlement for the Class in this technically difficult case. Class Counsel's actual lodestar in prosecuting this case will be higher than the requested fee. Class Counsel's actual lodestar is currently $1,867,761.25. McShane Decl. ¶ 8. Below is a chart summarizing the lodestar of the firms. McShane Decl. ¶ 11

| FIRM | TOTAL LODESTAR | TOTAL HOURS |
|---|---|---|
| Audet & Partners, LLP | $657,268.75 | 1428.50 |
| Cuneo Gilbert & LaDuca, LLP | $432,036.25 | 549.25 |
| Levin Sedran & Berman, LLP | $303,456.25 | 370 |
| Steckler Wayne Cochran Cherry PLLC | $475,000 | 645 |
| **Total Sum** | $1,867,761.25 | 2992.75 |

This is not a case where the Plaintiff settled at the outset. On the contrary, Class Counsel defeated motions to dismiss, engaged in written discovery, document production and review, deposition practice the threat of summary judgment, and were preparing   to move for class certification and trial against the zealous, well-funded and able defense counsel.

Here, the fee request is $750,000 compared to a total lodestar of $1,867,761.25 – a multiplier of .4. This is a much lower multiplier than is customary, and thus should be seen as presumptively reasonable, and similar multipliers have been deemed as an indication of the reasonableness of the fee request. *See, e.g.*, *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 690-91 (N.D. Cal. 2016) (holding fractional lodestar multiplier to be indication of

1   reasonableness of fee request); *Johnson v. Triple Leaf Tea Inc.*, 2015 U.S. Dist. LEXIS 170800,

2   at *6 (N.D. Cal. Nov. 16, 2015) (finding where "Class Counsel's lodestar exceeded the

3   negotiated award" to be "well within the range courts have allowed in the Ninth

4   Circuit"); *Covillo v. Specialtys Café*, No. C-11-00594 DMR, 2014 U.S. Dist. LEXIS 29837,

5   2014 WL 954516, at *7 (N.D. Cal. Mar. 6, 2014) ("Plaintiffs' requested fee award is

6   approximately 65% of the lodestar, … suggesting that the percentage of the fund is reasonable

7   and fair.");  When the fee award is significantly less than a lodestar, as it is here, courts may

8   even deem a deep dive into the typical analysis unnecessary. *G. F. v. Contra Costa Cty.*, No.

9   13-cv-03667-MEJ, 2015 U.S. Dist. LEXIS 159597, at *48-50 n.13 (N.D. Cal. Nov. 25, 2015).

10  Much higher lodestar multipliers have been approved in cases where the class is afforded a

11  similar injunctive relief only settlement. *Littlejohn v. Ferrara Candy Co.*, No. 3:18-cv-00658-

12  AJB-WVG, 2019 U.S. Dist. LEXIS 101959, at *18-19 (S.D. Cal. June 17, 2019). So, as the fee

13  request possesses clear reasonability in the eyes of the law, and in light of the other *Vizcaino*

14  factors, the Court should deem the lodestar clearly reasonable.

## 8.      Class Counsel's rates are reasonable.

16          Courts look to prevailing market rates in the community in which the court sits.

17  *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995); *see also*

18  *Camancho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008); *Manual For Complex*

19  *Litigation, Fourth* § 14.122 ("The rate should reflect what the attorney would normally

20  command in the relevant marketplace."). Class Counsel's rates are reasonable because they are

21  in line with hourly rates charged by attorneys in their respective home jurisdictions with

22  comparable experience, reputation and ability for similar complex consumer protection class

23  action litigation. *See Ketchum*, 24 Cal. 4th at 1133; *see also Blum v. Stenson*, 465 U.S. 886, 895

24  (1984) (to assist the court in calculating the lodestar, plaintiff must submit "satisfactory

25  evidence . . . that the requested rates are in line with those prevailing in the community for

26  similar services by lawyers of reasonable comparable skill, experience and reputation."). Here,

27  Class Counsel attaches to their declarations the current resumes of the firms making up Class

1  Counsel, detailing Class Counsel experience in prosecuting class actions. McShane Decl. ¶ 3,

2  Declaration of Charles LaDuca ¶ 4; Declaration of Charles E. Schaffer ¶ 7; Declaration of

3  Stuart L. Cochran ¶ 2. Their rates are in line with the prevailing market rates for attorneys and

4  support of similar experience, skill, and reputation. *See* McShane Decl, ¶¶ 11, 21.

5      Class Counsel also seeks compensation for paralegals and law clerks, which is

6  permitted in this legal community. "The key . . . is the billing custom in the relevant market.

7  Thus, fees for work performed by non-attorneys such as paralegals may be billed separately, at

8  market rates, if this is the prevailing practice in a given community. . . . Indeed, even purely

9  clerical or secretarial work is compensable if it is customary to bill such work separately, . . ."

10  *Trs. of Const. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253

11  (9th Cir. 2006). In California, it is customary and reasonable to bill for all non-attorney support

12  staff, even word processors. *Priest*, 20 Cal. 3d at 35; *Ketchum*, 24 Cal. 4th at 1122; *PLCM*

13  *Group Inc. v. Drexler*, 22 Cal. 4th 1084 (2000). In *Salton Bay Marina Inc. v. Imperial*

14  *Irrigation Dist.*, 172 Cal. App. 3d 914 (1985), the Court of Appeal stated that "necessary

15  support services for attorneys, e.g., secretarial and paralegal services, are includable within an

16  award of attorney fees." Indeed, even unpaid law clerk interns can be billed.1 *Sundance v. Mun.*

17  *Ct.*, 192 Cal. App. 3d 268 (1987) ("[I]t is now clear that the fact that services were volunteered

18  is not a ground for diminishing an award of attorneys' fees. . . .[T]he amount of the award is to

19  be made on the basis of the reasonable market value of the services rendered, and not on the

20  salary paid.") (citing *Serrano v. Unruh*, 32 Cal. 3d 621 (1982)). Thus, Class Counsel's staff

21  hours are also compensable. *See id.*

22      **B.    The Settlement Agreement provides for attorneys' fees, costs, and an**

23         **incentive award**

24      "A request for attorney's fees should not result in a second major litigation. Ideally . . .

25  litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). That

26  is what the parties have done in the Settlement Agreement. Defendant has agreed to pay fees

27  up to a total amount of $750,000 and $40,000 in costs to Class Counsel and a Class

1   Representative incentive award of $5,000 to Plaintiff Morrison. Settlement Agreement § 4.1-

2   4.4.

3         Settlements such as these "are highly favored," in part because they promote efficient

4   resolution of disputes, and therefore interpretation ought to be made in favor of enforcement

5   wherever possible. *See Neary v. Regents of Univ. of Cal.*, 3 Cal. 4th 273, 277-78 (1992);

6   *Nicholson v. Barab*, 233 Cal. App. 3d 1671, 1683 (1991); *Victoria v. Super. Ct.*, 40 Cal. 3d 734

7   (1985). Here, the parties are in agreement as to the appropriate amount of compensation for

8   Class Counsel's efforts in obtaining the injunctive relief.

9         Where, as here, the parties have negotiated an arms' length settlement, "[a] court should

10  refrain from substituting its own value for a properly bargained-for agreement." *In re Apple

11  Computer, Inc. Derivative Litig.*, 2008 U.S. Dist. LEXIS 108195, at *12 (N.D. Cal. Nov. 5,

12  2008). In addition, if a fee award is not made in the amount contemplated by the Settlement,

13  these funds will remain with Defendant, since the unopposed amount is wholly independent

14  from the direct class relief. For example, in *Brazil*, 2012 U.S. Dist. LEXIS 47986, at *2-3, the

15  court awarded a fee agreed upon between the parties, which was "approximately equal to their

16  combined lodestar in th[e] case with no multiplier," because, like here, "[t]he benefits achieved

17  by Class Counsel are not in the form of a 'common fund,' but rather come in the form of

18  structural changes to Dell's advertising practices . . . [and] the fee awarded to Class Counsel

19  will be paid directly by Dell." Where there is no evidence of collusion and no detriment to the

20  parties, courts "should give substantial weight to a negotiated fee amount, assuming that it

21  represents the parties' best efforts to understandingly, sympathetically, and professionally

22  arrive at a settlement as to attorney's fees." *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695

23  (N.D. Ga. 2001) (citation omitted).

24        Here, this case was negotiated with the assistance of third-party neutral mediators,

25  including with Hon. Jay C. Gandhi on November 13, 2019 and Hon. Elizabeth D. Laporte (ret.)

26  on February 18, 2021 and March 3, 2021. *See* McShane Decl. ¶ 13. Class Counsel negotiated

27  with Defendant for attorney fees and expenses. Importantly, the fee was negotiated separately,

1   only after the parties had reached agreement on injunctive relief. *Id*.; *see also In re Apple*

2   *Computer, Inc.*, 2008 U.S. Dist. LEXIS 108195, at \*12. For the reasons discussed further

3   below, the Court should confirm the agreed-upon amount.

4       **C.      The requested expenses and costs are fully documented, necessarily**

5               **incurred and reasonable.**

6       Out-of-pocket litigation expenses are recoverable in a settlement such as this. *Grove v.*

7   *Wells Fargo Fin., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010) (reviewing cases upholding as part of

8   fee awards reimbursement for non-taxable costs such as computerized legal research, travel,

9   copying, courier); *accord Thalheimer v. City of San Diego*, 2012 U.S. Dist. LEXIS 59315, 26

10  (S.D. Cal. 2012) (allowing reimbursement for out-of-pocket "and otherwise non-taxable

11  expenses such as telephone charges, copies, filing fees, courier and mailing fees, []internet

12  research," and "necessary travel expenses" as part of fee award).

13      The amount of costs sought here, $37,017.91, is eminently reasonable for the services

14  provided and the result obtained.  McShane Decl. ¶ 20.  These are charges that California

15  lawyers commonly bill to their clients. Because the costs are reasonable, fully documented, and

16  were necessarily incurred, as the declarations of Class Counsel set forth, an award of these

17  costs should be approved.

18      **D.      The Class Representative service awards are reasonable and appropriate.**

19      The Settlement allows Class Counsel to request and for Defendant to pay a service

20  award to the named Representative Plaintiff in the Second Amended Complaint an incentive

21  award of $5,000 subject to Court approval.  Settlement Agreement § 4.4.  The Class

22  Representative's agreement to the Settlement is not conditioned in any manner on the award of

23  a service award or its amount.

24      The Class Representative has given their time and accepted their responsibilities

25  admirably, participating actively in this litigation as required and in a manner beneficial to the

26  Class generally.  McShane Decl. ¶ 22. She was deposed and responded to requests for

27  production of documents and admissions, and interrogatories. *Id.*  The Class Representative

1   worked diligently with counsel to produce documents related to their purchase and otherwise

2   assisted in the prosecution of this litigation. *Id.* The Class Representative was advised on their

3   obligations in serving as class representatives to select adequate and skilled counsel, to

4   cooperate with counsel, and to place the interests of the class on a level equal to or above their

5   own interests. The Class Representative has met and continue to meet these obligations,

6   cooperating fully with counsel to fulfill their fiduciary duties to the class. *Id.*

7       The proposed service award is presumptively reasonable. *In re Yahoo Mail Litig.*, No.

8   13-CV-4980, 2016 WL 4474612, at *11 (N.D. Cal. Aug. 25, 2016) ("The Ninth Circuit has

9   established $5,000.00 as a reasonable benchmark [for service awards]."); *see, e.g.*, *Garner v.

10  State Farm Mut. Auto. Ins. Co., No.* CV 08 1365, 2010 WL 1687832, at *17 (N.D. Cal. Apr.

11  22, 2010). Here, there are no conditions placed on the service award nor does the amount of

12  the award undermine the adequacy of the class representative. *See* N.D. Cal. Procedural

13  Guidance for Class Action Settlements, §7 (citing *see, e.g., Radcliffe v. Experian Info.

14  Solutions*, 715 F.3d 1157 (9th Cir. 2013)).

15  **IV.    CONCLUSION.**

16      This was a very hard-fought litigation. The Class obtained an excellent settlement

17  under the circumstances.   The Court should award the fees, expenses and service stipends in

18  the amounts requested.

19

20  Dated: October 18, 2021                    AUDET & PARTNERS, LLP

21                                          By: */s/ Michael McShane____*

22                                          Michael McShane (CA #127944)
                                            mmcshane@audetlaw.com
23                                          Ling Y. Kuang (CA #296873)
                                            lkuang@audetlaw.com
24                                          Kurt D. Kessler (CA #327334)
                                            kkessler@audetlaw.com
25                                          **AUDET & PARTNERS, LLP**
                                            711 Van Ness Avenue, Suite 500
26                                          San Francisco, CA 94102-3275
                                            Telephone: (415) 568-2555
27                                          Facsimile:  (415) 568-2556

1

Charles E. Schaffer
cschaffer@lfsblaw.com

2

**LEVIN SEDRAN & BERMAN**
510 Walnut Street, Suite 500

3

Philadelphia, PA 19106
Telephone: (215) 592-1500

4

Facsimile:  (215) 592-4663

5

Charles LaDuca

6

charles@cuneolaw.com
Brendan Thompson

7

brendant@cuneolaw.com

8

**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue, NW, Suite 200

9

Washington, DC 20016
Telephone:  (202) 789-3060

10

Stuart L. Cochran

11

stuart@swclaw.com
**STECKLER WAYNE COCHRAN**

12

**CHERRY**
12720 Hillcrest Road, Suite 1045

13

Dallas, Texas 75230
Telephone: (972) 387-4040

14

Facsimile:  (972) 387-4041

15

*Counsel for Plaintiff Dominique Morrison on*

16

*behalf of herself and all others similarly*
*situated*

17

18

19

20

21

22

23

24

25

26

27

Motion For Attorneys' Fees and Expenses                              CASE NO. 4:18-cv-02671-YGR