Michael A. McShane (CA #127944)
mmcshane@audetlaw.com
Ling Y. Kuang (CA #296873)
lkuang@audetlaw.com
Kurt D. Kessler (CA #327334)
kkessler@audetlaw.com
**AUDET & PARTNERS, LLP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102-3275
Telephone: (415) 568-2555
Facsimile: (415) 568-2556

Counsel for Plaintiff Dominique Morrison on behalf of herself and all others similarly situated

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

DOMINIQUE MORRISON, on behalf of herself and all others similarly situated,

Plaintiff,

v.

ROSS STORES, INC.,

Defendant

Case No: 4:18-cv-02671-YGR

**DECLARATION OF CHARLES E. SCHAFFER IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES**

Date: **January 25, 2022**
Time: **2:00 PM**
Place: Courtroom 1, 4th Floor
Judge: Hon. Yvonne Gonzalez Rogers

Complaint Filed: May 7, 2018

I, Charles E. Schaffer, declare as follows:

1. I am a partner with the law firm of Levin Sedran & Berman, counsel for Plaintiffs in the above -captioned action. I submit this declaration in support of Plaintiffs' Motion for Award of Attorneys' Fees and Expenses. I make this Declaration of my own personal knowledge, and if called to do so, could competently testify to the matters stated herein. This firm's compensation for services rendered in this case was wholly contingent on the success of the litigation and was totally at risk.

2. I am a member in good standing of the bar of the Commonwealth of Pennsylvania and I have never been the subject of any type of disciplinary proceeding. I am admitted to practice before the Supreme Court of Pennsylvania, the United States District Court for the Eastern District of Pennsylvania; the Western District of Pennsylvania; the Middle District of Pennsylvania, the Northern District of Illinois; the Central District of Illinois; the Northern District of New York; the District of Colorado; the Eastern District of Wisconsin; the Eastern District of Michigan; the Third Circuit Court of Appeals; and the Sixth Circuit Court of Appeals.

3. I along co-counsel have been responsible for the prosecution of this action and for the negotiation of the Settlement Agreement. We have vigorously represented the interests of the Settlement Class Members throughout the course of the litigation and settlement negotiations.

4. I am familiar with (i) the claims, evidence, and legal arguments involved in this litigation and settlement, (ii) the terms of the class settlement, and (iii) the relevant defenses, evidence, and legal arguments to date.

5. Throughout my involvement in the above case, I ensured that my firm did its part to litigate efficiently, without undue duplication of effort, and at minimal expense. Not being paid by the hour, and being responsible for advancing all expenses, my firm had every incentive to avoid the unnecessary expenditure of funds and other resources.

6. The work done by my firm in this case includes *inter alia*: initial factual investigation, conducting legal research regarding Plaintiffs' potential claims; drafting pleadings; multiple client conferences for the purposes of, among other things, review of relevant facts, status of matter and strategy, and review of the potential Settlement Agreement; corresponding with counsel for

Defendants; assisting Plaintiffs in gathering evidentiary materials; attending the settlement mediation and drafting the settlement papers.

7. Levin Sedran & Berman is one of the nation's preeminent and most experienced plaintiff class-action firms with extensive experience and expertise in consumer protection, product liability, antitrust, securities, financial, commercial and other complex class-action litigation. Levin Sedran & Berman's firm resume is attached as Exhibit 1, and the firm has been recognized by its peers and Courts nationwide for its successful class-action leadership. As a result of its success representing consumers in complex litigation throughout the country, Levin Sedran & Berman has been distinguished as a Tier I class-action firm in the Best Law Firms rankings published in the U.S. News and World Report Best Law Firms. It also ranked Levin Sedran & Berman Tier I for personal injury and mass tort firms. Levin Sedran & Berman was also named to THE NATIONAL LAW JOURNAL'S insurance list of *America's Elite Trial Lawyers* in 2014. Members of Levin Sedran are listed in the LEGAL 500, LAW DRAGON 500, Martindale Hubbell's *Directory of Preeminent Attorneys*, as in the Best Lawyers In America. *See generally*, Levin Sedran & Berman firm resume attached as Exhibit 1. Levin Sedran & Berman pioneered the use of class actions and mass actions in the United States and its work has resulted in numerous record-breaking recoveries over the past four decades. Just for example:

a. *In re: Asbestos School Litigation*, No. 83-0263 (E.D. Pa.) (Levin Sedran as member of Executive Committee and Lead Trial Counsel obtained a certification of a nationwide class and settlement on behalf of school districts);

b. *In re: Diet Drug Product Liability Litigation*, MDL No.: 1203 (E.D. Pa.) (Levin Sedran as Co-Lead Counsel obtained a $6.75 billion-dollar settlement on behalf of consumers who ingested Fen Phen);[1]

c. *In re: The Exxon Valdez,* No. 89-00095 (D. Alaska) (Levin Sedran as a member of the Trial and Discovery Committee represented fishermen, native corporations,

[1] That prolix settlement has received favorable comments by academia. See Nagareda, R., "Autonomy, Peace, and 'Put" Options in the Mass Tort Class Action," 115 Harv.L.Rev. 747, 756 (2002).

native villages, native claims and business claims in this mass tort. After a jury trial, Plaintiffs obtained a judgment of $5 billion in punitive damages - at the time the largest punitive damage verdict in U.S. history. Later reduced to $507.5 million by the U.S. Supreme Court);

d. *In re: Chinese-Manufactured Drywall Product Liability Litigation*, MDL No.: 2047 (E.D. La.) (Levin Sedran as Lead Counsel obtained inter-related settlements involving various suppliers, builders, installers, insurers and manufacturers of Chinese drywall valued in excess of $1 billion);

e. *In re: The Vioxx Product Liability Litigation*, MDL No.: 1657 (E.D. La.) (As a member of the PSC and Plaintiffs= Negotiating Committee, Levin Sedran was instrumental in achieving a $4.85 billion-dollar settlement on behalf of consumers who ingested Vioxx);

f. *In re Air Cargo Shipping Servs. Antitrust Litig.*, MDL No. 1775 (E.D. N.Y.) (As Co-Lead counsel in the decade long air cargo antitrust litigation Levin Sedran obtained 28 inter-related settlements against air cargo service providers totaling $1.2 billion dollars);

g. *Galanti, et al. v. The Goodyear Tire and Rubber Co. ("Entran II")*, Civil Action No.: 03-209 (D.C. N.J.) (As a member of the Executive Committee Levin Sedran was instrumental in negotiating and achieving the creation of a common fund in the amount of $344,000,000); and

h. *In re: National Football League Players= Concussion Injury Litigation*, MDL No.: 2323 (E.D. Pa.) (As Subclass Counsel working along with Lead Counsel obtained an uncapped settlement valued in excess of $1 billion dollars on behalf of NFL football players).

8. My firm and I regularly prosecute complex consumer class actions involving consumers who have been victimized by unfair or deceptive practices and have one of the best track records in the country when it comes to developing practical damages methodologies, obtaining

prompt relief for consumers victimized by defective products, unfair or deceptive practices, consumer fraud, and other corporate malfeasance such as anti-competitive conduct, as well as working cooperatively with others. *See* Exhibit 1. Through smart, efficient, strategy and tailored creative problem-solving my firm and I have recovered billions of dollars for victims of defective products, unfair or deceptive practices, consumer fraud, and other corporate malfeasance such as anti-competitive conduct. *Ibid.*[2] We have accomplished these outstanding global and class settlements while zealously prosecuting the action while minimizing costs and maximizing value.

9. My appointments in MDL litigation include *inter alia*: *In re Aqueous Film-Forming Foams Products Liability Litigation,* MDL 2873 (SC) (Plaintiffs' Steering Committee)*; In re Apple Inc. Device Performance Litigation,* MDL 2827 (N.D.Ca.) (Plaintiffs' Executive Committee)*; In re: Intel Corp. CPU Marketing Sales Practices and Products Liability Litigation,* MDL 2828 (D. Or.) (Plaintiffs' Steering Committee); *In re: Wells Fargo Insurance Marketing Sales Practices Litigation,* MDL No. 2797 (C.D.Ca.) (Plaintiffs' Executive Committee); *In re Hills Pet Nutrition, Inc., Dog Food Products Liability Litigation,* MDL No. 2887 (D.C. Ks.) (Plaintiffs' Executive Committee); *In re: JP Morgan Modification Litigation* MDL No.: 2290 (D.C. Mass.) (Plaintiffs' Co-lead Counsel); *In re: IKO Roofing Products Liability Litigation*, MDL No.: 2104 (C.D. Ill.) (Plaintiffs' Co-lead Counsel); *In re: HardiePlank Fiber Cement Siding Litigation*, MDL No.: 2359 (D.C. Minn.) (Plaintiffs' Executive Committee); *In re Navistar Diesel Engine Products Liability Litigation*, MDL No. 2223 (N.D. Ill.) (Plaintiffs' Executive Committee); *In re: Azek Decking Sales Practice Litigation*, Civil Action No.: 12-6627 (D. NJ) (Plaintiffs' Executive Committee*); In re: Pella Corporation Architect and Designer Series Windows Marketing Sales Practices and Product Liability Litigation*, MDL No.: 2514 (D.C. SC) (Plaintiffs' Executive Committee); *In re: Navistar Diesel Engine Products Liability Litigation*, MDL No.: 2223 (N.D. Ill.) (Plaintiffs' Steering Committee); *In re: CitiMortgage, Inc.*

---

[2] For example, I was instrumental in bringing about settlements in *inter alia In Re CertainTeed Corporation Roofing Shingles Product Liability Litigation*, MDL No.: 1817 (E.D. Pa.) which was approved by the court in 2010 and valued at $815,000,000*, In re CertainTeed Fiber Cement Siding Litigation*, MDL No: 2270 (E.D. Pa.) which was a common fund settlement of $103.9 million dollars and *Pollard v. Remington Arms Company*, Case No. 4:13-CV-00086-ODS (W.D. Mo.) which was approved by the court in 2016 and valued at $97,000, 000.

*Home Affordable Modification Program ("HAMP"),* MDL No.: 2274 (C.D. Ca.) (Plaintiffs' Executive Committee); *In re: Carrier IQ Consumer Privacy Litigation*, MDL No.: 2330 (N.D. Ca.) (Plaintiffs' Executive Committee); *In re: Dial Complete Marketing and Sales Practices Litigation*, MDL No.: 2263 (D. NH) (Plaintiffs' Executive Committee); *In re: Emerson Electric Co. Wet/Dry Vac Marketing and Sales Litigation*, MDL NO.: 2382 (E.D. Miss.) (Plaintiffs' Executive Committee); *In re: Colgate-Palmolive Soft Soap Antibacterial Hand Soap Marketing and Sales Practice Litigation*, (D. NH) (Plaintiffs' Executive Committee) and *Gold v. Lumber Liquidators, Inc.*, No.3:14-cv-05373-TEH (N.D.Ca.) (Plaintiffs' Executive Committee). I have also served in leadership positions in class actions which were not consolidated in an MDL. *See* Exhibit 1. In addition, I have served as member of litigation teams where Levin Sedran & Berman was appointed to leadership positions in, *inter alia*. *In re Chinese-Manufactured Drywall Product Liability Litigation*, MDL No. 2047 (E.D.La.); *In re Vioxx Products Liability Litigation*, MDL No. 1657 (E.D. La.); *In re Orthopedic Bone Screw Products Liability Litigation*, MDL No. 1014 (E.D. Pa.); and *In re Diet Drug Litigation*, MDL No. 1203 (E.D. Pa.).

10. I have extensive experience leading and prosecuting class-action lawsuits in a wide variety of contexts with a substantial focus on consumer protection, products liability and other complex class-action litigation. I have been appointed to leadership positions in MDLs by various different courts. My appointments in MDL litigation include *inter alia*: *In re Aqueous Film-Forming Foams Products Liability Litigation,* MDL 2873 (SC) (Plaintiffs' Steering Committee)*; In re Apple Inc. Device Performance Litigation,* MDL 2827 (N.D.Ca.) (Plaintiffs' Executive Committee)*; In re: Intel Corp. CPU Marketing Sales Practices and Products Liability Litigation*, MDL 2828 (D. Or.) (Plaintiffs' Steering Committee); *In re: Wells Fargo Insurance Marketing Sales Practices Litigation,* MDL No. 2797 (C.D.Ca.) (Plaintiffs' Executive Committee); *In re Hills Pet Nutrition, Inc., Dog Food Products Liability Litigation*, MDL No. 2887 (D.C. Ks.) (Plaintiffs' Executive Committee); *In re: JP Morgan Modification Litigation* MDL No.: 2290 (D.C. Mass.) (Plaintiffs' Co-lead Counsel); *In re: IKO Roofing Products Liability Litigation*, MDL No.: 2104 (C.D. Ill.) (Plaintiffs' Co-lead Counsel); *In re: HardiePlank Fiber Cement Siding Litigation*, MDL No.: 2359 (D.C. Minn.) (Plaintiffs'

Executive Committee); *In re Navistar Diesel Engine Products Liability Litigation*, MDL No. 2223 (N.D. Ill.) (Plaintiffs' Executive Committee); *In re: Azek Decking Sales Practice Litigation*, Civil Action No.: 12-6627 (D. NJ) (Plaintiffs' Executive Committee*); In re: Pella Corporation Architect and Designer Series Windows Marketing Sales Practices and Product Liability Litigation*, MDL No.: 2514 (D.C. SC) (Plaintiffs' Executive Committee); *In re: Navistar Diesel Engine Products Liability Litigation*, MDL No.: 2223 (N.D. Ill.) (Plaintiffs' Steering Committee); *In re: CitiMortgage, Inc. Home Affordable Modification Program ("HAMP"),* MDL No.: 2274 (C.D. Ca.) (Plaintiffs' Executive Committee); *In re: Carrier IQ Consumer Privacy Litigation*, MDL No.: 2330 (N.D. Ca.) (Plaintiffs' Executive Committee); *In re: Dial Complete Marketing and Sales Practices Litigation*, MDL No.: 2263 (D. NH) (Plaintiffs' Executive Committee); *In re: Emerson Electric Co. Wet/Dry Vac Marketing and Sales Litigation*, MDL NO.: 2382 (E.D. Miss.) (Plaintiffs' Executive Committee); *In re: Colgate-Palmolive Soft Soap Antibacterial Hand Soap Marketing and Sales Practice Litigation*, (D. NH) (Plaintiffs' Executive Committee) and *Gold v. Lumber Liquidators, Inc.*, No.3:14-cv-05373-TEH (N.D.Ca.) (Plaintiffs' Executive Committee). I have also served in leadership positions in class actions which were not consolidated in an MDL. *See* Exhibit 1. In addition, I have served as member of litigation teams where Levin Sedran & Berman was appointed to leadership positions in, *inter alia*. *In re Chinese-Manufactured Drywall Product Liability Litigation*, MDL No. 2047 (E.D.La.); *In re Vioxx Products Liability Litigation*, MDL No. 1657 (E.D. La.); *In re Orthopedic Bone Screw Products Liability Litigation*, MDL No. 1014 (E.D. Pa.); and *In re Diet Drug Litigation*, MDL No. 1203 (E.D. Pa.).

11. Of particular relevance to this litigation, I have previously served in leadership as well as a part of litigation teams in class actions representing victims of unfair trade practices and consumer fraud. For instance, as stated supra I was instrumental in bringing about settlements in national class actions involving *inter alia* in roofing shingles and siding. E.g. *In Re CertainTeed Corporation Roofing Shingles Product Liability Litigation*, MDL No.: 1817 (E.D. Pa.) (roofing shingles); *In re CertainTeed Fiber Cement Siding Litigation*, MDL No: 2270 (E.D. Pa.) (siding) and *In Re IKO Roofing Shingle Products Liability Litigation*, MDL No.: 2104 (C.D. Ill.) (roofing shingles). See also

Levin Sedran's Firm Resume attached hereto as Exhibit 1. With respect to consumer goods, I was instrumental in bringing about national settlements *inter alia* in *In re Hills Pet Nutrition, Inc., Dog Food Products Liability Litigation*, MDL No. 2887 (D.C. KS.) (C.D. Ill.) (dog food)(Plaintiffs' Co-lead Counsel); *In re Apple Inc. Device Performance Litigation*, MDL 2827 (N.D.Ca. 2020) (phone) ; *United Desert Charities, et al v. Sloan Valve Company, et al*, No. 12-6878 (C.D.Cal.2014) (toilet); *In re Navistar Diesel Engine Products Liability Litigation*, MDL No. 2223 (N.D. Ill.) (engine) *In re: Azek Decking Sales Practice Litigation*, Civil Action No.: 12-6627 (D. NJ) (composite deck*); In re: Carrier IQ Consumer Privacy Litigation*, MDL No.: 2330 (N.D. Ca.) (phone); *Pollard v. Remington Arms Company, LLC*, Case No. 4:13-cv-00086-ODS (W.D. M.O. 2017) (rifle); *Leach v. Honeywell International, Inc*, Case 1:14-cv-12245-LTS (D.C. Mass) (humidifier);*In re: Dial Complete Marketing and Sales Practices Litigation*, MDL No.: 2263 (D. NH) )(antibacterial soap); *In re: Colgate-Palmolive Soft Soap Antibacterial Hand Soap Marketing and Sales Practice Litigation*, (D. NH) (antibacterial soap) and *Gold v. Lumber Liquidators, Inc.*, No.3:14-cv-05 (N.D.Ca.) (flooring).

12. In addition, I previously served in leadership as well as a part of litigation teams in class actions representing victims of unfair trade practices by banks, insurers, manufacturers and other entities. For instance, I have successfully represented consumers who were victims of being forced placed with insurance which they did not need or request. E.g. *In re: Wells Fargo Insurance Marketing Sales Practices Litigation*, MDL No. 2797 (C.D.Ca.) (forced placed auto insurance); *Weller v. HSBC Mortgage Services, Inc*., No. 13-cv-00185 (D.C. Col.) (forced place flood insurance); *Gilmour v. HSBC Bank, N.A., No*.: 1:13-cv-05896 (S.D. NY) (forced place hazard insurance); and *Smith v. SunTrust Mortgage, Inc*., No.: SACH3-739-AG (C.D. Ca.) (forced place hazard insurance). I have also has represented victims of financial and or insurance fraud against financial institutions, insurance companies, lenders, finance companies and other entities. *E.g*., *In re: JP Morgan Modification Litigation* MDL No.: 2290 (D.C. Mass.) (Plaintiffs' Co-lead Counsel); *In re: Citimortgage, Inc. Home Affordable Modification Program ("HAMP") MDL No.: 2274* (C.D. Ca.) (Plaintiffs' Executive Committee); *Vought, et al., v. Bank of America, et al., Civil Action No*. 10-CV-2052 (C.D. Ill. 2013) (Plaintiffs' Discovery and Settlement Committees); Ko*wa, et. el. v. The Auto*

*Club Group AKA AAA Chicago*, Case No. 1:11-cv-07476 (N.D. Ill.) (Co-lead Counsel); *In re Pergerine Financial Group Customer Litigation*, MDL No.12-5546 (N.D.Ill.); *In Re MF Global Holdings LTD. Investment Litigation*, case no 12-MD -2338 (S.D.N.Y.) and other cases.

13. I served as lead counsel in *In re: JP Morgan Modification Litigation*, MDL No.: 2290 (D.C. Mass.). This MDL involved a class action filed across the United States all of which arose out of JP Morgan Chase's implementation of the Home Affordable Modification Program, one of the main programs designed to assist struggling homeowners in the economic downturn. In exchange for receiving billions of dollars in funds, JP Morgan Chase and many other big banks agreed to offer homeowners loan modifications pursuant to the Federal Guidelines. Numerous individuals sued JP Morgan Chase and certain other related companies claiming that Chase failed to offer them a timely and proper permanent mortgage modification after they completed trial period plans under HAMP or Chase's home own equivalent programs. I was instrumental in every phase of the litigation including settlement which culminated in a nationwide settlement under a consolidated litigation which provided a broad range of benefits to tens of thousands of homeowners. The overall value of the settlement to class members which was determined to be $506 million dollars by a former treasury department official who worked on the initial management of the Government's program.

14. More recently I was a member of the Plaintiffs' Executive Committee in *In re: Wells Fargo Insurance Marketing Sales Practices Litigation*, MDL No. 2797 (C.D.Ca.) and was instrumental in achieving a nationwide class action settlement on behalf of victims who were forced placed with auto insurance. The total settlement fund was $432.4 million dollars and class members also received non compensation benefits such as adjustments and corrections to their credit reports. The case centered around Wells Fargo and its predecessors, together with auto insurance underwriter National General and its predecessors, engaging in a more than decade-long scheme that forced millions of Wells Fargo customers to pay for CPI they did not need or want, bilking tens of millions of dollars from them in the process. Defendants' unlawful scheme was devious and disguised. Wells Fargo would purchase CPI from National General (or its predecessors) and then force-place the CPI on its auto loan borrowers' accounts. Wells Fargo assessed a full year worth of CPI charges against

the borrower's account, and then charged interest each month on that CPI premium before applying payments to a customer's principal loan balance. This ensured that Wells Fargo's CPI charges were paid first, and any deficiency resulted in the borrower falling behind on payments, suffering related harm, and defaulting on the underlying loan. On top of the CPI premium and interest, Wells Fargo also tacked on an unearned commission. The unearned commissions were paid by National General and its predecessors as kickbacks to one of Wells Fargo's affiliates for the force-placement of the CPI. These kickbacks ensured that the CPI charges to Wells Fargo's borrowers were more expensive than the premiums for coverage borrowers could have and often did obtain on their own. Even after Wells Fargo stopped receiving commissions in 2013, it continued to assess CPI charges on borrowers' accounts in excess of the cost of CPI or other auto insurance products. I was instrumental in achieving the nationwide settlement and rectifying these harms on behalf of the class.

15. This Declaration is provided in support of Plaintiff's Motion for Attorney Fees and Expense. I have personal knowledge of the time keeping, expense tracking, and systems of my law firm.

16. From the date of the pre-trial investigation and through September 30, 2021, Levin Sedran and Berman has expended 370 hours of work in connection with this litigation. Based upon our customary rates in this type of litigation, the lodestar value of that time is $303,456.25.

17. My firm's work on this case was performed on a wholly-contingent basis pursuant to contingency fee contracts with the named Plaintiffs. Levin Sedran & Berman has not received any amounts in connection with this case, either as fee or expense reimbursement.

18. Shown in Exhibit 2 is a true and correct summary identifying the attorneys and paralegals who have worked on this litigation, the number of hours those individuals have worked, their regular hourly billing rates, and their respective lodestar values. The detailed descriptions of the time spent by the attorneys and other professionals of my firm in this litigation was prepared from contemporaneous, daily time records prepared and maintained by my firm. The lodestar figure is based on the ordinary professional billing rates that my law office charges clients in class action litigation. Expenses are accounted for and billed separately, without markup, and are not duplicated

in the professional billing rates. Further detail regarding the litigation and trial experience of each professional can be found, to the extent available, in the firm resume attached hereto as Exhibit 1.

19. The hourly rates shown in Exhibit 2 are the usual and customary lodestar rates charged in Philadelphia, and the national venues in which the firm typically handles cases for each individual doing the type of work performed in this litigation. These rates were not adjusted, notwithstanding the complexity of this litigation, the skill and tenacity of the opposition, the preclusion of other employment, the delay in payment, or any other factors that could be used to justify higher hourly compensation. Shown in Exhibit 2 utilizing current prevailing rates are true and correct summaries identifying the attorneys and paralegals who have worked on this matter, their regular billing rates and their respective Lodestar value. The summaries reflect Levin Sedran & Berman's experience in the field, the complexity of the matters involved in this litigation and have not been adjusted.

20. These amounts were derived from contemporaneous daily time records compiled on this matter, which are recorded in our computerized database. The firm requires regular and contemporaneous recording of time records, which occurred in this case. I oversaw the day-to-day activities in the litigation and reviewed these printouts and backup documentation when necessary. The purpose of the reviews were to confirm both the accuracy of the entries on the records as well as the necessity for, and reasonableness of the time and expenses that my firm committed to the litigation. I believe that the time reflected in the firm's lodestar calculation and the expense for which payment is sought are reasonable in amount and were necessary for the effective and efficient prosecution and resolution of this litigation.

21. The lodestar summary reflects Levin Sedran & Berman's experience in the field, the complexity of the matters involved in this litigation, and the prevailing rate for providing such services.

22. The number of hours that Levin Sedran & Berman has devoted to pursuing this litigation is reasonable and appropriate, considering, among other factors: (a) the scope and high stake's nature of this proceeding; and b) the novelty and complexity of the claims asserted in the litigation.

23. The hourly rates of Levin Sedran & Berman are appropriate for complex, nationwide litigation.

24. Levin Sedran & Berman is a well-respected leader in the fields of product liability, consumer fraud, antitrust, securities, financial, commercial and other complex class-action litigation. The Levin Sedran & Berman rates, which were used for purposes of calculating the lodestar here, are based on prevailing rates for national class-action work and have been approved by multiple courts across the country. For instance, Levin Sedran& Berman's and Charles E. Schaffer's rates were approved by courts in the following cases: *In re Vioxx Products Liability Litigation*, MDL No. 1657 (E.D. La. 2011); *In re Propulsid Products Liability Litigation*, MDL No. 1355 (E.D. La); *In re: CertainTeed Roofing Shingle Products Liability Litig.*, No. 07-MDL-1817 (E.D. Pa. 2010); *Davis v. SOH Distribution Company, Inc.*, Civil Action No. 09-CV-237 (M.D. Pa. 2010); *In re Wellbutrin SR Antitrust Litigation*, Civil Action No. 04-5525 (E.D. Pa. 2011)*;Gwaizdowski v. County of Chester*, Civil Action No. 08-CV-4463 (E.D. Pa. 2012); *Meneghin v. The Exxon Mobile Corporation, et al.*, Civil Action No. OCN-002697-07 (Superior Court, Ocean County, NJ 2012); *Melillo, et al. v. Building Products of Canada Corp.*, Civil Action No. 1:12-CV-00016-JGM (D. Vt. Dec. 2012) ; *Vought, et al., v. Bank of America, et al.*, Civil Action No. 10-CV-2052 (C.D. Il. 2013); *Eliason, et al. v. Gentek Building Products, Inc., et al.*, No. 10-2093 (N.D. OH. 2013); and *In re: Navistar Diesel Engine Products Liability Litigation*, MDL No. 2223 (N.D. IL. 2013).

25. Numerous courts have recently approved significant fee awards for Levin, Sedran & Berman and Charles E. Schaffer, based on their customary hourly rate. Eleven recent decisions are: *Smith v. Volkswagen Group of America, Inc.*, 13-cv-370 (S.D. Ill. 2014); *In re: CertainTeed Fiber Cement Siding Litigation*, MDL No. 2270 (E.D. PA. 2014); *In re: JP Morgan Chase Mortgage Modification Litigation*, No. 11-md-2290 (D.C. Mass. 2014); *United Desert Charities, et al v. Sloan Valve Company*, et al, Case No. 12-6878 (C.D.Cal.2014); *Gulbankian, et al. v. MW Manufacturers, Inc*., 10-10392 (D.C. Mass.); *Pollard v. Remington Arms Company, LLC*, Case No. 4:13-cv-00086-ODS (W.D. M.O. 2017); *Leach v. Honeywell International, Inc*, Case No. 1:14-cv-12245-LTS (D.C. Mass); *In Re IKO Roofing Shingle Products Liability Litigation*, MDL No.: 2104 (C.D. Ill.); *Newman,*

*et. el. V. Metropolitan Life Insurance Company*, Case No. 1:11-cv-03530 (N.D. Ill. 2019); *In re Apple Inc. Device Performance Litigation*, MDL 2827 (N.D.Ca. 2020); *Hill v. Canidae Corporation*, Case No. 20-1374 (C.D. CA. 2021).

In *In re: CertainTeed Fiber Cement Siding Litigation*, the United States District Court for the Eastern District of Pennsylvania, approved the entire requested fee of $18.5 million dollars, including the 2014 rates of Charles E. Schaffer ($950.00). More recently, in *Pollard v. Remington Arms Company*, the United States District Court for the Western District of Missouri approved the entire requested fee of $12.5 million dollars, including the 2017 rates of Charles E. Schaffer ($975.00), and Sammi McCurtain (document reviewer) ($450.00), and in *Leach v. Honeywell International, Inc.*, the United States District Court for the District of Massachusetts approved the entire requested fee award of $1.15 million dollars, including the 2017 rates of Charles E. Schaffer ($975.00) and Michael MacBride (attorney) ($475.00). More recently *In Re IKO Roofing Shingle Products Liability Litigation*, the United States District Court for the Central District of Illinois approved the entire requested fee award of $7.5 million dollars, including the 2019 rates of Charles E. Schaffer ($975.00) and Michael MacBride (attorney) ($475); in *Newman, et. el. V. Metropolitan Life Insurance Company*, the United States District Court for the Northern District of Illinois approved the entire requested fee award of $5 million dollars, including the 2019 rates of Charles E. Schaffer ($975.00); and in *In re Apple Inc. Device Performance Litigation*, the United States District Court for the Northern District of California approved the fee award of $80.6 million dollars, including the submitted rates of Charles E. Schaffer ($950),3 other members of the firm and paralegals. *Id*., ECF No. 609 at p.15. (Those rates are consistent with rates that have been awarded in this District. *See*, e.g., *Dickey v. Advanced Micro Devices*, Inc., 2020 WL 870928, at *8 (N.D. Cal. Feb. 21, 2020) (finding rates between $275 and $1,000 for attorneys reasonable); *In re Lidoderm Antitrust Litig., 2018 WL 4620695*, at *2 (N.D. Cal. Sept. 20, 2018) (finding rates between $300 and $1,050 for attorneys reasonable)). More recently, the United States District Court for the Central District of California in *Hill v. Canidae Corporation*, Case No. 20-1374 (C.D.CA, 2021) approved the submitted rates of Charles E. Schaffer ($975) and associate David Magagna ($550). *See* ECF No. 79 at p.16.

(Plaintiffs also submit Class Counsel's billing rates that other courts have approved, which show that one of the partners who is counsel for Plaintiffs has consistently been approved at an hourly rate of $950.00 to $975.00 per hour, while a non-partner attorney was consistently approved at an hourly rate of $450.00 to $475.00. (Schaeffer Decl. ¶ 28.) Accordingly, the Court determines that the hourly rates used to calculate the lodestar are reasonable. Levin Sedran & Berman has advanced a total of $2,872.19 in expenses reasonably and necessarily incurred in connection with the prosecution of this matter. They are broken down in Exhibit 2. These expenses are reflected in the books and records regularly kept and maintained by my firm.

26. In my opinion, the time expended and incurred in prosecuting this action were reasonably and necessary for the diligent litigation of this matter.

27. Based upon my experience, I believe that the Plaintiffs' claims in this matter are strong and that the Plaintiffs would ultimately prevail on the merits at trial.

28. Notwithstanding, the Defendant has at all times denied Plaintiffs' allegations or that it committed any wrongdoing whatsoever.

29. Class Counsel, as well as my law firm, have regularly engaged in major complex litigation involving unfair trade practices and have extensive experience in prosecuting class action lawsuits of similar size and complexity.

30. Based on my involvement in this case, I believe that the instant settlement is fair, reasonable, and adequate, and in the best interest of the Settlement Class.

31. Plaintiff's Counsel's retainer agreements with the Plaintiffs do not provide for fees apart from those earned on a contingent basis and, as this is class settlement, those fees must be approved by the court.

32. For the reasons set forth in this Declaration Class Counsel respectfully requests that the Court grant Plaintiffs' Motion for Attorney's Fees and Expenses.

33. I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 18, 2021 in Philadelphia, Pennsylvania.

Respectfully Submitted,

*/s/ Charles E. Schaffer*______
CHARLES E. SCHAFFER

**ATTESTATION**

I, the undersigned, am the ECF user whose identification and password are being used to file this document. I hereby attest and represent, in compliance with Civil L.R. 5-1(i)(3), that concurrence in the filing of the document(s) has been obtained from the signatories above.

*/s/ Michael McShane*