Michael A. McShane (CA #127944)
mmcshane@audetlaw.com
Ling Y. Kuang (CA #296873)
lkuang@audetlaw.com
Kurt D. Kessler (CA #327334)
kkessler@audetlaw.com
**AUDET & PARTNERS, LLP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102-3275
Telephone:     (415) 568-2555
Facsimile:     (415) 568-2556

Counsel for Plaintiff Dominique Morrison on
behalf of herself and all others similarly situated

[*Additional Counsel on Signature Block*]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| DOMINIQUE MORRISON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ROSS STORES, INC.,<br><br>Defendant. | Case No.: 4:18-cv-02671-YGR<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:          January 25, 2022<br>Time:          2:00 PM<br>Place:         Courtroom 1, 4th Floor<br>Judge:        Hon. Yvonne Gonzalez Rogers<br><br>Complaint Filed:     May 7, 2018 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that pursuant to the Court's Order (*see* Dkt. No. 113) on January 25, 2022, in Courtroom 1 of the United States District Court for the Northern District of California, Ronald V. Dellums Federal Building, 1301 Clay Street, Oakland, CA 94612, the Honorable Yvonne Gonzalez Rogers, presiding, Plaintiff Dominique Morrison, on behalf of herself and all others similarly situated, will and hereby does move this Court to:

(1) Grant final approval of the Class Action Settlement;

(2) Certify the Settlement Class as proposed;

(3) Award attorneys' fees in the amount of $750,000;

(4) Award litigation costs in the amount of $37,017.9; and

(5) Award Plaintiff Dominque Morrison and incentive award in the amount of $5,000.


This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the May 7, 2021 Declaration of Michael A. McShane in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement ("McShane Prelim Decl."), and the exhibits attached thereto, including the Settlement Agreement ("SA" or "Settlement"), the October 18, 2021 Declaration of Michael A. McShane in Support of Plaintiffs' Motion for Attorneys' Fees and Costs ("McShane Fees Decl."), and the exhibits attached thereto, the accompanying Declaration of Julie N. Green ("Green Decl."), and the exhibits attached thereto, the pleadings and records on file in this Action, and other such matters and argument as the Court may consider at the hearing of this motion.

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ...................................................................................................................1

II. FACTUAL BACKGROUND .................................................................................................2

    A. Plaintiff's claims. ..........................................................................................................2

    B. Relevant Procedural History...........................................................................................2

    C. The Parties engaged in extensive discovery. .................................................................4

    D. Plaintiff prepares for class certification..........................................................................4

    E. The parties' settlement negotiations. .............................................................................4

    F. The Settlement Terms.....................................................................................................4

        *1. The Proposed Settlement Class.* ............................................................................4

        *2. The Settlement Terms and Relief Provides.* ..........................................................5

        *3. The Release.* ..........................................................................................................6

        *4. CAFA Notice and Notice to the Class.* ..................................................................7

        *5. Class Reaction to the Settlement.* .........................................................................8

        *6. Attorney's Fees, Expenses, and Incentive Award.* ...............................................8

III. ARGUMENT .........................................................................................................................8

    A. The Settlement Class Should Be Finally Certified And Final Approval Should Be Granted. ..........................................................................................................................8

    B. The Rule 23(a) Requirements Are Met. .........................................................................9

    C. The Rule 23(b)(3) Requirements Are Met.....................................................................10

        1. Common questions predominate over questions affecting individual class members………………………………………………………………..…………10

        2. A class action is superior to other available methods of adjudication. ...................12

    D. The Settlement Class satisfies the requirements of Rule 23(b)(2....................................13

    E. The Settlement satisfies the Ninth Circuit's final approval factors and the requirements of Rule 23(e). ..........................................................................................14

        1. The strength of the Plaintiff's case............................................................................14

        2. The risk, expense, complexity, and likely duration of further litigation and the risk of maintaining class action status throughout the trial. ...............................................15

i

3. The amount offered in settlement. ...........................................................................16

4. The extent of discovery completed and the stage of the proceedings. .....................18

5. The experience and views of counsel. .......................................................................19

6. The presence of a governmental participant. .............................................................19

7. The reaction of the class members to the proposed settlement. ...............................20

8. Whether the settlement is a product of collusion among the parties. .......................20

F. The Settlement satisfies the requirements of Rule 23(e). .................................................20

G. The District's Procedural Guidance Regarding Final Approval. .....................................21

H. The Requested Fee Award Is Reasonable. .......................................................................21

I. The Requested Cost Award Is Reasonable. ......................................................................25

J. The Class Representative service award is reasonable and appropriate. ...........................26

IV. CONCLUSION ........................................................................................................................27

1

## TABLE OF AUTHORITIES

2

**Cases**

3  *Ang v. Bimbo Bakeries USA, Inc.*, 2014 WL 1024182 (N.D. Cal. Mar. 13, 2014) ............................... 14

4  *Blum v. Stenson*, 465 U.S. 886 (1984)......................................................................................... 23

5  *Burgos v. Sunvalleytek Int'l*, No. 18-cv-06910-HSG, 2021 U.S. Dist. LEXIS 132931 (N.D. Cal. May

6      10, 2021)........................................................................................................................ 17

7  *Close v. Sotheby's, Inc.*, 909 F.3d 1204 (9th Cir. 2018) ................................................................. 21

8  *Covillo v. Specialtys Café*, No. C-11-00594 DMR, 2014 U.S. Dist. LEXIS 29837, 2014 WL 954516

9      (N.D. Cal. Mar. 6, 2014) ................................................................................................... 25

10  *Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794 (1996).................................................................. 22

11  *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997 (9th Cir. 2002) ...................................... 23

12  *G. F. v. Contra Costa Cty.*, No. 13-cv-03667-MEJ, 2015 U.S. Dist. LEXIS 159597 (N.D. Cal. Nov. 25,

13      2015)............................................................................................................................ 25

14  *Garner v. State Farm Mut. Auto. Ins. Co., No.* CV 08 1365, 2010 WL 1687832 (N.D. Cal. Apr. 22,

15      2010)............................................................................................................................ 26

16  *Gonzales v. City of Maywood*, 729 F.3d 1196 (9th Cir. 2013)........................................................... 23

17  *Grove v. Wells Fargo Fin., Inc.*, 606 F.3d 577 (9th Cir. 2010)........................................................... 25

18  *Guttmann v. Ole Mexican Foods, Inc.*, No. 14-cv-04845-HSG, 2015 U.S. Dist. LEXIS 154046 (N.D.

19      Cal. Nov. 13, 2015) ......................................................................................................... 17

20  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ......................................................... 22, 23

21  *Hensley v. Eckerhart,* 461 U.S. 424 (1983)................................................................................... 23

22  *Hill et al. v. AQ Textiles LLC et al*, Middle District of North Carolina, 1:19-cv-00983-LCB-JLW ....... 3

23  *Hilsley v. Gen. Mills, Inc.*, No. 3:18-cv-00395-L-BLM, 2021 U.S. Dist. LEXIS 105648 (S.D. Cal. June

24      4, 2021)..................................................................................................................... 17, 18

25  *In re High-Tech Employee Antitrust Litig.*, 2013 U.S. Dist. LEXIS 180530 (N.D. Cal. Oct. 30, 2013)

26      ..................................................................................................................................... 18

27  *In re Yahoo Mail Litig.*, No. 13-CV-4980, 2016 WL 4474612 (N.D. Cal. Aug. 25, 2016).................. 26

28

1   *Jefferson v. Chase Home Fin.*, C 06-6510 TEH, 2009 U.S. Dist. LEXIS 64607, 2009 WL 2051424

2    (N.D. Cal. July 10, 2009) ................................................................................................ 22

3   *Johnson v. Triple Leaf Tea Inc.*, 2015 U.S. Dist. LEXIS 170800 (N.D. Cal. Nov. 16, 2015) .............. 25

4   *Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) ................................................................... 23, 24

5   *Kline v. Dymatize Enters., LLC*, 2016 U.S. Dist. LEXIS 142774 ....................................... 19

6   *Knight v. Red Door Salons, Inc*., 2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009) ................ 19

7   *Littlejohn v. Copland*, 819 F. App'x 491 (9th Cir. 2020) ................................................... 17

8   *Littlejohn v. Ferrara Candy Co.*, No. 3:18-cv-00658-AJB-WVG, 2019 U.S. Dist. LEXIS 101959 (S.D.

9    Cal. June 17, 2019) ......................................................................................................... 25

10   *Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995) ...................... 21

11   *McCown v. City of Fontana*, 565 F.3d 1097 (9th Cir. 2009) .............................................. 24

12   *Miller v. Ghirardelli Chocolate Co*., No. 12-cv-04936-LB, 2015 U.S. Dist. LEXIS 20725 (N.D. Cal.

13    Feb. 20, 2015) ................................................................................................................. 18

14   *Miller v. Ghirardelli Chocolate Co*., No. C 12-04936 LB, 2014 U.S. Dist. LEXIS 141111 (N.D. Cal.

15    Oct. 2, 2014) .................................................................................................................. 17

16   *Perdue v. Kenny A.*, 130 S. Ct. 1662 (2010) .................................................................... 23

17   *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157 (9th Cir. 2013) ............................... 26

18   *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975 (N.D. Cal. 2017) ......................... 22

19   *Roberts v. Electrolux Home Prods.*, 2014 U.S. Dist. LEXIS 130163 (C.D. Cal. 2014) ............... 22, 23

20   *Rodriguez v. Hayes*, 591 F.3d 1105 (9th. Cir. 2010) ........................................................ 13

21   *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673 (N.D. Cal. 2016) ................... 25

22   *Valentino v. Carter-Wallace, Inc*., 97 F.3d 1227, 1234-35 (9th Cir. 1996) ........................ 13

23   *Vasquez v. Coast Valley Roofing, Inc*., 266 F.R.D. 482 (E.D. Cal. 2010) ............................ 15

24   *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ............................................. 24

25   *Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998) .............................................................. 13

26   *White v. Experian Info. Sols., Inc*., 2009 WL 10670553 (C.D. Cal. May 7, 2009) ...................... 19, 20

27   *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536 (9th Cir. 2016) .................................. 22

28   **Statutes**

15 U.S.C. § 2301 ........................................................................................................... 2

28 U.S.C. § 1715 ......................................................................................................... 19

Bus. & Prof. Code § 17200 ........................................................................................... 2

Bus. & Prof. Code § 17500 ........................................................................................... 2

Cal. Civ. Code § 1780 ................................................................................................. 22

Civ. Code § 1750 .......................................................................................................... 2

Missouri Rev. Stat. § 407.020 ...................................................................................... 2

**Rules**

Fed. R. Civ. P. 23 ............................................................................................. 8, 9, 12, 20

## I. INTRODUCTION

Plaintiff Dominique Morrison hereby moves for final approval of a proposed nationwide class settlement with Defendant Ross Stores, Inc. ("Ross" or "Defendant"). Preliminary approval has been granted,[1] notice was successfully disseminated[2], and Plaintiff has filed her motion for attorneys' fees and expenses.[3]

After three-years of hard-fought litigation, Ross has committed to implementing corporate-wide practices and policies concerning its bed sheet/linen products, specifically polyester/cotton sheets ("Products") that it purchases from AQ Textiles, LLC ("AQ") and then offers for retail sale to the class. The modifications to Ross's practices and policies, which the Settlement Agreement ("SA") requires enforcement for up to twelve (12) years, goes to the core of the claims in this litigation -- e.g., the inaccurate representation of the thread count on the labels of Products sold by Ross which were purchased from AQ. This settlement will fully resolve the claims against Ross by a proposed Settlement Class of all individuals in the United States and its territories who purchased the Products for personal use from a Ross store on or after May 7, 2014 and through to the Objection Deadline.[4] However, the settlement also specifically excludes AQ Textiles and Creative Textile Mills Private Limited ("Creative") (the distributor and manufacturer of the subject Products respectively) so that class members may still pursue claims against these entities, including for monetary damages.

The settlement now merits final approval.  It was negotiated at arm's-length with the assistance and guidance by two respected neutrals (the Honorable Elizabeth D. Laporte (ret.) and the Honorable Jay C. Gandhi (ret.)) after the parties completed substantial discovery and the Court denied nearly all of Ross's motion to dismiss.

This settlement also eliminates the substantial risk of continued litigation. Plaintiff recognized that the primary actor in manufacturing and mislabeling these sheets was not Ross, but AQ and Creative,

---

[1] *See* Dkt. No. 113.
[2] *See* accompanying Declaration of Julie N. Green ("Green Decl.") ¶ 20
[3] See Dkt. No. 114.
[4] The terms of the settlement are memorialized in the parties' Settlement Agreement ("SA" or "Settlement"), attached as Exhibit 1 to the Declaration of Michael McShane ("McShane Prelim Decl.") which was filed on May 7, 2021 with Plaintiff's motion for preliminary approval. Dkt. No. 98. The May 7, 2021 Declaration of McShane is incorporated and referenced here throughout as "McShane Prelim Decl."

**MOTION FOR FINAL APPROVAL OF SETTLEMENT**                    **CASE NO. 4:18-CV-02671-YGR**

1   and Ross, with its limited role in bringing the Products to market, possesses a plausible innocent retailer

2   defense. Accordingly, the SA achieves the purpose of ensuring that AQ/Creative bed sheets sold at Ross

3   are accurately labeled, preventing consumers from being misled about the thread count of the products

4   and associated product attributes, while still allowing the purchaser plaintiffs to pursue monetary claims

5   against the primary alleged bad actors.

6        Plaintiff requests that the Court grant this motion for final approval.

7   **II.      FACTUAL BACKGROUND**

8        **A.      Plaintiff's claims.**

9        Plaintiff's counsel has vigorously and extensively litigated the case since its filing on May 7,

10  2018. Plaintiff alleged that the bed sheets that she purchased from Ross, which were imported through

11  AQ and manufactured by Creative, were falsely represented to have a higher thread counts than they

12  actually had. Plaintiff asserted claims on behalf of herself and a proposed California class of all

13  purchasers that purchased bedding products from defendants that were inaccurately represented as

14  having higher thread counts than they actually possessed and for violation of the Magnuson-Moss

15  Warranty Act, 15 U.S.C. § 2301, *et seq.* ("MMWA"), fraud, violation of the Consumer Legal Remedies

16  Act, Civ. Code § 1750, *et seq.* ("CRLA"), violation of California's Unfair Competition Law, Bus. &

17  Prof. Code § 17200, *et seq.* ("UCL") under the unlawful, unfair, and fraudulent prong, violation of False

18  Advertising Law, Bus. & Prof. Code § 17500, *et seq.* ("FAL"), breach of express warranty, breach of

19  warranty of merchantability, and negligent misrepresentation. Plaintiff sought on behalf of herself and

20  the Class a permanent injunction prohibiting, restraining, and enjoining defendants from engaging in the

21  conduct outlined in the Complaint, including, but not limited to, manufacturing, marketing, advertising,

22  selling, and distributing bedding and linen products that have inflated thread counts as well as modifying

23  and/or changing Ross' practices and policies regarding ensuring the accuracy of the representations of

24  the thread count on the products' packaging. *See*, Compl. ¶¶ 72, 150, 157, 166, 173.

25       **B.      Relevant Procedural History.**

26       On June 29, 2018, AQ and Ross each separately filed motions to dismiss the Complaint.  On July

27  20, 2018, prior to the motion to dismiss hearings, Plaintiff filed an amended complaint ("FAC").

28  Plaintiff's FAC alleged the same claims, but added a claim for violation of the Missouri Merchandising

**MOTION FOR FINAL APPROVAL OF SETTLEMENT**                    **CASE NO. 4:18-CV-02671-YGR**

Practices Act ("MMPA"), Missouri Rev. Stat. § 407.020. Rather than a California class, the FAC sought to certify a proposed Missouri and nationwide class. The claims alleged under the CLRA, UCL, and FAL are alleged against Ross only, the others are alleged against all defendants.

On August 3, 2018, AQ and Ross again moved to dismiss the FAC. On November 14, 2018, the Court granted both motions but allowed Plaintiff leave to amend with respect to the claims against Ross only. The Court granted AQ's motion to dismiss on personal jurisdiction grounds and from that point forward AQ was no longer part of this litigation.[5]

On December 4, 2018, Plaintiff filed a Second Amended Complaint ("SAC") alleging the same claims in the FAC, and adding a claim for unjust enrichment. Plaintiff asserted these claims on behalf of herself and a proposed Missouri and nationwide class who purchased bedding or linen products from Ross that were manufactured or supplied by AQ and/or Creative and that were packaged or advertised with representations regarding thread count. On January 4, 2019, Ross filed a motion to dismiss the SAC.

On May 30, 2019, the Court granted Ross's motion to dismiss as to Plaintiff's claims for violation of MMWA and unjust enrichment and denied Ross's motion as to Plaintiff's claims for: (1) fraud; (2) violation of the CLRA; (3) violation of UCL under its unlawful prong, unfair prong, and fraudulent prong; (4) violation of the FAL; (5) breach of express warranty; (6) breach of warranty of merchantability; (7) negligent misrepresentation; and (8) violation of the MMPA.

On June 20, 2019, Ross answered Plaintiff's SAC, denying Plaintiff's allegations and asserting several affirmative defenses.

On May 7, 2021, Plaintiff filed her motion for preliminary approval of the proposed settlement.

On July 30, 2021, Defendant filed a supplemental brief in support of Plaintiff's motion for preliminary approval.

On August 27, 2021, the Court granted motion for preliminary approval of the proposed settlement.

---

[5] Subsequent to the dismissal of AQ in this matter, Plaintiff Morrison, along with several other Plaintiffs, filed a putative class action against AQ in North Carolina. *See Hill et al. v. AQ Textiles LLC et al*, Middle District of North Carolina, 1:19-cv-00983-LCB-JLW. The Court *sua sponte* dismissed the complaint upon the grounds that Plaintiffs needed to plead the requisite allegations to establish that they have standing to bring the claims. The Plaintiffs have sought leave to amend their complaint to add allegations to establish Plaintiffs' standing to bring the claims. That motion is pending.

1   On October 28, 2021, Plaintiff filed her motion for attorneys' fees and expenses.

2      **C.      The Parties engaged in extensive discovery.**

3      The parties engaged in extensive discovery during the almost three-year course of this litigation.

4   Plaintiff served interrogatories, requests for production, and request for admission on Ross and received

5   thousands of pages of documents in response. McShane Prelim Decl. ¶ 6.   The parties conducted

6   depositions of Ross's corporate representative, employees, officers and designees and also served several

7   subpoenas on AQ and other third parties involved in the bed sheet and linen product testing businesses.

8   Likewise, the Plaintiff responded to Ross' written discovery requests, produced documents and was

9   deposed. *Id.*

10     Plaintiff also worked extensively with liability and damage experts who were prepared to submit

11  reports and testify for purposes of both class certification and trial.

12     **D.      Plaintiff prepares for class certification.**

13     Up until the time of the settlement, Plaintiff remained focused on filing its motion for class

14  certification. Plaintiff compiled evidence, arranged expert materials, and began developing a trial plan.

15  The most recent scheduling Order had a deadline of April 15, 2021 for the Plaintiff to file their motion

16  for class certification. *See* Dkt. No. 90.

17     **E.      The parties' settlement negotiations.**

18     The parties attended three separate mediation sessions, with the final two taking place in front

19  of the Honorable Elizabeth D. Laporte (ret.), who served as a magistrate judge for the Northern District

20  of California for more than two decades. Plaintiff's motion for preliminary approval, Dkt. 98 at 11; *see*

21  *also*, *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ("[T]he presence

22  of a neutral mediator [is] a factor weighing in favor of a finding of non-collusiveness.")   The vast

23  majority of the material terms in the final agreement were agreed to during the final mediation session

24  before Judge Laporte. Dkt. 98 at 11.

25     Plaintiffs' counsel Mr. Michael McShane acted as the chief negotiator for Plaintiff and the Class.

26  He possesses decades of experience in class action litigation. McShane Prelim Decl. ¶ 10.

27     **F.   The Settlement Terms**

28     *1.   The Proposed Settlement Class.*

4

The Settlement Class is defined as:

> All persons in the United States who purchased the Products for personal use from a Ross store on or after May 7, 2014, to the Objection/Exclusion Deadlines. Excluded from the Settlement Class are: (a) Ross's employees, officers, directors, or attorneys; (b) person who timely and properly excluded themselves from the Settlement Class as provided herein, and (c) the Court, the Court's immediate family, and Court staff.

As discussed below, it is appropriate to certify the Settlement Class because the same overarching common issues predominate over individualized issues and the other Rule 23 requirements remain satisfied.

   2.   *The Settlement Terms and Relief Provides.*

For a period of up to twelve years, Ross is required to ensure that the thread count of the AQ Products it receives and intends to sell conform to industry standards for the testing and verification of thread count, so that the actual thread count for Products is consistent with the representations regarding thread count listed on the labeling. Accordingly, Ross agrees to do the following:

   a.   Ross will require AQ to certify in writing on an annual basis beginning on January 1st after the Effective Date that the description of the thread count on its packaging for Products accurately reflects the actual thread count as determined by ASTM 3775, as officially interpreted and amended from time to time, or any successor industry standard for textile thread count for Products sold to Ross. Ross shall not be required to obtain a certification from AQ if it has not purchased any Products within the previous year and has not issued any purchase orders for future purchases of Products; provided, however, that Ross shall require AQ to provide a certification before issuing any subsequent purchase orders for Products to AQ.

   b.   Require AQ to report in writing on an annual basis, beginning on January 1st after the Effective Date, as to whether there are any known investigations by any outside entity or pending claims or lawsuits regarding AQ's representations concerning thread count on the Products, any remedial actions taken regarding these claims or investigations, and if no remedial actions were taken, the reasons for which remedial actions were not taken.

1    c.    Commencing no later than the Effective Date, Ross will require AQ to supply a
2    passing test report for each new style of Products showing compliance with ASTM 3775, as
3    officially interpreted and amended from time to time, or any successor industry standard for
4    textile thread count, before taking possession of such style. Only one test report is required if
5    the Product differs only by size or color.

6    The aforementioned injunctive relief will remain in effect for twelve years, following an order
7    or Final Approval of this Settlement, with such terms automatically terminating after twelve years.
8    Ross may seek Early Termination of the injunctive relief terms no earlier than seven years, provided
9    that there have been no violations of the required injunctive relief terms within the preceding three
10   years.

11   Importantly, class members are not releasing their damages claims against the supplier of the
12   sheets, AQ Textiles LLC, and the manufacturer of the sheets, Creative Textiles Mills, Ltd., whom
13   discovery has shown to be the primary bad actors with respect to the mislabeling of the sheets.  Dkt.
14   No. 110. Thus, class members will receive the value of the injunctive relief agreed to by Ross while
15   also maintaining the right to seek damages from those other entities.  Indeed, those claims are already
16   being pursued in another jurisdiction.

17        *3.    The Release.*

18   Upon the entry of an order of Final Approval, the parties shall be barred from instituting,
19   maintaining, or prosecuting (1) any and all claims, liens, demands, actions, causes of action, rights,
20   duties, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or
21   otherwise, known or unknown, that actually were, or could have been, asserted in the Litigation as to
22   each Party, whether based upon any violation of any state or federal statute or common law or regulation
23   or otherwise, or arise directly or indirectly out of, or in any way relate to, the allegations, claims, or
24   contentions that Plaintiff, on the one hand, and Ross, on the other hand, have had in the past, or now
25   have, related in any manner to Ross's products and services or business affairs; and (2) any and all other
26   claims, liens, demands, actions, causes of action, rights, duties, obligations, damages or liabilities of any
27   nature whatsoever, whether legal or equitable or otherwise, known or unknown, that Plaintiff, on the one
28   hand, and Ross, on the other hand, have had in the past or now have, related in any manner to any and

all Released Parties' products, services or business affairs, or otherwise.

In addition, Settlement Class Members shall have unconditionally, completely, and irrevocably released and discharged the Released Parties from any and all claims, liens, demands, actions, causes of action, rights, duties, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, whether arising under any international, federal, state or local statute, ordinance, common law, regulation, principle of equity or otherwise, that that were, or could have been, asserted in the Litigation and that arise out of or relate to the allegations thereof, or to any similar allegations or claims regarding the Products (the "Released Claims"). Settlement Class Members shall be forever barred from initiating, maintaining, or prosecuting any Released Claims against Released Parties.

All Parties to this Settlement Agreement, including the Settlement Class, specifically acknowledge that they have been informed by their legal counsel, via the Notice, of Section 1542 of the California Civil Code (and any similar State laws) and they expressly waive and relinquish any rights or benefits available to them under this statute (and any similar State laws). Notwithstanding Section 1542 of the California Civil Code, or any other federal or state statute or rule of law of similar effect, this Settlement shall be given full force and effect according to each and all of its expressed terms and provisions, including those related to any unknown or unsuspected claims, liabilities, demands, or causes of action which are based on, arise from or are in any way connected with the Litigation.

Notably, specifically excluded from the release are AQ Textiles, LLC and Creative Textile Mills Private Limited, the distributor and manufacturer of the subject Products. As noted above, Ross had a strong innocent retailer defense given its limited role in bringing the Products to market. Accordingly, this settlement achieves the purpose of ensuring that AQ/Creative Products sold at Ross are accurately marketed, while still allowing purchasers to pursue monetary claims against the primary bad actors.

### 4.    CAFA Notice and Notice to the Class.

After the Court granted preliminary approval on August 27, 2021, notice was provided to the Class Members via a digital advertisement campaign, a social media campaign, online video sponsored advertisements on YouTube, a nationwide press release over PR Newswire and via the San Jose Mercury News, and the creation of a dedicated settlement site by the Claims Administrator, CPT

Group.  Green Decl. ¶¶ 8-13.  In addition, CPT Group sent notification in compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. Green Decl. ¶ 5. The outreach campaign was extremely robust: 133 media outlets picked up the advertised press release concerning this settlement, with a total potential audience of 137 million individuals; the digital media campaign served nearly 15 million viewable impressions on individuals' mobile and desktop displays, and 21,675 new users found their way to the class website. Green Decl. ¶¶ 11-12.  Despite this high volume of outreach, the Claims Administrator received no objections to the settlement (Green Decl. ¶ 17) and only a fraction of individuals (0.0055%) sought to opt out. Green Decl. ¶ 18.

The Notice Plan was implemented as anticipated and, between the multiple notice methods including direct mail, e-mail, and social media, likely reached approximately 80% of class members. Green Decl. ¶ 14. Accordingly, the Court should find the Notice Plan was reasonably calculated to give actual notice to Class Members of the right to receive benefits from the Settlement, and to be excluded from or object to the Settlement and that the Notice Plan met the requirements of Rule 23 and due process.

> 5.     *Class Reaction to the Settlement.*

The Settlement has been well received by class members.  Only 44 Class Members requested exclusion, and zero Class Members filed objections. Green Decl. ¶ 17. The opt-out filing rate was .0055%. *Id* at ¶ 18.

> 6.     *Attorney's Fees, Expenses, and Incentive Award.*

On October 28, 2021, Plaintiff filed her motion for attorney fees and expenses in the amount not to exceed $750,000, plus reimbursement of costs and expenses. Class Counsel together, has spent approximately 2,992.75 total hours litigating this case which amounts to a lodestar of approximately $1,867,761.25 and has spent $37,017.91 in costs towards the prosecution of this action. Plaintiff seeks an Incentive Award for Ms. Morrison as compensation for the time and effort undertaken in and risks of pursuing this Litigation not exceed $5,000.

## III.   ARGUMENT

### A.  The Settlement Class Should Be Finally Certified And Final Approval Should Be Granted.

1    Before assessing the parties' settlement, the Court should first confirm that the underlying

2    settlement class meets the requirements of Rule 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620

3    (1997); Manual for Complex Litigation, § 21.632. The requirements are well known: numerosity,

4    commonality, typicality, and adequacy-each of which is met here.  Fed. R. Civ. P. 23(a); *Ellis v. Costco*

5    *Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011).

6                    **B.   The Rule 23(a) Requirements Are Met.**

7    The nationwide Settlement Class has approximately 800,000 class members which satisfies the

8    numerosity requirement. *See Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 548-49 (N.D. Cal. 2007)

9    (holding that numerosity is generally satisfied when a class has at least 40 members).

10   The commonality requirement, which requires that class members' claims "depend upon a common

11   contention," of such a nature that "determination of its truth or falsity will resolve an issue that is

12   central to the validity of each [claim] in one stroke," is also met. *Wal-Mart Stores, Inc. v. Dukes*, 564

13   U.S. 338, 350 (2011). Common questions include:

14
15          1.   Does the ASTM standard counting method apply to CVC sheets? If so, how would one

                 count the multiple polyester filaments per yarn using that method?

16
             2.   How does AQ's alternative counting method differ from the ASTM standard counting
17
                 method? Does the alternative method result in higher thread counts than the standard
18
                 method?
19
             3.   When did Ross know (or, when should it have known) that the thread counts on its AQ-
20
                 supplied sheets were inflated beyond the ASTM standard?
21

22   These questions are "'central to the validity' of the claims of all class members and is capable

23   of resolution in 'one stroke.'" *Dukes*, 564 U.S. at 350. These are same common questions at the heart

24   of the claims of all members.

25   Typicality is satisfied if "the claims or defenses of the representative parties are typical of the

26   claims or defenses of the class." Fed. R. Civ. P. 23 (a)(3); *Just Film, Inc. v. Buono*, 847 F.3d 1108,

27   1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct

28   directed against the class."). Plaintiff's claims are typical of the claims of Settlement Class members

9

because they stem from the same alleged conduct (i.e. thread count inflation and misrepresentation on the Products' packaging and seek relief under the same legal theories). *See I.B. v. Facebook, Inc.*, 82 F. Supp. 3d 1115, 1129 (N.D. Cal. 2015) (typicality found in 23(b)(2) injunctive relief); *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

Finally, the adequacy requirement is satisfied when the class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To make this determination, "courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (citation omitted). Plaintiff and her counsel have continued to vigorously represent the class and have no conflicts of interest with any Settlement Class Members. Moreover, Class Counsel is eminently qualified and has a long history and experience with prosecuting class actions of this kind. *See* McShane Prelim Decl. ¶¶ 10-13 (CV and Firm Resumes of Class Counsel). Plaintiff and her counsel have continued to vigorously represent the class and have no conflicts of interest with any Settlement Class Members.

## C.   The Rule 23(b)(3) Requirements Are Met.

The Settlement Class is maintainable under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair and efficient resolution of the controversy. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) . . . .'").  Predominance analysis in the settlement context need not consider manageability issues because "the proposal is that there be no trial," and hence manageability considerations are no hurdle to certification for purposes of settlement. *Amchem*, 521 U.S. at 620.  Both requirements are satisfied for the Settlement Class.

### 1.   Common questions predominate over questions affecting individual class members.

"When 'one or more of the central issues in the action are common to the class and can be said

10

to predominate, the action may be considered proper under Rule 23(b)(3)[.]'"  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) (citation omitted); *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) ("When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.").  In cases involving consumer fraud, predominance is "'readily met'" because "a company's mass marketing efforts, common to all consumers, misrepresented the company's product[.]" In *re Hyundai & Kia Fuel Econ. Litig.*, 2019 WL 2376831, at *7 (9th Cir. June 6, 2019) (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997)).

Moreover, "whether a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or for settlement."  *In re Hyundai & Kia Fuel Econ. Litig.*, 2019 WL 2376831, at *7.  As the Supreme Court has explained, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."  *Amchem Prods.*, 521 U.S. at 620.

The Ninth Circuit has held that "differences between state consumer protection laws" do not preclude certification of a Rule 23(b)(3) settlement class where there is a "common nucleus of facts and potential legal remedies."  *Hanlon*, 150 F.3d at 1022-23; *see In re Hyundai & Kia Fuel Econ. Litig.*, 2019 WL 2376831, at *8; *see also Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 301, 303-04 (3d Cir. 2011) (stating that "variations in the rights and remedies available to injured class members under the various laws of the fifty states [do] not defeat commonality and predominance" for certifying a settlement class because settlement "obviates the difficulties inherent in proving the elements of varied claims at trial[.]").

Recent cases have approved nationwide settlement classes based on state law claims:  *See, e.g., In re Hyundai & Kia Fuel Econ. Litig.*, 2019 WL 2376831, at *13, *18 (certifying nationwide

11

settlement class applying California consumer protection law); *Fowler v. Wells Fargo Bank, N.A.*, 2018 WL 4003286, at *4 (N.D. Cal. Aug. 22, 2018) (state law breach of contract claims); *see also Hickox-Huffman v. US Airways, Inc.*, 2018 WL 5291990, at *1-2 (N.D. Cal. Oct. 22, 2018) (breach of contract claim); *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 536661, at *7 (N.D. Cal., Feb. 11, 2019)("[T]here are common patterns on the certain key elements among the various state laws" of misrepresentation, fraudulent concealment, consumer protection, and implied and express warranty.); *Johnson v. Metro-Goldwyn-Mayer Studios Inc.*, 2018 WL 5013764, at *1, 5 (W.D. Wash. Oct. 16, 2018) (certifying for settlement purposes consumer protection and warranty claims asserted by a nationwide class); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 316 (N.D. Cal. 2018) (certifying claims for breach of contract and negligence for settlement purposes).

Common questions predominate over any questions affecting only individual members. Common questions include *inter alia* whether Ross sold sheets with misrepresented and overstated thread counts of the Products supplied by AQ, whether the stated thread count on the Products packaging was false and or misleading to consumers, and the proper test method to determine the thread count of a textile product including sheets. Other common questions include harm suffered by Settlement Class Members and determination of class wide damages, and the relief Settlement Class Members are entitled to. These common questions are all based on a common set of facts and can be resolved using the same evidence for all class members making class certification appropriate. As in *Hanlon*, here, the common questions present "a significant aspect of the case" such that "they can be resolved for all members of the class in a single adjudication." *Hanlon.*, 150 F.3d at 1022.

        2.     A class action is superior to other available methods of adjudication.

Class certification is "superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The purpose of the superiority requirement is to ensure judicial economy and that a class action is the "most efficient and effective means of resolving the

controversy." *Wolin*, 617 F.3d at 1175 (citation omitted). Courts consider four factors in evaluating the superiority requirement:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Classwide resolution is the only practical method of addressing the allegedly wrongful conduct at issue in this case by ensuring that Ross will change its practices and procedures to ensure that the Products it sells which are supplied by AQ will have thread counts as represented on the packaging. Pursuing individual claims against a well-defended company like Ross would be prohibitively expensive. *See Valentino v. Carter-Wallace, Inc*., 97 F.3d 1227, 1234-35 (9th Cir. 1996) ("A class action is the superior method for managing litigation if no realistic alternative exists."). It is also "far more efficient" to litigate Plaintiffs' claims "on a classwide basis rather than in thousands of individual and overlapping suits." *Wolin*, 617 F.3d at 1176. Plaintiff is not aware of any pending litigation involving the same claims against Ross, and this Court is well-positioned to oversee the resolution of these claims on a classwide basis given its familiarity with the issues.

### D.  The Settlement Class satisfies the requirements of Rule 23(b)(2).

This Settlement Class seeks to be certified under Rule 23(b)(2). To certify a Rule 23(b)(2) class, "the party opposing the class [must have] acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Unlike Rule 23(b)(3), Plaintiff does not need to show predominance of common issues or superiority of class adjudication, but only that there is a cohesiveness of class claims. *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998). To certify a class under Rule 23(b)(2), it is generally sufficient "that class members complain of a pattern or practice that is generally applicable to the class as a

whole." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th. Cir. 2010). "The key to [a Rule 23(b)(2)] class is ... the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 131 S. Ct. at 2557 (internal quotation marks omitted).

Here, Plaintiff alleges that Ross is "act[ing] or refus[ing] to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). The claims of each member of each proposed class all relate to one specific practice of providing inaccurate and overstated thread count representations on the packaging of the Products. If one misrepresentation on a product purchased by one class member is illegal, then the misrepresentations on all products purchased by all class members are illegal. See *Ang v. Bimbo Bakeries USA, Inc.*, 2014 WL 1024182, at *8-9 (N.D. Cal. Mar. 13, 2014). The same issues of law pertain to each class member and the same declaratory and injunctive relief is appropriate with respect to all class members. Accordingly, this Settlement Class should be certified under Rule 23(b)(2)

### E.   The Settlement satisfies the Ninth Circuit's final approval factors and the requirements of Rule 23(e).

Courts assess at final approval: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement; and (9) whether  the settlement is a product of collusion among the parties. *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

#### 1.   The strength of the Plaintiff's case.

Plaintiff recognized that the primary actor in manufacturing and mislabeling these sheets was not Ross, but AQ and Creative, and Ross. As a result, Ross had a plausible innocent retailer defense. The Court's rulings on the various filings provided the parties and their counsel with additional insight into the strengths and weaknesses of their respective positions. Along with discovery, in particular the taking of depositions, it is with this foundation that Class Counsel, who are experienced in litigating these types of class action cases, endorse the settlement. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245,

1  257 (N.D. Cal. 2015) ("The trial court is entitled to, and should, rely upon the judgment of experienced

2  counsel for the parties." (citation omitted)); *Nat'l Rural Telcoms*, 221 F.R.D. at 528 ("Great weight is

3  accorded to the recommendation of counsel, who are most closely acquainted with the facts of the

4  underlying litigation. This is because parties represented by competent counsel are better positioned than

5  courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.").

6          2.  <u>The risk, expense, complexity, and likely duration of further litigation and the risk of</u>

7              <u>maintaining class action status throughout the trial.</u>

8          The likely expense, complexity, duration, and risk involved in further litigation strongly

9  favor resolution through the Settlement, resulting in prompt injunctive relief. *See Kline*, 2016 U.S.

10  Dist. LEXIS 142774, *13-14 ("[W]hile confident in the merits of their case, Plaintiffs are cognizant

11  of the inherent risks of lengthy litigation … The proposed settlement adequately accounts for these

12  risks"); *Vasquez v. Coast Valley Roofing, Inc*., 266 F.R.D. 482, 489 (E.D. Cal. 2010) (in weighing

13  the risk of future litigation, "a court may consider the vagaries of litigation and compare the

14  significance of immediate recovery by way of the compromise to the mere possibility of relief in the

15  future, after protracted and expensive litigation") (internal quotation marks omitted).

16          As this Court is aware, Plaintiff alleged that Ross violated California's Unfair Competition

17  Law as well as the Missouri Merchandise Merchandising Practices Act, in addition to breaching

18  warranties as to the products and thus the accompanying Magnusson Moss Warranty Act and the

19  California Consumer Legal Remedies Act by intentionally labeling certain of its products with

20  misrepresentations to increase sales by representing the products' thread counts as higher than they

21  actually were. Ross has denied these allegations, arguing that Plaintiff cannot show the product

22  representations in question were incorrect or violated any laws or regulations. The parties had

23  prepared to retain experts to prepare reports on the purchasing decisions of consumers and what

24  effect—if any—these representations would have, and plan to offer similar testimony should the

25  litigation continue.

26          The attendant costs associated with paying dueling experts, continuing motion practice and

27  discovery, and proceeding through litigation and a possible trial are not preferable to the prompt

28  injunctive relief and all-inclusive payment the Settlement provides. Class Counsel together, has spent

1    approximately 2,992.75 total hours litigating this case which amounts to a lodestar of approximately

2    $1,867,761.25 and has spent $37,017.9 in costs towards the prosecution of this action. And much more

3    time and money would be spent by the parties by way of class certification, expert related work, and

4    trial.

5         At bottom, the failure to reach settlement—in addition to the cost associated with further

6    litigation—would raise considerable risks associated with the parties' positions. Because of these

7    factors and the parties' joint desire to resolve this matter by the terms outlined in the Settlement, the

8    Court should finally approve the Settlement.

9         3.   <u>The amount offered in settlement.</u>

10        The relief provided by the settlement is long lasting and ensures that thread counts on Ross

11   products made by AQ will be accurate. For a period of up to twelve years, Ross is required to ensure

12   that the thread count of the AQ Products it receives and intends to sell conform to industry standards

13   for the testing and verification of thread count, so that the actual thread count for Products is consistent

14   with the representations regarding thread count listed on the labeling. Ross agrees to do the following:

15        a.   Ross will require AQ to certify in writing on an annual basis beginning on

16   January 1st after the Effective Date that the description of the thread count on its packaging for

17   Products accurately reflects the actual thread count as determined by ASTM 3775, as officially

18   interpreted and amended from time to time, or any successor industry standard for textile thread

19   count for Products sold to Ross. Ross shall not be required to obtain a certification from AQ if

20   it has not purchased any Products within the previous year and has not issued any purchase

21   orders for future purchases of Products; provided, however, that Ross shall require AQ to

22   provide a certification before issuing any subsequent purchase orders for Products to AQ.

23        b.   Require AQ to report in writing on an annual basis, beginning on January 1st

24   after the Effective Date, as to whether there are any known investigations by any outside entity

25   or pending claims or lawsuits regarding AQ's representations concerning thread count on the

26   Products, any remedial actions taken regarding these claims or investigations, and if no

27   remedial actions were taken, the reasons for which remedial actions were not taken.

28

1          c.       Commencing no later than the Effective Date, Ross will require AQ to supply a

2    passing test report for each new style of Products showing compliance with ASTM 3775, as

3    officially interpreted and amended from time to time, or any successor industry standard for

4    textile thread count, before taking possession of such style. Only one test report is required if

5    the Product differs only by size or color.

6        There is significant value to injunctive relief in the form of label and practice changes and

7    numerous courts across the Ninth Circuit have approved 'label change' settlements, with value

8    assigned specifically to these reforms and impact on consumers.[6] To be clear, when there are claims

9    for the mislabeling of products – modification of the allegedly mislabeled packaging and advertising

10    "adequately addresses the very claims raised in Plaintiff's Complaint, provid[ing] value to the Class."

11    *Littlejohn v. Copland*, 819 F. App'x 491, 493 (9th Cir. 2020) (affirming approval of settlement that

12    required removal of phrase "no artificial flavors" and the identification of a new ingredient, with no

13    monetary relief involved). Plaintiff recognizes, as the Court did, that the Ninth Circuit decision in

14    Littlejohn is unpublished, but the facts of that case bear great similarity to those here, and other district

15    courts in the Ninth Circuit have taken Littlejohn into consideration when evaluating settlements of this

16    type. C.f. *Hilsley v. Gen. Mills, Inc*., No. 3:18-cv-00395-L-BLM, 2021 U.S. Dist. LEXIS 105648, at

17    *12 (S.D. Cal. June 4, 2021) (discussing and accounting for Littlejohn in evaluating a label change

18    settlement).

19        In comparison to the injunctive relief here, the allegedly false thread count statements on the

20    packages of the sheet products, as referenced in Complaint, are now required to be verified and

21    substantiated by annual certification and testing that AQ supplies to Ross before purchase. This helps

22    guarantee that consumers will be getting exactly what they were promised and are paying for – and

23    that confers real and immediate benefits to the Class and has value. The injunctive relief in this

24    Settlement is valuable and provides a significant benefit to the class and comparable to the relief in

25

26    [6] *Guttmann v. Ole Mexican Foods, Inc*., No. 14-cv-04845-HSG, 2015 U.S. Dist. LEXIS 154046 (N.D. Cal. Nov. 13, 2015) (approving injunctive relief settlement with full release for mislabeling case where

27    ingredient not properly disclosed); *Burgos v. Sunvalleytek Int'l*, No. 18-cv-06910-HSG, 2021 U.S. Dist. LEXIS 132931 (N.D. Cal. May 10, 2021) (granting final approval of misleading label change

28    settlement); *Miller v. Ghirardelli Chocolate Co*., No. C 12-04936 LB, 2014 U.S. Dist. LEXIS 141111 (N.D. Cal. Oct. 2, 2014) (assigning significant value to injunctive relief in a settlement).

1    Littlejohn, supra, wherein the label change amounted to the explicit removal of an the allegedly false

2    statement. *See Littlejohn*, 919 F. App'x at 492 (removal of "no artificial flavors and addition of the

3    artificial ingredient to the ingredient list"); *see also* Dkt. 98 at 4-5 (requiring substantiation of thread

4    count from the supplier to ensure that the thread counts on the sheets are accurate). And where courts

5    have rejected label change settlements, it concerned label changes that were a far cry from what this

6    current Settlement provides: a complete substantiation of a representation, not an asterisk that "would

7    not alleviate the misleading nature of false representations." *Hilsley*, 2021 U.S. Dist. LEXIS 105648, at

8    *12 (S.D. Cal. June 4, 2021) (rejecting the settlement in a fruit snack labeling case because the

9    injunctive relief consisted of only an asterisk pointing consumers to the defendant's website for

10   explanation of representation). And because Ross's customers tend to be repeat customers that

11   frequently shop for bed and bath products, Class members are likely to be exposed to AQ thread-count

12   representations in the post-approval period when the injunctive relief is in force,[7] the label change

13   holds significant value. *Miller v. Ghirardelli Chocolate Co*., No. 12-cv-04936-LB, 2015 U.S. Dist.

14   LEXIS 20725 (N.D. Cal. Feb. 20, 2015) (label changes can hold significant value to a settlement

15   class).

16          Importantly, Class members are not releasing their damages claims against the supplier of the

17   sheets, AQ Textiles LLC, and the manufacturer of the sheets, Creative Textiles Mills, Ltd., whom

18   discovery has shown to be the primary bad actors with respect to the mislabeling of the sheets.  Dkt.

19   No. 110. Thus, class members will receive the value of the injunctive relief agreed to by Ross while

20   also maintaining the right to seek damages from those other entities.  Indeed, those claims are already

21   being pursued in another jurisdiction.

22          4.   The extent of discovery completed and the stage of the proceedings.

23          When settlements are reached after hard-fought litigation and arms-length negotiations

24   among experienced counsel they are "entitled to an initial presumption of fairness." *In re High-Tech*

25   *Employee Antitrust Litig*., 2013 U.S. Dist. LEXIS 180530, *6-7 (N.D. Cal. Oct. 30, 2013) (internal

26   quotations and citations omitted). This lawsuit involved a lengthy litigation period involving many

27   depositions, including of Plaintiff Morrison, production and review of thousands of documents,

28

---

[7] *See* Dkt. 109-1.

deposing Ross's Rule 30(b)(6) designee, and extensive briefing on motions seeking dismissal including a preview of the Ross Summary Judgement Motion based on the innocent retailer defense. The parties have therefore had a genuine opportunity to consider various rulings of the Court, take meaningful discovery and gauge the feasibility and benefits and risks associated with settlement versus continued litigation. *See In re Wireless Facilities, Inc. Secs. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) (settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair); *see also*, *White v. Experian Info. Sols., Inc*., 2009 WL 10670553, *13 (C.D. Cal. May 7, 2009) (same). Furthermore, the Settlement was reached only after several sessions of hard-fought mediation before the Honorable Jay C. Gandhi and the Honorable Hon. Elizabeth D. Laporte. *Kline v. Dymatize Enters., LLC*, 2016 U.S. Dist. LEXIS 142774, *5 ("That the settlement was reached with the assistance of an experienced mediator further suggest that the settlement is fair and reasonable") (citation omitted).

As a result of the parties' efforts and the Court's rulings, the claims have been substantially investigated and/or are substantially understood so that the parties and their counsel had a reasonable opportunity to candidly assess the merits and weaknesses of the claims and the defenses thereto.

### 5.   The experience and views of counsel.

Class Counsel has substantial experience in class action litigation and, in particular, with class action litigation specific to California's consumer protection statutes and false labeling laws. *See* McShane Prelim Decl. ¶¶ 10-13 (CV and Firm Resumes of Class Counsel).

The opinion of experienced counsel supporting the settlement is entitled to considerable weight. *Knight v. Red Door Salons, Inc*., 2009 U.S. Dist. LEXIS 11149, *11 (N.D. Cal. Feb. 2, 2009) (citation omitted). With regard to the terms and conditions of the Agreement, Class Counsel's experienced judgment and views, which guided their decision in drafting and negotiating the relief contained within, and which were informed by the guidance and perspective of mediators the Honorable Jay C. Gandhi and the Honorable Hon. Elizabeth D. Laporte, should be taken into account in the Court's consideration of this motion.

### 6.   The presence of a governmental participant.

Pursuant to the Notice Plan, the Attorney General of the United States and the 51 Attorneys

19

General were notified of the proposed settlement pursuant to CAFA, 28 U.S.C. § 1715 and were given an opportunity to raise any objections.  Green Decl., ¶ 5.  Currently, no such objections have been received.  *Id.*

       7.  <u>The reaction of the class members to the proposed settlement.</u>

The Settlement has been well received by class members.  Only 44 Class Members requested exclusion, and zero Class Members filed objections. Green Decl. ¶ 17. The Class has spoken and is overwhelmingly in support of the settlement.

       8.  <u>Whether the settlement is a product of collusion among the parties.</u>

This lawsuit involved a lengthy litigation period involving many depositions, including of Plaintiff Morrison, production and review of thousands of documents, deposing Ross's Rule 30(b)(6) designee, and extensive briefing on motions seeking dismissal including a preview of the Ross Summary Judgement Motion based on the innocent retailer defense. The parties meet with neutrals on three occasions. No collusion took place. *See In re Wireless Facilities*, 253 F.R.D. at 610 (settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair); *see also*, *White v. Experian Info. Sols., Inc*., 2009 WL 10670553, *13 (C.D. Cal. May 7, 2009) (same)

### F.  The Settlement satisfies the requirements of Rule 23(e).

Amended Rule 23(e) states that approval is proper upon a finding that the settlement is "fair, reasonable, and adequate" after considering whether:

    (A) the class representatives and class counsel have adequately represented the class;

    (B) the proposal was negotiated at arm's length;

    (C) the relief provided for the class is adequate, taking into account:

        (i) the costs, risks, and delay of trial and appeal;
        (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
        (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
        (iv) any agreement required to be identified under Rule 23(e)(3); and

    (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).

While these factors have been addressed herein, Plaintiff's motion for attorney's fees and expenses provides further details concerning payments, Dkt. No. 114; there are no agreements that need to be identified; and the settlement treats all class members the same with injunctive relief made available to all in the same uniform manner.

### G.  The District's Procedural Guidance Regarding Final Approval.

"To The Northern District of California's Procedural Guidance for Class Action Settlements directs that, a motion for final approval should include: (1) information about the number of undeliverable class notices and claim packets, (2) the number of class members who submitted valid claims, (3) the number of class members who elected to opt out of the class, (4) the number of class members who objected to or commented on the settlement, (5) a response to any objections. N.D. Cal., Procedural Guidance for Class Action Settlements (Dec. 5, 2018).  In addition, it should include information concerning attorney fees and expenses sought and incentive award information.

As set forth herein, notice reached the vast majority of Class Members, with only 44 opt outs and zero objections. Green Decl. ¶ 17. No claims forms were received as part of this injunctive settlement. Plaintiff's October 28, 2021 motion for attorney fees and expenses details that Class Counsel together, has spent approximately 2,992.75 total hours litigating this case which amounts to a lodestar of approximately $1,867,761.25 and has spent $37,017.9 in costs towards the prosecution of this action. Other details are included in the motion. Plaintiff seeks an Incentive Award for Ms. Morrison as compensation for the time and effort undertaken in and risks of pursuing this Litigation not exceed $5,000. Ms. Morrison volunteered written discovery materials early in the case, was deposed, and was engaged during the litigation.

The Northern District of California's Procedural Guidelines have been met.

### H.  The Requested Fee Award Is Reasonable.

#### a.  Applicable Law Regarding Attorneys' Fees

In diversity cases, federal courts apply state law to determine both the right to attorney's fees and the appropriate method to calculate the amount.  *Close v. Sotheby's, Inc.*, 909 F.3d 1204, 1208 (9th Cir. 2018) (applying state law to determine fee award in diversity jurisdiction action); *see also Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) (emphasis added)

("Ninth Circuit precedent has applied state law in determining not only the right to fees, *but also in the method of calculating the fees*.") (emphasis added).

Because this is a diversity action. the Court, in determining the appropriate measure of fees, applies California state law.  As the fee award is based on fee shifting statutes, and the settlement is an injunctive relief settlement that may be difficult to value, the most appropriate method is lodestar. Under California law, the lodestar method provides a presumptively reasonable fee.  "Under a fee-shifting statute, [California] courts typically use the 'lodestar method,' which 'calculates the fee by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate.'" *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 984 (N.D. Cal. 2017) (applying California law and lodestar method in a diversity action with fee shifting statute); *see also Roberts v. Electrolux Home Prods.*, 2014 U.S. Dist. LEXIS 130163, at *8 (C.D. Cal. 2014) (applying lodestar method as appropriate in fee-shifting case under CLRA and similar consumer protection statutes of other states); *Jefferson v. Chase Home Fin.*, C 06-6510 TEH, 2009 U.S. Dist. LEXIS 64607, 2009 WL 2051424, at *3 (N.D. Cal. July 10, 2009) (applying lodestar method to determine "reasonable fees" under CLRA).

In this case, the payment of attorney's fees is based on fee-shifting statutes, specifically, California Civil Code section 1780 of the California Consumers Legal Remedies Act ("CLRA") and similar provisions in other state consumer protections statutes.  As California law applies, the calculation of attorney's fees should be performed using the lodestar method, which is appropriate here.

> **b.  Where a settlement provides relief that is not easily monetized, the lodestar method is appropriate under both California and Ninth Circuit law.**

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 942 (9th Cir. 2011) (citation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (same). However, as is the circumstance here, where the value of the entire settlement is difficult to ascertain, and fees are justified under a fee-shifting statute, courts applying California law opt to use the lodestar method to

22

1    determine attorneys' fees.  *See, e.g.*, *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546-47 (9th

2    Cir. 2016) (applying California law and thus the lodestar method in unfair business practices diversity

3    action where total settlement was difficult to value); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029

4    (9th Cir. 1998) (fees approved using lodestar method where no class member was entitled to cash

5    recovery, making valuation of the relief more difficult); *Dunk v. Ford Motor Co.*, 48 Cal. App. 4th

6    1794, 1809 (1996) (remanding to trial court to calculate fees using lodestar and stating "[Percentage of

7    the fund] method . . . should only be used where the amount was a 'certain or easily calculable sum of

8    money.'"); *Roberts v. Electrolux Home Prods.*, 2014 U.S. Dist. LEXIS 130163, at *8 (C.D. Cal. 2014)

9    (applying lodestar method as appropriate in fee-shifting case under section 1780 and other states

10   similar consumer protection statutes where relief was difficult to accurately ascertain). As this is a fee-

11   shifting case without a common fund and providing only injunctive relief, it presents the prime

12   example of the appropriate use of the lodestar method. The injunctive relief provided presents

13   difficulties in assigning a dollar value to, another factor that weighs on the use of the lodestar method.

14           Under California law, "a court assessing attorney fees begins with a touchstone or lodestar

15   figure, based on the careful compilation of the time spent and reasonable hourly compensation of each

16   attorney . . . involved in the presentation of the case." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131-32

17   (2001); *see also Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983) ("The most useful starting point for

18   determining the amount of a reasonable fee is the number of hours reasonably expended on the

19   litigation multiplied by a reasonable hourly rate."); *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1673 (2010)

20   (lodestar method is usually preferable).

21                     **c.   Under Both California and Ninth Circuit Law, the lodestar method**

22                            **provides a presumptively reasonable fee.**

23           The lodestar method provides a presumptively reasonable fee in California.  *See Fischel v.

24   Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002) ("There is a strong presumption

25   that the lodestar figure represents a reasonable fee.").

26           "The lodestar calculation begins with the multiplication of the number of hours reasonably

27   expended by a reasonable hourly rate." *Hanlon*, 150 F.3d at 1029 (citing *Blum v. Stenson*, 465 U.S.

28   886 (1984)). The reasonable hourly rate is determined to be the prevailing market rate in the

                                                     23

geographic community, taking into consideration "the experience, skill, and reputation of the attorney" in question.  *Gonzales v. City of Maywood*, 729 F.3d 1196, 1205 - 06 (9th Cir. 2013).

"The resulting figure may be adjusted upward or downward to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Hanlon*, 150 F.3d at 1029; *see also Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) (lodestar figure may be increased or decreased depending on a variety of factors, including the contingent nature of the fee award). "The reasonableness of the fee is determined primarily by reference to the level of success achieved by the plaintiff[s]." *McCown v. City of Fontana*, 565 F.3d 1097, 1101-02 (9th Cir. 2009). Multipliers ranging from one to three are frequently awarded in cases when the lodestar method is applied. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051, n.6 (9th Cir. 2002) (in a majority of collected cases the lodestar multiplier fell between 1.0 and 3.0).

The California Supreme Court has explained:

> "A contingent fee must be higher than a fee for the same legal services paid as they are performed.  . . .  A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases."

*Ketchum*, 24 Cal. 4th at 1132 – 33 (internal quotations and citations omitted).

### d.  Class Counsel's lodestar is reasonable

This motion seeks compensation for Class Counsel who worked diligently against strenuous opposition to secure an excellent settlement for the Class in this technically difficult case. Class Counsel's actual lodestar in prosecuting this case will be higher than the requested fee. Class Counsel's actual lodestar is currently $1,867,761.25.  Declaration of Michael McShane in Support of Plaintiff's Motion for Attorneys' Fees and Expenses ("McShane Fees Decl.") ¶ 8. Below is a chart summarizing the lodestar of the firms. McShane Fees Decl. ¶ 11.

| FIRM | TOTAL LODESTAR | TOTAL HOURS |
|---|---|---|
| Audet & Partners, LLP | $657,268.75 | 1428.50 |
| Cuneo Gilbert & LaDuca, LLP | $432,036.25 | 549.25 |

24

| | | |
|---|---|---|
| Levin Sedran & Berman, LLP | $303,456.25 | 370 |
| Steckler Wayne Cochran Cherry PLLC | $475,000 | 645 |
| **Total Sum** | $1,867,761.25 | 2992.75 |

This is not a case where the Plaintiff settled at the outset of the litigation, as on the contrary, Class Counsel defeated multiple motions to dismiss, engaged in significant written discovery, document production and review, extensive deposition practice, the threat of summary judgment, and were preparing to move for class certification and trial against the zealous, well-funded and able defense counsel for Ross.

Here, the fee request is $750,000 compared to a total lodestar of $1,867,761.25 – a multiplier of .4. This is a much lower multiplier than is customary, and thus should be seen as presumptively reasonable, and similar multipliers have been deemed as an indication of the reasonableness of the fee request. *See, e.g.*, *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 690-91 (N.D. Cal. 2016) (holding fractional lodestar multiplier to be indication of reasonableness of fee request); *Johnson v. Triple Leaf Tea Inc.*, 2015 U.S. Dist. LEXIS 170800, at *6 (N.D. Cal. Nov. 16, 2015) (finding where "Class Counsel's lodestar exceeded the negotiated award" to be "well within the range courts have allowed in the Ninth Circuit"); *Covillo v. Specialtys Café*, No. C-11-00594 DMR, 2014 U.S. Dist. LEXIS 29837, 2014 WL 954516, at *7 (N.D. Cal. Mar. 6, 2014) ("Plaintiffs' requested fee award is approximately 65% of the lodestar, … suggesting that the percentage of the fund is reasonable and fair.");  When the fee award is significantly less than the sum of Class Counsel's lodestar, as is the case here, courts may even eschew a deep dive into the typical analysis. *G. F. v. Contra Costa Cty.*, No. 13-cv-03667-MEJ, 2015 U.S. Dist. LEXIS 159597, at *48-50 n.13 (N.D. Cal. Nov. 25, 2015). Much higher lodestar multipliers have been approved in cases where the class is afforded a similar injunctive relief only settlement. *Littlejohn v. Ferrara Candy Co.*, No. 3:18-cv-00658-AJB-WVG, 2019 U.S. Dist. LEXIS 101959, at *18-19 (S.D. Cal. June 17, 2019).The fee request is clearly reasonable and the Court should approve it as a result.

**I.   The Requested Cost Award Is Reasonable.**

1    Out-of-pocket litigation expenses are recoverable in a settlement such as this. *Grove v. Wells*

2    *Fargo Fin., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010) (reviewing cases upholding as part of fee awards

3    reimbursement for non-taxable costs such as computerized legal research, travel, copying, courier).

4         The amount of costs sought by Class Counsel here, $37,017.91, is eminently reasonable the

5    result obtained as a result of the services provided.  McShane Fees Decl. ¶¶ 10, 20.  These are charges

6    that California lawyers commonly bill to their clients. Because the costs are reasonable, documented,

7    and were necessarily incurred, an award of these costs should be approved.

8         **J.   The Class Representative service award is reasonable and appropriate.**

9         "The Settlement allows Class Counsel to request and for Defendant to pay a service award to

10   the named Representative Plaintiff in the Second Amended Complaint an incentive award of $5,000

11   subject to Court approval.  Settlement Agreement § 4.4.  The Class Representative's agreement to the

12   Settlement is not conditioned in any manner on the award of a service award or its amount.

13        The Class Representative has given their time and accepted their responsibilities admirably,

14   participating actively in this litigation as required and in a manner beneficial to the Class generally.

15   McShane Fees Decl. ¶ 22. She was deposed and responded to requests for production of documents

16   and admissions, and interrogatories. *Id.*  The Class Representative worked diligently with counsel to

17   produce documents related to their purchase and otherwise assisted in the prosecution of this litigation.

18   *Id.*  The Class Representative was advised on their obligations in serving as class representatives to

19   select adequate and skilled counsel, to cooperate with counsel, and to place the interests of the class on

20   a level equal to or above their own interests. The Class Representative has met and continue to meet

21   these obligations, cooperating fully with counsel to fulfill their fiduciary duties to the class.  *Id.*

22        The proposed service award is presumptively reasonable. *In re Yahoo Mail Litig.*, No. 13-CV-

23   4980, 2016 WL 4474612, at *11 (N.D. Cal. Aug. 25, 2016) ("The Ninth Circuit has established

24   $5,000.00 as a reasonable benchmark [for service awards]."); *see, e.g.*, *Garner v. State Farm Mut.*

25   *Auto. Ins. Co., No.* CV 08 1365, 2010 WL 1687832, at *17 (N.D. Cal. Apr. 22, 2010).  Here, there are

26   no conditions placed on the service award for Plaintiff and the amount of the award does not

27   undermine the adequacy of the class representative.  *See* N.D. Cal. Procedural Guidance for Class

28

26

Action Settlements, §7 (citing *see, e.g., Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157 (9th Cir. 2013)).

### IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion for final approval; find the Settlement fair, reasonable, and adequate under Rule 23(e); appoint the Settlement Class Representative; and approve the requested fee, cost, and service award.

Dated: December 17, 2021                              **AUDET & PARTNERS, LLP**

                                          By: *s/* _____

                                          Ling Y. Kuang (CA #296873)
                                          lkuang@audetlaw.com
                                          Michael A. McShane (CA #127944)
                                          mmcshane@audetlaw.com
                                          Kurt D. Kessler (CA #327334)
                                          kkessler@audetlaw.com
                                          **AUDET & PARTNERS, LLP**
                                          711 Van Ness Avenue, Suite 500
                                          San Francisco, CA 94102-3275
                                          Telephone: (415) 568-2555
                                          Facsimile:  (415) 568-2556

                                          Charles E. Schaffer
                                          cschaffer@lfsblaw.com
                                          **LEVIN SEDRAN & BERMAN**
                                          510 Walnut Street, Suite 500
                                          Philadelphia, PA 19106
                                          Telephone: (215) 592-1500
                                          Facsimile:  (215) 592-4663

                                          Charles LaDuca
                                          charles@cuneolaw.com
                                          Brendan Thompson
                                          brendant@cuneolaw.com
                                          **CUNEO GILBERT & LADUCA, LLP**
                                          4725 Wisconsin Avenue, NW, Suite 200
                                          Washington, DC 20016
                                          Telephone:  (202) 789-3060

                                          Stuart L. Cochran
                                          stuart@swclaw.com
                                          **STECKLER WAYNE COCHRAN CHERRY**
                                          12720 Hillcrest Road, Suite 1045
                                          Dallas, Texas 75230
                                          Telephone: (972) 387-4040

27

Facsimile:  (972) 387-4041

*Counsel for Plaintiff Dominique Morrison on behalf of herself and all others similarly situated*