**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| **DOMINIQUE MORRISON,**<br><br>Plaintiff**,**<br><br>vs.<br><br>**ROSS STORES, INC., ET AL.,**<br><br>Defendants**.** | CASE NO. 4:18-cv-2671-YGR<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MOTION FOR ATTORNEY'S FEES, COSTS, AND SERVICE AWARD; JUDGMENT**<br><br>Re: Dkt. Nos. 114, 115 |

The Court previously granted a motion for preliminary approval of the Class Action Settlement in this matter on August 27, 2021.  (Order Granting Preliminary Approval of Class Action Settlement ("Preliminary Approval Order"), Dkt. No. 113.)  As directed by the Preliminary Approval Order, on October 18, 2021, plaintiff filed her unopposed motion for attorney's fees, costs, and service award. (Dkt. No. 114.)  Thereafter, plaintiff filed her unopposed motion for final settlement approval on December 17, 2021.  (Dkt. No. 115.)  The Court held a hearing on February 15, 2022.

Having considered the motion briefing, the terms of the Settlement Agreement, the arguments of counsel, and the other matters on file in this action, the Court **GRANTS** the motion for final approval.  The Court finds the settlement fair, adequate, and reasonable.  The provisional appointments of the class representative and class counsel are confirmed.  The motion for attorney's fees, costs, and service award is also **GRANTED**.  The Court **ORDERS** that class counsel shall be paid $750,000 in attorney's fees and $37,071.91 in litigation costs and that class representative and named plaintiff Dominique Morrison shall be paid a $5,000.00 incentive award.

## I.    BACKGROUND

Plaintiff filed the putative class action complaint on May 7, 2018 against defendant Ross Stores, Inc. ("Ross"), AQ Textiles, LLC ("AQ"), and Creative Textile Mills Private Limited ("Creative") alleging that they engaged in deceptive acts and unconscionable business practices

United States District Court<br>Northern District of California

designed to deceive and mislead consumers into believing that defendants' bedding and linen products had higher thread counts than they really have.  Plaintiff's amended complaint alleges claims for the following against Ross: (1) violation of the Magnusson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* ("MMWA"); (2) fraud; (3) violations of the California Consumer Legal Remedies Act, Civil Code § 1750 *et seq.* ("CLRA"); (4) unlawful business practices under California Business and Professions Code § 17200 *et seq.* ("UCL"); (5) unfair business practices under California Business and Professions Code § 17200, *et seq.*; (6) fraudulent business practices under California Business and Professions Code, § 17200, *et seq.*; (7) misleading and deceptive advertising under California Business and Professions Code, § 17500, *et seq.*; (8) breach of express warranty; (9) breach of warranty of merchantability; (10) negligent misrepresentation; (11) violation of the Missouri Merchandising Practices Act; and (12) unjust enrichment.

The parties reached a settlement prior to class certification with the assistance of an experienced mediator, Judge Elizabeth Laporte (ret.).

## II.    TERMS OF THE SETTLEMENT AGREEMENT

### A.    Injunctive Relief for the Class

For a period of up to twelve years, but no less than seven years, Ross is required to ensure that the thread count of the AQ products it receives and intends to sell conform to industry standards for the testing and verification of thread count, so that the actual thread count for such products are consistent with the representations regarding thread count listed on the labeling.  Accordingly, Ross has agreed to do the following:

> a.  Ross will require AQ to certify in writing on an annual basis beginning on January 1st after the Effective Date that the description of the thread count on its packaging for Products accurately reflects the actual thread count as determined by ASTM 3775, as officially interpreted and amended from time to time, or any successor industry standard for textile thread count for Products sold to Ross. Ross shall not be required to obtain a certification from AQ if it has not purchased any Products within the previous year and has not issued any purchase orders for future purchases of Products; provided, however,

United States District Court
Northern District of California

2

that Ross shall require AQ to provide a certification before issuing any subsequent purchase orders for Products to AQ.

b. Require AQ to report in writing on an annual basis, beginning on January 1st after the Effective Date, as to whether there are any known investigations by any outside entity or pending claims or lawsuits regarding AQ's representations concerning thread count on the Products, any remedial actions taken regarding these claims or investigations, and if no remedial actions were taken, the reasons for which remedial actions were not taken.

c. Commencing no later than the Effective Date, Ross will require AQ to supply a passing test report for each new style of Products showing compliance with ASTM 3775, as officially interpreted and amended from time to time, or any successor industry standard for textile thread count, before taking possession of such style. Only one test report is required if the Product differs only by size or color.

The aforementioned injunctive relief will remain in effect for twelve years following final approval of this settlement, with such terms automatically terminating after twelve years. Ross may seek early termination of the injunctive relief terms no earlier than seven years, provided that there have been no violations of the required injunctive relief terms within the preceding three years.

### B. Attorney's Fees and Costs

Under the Settlement Agreement, plaintiff's counsel agreed to seek up to $750,000 in attorney's fees plus reimbursement of Class Counsel's costs and expenses.  The parties also agreed that Ross shall pay Ms. Morrison up to $5,000 as an incentive award in exchange for a general release of all claims against Ross.

### C. Class Member Release

Settlement Class Members shall have unconditionally, completely, and irrevocably released and discharged the Released Parties from any and all claims, liens, demands, actions, causes of action, rights, duties, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, whether arising under any international, federal, state or local statute, ordinance, common law, regulation, principle of equity

3

or otherwise, that that were, or could have been, asserted in the Litigation and that arise out of or relate to the allegations thereof, or to any similar allegations or claims regarding the Products (the Released Claims"). Upon Final Approval, Settlement Class Members shall be forever barred from initiating, maintaining, or prosecuting any Released Claims against Released Parties based on the allegations of the complaint.

### D.   Class Notice and Claims Administration

Pursuant to the Settlement Agreement, the Court appointed CPT Group, Inc. to administer the settlement and to contact the class members in the manner set forth therein and including the attachments contained within the Preliminary Approval Order.  Class members were given until November 29, 2021, to object to or exclude themselves from the Settlement Agreement.  Forty-four (44) of the total class members opted out and 0 members objected to the class settlement.

### III.   FINAL APPROVAL OF SETTLEMENT

### A.   Legal Standard

A court may approve a proposed class action settlement of a class proposed to be certified only "after a hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements for class certification. Fed. R. Civ. P. 23(e)(2).  In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998), o*verruled on other grounds by Dukes*, 564 U.S. at 131.  The *Hanlon* court identified the following factors as relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).  In reviewing such settlements, in addition to considering the above factors, a court also must ensure that "the settlement is not the product of collusion among the negotiating parties."  *In re Bluetooth Headset*

United States District Court
Northern District of California

1    *Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

2         Settlements that occur before formal class certification also "require a higher standard of

3    fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).  In reviewing such

4    settlements, in addition to considering the above factors, a court also must ensure that "the

5    settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset*

6    *Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

7         **B.    Class Definition and Basis for Conditional Certification**

8         The Settlement Agreement, attached hereto as **Exhibit A**, defines the class as:

9              All persons in the United States who purchased the Products for
10             personal use from a Ross store on or after May 7, 2014, to the
               Objection/Exclusion Deadlines.  Excluded from the Settlement Class
11             are: (a) Ross's employees, officers, directors, or attorneys; (b) person
               who timely and properly excluded themselves from the Settlement
12             Class as provided herein, and (c) the Court, the Court's immediate
               family, and Court staff.

13   ("the Settlement Class").  The proposed class definition is nearly identical to the class definition

14   alleged in the complaint, with the major differences being defining the exact products at issue and

15   the insertion of the time frame of May 7, 2014 until the objection deadline.

16        The Court finds that, for purposes of settlement, plaintiff has satisfied the requirements of

17   Rule 23(a) as well as the requirements for certification under one or more subsections of Rule 23(b).

18   With respect to numerosity under Rule 23(a)(1), the Settlement Class includes 800,000 members,

19   making it so numerous that joinder of all members is impracticable.

20        Rule 23(a)(2) commonality requires "questions of fact or law common to the class," though

21   all questions of fact and law need not be in common.  *Hanlon*, 150 F.3d at 1026.  The focus of this

22   action—whether Ross knew, or should have known, that the thread counts on its AQ-supplied sheets

23   were inflated beyond the ASTM standard—is common to all class members.

24        Rule 23(a)(3) requires that the plaintiff show that "the claims or defenses of the represent-

25   tative parties are typical of the claims or defenses of the class."  Plaintiff's and members of the

26   Settlement Class claims all stem from the same alleged conduct, *i.e.* thread count inflation and

27   misrepresentation on the Products' packaging, making plaintiff's claims typical of class members.

28

United States District Court
Northern District of California

5

United States District Court
Northern District of California

With respect to Rule 23(a)(4), the Court finds the representative parties and class counsel have fairly and adequately represented the interests of the Class.  No conflicts of interest appear as between plaintiff and the members of the Settlement Class.  Class Counsel have demonstrated that they are qualified and have experience with prosecuting class actions of this kind and therefore adequate to represent the Settlement Class as well.

The Settlement Class further satisfies Rule 23(b)(3) in that common issues predominate and "a class action is superior to other available methods for fairly and efficiently adjudicating" the claims here.

Based on the foregoing, the proposed settlement class is certified pursuant to Rule 23(c).

**C.      Adequacy of Notice**

A court must "direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). Adequate notice requires: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the Class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due process and any other applicable requirements under federal law. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).  Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Court approved the parties' proposed notice procedures when it granted preliminary approval.  Pursuant to those procedures, the Class Administrator provided class members with an English and Spanish version of the class notice documents.  The Class Administrator used social media, press releases, YouTube, and an online class settlement website to provide notice to the class.

Based upon the foregoing, the Court finds that the Settlement Class has been provided

adequate notice.

### D.     Settlement Agreement Appears Fair and Reasonable

As to the *Hanlon* factors, the Court finds that they indicate the settlement here is fair and reasonable.  Absent the settlement, plaintiff would have been required to show that Ross did more than just sell sheets that were deceptively labeled by AQ, which would have been difficult for plaintiff to do.  As reflected in the relevant deposition testimony of Ross employees, Ross did not design the sheets, nor did Ross specify their thread count, draft the language on the product labeling, or own or license the brand name "Grande Estate."  While Ross approved the aesthetic design of the label insert for the sheets, Ross did not make, approve, or otherwise adopt any representations about the sheets.  Nor did Ross advertise the thread count of the Grande Estate sheets to consumers.  Thus, plaintiff would have faced challenges establishing liability against Ross.

Importantly, although the class members are releasing their damages claims as to Ross, the release does not cover the claims that can be brought against AQ or Creative, the distributor and manufacturer, respectively, of the sheets.  Given the challenges in establishing liability against Ross, and the fact that class members can still seek damages against AQ and Creative, the settlement for injunctive relief only provides value to the class members, many of which are repeat customers.

Further, proceeding to trial would have been costly; recovery was not guaranteed; and there was the possibility of protracted appeals.

The Settlement Agreement appears to have been the product of arm's length and informed negotiations.  The settlement occurred only after extensive litigation including: the exchange of thousands of pages of documents in response to discovery requests, many depositions, including that of plaintiff's and Ross's 30(b)(6) designee, service of several subpoenas on AQ and other third parties, and extensive briefing on motions seeking dismissal including a preview of Ross's summary judgment motion based on the innocent retailer defense.  Thus, the parties have vetted their claims and know the strengths and weaknesses of their case.

In addition, the three mediation sessions conducted by the Honorable Jay C. Gandhi and

7

United States District Court
Northern District of California

the Honorable Hon. Elizabeth D. Laporte (twice), demonstrates that the settlement reached by the parties was a result of serious, informed, non-collusive, and arms-length negotiation.  Counsel for both parties are highly experienced.  Accordingly, the Court finds that the record does not indicate collusion or self-dealing.  *See In re Bluetooth*, 654 F.3d at 946-47.

The relief provided for the Class appears to be adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreements required to be identified under Rule 23(e)(3).  Moreover, the Settlement Agreement appears to treat Class members equitably relative to each other.

The reaction of the class was entirely positive.  As noted, the Court received 44 opt-outs and no objections.  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (citation omitted); *see also Churchill Vill.,* 361 F.3d at 577 (holding that approval of a settlement that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 class members was proper).

### E.    Other Findings

**Notice to Government Agencies:**  The settlement administrator provided the required notice to federal and state attorneys general under the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1715(b).  (Dkt. No. 115-1 ¶ 5.)  Notice occurred more than 90 days before the date of this order, as required by 28 U.S.C. § 1715(d).

### F.    Certification is Granted and the Settlement is Approved

After reviewing all of the required factors, the Court finds the Settlement Agreement to be fair, reasonable, and adequate, and certification of the Settlement Class as defined therein to be proper.  Accordingly, the Court grants class certification to the following Settlement Class:

> All persons in the United States who purchased the Products for personal use from a Ross store on or after May 7, 2014, to the Objection/Exclusion Deadlines.  Excluded from the Settlement Class are: (a) Ross's employees, officers, directors, or attorneys; (b) person who timely and properly excluded themselves from the Settlement

8

United States District Court
Northern District of California

1    Class as provided herein, and (c) the Court, the Court's immediate
     family, and Court staff.

2  IV.    MOTION FOR ATTORNEY'S FEES, COSTS, AND CLASS REPRESENTATIVE AWARDS

3         Attorney's fees and costs may be awarded in a certified class action under Federal Rule of

4  Civil Procedure 23(h).  Such fees must be found "fair, reasonable, and adequate" in order to be

5  approved.  Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).  To "avoid

6  abdicating its responsibility to review the agreement for the protection of the class, a district court

7  must carefully assess the reasonableness of a fee amount spelled out in a class action settlement

8  agreement." *Id.* at 963.

9         The Court analyzes an attorney's fee request based on either the "lodestar" method or a

10  percentage of the total settlement fund made available to the class, including costs, fees, and

11  injunctive relief.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  The Ninth

12  Circuit encourages courts to use another method as a cross-check in order to avoid a "mechanical

13  or formulaic approach that results in an unreasonable reward." *In re Bluetooth*, 654 F.3d at 944–

14  45 (citing *Vizcaino,* 290 F.3d at 1050–51.)

15        Under the lodestar approach, a court multiplies the number of hours reasonably expended

16  by the reasonable hourly rate.  *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court

17  calculates the lodestar figure by multiplying the number of hours reasonably expended on a case

18  by a reasonable hourly rate.  A reasonable hourly rate is ordinarily the 'prevailing market rate [] in

19  the relevant community.'").  Under the percentage-of-the-fund method, courts in the Ninth Circuit

20  "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing

21  adequate explanation in the record of any 'special circumstances' justifying a departure." *In re*

22  *Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d

23  1301, 1311 (9th Cir. 1990)).  The benchmark should be adjusted when the percentage recovery

24  would be "either too small or too large in light of the hours devoted to the case or other relevant

25  factors." *Six (6) Mexican Workers*, 904 F.2d at 1311.  When using the percentage-of-recovery

26  method, courts consider a number of factors, including whether class counsel "'achieved

27  exceptional results for the class,' whether the case was risky for class counsel, whether counsel's

28  performance 'generated benefits beyond the cash settlement fund,' the market rate for the

United States District Court
Northern District of California

1  particular field of law (in some circumstances), the burdens class counsel experienced while

2  litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled

3  on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir.

4  2015) (quoting *Vizcaino*, 290 F.3d at 1047-50. "[T]he most critical factor [in determining

5  appropriate attorney's fee awards] is the degree of success obtained." *Hensley v. Eckerhart*, 461

6  U.S. 424, 436 (1983).

7       Here, Class Counsel requests a fee award of $ 750,000.00.  The attorney's fees sought

8  reflect a multiplier of 0.4 of the actual lodestar totaling $ 1,867,761.25.   Defendant does not

9  oppose the fee request which is the maximum authorized in the Settlement Agreement.

10       The Court has reviewed Class Counsel's submission regarding its fee request.  (Dkt. Nos.

11  114, 123).  The hourly rates commensurate with their experience and with the legal market in this

12  district.  The Court finds that Class Counsel represented plaintiff and the proposed class with skill

13  and diligence in obtaining the settlement for the class, taking into account the possible outcomes

14  and risks of proceeding trial.  Moreover, given the nature of the work performed, the Court finds

15  the request for $750,000 to be fair, reasonable, and adequate

16       **B.**    **Costs Award**

17       Class counsel is entitled to reimbursement of reasonable out-of-pocket expenses.  Fed. R.

18  Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may

19  recover reasonable expenses that would typically be billed to paying clients in non-contingency

20  matters).  Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by

21  law or by the parties' agreement." Fed. R. Civ. P. 23(h).  Here, class counsel seeks reimbursement

22  for litigation expenses, and provides records documenting those expenses, in the amount of

23  $37,017.91.  The Court finds an award of $37,017.91 in costs reasonable, fair, and adequate.

24       **C.**    **Service Award**

25       The district court must evaluate named plaintiff's requested award using relevant factors

26  including "the actions the plaintiff has taken to protect the interests of the class, the degree to

27  which the class has benefitted from those actions . . . [and] the amount of time and effort the

28  plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977.  "Such awards are

United States District Court
Northern District of California

discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009). The Ninth Circuit has emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013).

Here, the plaintiff came forward to represent the interests of 800,000 others, with very little personally to gain. Plaintiff compiled documents, regularly corresponded with counsel, and took the substantial risk of litigation which, at a minimum, involves a risk of losing and paying the other side's costs. Because the laws are not self-enforcing, it is appropriate to give incentives to those who come forward with little to gain and at personal risk and who work to achieve a settlement that confers substantial benefits on others. Thus, the Court approves the requested incentive award payment for plaintiff Dominique Morrison.

**V.    CONCLUSION**

Based upon the foregoing, the motion for final approval of class settlement is **GRANTED**. The motion for attorney's fees, costs, and service awards is also **GRANTED** as follows: Class Counsel is awarded $750,000 in attorney's fees and $37,071.91 in litigation costs. Plaintiff Dominique Morrison is granted an incentive award of $5,000.00.

Without affecting the finality of this order in any way, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this order and the Settlement.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that final judgment is **ENTERED** in accordance with the terms of the Settlement, the Order Granting Preliminary Approval of Class Action Settlement issued on August 27, 2021, and this Order. This document will constitute a final judgment (and a separate document constituting the judgment) for purposes of Rule 58, Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

1      This terminates Docket Nos.  114 and 115.

Dated: February 16, 2022

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California

# EXHIBIT A

JEFFREY B. MARGULIES (BAR NO. 126002)
EVA YANG (BAR NO. 306215)
**NORTON ROSE FULBRIGHT US LLP**
555 South Flower Street
Forty-First Floor
Los Angeles, California  90071
Telephone:     (213) 892-9200
Facsimile:      (213) 892-9494
jeff.margulies@nortonrosefulbright.com
eva.yang@nortonrosefulbright.com

ATTORNEYS FOR DEFENDANT
ROSS STORES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DOMINIQUE MORRISON, on behalf of herself and all others similarly situated,<br><br>  Plaintiff,<br><br>vs.<br><br>ROSS STORES, INC.,<br><br>  Defendants. | Case No. 4:18-cv-02671-YGR<br><br>Assigned for All Purposes to the Hon. Yvonne Gonzalez Rogers<br><br>**STIPULATION OF SETTLEMENT** |

DOCUMENT PREPARED ON RECYCLED PAPER

1          This Stipulation of Settlement is made by and among Dominque Morrison ("Plaintiff"), on

2    behalf of herself and the Settlement Class (defined below), on the one hand, and Ross Stores, Inc.,

3    on the other.

4                                              **RECITALS**

5          A.     On May 7, 2018, Plaintiff commenced a proposed class action against Ross Stores,

6    Inc. ("Ross"), AQ Textiles, LLC ("AQ"), and Creative Textile Mills Private Limited ("Creative")

7    in the United States District Court, Northern District of California, Case No. 4:18-cv-02671-

8    YGR.  Plaintiff alleged that the bed sheets that she purchased from Ross that were imported by

9    AQ and manufactured by Creative were represented to have a higher thread count than they

10   actually had. Plaintiff asserted claims on behalf of herself and a proposed California class of all

11   purchasers that purchased bedding linen or bedding products from defendants that were

12   represented as having higher thread counts for violation of the Magnuson-Moss Warranty Act, 15

13   U.S.C. § 2301, *et seq*. ("MMWA"), fraud, violation of the Consumer Legal Remedies Act, Civ.

14   Code § 1750, *et seq*. ("CRLA"), violation of California's Unfair Competition Law, Bus. & Prof.

15   Code § 17200, *et seq*. ("UCL") under the unlawful, unfair, and fraudulent prong, violation of

16   False Advertising Law, Bus. & Prof. Code § 17500, *et seq*. ("FAL"), breach of express warranty,

17   breach of warranty of merchantability, and negligent misrepresentation.

18         B.     On June 29, 2018, AQ and Ross each filed a motion to dismiss the Complaint.  On

19   July 20, 2018, prior to the motion to dismiss hearings, Plaintiff filed an amended complaint

20   ("FAC"). The Court vacated the motion to dismiss hearing as moot.

21         C.     Plaintiff's FAC alleged the same claims, but added a claim for violation of the

22   Missouri Merchandising Practices Act ("MMPA"), Missouri Rev. Stat. § 407.020. Rather than a

23   California class, the FAC sought to certify a proposed Missouri and nationwide class. The claims

24   alleged under the CLRA, UCL, and FAL are alleged against Ross only, the others are alleged

25   against all defendants.

26         D.     On August 3, 2018, AQ and Ross again moved to dismiss the FAC.  On November

27   14, 2018, the Court granted both motions but allowed Plaintiff leave to amend with respect to the

28

DOCUMENT PREPARED
ON RECYCLED PAPER

1  claims against Ross. The Court found that Plaintiff failed to establish personal jurisdiction as to

2  AQ, and therefore granted AQ's motion without allowing Plaintiff leave to amend her claims

3  against AQ.

4        E.      On December 4, 2018, Plaintiff filed a Second Amended Complaint ("SAC")

5  alleging the same claims in the FAC, and adding a claim for unjust enrichment. Plaintiff asserted

6  these claims on behalf of herself and a proposed Missouri and nationwide class who purchased

7  bedding or linen products from Ross that were manufactured or supplied by AQ and/or Creative

8  and that were packaged or advertised with a representation regarding thread count. On January 4,

9  2019, Ross filed a motion to dismiss the SAC.

10        F.      On May 30, 2019, the Court granted Ross's motion to dismiss as to Plaintiff's

11  claims for violation of MMWA and unjust enrichment without leave to amend.  As such, the

12  operative claims that currently remain are: (1) fraud; (2) violation of the CLRA; (3) violation of

13  UCL under its unlawful prong, unfair prong, and fraudulent prong; (4) violation of the FAL; (5)

14  breach of express warranty; (6) breach of warranty of merchantability; (7) negligent

15  misrepresentation; and (8) violation of the MMPA.

16        G.      On June 20, 2019, Ross answered Plaintiff's SAC, denying Plaintiff's allegations

17  and asserting several affirmative defenses.

18        H.      On July 8, 2019, the parties attended an initial case management conference where

19  the Court set various scheduling deadlines and referred the case to mediation.

20        I.      On November 13, 2020, the parties attended a full day mediation before the Hon.

21  Jay C. Gandhi. The parties exchanged detailed settlement proposals and continued to engage in

22  settlement discussions following the mediation.

23        J.      On March 23, 2020, due to the worsening situation with COVID-19 and

24  government mandated closures, the parties stipulated to vacate all existing deadlines. The parties

25  thereafter submitted two stipulations further extending their time to submit a proposed briefing

26  schedule due to the continued state closures and circumstances surrounding COVID-19.

27        K.      On July 20, 2020, the Court ordered the parties to jointly submit a proposed

28

DOCUMENT PREPARED
ON RECYCLED PAPER

1   scheduling order, which was submitted to the Court on November 23, 2020.

2        L.    On January 7, 2021, in accordance with the Court's Standing Order, Ross

3   requested a pre-filing conference in connection with its anticipated motion for summary

4   judgment.  On January 14, 2021, the Court found that the pre-filing conference was premature,

5   although noting that it cannot prohibit a party from filing a motion for summary judgment. As

6   such, Ross was prepared to file a motion for summary judgment as to all of Plaintiff's claims on

7   the basis that, among others, Ross, as a retailer, did not make or participate in any representations

8   regarding the thread count of the sheets that Plaintiff purchased.

9        M.    On February 18, 2021, the parties attended a second mediation session before the

10  Hon. Elizabeth D. Laporte (ret.) and continued to discuss possible settlement of the matters.

11       N.    On March 3, 2021, the parties attended a third mediation session before the Hon.

12  Elizabeth D. Laporte (ret.) and reached a settlement in principle of this matter.

13       O.    Ross denies all of Plaintiff's allegations and charges of wrongdoing or liability

14  arising out of any of the conduct, statements, acts or omissions alleged, or that could have been

15  alleged in the Litigation.  Ross also denies that Plaintiff, the Settlement Class, or any member of

16  the Settlement Class have suffered damage or harm by reason of any alleged conduct, statement,

17  act or omission of Ross.  Ross further denies that the litigation meets the requisites for

18  certification as a class action under Rule 23 of the Federal Rules of Civil Procedure, except for

19  purposes of settlement, or that the evidence is sufficient to find liability as to Ross for any of

20  Plaintiff's claims that are alleged.

21       P.    Plaintiff's counsel has analyzed and evaluated the merits of all the Parties'

22  contentions and this Settlement as it impacts all the Parties and the Settlement Class Members,

23  including, but not limited to, engaging in discovery and reviewing voluminous documents

24  produced, taking the depositions of relevant witnesses, consulting with experts and evaluating the

25  facts and evidence to date. Among the risks of continued litigation for Plaintiff are the risks of

26  failing to prove liability and damages on a class-wide or individual basis. In particular, there may

27  be difficulties establishing that Ross made a representation or had any input, comment, or control

28

over the thread count language on sheets that were supplied and labeled by AQ, that Plaintiff's claims are typical, or that common questions of fact or law predominate. Plaintiff and Plaintiff's counsel, after taking into account the foregoing along with other risks and the costs of further litigation, are satisfied that the terms and conditions of this Agreement are fair, reasonable, adequate and equitable, and that a settlement of the Litigation and the prompt provision of effective relief to the Settlement Class are in the best interest of the Settlement Class Members.

Q.     Ross agrees that the settlement is fair and reasonable in light of the merits and risks of the case. While continuing to deny all allegations of wrongdoing and disclaiming any liability with respect to any and all claims, Ross considers it desirable to resolve the Litigation on the terms stated herein, in order to avoid further burden, expense, inconvenience, and interference with its ongoing business operations.

In consideration of the covenants and agreements set forth herein, and of the releases and dismissals of claims as described below, and other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged by each of the Parties, Plaintiff on behalf of herself and the Settlement Class and Ross agree to the Settlement described herein, subject to Court approval, under the following terms and conditions:

I.     **DEFINITIONS**

1.1     "Agreement" or "Settlement" means this Stipulation of Settlement.

1.2     "AQ" means AQ Textiles, LLC. as presently organized and includes any subsequent or additional  business  or other entities created to continue the  present business operations of AQ in whole or part.

1.3     "Class Counsel" means Audet & Partners, LLP; Cuneo, Gilbert & LaDuca; Levin, Sedran & Berman; and Steckler Wayne Cochran Cherry PLLC.

1.4     "Class Representative" means Plaintiff Dominique Morrison.

1.5     "Complaint" means the operative complaint filed in the Litigation by Plaintiff.

1.6     "Defendant" or "Ross" means Ross Stores, Inc.

Document Prepared
on Recycled Paper

1         1.7    "Defendant's Counsel" or "Ross's Counsel" of "Defense Counsel" means

2 Defendant's counsel of record in the Litigation, Norton Rose Fulbright US LLP.

3         1.8    "Effective Date" means the later of: (i) the expiration date of the time for filing a

4 notice of appeal from the Final Approval or (ii) if a notice of appeal is filed, but the Final Approval

5 is affirmed or the appeal is dismissed, the date upon which the mandate of the Court of Appeals is

6 issued.

7         1.9    "Early Termination" means the early termination of the injunctive relief terms that

8 is prior to twelve (12) years after Final Approval.

9         1.10   "Exclusion Deadline" means the deadline for which the Settlement Class Member

10 must request to be excluded from the Settlement Class as to the Released Claims, 90 days after the

11 Court preliminarily approves this Settlement.

12         1.11   "Fee and Expense Award" means the amount awarded to Class Counsel by the Court

13 for attorneys' fees, costs, and expenses.

14         1.12   "Final Approval" means an order by the Court for, among other things, final

15 approval of the Settlement.

16         1.13   "Final Approval Hearing" means the hearing for which the Court considers whether

17 to grant or deny the final approval of the Settlement.

18         1.14   "Incentive Award" means any award sought by application to and approval by the

19 Court that is payable to Plaintiff to compensate her for efforts in bringing this Litigation and/or

20 achieving the benefits of this settlement on behalf of the Settlement Class, as further discussed in

21 section 6.2.

22         1.15   "Judgment" means the judgment to be entered by the Court pursuant to the

23 Settlement.

24         1.16   "Litigation" means *Dominque Morrison v. Ross Stores, Inc., et al.*, United States

25 District Court for the Northern District of California, Case No. 4:18-cv-02671-YGR.

26         1.17   "Notice" means a document, which includes both the Long Form Notice and

27 Summary Notice, to be disseminated in accordance with the Preliminary Approval Order,

28

DOCUMENT PREPARED
ON RECYCLED PAPER

informing Persons who fall within the Settlement Class definition of, among other things, the pendency of the Litigation, the material terms of the proposed Settlement and their options with respect thereto. Proposed Long Form Notice and Summary Notice has been concurrently filed.

1.18    "Notice Plan" means the method of providing the Class with notice of the Settlement. A proposed Notice Plan has been concurrently filed.

1.19    "Notice of Early Termination" means a written document prepared by Ross or Ross's counsel notifying Plaintiff's Counsel of Early Termination.

1.20    "Objection Deadline" means the date by which Settlement Class Members must file objections, if any, to the Settlement, 90 days after the Court preliminarily approves this Settlement.

1.21    "Parties" means Plaintiff and Defendant, collectively.

1.22    "Party" means either Plaintiff or Defendant.

1.23    "Plaintiff" or "Class Representative" means Dominque Morrison.

1.24    "Plaintiff's Counsel" means Plaintiff's counsel of record in the Litigation, Audet & Partners, LLP; Cuneo Gilbert & Laduca; Levin Sedran & Berman; and Steckler Wayne Cochran Cherry PLLC.

1.25    "Preliminary Approval Order" means an order providing for, among other things, preliminary approval of the Settlement and dissemination of the Notice to the Settlement Class according to the Notice Plan.

1.26    "Products" means polyester/cotton sheets imported and supplied to Ross by AQ Textiles, LLC that are packaged or advertised with a representation regarding thread count as identified on **Exhibit A**.

1.27    "Released Claims" means the release and discharge of the Released Parties by the Settlement Class from any and all claims, liens, demands, actions, causes of action, rights, duties, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, whether arising under any international, federal, state or local statute, ordinance, common law, regulation, principle of equity or otherwise, that that were, or could

DOCUMENT PREPARED
ON RECYCLED PAPER

have been, asserted in the Litigation and that arise out of or relate to the allegations thereof, or to any similar allegations or claims regarding the thread count of the Products.

1.28    "Released Parties" means Defendant and its present and former subsidiaries, parents, affiliates, divisions, officers, directors, members, managers, shareholders, insurers, re-sellers, distributors, brokers, service providers, employees, agents, legal representatives, heirs, predecessors, successors, or assigns. Released Parties does not include AQ or Creative Textiles LLC.

1.29    "Settlement Administrator" means CPT Group.

1.30    "Settlement Class" or "Settlement Class Members" means all persons in the United States who purchased the Products for personal use from a Ross store on or after May 7, 2014, to the Objection/Exclusion Deadlines. Excluded from the Settlement Class are: (a) Ross's employees, officers, directors and attorneys; (b) persons who timely and properly exclude themselves from the Settlement Class as provided herein, and (c) the Court, the Court's immediate family, and Court staff.

1.31    "Settlement Website" means an internet website created and maintained by the Settlement Administrator. The URL of the Settlement Website shall be provided in the Notice Plan.

## II.    **CERTIFICATION OF THE SETTLEMENT CLASS**

2.1    The Parties agree, for settlement purposes only, that the Settlement Class shall be certified and proceed as a class action under Federal Rule of Civil Procedure 23(b)(3) or 23(b)(2), or both, with a class consisting of all Settlement Class Members, and with Plaintiff as the Class Representative and with Class Counsel as counsel for the Settlement Class Members.

2.2    In the event that the Court declines to enter the Preliminary Approval Order or to grant Final Approval (or enters any order that increases the cost or burden of the settlement to Defendant beyond what is set forth in this Agreement), the Parties may, but are not required to, modify this Agreement. Such a modification shall be binding only if it is in writing and executed by Plaintiff's Counsel and Defendant's Counsel.

2.3    In the event the Settlement is terminated or for any reason the Settlement is not effectuated, the certification of the Settlement Class shall be vacated and the Litigation shall proceed as if the Class had not been certified. Any certification of a conditional, preliminary or final Settlement Class, pursuant to the terms of this Agreement, shall not be construed as an admission on the part of Ross that the Settlement Class is appropriate for certification as a litigation class under the Federal Rules of Civil Procedure or any similar state or federal class action statute or rule.

III.    **SETTLEMENT CONSIDERATION**

3.1    Injunctive Relief. Ross will provide the Class with injunctive relief by way of the following:

a)    Ross will require AQ to certify in writing on an annual basis beginning on January 1st after the Effective Date that the description of the thread count on its packaging for Products accurately reflects the actual thread count as determined by ASTM 3775, as officially interpreted and amended from time to time, or any successor industry standard for textile thread count for Products sold to Ross. Ross shall not be required to obtain a certification from AQ if it has not purchased any Products within the previous year and has not issued any purchase orders for future purchases of Products; provided, however, that Ross shall require AQ to provide a certification before issuing any subsequent purchase orders for Products to AQ.

b)    Ross will require AQ to report in writing on an annual basis beginning on January 1st after the Effective Date as to whether there are any known investigations by any outside entity or pending claims or lawsuits regarding AQ's representations concerning thread count on the Products, any remedial actions taken regarding these claims or investigations, and if no remedial actions were taken, the reasons for which remedial actions were not taken.

c)    Commencing no later than the Effective Date, Ross will require AQ to supply a passing test report for each new style of Products showing compliance with ASTM 3775, as officially interpreted and amended from time to time, or any successor industry standard for

textile thread count,  before taking possession of such style. Only one test report is required if the Product differs only by size or color.

d)  <u>Termination</u>. The injunctive relief terms set forth in Section 3.1 will remain in effect for 12 years following Final Approval of this Settlement, with such terms automatically terminating after 12 years. Ross may seek Early Termination of the injunctive relief terms in Section 3.1 no earlier than seven years, provided that there have been no violations of such injunctive relief terms within the preceding three years.

The aforementioned injunctive relief will be implemented and commence within 30 days of the Effective Date of this agreement.

## IV.  **FEE AND EXPENSE AND INCENTIVE AWARDS**

4.1  Class Counsel will make an application to the Court for an Attorneys' Fee and Expense Award in an amount not to exceed $750,000, plus reimbursement of Class Counsel's costs and expenses in the amount of up to $40,000. Any motion for attorneys' fees and costs and expenses must be filed at least 35 days before the Objection Deadline.

4.2  The Fee and Expense Award shall be the total obligation of Ross to pay for attorneys' fees, costs, and/or expenses of any kind (including, but not limited to, travel, filing fees, court reporter, and videographer expenses, expert fees, and costs, and document review and production costs) related to this Litigation.

4.3  Class Counsel shall have the sole and absolute discretion to allocate the Fee and Expense Award amongst Plaintiff's Counsel and any other attorneys for Plaintiff. Ross shall have no liability or other responsibility for allocation of any such attorney's fees and expenses awarded, and, in the event that any dispute arises relating to allocation of fees, Class Counsel agree to hold Ross harmless from, and indemnify Ross with respect to, any and all such liabilities, costs, and expenses, including attorneys' fees and costs of such dispute. Except as set forth in this Agreement, each Party shall bear his, her or its own fees, costs and expenses.

4.4  Plaintiff may additionally apply to the Court for an Incentive Award as compensation for the time and effort undertaken in and risks of pursuing this Litigation, including

Document Prepared
On Recycled Paper

1    the risk of liability for the Parties' costs of suit, and for agreeing to the general release set forth in

2    Section 6.1. The Incentive Award shall not exceed $5,000.

3        4.5     Ross agrees not to oppose or to submit any evidence or argument challenging or

4    undermining the applications for Fee and Expense Award or Incentive Award, provided such

5    applications are consistent with Sections 4.1 and 4.4. Plaintiffs' Counsel and Plaintiff agree that the

6    denial of, reduction or downward modification of, or failure to grant any application for attorneys'

7    fees, costs, and expenses or Incentive Awards shall not constitute grounds for modification or

8    termination of this Agreement, including the settlement and releases provided for herein.

9        4.6     Ross shall pay any Fee and Expense Award or Incentive Award within 30 days of

10   the Effective Date.

11   V.     **NOTICE TO THE CLASS AND ADMINISTRATION OF SETTLEMENT**

12        5.1     The Class Notice shall conform to all applicable requirements of the Federal Rules

13   of Civil Procedure, the United States Constitution (including the Due Process Clauses), the Class

14   Action Fairness Act of 2005, 28 U.S.C. § 1715, and any other applicable law, and shall otherwise

15   be in the manner and form approved by the Court.

16        5.2     Ross shall retain the Settlement Administrator to facilitate the notice process by

17   assisting the Parties in the implementation of the Notice Plan. The Settlement Administrator will

18   help implement the terms of this Settlement. The Settlement Administrator shall be responsible for

19   administrative tasks, including, without limitation, (a) notifying the appropriate state officials about

20   the Settlement, (b) arranging, as set forth in this Section and in the Preliminary Approval Order,

21   for distribution of Class Notice in accordance with the Notice Plan to Settlement Class Members,

22   (c) answering inquiries from Settlement Class Members and/or forwarding such written inquiries

23   to Class Counsel or their designee, (d) receiving and maintaining on behalf of the Court and the

24   Parties any Settlement Class Member correspondence regarding exclusions from the Settlement,

25   (e) posting notices on the Settlement Website, and other related documents, and (f) otherwise

26   assisting with implementation and administration of the Settlement terms.

27

28

DOCUMENT PREPARED ON RECYCLED PAPER

1    5.3    The Settlement Administrator will create and maintain a Settlement Website, which

2    will contain relevant Settlement information and case-related documents such as this Agreement,

3    the Notice, Preliminary Approval Order, applicable deadlines, all papers filed in support of the

4    proposed Agreement (including Plaintiff's anticipated motion for a Fee and Expense Award),

5    orders of the Court pertaining to this Agreement, opt-out process, and contact information for the

6    Settlement Administrator for a toll-free telephone number, e-mail, and U.S. mail. The Parties shall

7    use reasonable efforts to agree on all information and documents to be posted on the Settlement

8    Website and no information shall be posted or provided without the Parties' express approval.

9    5.4    Notice shall be provided as provided in the Notice Plan as approved by the Court.

10    5.5    The Parties shall supervise the Settlement Administrator in the performance of the

11    notice functions set forth herein.

12    5.6    At least 14 days prior to the Final Approval Hearing, the Settlement Administrator

13    shall certify to the Court that it has complied with the notice requirements set forth herein.

14    5.7    Ross will bear the cost of the Notice and Settlement Administrator.

15    VI.    **RELEASES**

16    6.1    Releases Regarding Named Plaintiff (Class Representative) and Released Parties.

17    Upon Final Approval, Plaintiff on the one hand, and Ross on the other hand, shall have

18    unconditionally, completely, and irrevocably released and forever discharged each other from and

19    shall be forever barred from instituting, maintaining, or prosecuting (1) any and all claims, liens,

20    demands, actions, causes of action, rights, duties, obligations, damages or liabilities of any nature

21    whatsoever, whether legal or equitable or otherwise, known or unknown, that actually were, or

22    could have been, asserted in the Litigation as to each Party, whether based upon any violation of

23    any state or federal statute or common law or regulation or otherwise, or arise directly or indirectly

24    out of, or in any way relate to, the allegations, claims, or contentions that Plaintiff, on the one hand,

25    and Ross, on the other hand, have had in the past, or now have, related in any manner to Ross's

26    products and services or business affairs; and (2) any and all other claims, liens, demands, actions,

27    causes of action, rights, duties, obligations, damages or liabilities of any nature whatsoever, whether

28

1   legal or equitable or otherwise, known or unknown, that Plaintiff, on the one hand, and Ross, on

2   the other hand, have had in the past or now have, related in any manner to any and all Released

3   Parties' products, services or business affairs, or otherwise.

4         6.2   <u>Releases Regarding Settlement Class Members and released Parties.</u> Upon Final

5   Approval, Settlement Class Members shall have unconditionally, completely, and irrevocably

6   released and discharged the Released Parties from any and all claims, liens, demands, actions,

7   causes of action, rights, duties, obligations, damages or liabilities of any nature whatsoever, whether

8   legal or equitable or otherwise, known or unknown, whether arising under any international,

9   federal, state or local statute, ordinance, common law, regulation, principle of equity or otherwise,

10   that that were, or could have been, asserted in the Litigation and that arise out of or relate to the

11   allegations thereof, or to any similar allegations or claims regarding the Products (the "Released

12   Claims"). Upon Final Approval, Settlement Class Members shall be forever barred from initiating,

13   maintaining, or prosecuting any Released Claims against Released Parties.

14         6.3   All Parties to this Settlement Agreement, including the Settlement Class,

15   specifically acknowledge that they have been informed by their legal counsel, via the Notice, of

16   Section 1542 of the California Civil Code (and any similar State laws) and they expressly waive

17   and relinquish any rights or benefits available to them under this statute (and any similar State

18   laws). <u>California Civil Code § 1542</u> provides:

19            A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS

20            THAT THE CREDITOR OR RELEASING PARTY DOES NOT
         KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT

21            THE TIME OF EXECUTING THE RELEASE AND THAT, IF
         KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY

22            AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR
         OR RELEASED PARTY.

23         6.4   Notwithstanding Section 1542 of the California Civil Code, or any other federal or

24   state statute or rule of law of similar effect, this Agreement shall be given full force and effect

25   according to each and all of its expressed terms and provisions, including those related to any

26   unknown or unsuspected claims, liabilities, demands, or causes of action which are based on, arise

27   from or are in any way connected with the Litigation.

28

6.5     <u>Effectuation of Settlement.</u> None of the above releases include releases of claims or otherwise affects the rights of Settlement Members to pursue any other party not expressly released, including AQ and Creative, regarding the allegations in the Litigation regarding Products sold by Ross.

6.6     <u>No Admission of Liability.</u> This Agreement set forth herein reflects, among other things, the compromise and settlement of disputed claims among the Parties, and neither this Agreement nor the releases given herein, nor any consideration therefor, nor any actions taken to carry out the terms of this Agreement, are intended to be, nor may they be deemed or construed to be, an admission or concession of liability, or the validity of any claim, defense, or of any point of fact or law on the part of any Party. Ross denies the material allegations of the Complaint and denies any wrongdoing or liability as to the Litigation. Neither this Agreement, nor the fact of the Agreement set forth herein, nor the settlement proceedings, nor the settlement negotiations, nor any related document, shall be used as an admission of any fault or omission by any or all of the Released Parties, or be offered or received in evidence as an admission, concession, presumption, or inference of any wrongdoing or liability by any or all of the Released Parties in any proceeding, other than such proceedings as may be necessary to consummate, interpret or enforce this Agreement.

VII.    **CLASS SETTLEMENT PROCEDURES**

7.1     <u>Preliminary Approval Order.</u> As soon as practicable following the signing of this Agreement, Class Counsel shall apply to the Court for entry of the Preliminary Approval Order, certifying the Settlement Class; preliminarily approving this Agreement as fair, just, reasonable and adequate; approving Notice to the Settlement Class Members as described in Section V above; and setting the Final Approval Hearing of the Agreement and any objections thereto.

7.2     <u>Final Approval Order and Judgment</u>. At or before the Final Approval Hearing, Plaintiff, with the support of Ross, shall move for entry of an order of Final Approval, granting final approval of this Agreement and adjudging this Agreement to be final, fair, reasonable, adequate, and binding on all Settlement Class Members who have not excluded themselves from

1  the Settlement Class as provided below; ordering that the settlement relief be provided as set forth

2  in this Agreement and giving effect to the releases as set forth herein; and entering Judgment in the

3  Litigation.

4      7.3    Exclusions and Objections. The Notice and Settlement Website shall advise

5  prospective Settlement Class Members of their rights to forego the benefits of this Agreement with

6  respect to the Released Claims and pursue an individual claim; to object to this settlement

7  individually or through counsel; and to appear at the Final Approval Hearing. The proposed

8  Preliminary Approval Order, Notice, and Settlement Website will also provide that any Settlement

9  Class Members wishing to object or exclude themselves who fail to properly or timely file or serve

10  any of the requested information and/or documents will be precluded from doing so.

11      7.4    Objections to the Settlement. Settlement Class Members shall have the right to

12  appear and show cause, if they have any reason why the terms of this Agreement should not be

13  given Final Approval. Any objection to this Agreement, including any of its terms or provisions,

14  must be in writing, in the manner set forth in the Notice, and postmarked by the Objections

15  Deadline. Class Members may object either on their own or through an attorney hired at their own

16  expense. Any objection regarding or related to the Agreement shall contain a caption or title that

17  identifies it as "Objection to Class Settlement in *Dominque v. Ross Stores, Inc. et al.*, Case No.

18  4:18-CV-02671-YGR" and also shall contain information sufficient to identify and contact the

19  objecting party (or his or her attorney, if any), as well as a clear and concise statement of the

20  objection, documents sufficient to establish the basis for their standing as a Settlement Class

21  Member, i.e., verification under oath as to the approximate date(s) and location(s) of their

22  purchase(s) of the Products, the facts supporting the objection, and the legal grounds on which the

23  objection is based. Any objections not submitted to the Court by the Objection Deadline are deemed

24  waived. If an objecting party chooses to appear at the Final Approval Hearing, that party must file

25  with the Court, at least 30 days before the Final Approval Hearing, a notice of intent to appear and

26  that notice must list the name, address and telephone number of the attorney, if any, who will appear

27  on behalf of that party.

28

DOCUMENT PREPARED
ON RECYCLED PAPER

7.5     <u>Right to Respond to Objections.</u> Class Counsel and Defendant shall have the right, but not the obligation, to respond to any objection, by filing opposition papers no later than seven calendar days prior to the Final Approval Hearing, or on such other date as set forth in the Preliminary Approval Order, or any subsequent Court order(s) modifying the briefing schedule for the Final Approval Hearing. The Party responding shall file a copy of the response with the Court, and shall serve a copy, by regular mail, hand or overnight delivery, in the Party's discretion, to the objector (or counsel for the objector), Class Counsel and Defense Counsel, to the extent the objector or their counsel do not receive notice of electronic filing via the Court's ECF filing system.

7.6     <u>Ability to Opt Out.</u> If any Settlement Class Member wishes to be excluded from this Agreement and the Settlement Class, the Settlement Class Member may do so by completing and submitting the online form at the Settlement Website or by mailing a valid request to opt out, as described in the Notice, to the Settlement Administrator, provided however, that a Settlement Class Member's ability to opt out is solely as to the Released Claims and no Settlement Class Member may opt out with regard to the benefit of the injunctive relief terms as set forth in Section 3.1. Requests to exclude must be submitted online by the Exclusion Deadline, or if mailed must be *received by* the Settlement Administrator (not just postmarked) by the Exclusion Deadline, or they shall not be valid. For exclusion requests that are submitted online, the Class Member shall have the opportunity to print a page immediately after submission showing the information entered and the date and time the request for exclusion was received. A Settlement Class Member who elects to opt out of this Settlement and the Settlement Class shall not be permitted to object to this Settlement. Settlement Class Members shall be encouraged, but not required, to provide their email addresses in their requests for exclusion. Each request for exclusion must be submitted individually and may not be submitted on behalf of more than one individual. So-called "mass" or "class" requests for exclusion shall not be allowed.

7.7     <u>Effect of Opt Out or Objection.</u> Any Settlement Class Member who does not request exclusion from the Settlement has the right to object to the Settlement. Any Class Member who wishes to object must timely submit an objection. If a Class Member submits an objection and a

DOCUMENT PREPARED
ON RECYCLED PAPER

written request for exclusion, he or she shall be deemed to have complied with the terms of the opt out procedure and shall not be bound by the Agreement if approved by the Court. However, any objector who has not timely requested exclusion from the Settlement will be bound by the terms of the Agreement upon Final Approval.

7.8     Effect if Settlement Is Not Approved.   This Agreement was entered into only for purposes of settlement, subject to and without waiver of the Parties' respective rights. If the Court does not enter the Preliminary Approval Order or does not grant Final Approval, or if the Final Approval and Judgment is vacated, overturned, reversed, or rendered void as a result of appeal, the Parties shall be restored to their respective positions immediately preceding execution of this Agreement.

VIII.   **MISCELLANEOUS PROVISIONS**

8.1     The Parties agree that the recitals are contractual in nature and form a material part of this Agreement.

8.2     The Parties' counsel shall use their best efforts to cause the Court to enter the Preliminary Approval Order of this Agreement and Agreement as promptly as practicable, to take all steps contemplated by this Agreement to effectuate the settlement on the stated terms and conditions, and to obtain Final Approval of this Agreement.

8.3     This Agreement is intended to and shall be governed by the laws of the State of California, without regard to conflicts of law principles.

8.4     This Agreement and its accompanying exhibits set forth the entire understanding of the Parties. No change or termination of this Agreement shall be effective unless in writing and signed by Plaintiff's Counsel and Ross's Counsel. No extrinsic evidence or parol evidence shall be used to interpret this Agreement.

8.5     All of the Parties warrant and represent that they are agreeing to the terms of this Agreement based upon the legal advice of their respective attorneys, that they have been afforded the opportunity to discuss the contents of this Agreement with their attorneys and that the terms and conditions of this document are fully understood and voluntarily accepted.

DOCUMENT PREPARED
ON RECYCLED PAPER

1      8.6     The waiver by any party of a breach of any term of this Agreement shall not operate

2 or be construed as a waiver of any subsequent breach by any party. The failure of a party to insist

3 upon strict adherence to any provision of the Agreement shall not constitute a waiver or thereafter

4 deprive such party of the right to insist upon strict adherence.

5      8.7     The headings in this Agreement are inserted merely for the purpose of convenience

6 and shall not affect the meaning or interpretation of this document.

7      8.8     This Agreement may be executed by facsimile signature and in counterparts, each

8 of which shall be deemed an original and all of which, when taken together, shall constitute one

9 and the same instrument. The date of execution shall be the latest date on which any party signs the

10 Agreement. This Agreement has been negotiated among and drafted by Class Counsel and Defense

11 Counsel. Plaintiff, Plaintiff's Counsel, Settlement Class Members, and Defendant shall not be

12 deemed to be the drafter of this Agreement or of any particular provision, nor shall they argue that

13 any particular provision should be construed against its drafter or otherwise resort to the contra

14 proferentem canon of construction. Accordingly, this Agreement should not be construed in favor

15 of or against one Party as to the drafter, and the Parties agree that the provisions of California Civil

16 Code § 1654 and common law principles of construing ambiguities against the drafter shall have

17 no application. All Parties agree that counsel for the Parties drafted this Agreement during extensive

18 arm's-length negotiations.

19      8.9     Any disagreement and/or action to enforce this Agreement shall be commenced and

20 maintained only in the Court in which this Litigation is pending.

21      8.10    The Parties reserve the right, subject to the Court's approval, to agree to any

22 reasonable extensions of time that might be necessary to carry out any of the provisions of this

23 Agreement.

24      8.11    In the event any one of the provisions contained in this Agreement shall for any

25 reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or

26 unenforceability shall not affect other provisions if Defense Counsel and Class Counsel, on behalf

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER

DocuSign Envelope ID: C6A4429B-6685-4C53-B45A-971843234C28

1  of the Parties, mutually elect to proceed as if such invalid, illegal, or unenforceable provision had

2  never been included in this Agreement.

3      8.12    This Agreement shall be binding upon and inure to the benefit of the respective

4  heirs, successors and assigns of the Parties.

5      8.13    The Parties intend for this Agreement to be a complete and final resolution of all

6  disputes between them with respect to the Litigation.

7      IN WITNESS HEREOF the undersigned, being duly authorized, have caused this

8  Agreement to be executed on the dates shown below and agree that it shall take effect on the first

9  date it has been executed by all of the undersigned.

10

11

12

13  Dated:  5/6/2021

DocuSigned by:

*Dominique Morrison*

14                              By: —A622C43DC692475...
                                   DOMINIQUE MORRISON

15

16

17  Dated:                      By:_____
                                   ROSS STORES, INC.

18

19                              Printed Name:

20                              Title:

21

22  Dated:                      **NORTON ROSE FULBRIGHT US LLP**

23

24                              By_____

25                                 Jeffrey Margulies
                                   Attorneys for Defendant

26                                 ROSS STORES, INC.

27

28

102312476.1                     - 19 -                      Case No.: 3:18-cv-02671-YGR

DOCUMENT PREPARED
ON RECYCLED PAPER

1  of the Parties, mutually elect to proceed as if such invalid, illegal, or unenforceable provision had

2  never been included in this Agreement.

3       8.12   This Agreement shall be binding upon and inure to the benefit of the respective

4  heirs, successors and assigns of the Parties.

5       8.13   The Parties intend for this Agreement to be a complete and final resolution of all

6  disputes between them with respect to the Litigation.

7       IN WITNESS HEREOF the undersigned, being duly authorized, have caused this

8  Agreement to be executed on the dates shown below and agree that it shall take effect on the first

9  date it has been executed by all of the undersigned.

10

11

12

13

14  Dated: _____    By:_____
                                             DOMINIQUE MORRISON

15

16

17  Dated: May 6, 2021    By:_____

18                                   ROSS STORES, INC.

19                                   Printed Name: Ken. Kew

20                                   Title: Group Senior Vice President

21                                   General Counsel and Corporate Secretary

22  Dated: May 6, 2021    **NORTON ROSE FULBRIGHT US LLP**

23

24                                 Jeffrey B.   Digitally signed by Jeffrey B. Margulies
                                               DN: cn=Jeffrey B. Margulies, o=Norton

                                               Rose Fulbright US LLP, ou,

25                 By Margulies   email=jeff.margulies@nortonrosefulbrig
                                               ht.com, c=US
                                             Date: 2021.05.06 13:34:59 -07'00'

26                                 Jeffrey Margulies
                                 Attorneys for Defendant
                               ROSS STORES, INC.

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER

1

Dated: May 6, 2021

**AUDET & PARTNERS, LLP**

2

3

4

By

Michael McShane
Attorneys for Plaintiff
DOMINIQUE MORRISON

5

6

Dated:

**STECKLER WAYNE COCHRAN CHERRY PLLC**

7

8

9

10

By

Stuart Cochran
Attorneys for Plaintiff
DOMINIQUE MORRISON

11

12

Dated: May 6, 2021

**CUNEO, GILBERT & LADUCA**

13

14

15

By *Charles LaDuca (with consent)*

Charles LaDuca
Attorneys for Plaintiff
DOMINIQUE MORRISON

16

17

18

Dated: May 6, 2021

**LEVIN, SEDRAN & BERMAN**

19

20

21

By *Charles Schaffer (with consent)*

Charles Schaffer
Attorneys for Plaintiff
DOMINIQUE MORRISON

22

23

24

25

26

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:                                   **AUDET & PARTNERS, LLP**

By_____
          Michael McShane
          Attorneys for Plaintiff
          DOMINIQUE MORRISON

Dated:                                   **STECKLER WAYNE COCHRAN CHERRY
                                          PLLC**

By_____
          Stuart Cochran
          Attorneys for Plaintiff
          DOMINIQUE MORRISON

Dated:                                   **CUNEO, GILBERT & LADUCA**

By_____
          Charles LaDuca
          Attorneys for Plaintiff
          DOMINIQUE MORRISON

Dated:                                   **LEVIN, SEDRAN & BERMAN**

By_____
          Charles Schaffer
          Attorneys for Plaintiff
          DOMINIQUE MORRISON

102312476.1                          - 20 -                Case No.: 3:18-cv-02671-YGR
                              STIPULATION OF SETTLEMENT

DOCUMENT PREPARED
ON RECYCLED PAPER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

## AQ SHEET BRAND NAMES

Amante Home

Bentley Home

Brookstone

Casa Fiori

Castlewood Manor

Chateau Dormir

Cool Comfort

Grand Manor

Grande Estate

Hampton House

Heatherwood Hill

Home Essential

Irving Park

Kensington Home

Kensington Manor

Kingston Manor

Luxura

Luxura Home

Main Street Linens

Medallion Home

Nu Percale

Organically Finished

Park Manor

Pima Supreme

Ron Chereskin

DOCUMENT PREPARED
ON RECYCLED PAPER

1   Sharper Image

2   Silvadur

3   Sterling Manor

4   Tencel

5   Ultra Lux

6   Villa Lux

7   Weave

8   Windsor Home

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER